IN THE CIRCUIT COURT OF THE
TWENTIETH JUDICIAL CIRCUIT, IN
AND FOR LEE COUNTY, FLORIDA

4205 PINE ISLAND LLC,

      Plaintiff,

v.                                   **CASE NO.:**

SCOTTSDALE INSURANCE COMPANY,

      Defendant.

_____/

## COMPLAINT & DEMAND FOR JURY TRIAL

**COMES NOW** the Plaintiff, 4205 PINE ISLAND LLC, by and through the undersigned attorneys and sues the Defendant, SCOTTSDALE INSURANCE COMPANY, and alleges as follows:

1.     This is an action for declaratory relief and breach of contract with damages greater than Fifty Thousand Dollars ($50,000.00), exclusive of interest, costs, and attorney's fees.

2.     At all material times hereto, the Plaintiff, 4205 PINE ISLAND LLC, (hereinafter "Plaintiff") was and is a Florida commercial property owner.

3.     At all material times hereto, Defendant, SCOTTSDALE INSURANCE COMPANY, (hereinafter "Defendant") was a corporation duly licensed to transact insurance business in the State of Florida.  Defendant does business, has offices, and/or maintained agents for the transaction of its customary business in Lee County, Florida.

4.     Plaintiff brings this action as a commercial property owner. Attached hereto and incorporated herein as Plaintiff's Exhibit "A" is a copy of the estimate for the work to be performed.

5.      Prior to September 28, 2022, the Plaintiff sought and purchased commercial property insurance from Defendant to cover the property located at 4205 Pine Island Road NW, Matlacha, Florida 33993 (hereinafter "Plaintiff's Property"). Said policy of insurance, which is believed to be policy number CPS7560688 with corresponding claim number 02106787 (hereinafter "Plaintiff's Policy"), was issued by Defendant to Plaintiff to provide insurance coverage which included, but was not limited to, coverage afforded to protect Plaintiff's Property against collapse damage.

6.      Plaintiff's Policy was issued by Defendant in Lee County, Florida and was in full force and effect as of September 28, 2022. Attached hereto and incorporated herein as Plaintiff's Exhibit "B" is a copy of Plaintiff's Policy.

7.      On or about September 28, 2022, Plaintiff's Property and dwelling located at 4205 Pine Island Road NW, Matlacha, Florida 33993 was damaged by a collapse (hereinafter, the "Loss"). The Loss was covered under Plaintiff's Policy issued by Defendant.

8.      As of the date of the filing of this lawsuit, Defendant has failed to: (i) acknowledge coverage for the Loss; and/or (ii) acknowledge that payment of insurance proceeds for the Loss will be forthcoming; and/or (iii) issue payment in full of insurance proceeds for the Loss to Plaintiff.

9.      Jurisdiction and venue of this matter are proper in the Circuit Court for Lee County, Florida.

## COUNT I-BREACH OF CONTRACT AGAINST DEFENDANT

10.      Plaintiff does hereby repeat and re-allege Paragraphs 1 through 9 above and incorporates the same by reference herein.

11.     Plaintiff is a named Insured under the commercial property insurance policy of the Plaintiff (the Plaintiff's Policy described above) and said policy was in full force and effect as to the Plaintiff at all times material to this Complaint, including when Plaintiff's Property was damaged as described above.

12.     Plaintiff has either complied with all conditions precedent to filing this lawsuit and Plaintiff is entitled to recover under Plaintiff's Policy or any such conditions has been waived.

13.     Defendant's refusal to: (i) acknowledge coverage for the Loss; and/or (ii) acknowledge that payment of insurance proceeds for the Loss will be forthcoming; and/or (iii) issue payment in full of insurance proceeds for the Loss to Plaintiff, constitutes a breach of contract.

14.     Plaintiff has been damaged as a result of Defendant's breach in the form of unpaid insurance proceeds, interest, costs, and attorney's fees.

15.     Plaintiff has been and remains fully prepared to comply with all of the obligations pursuant to the aforesaid contract of insurance.

16.     As a result of Defendant's aforementioned breach of contract, it has become necessary that Plaintiff retain the services of the undersigned attorneys pursuant to Fla. Stat. § 627.428 or Fla. Stat. § 626.9373.  Plaintiff is obligated to pay a reasonable fee for the undersigned attorneys' services in bringing this action, plus necessary costs.

17.     Plaintiff is entitled to recover attorney's fees and costs pursuant to Fla. Stat. §§ 627.428, 627.70152, and/or Fla. Stat. § 626.9373.

**WHEREFORE**, the Plaintiff, 4205 PINE ISLAND LLC, by and through the undersigned counsel, demands judgment against Defendant, SCOTTSDALE INSURANCE COMPANY, for all unpaid bills with interest on any overdue payments, costs, attorney fees pursuant to Fla. Stat.

§§ 627.428, 627.70152, and/or Fla. Stat. § 626.9373, and for all other remedies the Court sees fit to grant, and the Plaintiff demands trial by jury.

## COUNT II-DECLARATORY RELIEF AGAINST DEFENDANT

18.    Plaintiff realleges paragraphs 1 through 9 above and incorporates the same by reference herein.

19.    Under the terms of the subject Plaintiff's Policy, Defendant insured against direct, physical loss to the Plaintiff's Property.  There are however a number of exclusions which the Defendant is relying upon to deny coverage for the Loss.

20.    Under the terms and provisions of the Plaintiff's Policy, Plaintiff's Loss appears to be covered for the property damage sustained; however, Defendant denied coverage for the Loss and/or asserted in its coverage determination letter that certain portions of Plaintiff's Loss were not covered under the Plaintiff's Policy due to various policy exclusion and exceptions. These exclusions are referenced in the Defendant's coverage determination letter, which is attached hereto as Plaintiff's Exhibit "C".

21.    As a result of Defendant's assertions of applicable policy exclusion(s)/exception(s) and Defendant's apparent belief that the entire and/or a part of the Loss is not covered based upon its interpretation of the Plaintiff's Policy and/or the pricing issues, Plaintiff is in doubt as to Plaintiff entitlement to coverage under the Plaintiff's Policy and/or as to the Defendant's denial.

22.    Plaintiff believes that the Loss is covered and that Plaintiff's estimate is accurate and compensable; however, Defendant disagrees.  Consequently, the parties can only resolve their differences when coverage is determined by this Court. *See Rhea v. Dist. Bd. of Trs. of Santa Fe Coll.*, 109 So.3d 851, 859 (Fla. 1st DCA 2013) ("To be entitled to a declaratory judgment, one must demonstrate that (1) a good-faith dispute exists between the parties; (2) one presently has a

justiciable question concerning the existence or non-existence of a right or status, or some fact on

which such right or status may depend; (3) one is in doubt regarding one's right or status, and (4)

a bona-fide, actual, present, and practical need for the declaration exists").

23.    Plaintiff is uncertain as to the existence or non-existence of Plaintiff's rights to

coverage under the Plaintiff's Policy and has an actual, practical and present need for a declaration

by the court as to Plaintiff's rights under the Plaintiff's Policy.  Consequently, Plaintiff seeks relief

from uncertainty and insecurity with respect to Plaintiff's rights and legal relations with Defendant

under the Plaintiff's Policy. *See Higgins v. State Farm Fire & Cas. Co.*, 894 So.2d 5 (Fla. 2004);

*Lutz v. Protective Life Ins. Co.*, 951 So.2d 884 (Fla. 4th DCA 2007); *Jossfolk v. United Property

& Cas. Ins. Co.*, 110 So.3d 110) (Fla. 4th DCA 2013) (***permitting declaratory judgment in a first

party property insurance action***); *Certain Interested Underwriters At Lloyd's London v. Pitu, Inc.*,

95 So.3d 290 (Fla. 3rd DCA 2012) (***permitting both breach of contract and declaratory judgment

in a first party property insurance action***) (Emphasis added).

24.    As a direct and proximate result of the foregoing conflicting positions of the parties,

there is an actual bona-fide controversy between the parties that requires judicial interpretations as

to whether there has been a covered Loss.  Accordingly, Plaintiff seeks a declaration as to

Plaintiff's rights relative to coverage of the Loss under the Plaintiff's Policy and Florida law. *See

Security First Insurance Co. v. Phillips*, 45 Fla. L. Weekly D1426 (Fla. 5th DCA, June 12, 2020)

("Because a bona fide controversy existed, declaratory relief was appropriate to determine the

factual issues raised [i.e. whether the insurance policy sub judice was in effect at the time of the

damage].The trial court therefore erred in dismissing the complaint. . . .").

25.    The purpose of this declaratory decree action is to obtain a judicial interpretation

of the Plaintiff's Policy, as it relates to the facts involved herein, which will determine that there

has been a covered Loss and as to the pricing. Without such a declaratory decree, Plaintiff is unable to obtain insurance benefits under the Plaintiff's Policy.

26.    Pursuant to Fla. Stat. § 86.011, this Court has jurisdiction to declare the applicable rights, status, and other equitable or legal relations between the parties as to the existence, or nonexistence of any right; or any fact upon which the existence or nonexistence of such immunity, power, privilege, or right does or may depend, whether such immunity, power, privilege, or right now exists or will arise in the future.

27.    Pursuant to Fla. Stat. § 86.021, Plaintiff is in doubt as to Plaintiff's rights and status under the Plaintiff's Policy.  Therefore, Plaintiff may have this Court determine Plaintiff's questions concerning the construction or validity arising under said Policy and Plaintiff can obtain a declaration of Plaintiff's rights, status, or legal relations thereunder.

28.    Pursuant to Fla. Stat. § 86.051, this Court is not limited nor restricted from exercising its general declaratory relief powers conferred by Fla. Stat. § 86.01 as related to Plaintiff's request for declaratory relief in this action.  Additionally, this Court may even render its decision in this matter by way of anticipation with respect to any act not yet done or any event which has not yet happened.

29.    Pursuant to Florida Stat. § 86.101, in response to Plaintiff's request for declaratory relief, this Court's decision is to be rendered for purposes of settling and affording Plaintiff relief from its insecurity and uncertainty with respect to Plaintiff's rights, status and other equitable or legal relations and the declaratory relief statute is to be liberally administered and construed. (Emphasis added). *See also Olive v. Maas*, 811 So.2d 644, 648 (Fla. 2002); *C.A.T., LLC v. Island Developers*, Ltd, 827 So.2d 373,375 (Fla. 3d DCA 2002); *National Rifle Ass'n of America v. City*

*of South Miami*, 812 So.2d 504 (Fla. 3d DCA 2002); *State Farm Fire and Cas. Co. v. Higgins*, 788 So.2d 992, 999 (Fla. 4th DCA 2001); *X Corp. v. Y Person*, 622 So.2d 1098 (Fla. 2d DCA 1993).

30.    Plaintiff's disagreement(s) with Defendant concerning coverage under the Plaintiff's Policy is a proper subject for a declaratory judgment. *See Transportation Cas. Inc. Co. v. Soil Tech. Distributors, Inc.*, 966 So.2d 8, 9 (Fla. 4th DCA 2007); *Effort Enterprises of Florida, Inc. v. Lexington Ins. Co.*, 666 So.2d 930, 931 (Fla. 4th DCA 1995); *Tindall v. Allstate Ins. Co.*, 472 So.2d 1291, 1292 (Fla. 2d DCA 1985); *Tavares v. Allstate*, 342 So.2d 551 (Fla. 3d DCA 1977); *Perez v. State Auto. Ins. Ass'n.*, 270 So.2d 377 (Fla. 3d DCA 1972).

31.    Plaintiff has the right to proceed with its declaratory relief action and such action should not be impermissibly foreclosed. *See People's Trust Ins. Co. v. AlonzoPombo*, 45 Fla. L. Weekly D2110 (Fla. 3d DCA, Sept. 9, 2020) ("Where a complaint for declaratory action meets [the Rhea] requirements, it should not be dismissed for failure to state a cause of action")*; Travelers Ins. Co. v. Emery*, 579 So.2d 798, 801 (Fla. 1st DCA 1991) ("[Q]uestions of fact and disagreements concerning coverage under insurance policies are proper subjects for a declaratory judgment if necessary to a construction of legal rights."); *Effort Enterprises of Florida. Inc. v. Lexington Ins. Co.*, 666 So.2d 930, 932 (Fla. 4th DCA 1995); *Floyd v. Guardian Life Ins. Co. Of America*, 415 So.2d 103, 105 (Fla. 3d DCA 1982).

32.    All conditions precedent to the filing of this action have been complied with, met or otherwise waived.

33.    As a direct and proximate result of Defendant's conduct, Plaintiff has been obligated to retain undersigned counsel to bring this action and, pursuant to Fla. Stat. §§ 86.011, 626.9373, 627.428, and 57.041, and others, undersigned counsel is entitled to attorneys' fees in this matter to be paid by the Defendant.

WHEREFORE, Plaintiff, 4205 PINE ISLAND LLC, prays this Honorable Court takes jurisdiction of this matter and declares the parties' rights and duties under the Plaintiff's Policy, and takes the following actions, including but not limited to:

a.      entering an order holding that Defendant, SCOTTSDALE INSURANCE COMPANY, is in breach of the insurance contract pursuant to the terms and conditions of the Plaintiff's Policy and awarding damages therefrom, thereby also waiving further policy compliance on the part of Plaintiff;

b.      entering an order holding that since Defendant previously acknowledged to an unagreed amount under the Plaintiff's Policy relative to the Loss, that conditions precedent are waived and/or provide a declaration regarding the insured's specific requirements, so Plaintiff can comply with same, without Plaintiff being in violation of the Plaintiff's Policy (and abating this action pending such compliance);

c.      entering an order declaring that the Plaintiff is in compliance with the Plaintiff's Policy, and has complied with all conditions precedent thereunder or same were waived by the conduct of Defendant;

d.      entering an order declaring that Plaintiff's Loss is the result of direct, physical loss to the Plaintiff's Property;

e.      order full disclosure of all documents and allow full and liberal discovery of all facts that may lead to admissible evidence relevant to the determination herein, including but not limited to, production of the complete insurance policy, and a complete copy of the written materials in the possession of the Defendant that would shed light on the issues involved herein;

f.      determine applicable law, including the provisions of Florida Statutes that apply to the policy and to the parties;

g.    declare each policy provision not in conformity with Florida law be amended to comply with Florida law;

h.    declare that any ambiguities in the statute or policy be construed in favor of insurance coverage;

i.    declare that the statutes and policy provisions be construed strictly and most strongly against the insurer, and liberally in favor of the insured, so as to effect the dominant purpose of indemnity or payment to the insured;

j.    declare that the Plaintiff's Policy provides coverage for the Loss submitted by the Plaintiff;

k.    declare that the Plaintiff is entitled to a claim for attorneys' fees, costs and prejudgment interest against Defendant under Fla. Stat. §§ 86.011, 626.9373, 627.428, and 57.041 and determine amounts thereunder;

l.    determine and declare any other material matters pertaining to the respective rights and responsibilities under the policy, as needed to do complete justice in this case; and

m.    awarding any and all other equitable relief this court deems just and proper, and granting a trial by jury of all issues triable as of a right by a jury.

Plaintiff, 4205 PINE ISLAND LLC, further demands trial by jury of all issues so triable in accordance with Florida Statutes, Chapter 86, as well as for entry of judgment for Plaintiff as to all issues raised in this declaratory action, and against Defendant, SCOTTSDALE INSURANCE COMPANY, for insurance proceeds, attorneys' fees, and costs pursuant to Fla. Stat. §§ 86.011, 626.9373, 627.428, 627.70152, and/or Fla. Stat. § 57.041.

<u>**CERTIFICATE OF SERVICE**</u>

**I DO HEREBY CERTIFY** that a true and correct copy of this document will be served

on the Defendant along with the Summons in this action.

DATED: November 27, 2023

Respectfully submitted by:

<u>/s/ *Ali A. Kadir*</u>
**ALI A. KADIR, ESQ.**
Florida Bar No.: 13582
**KUHN RASLAVICH, P.A.**
986 Douglas Ave., Ste. 102
Altamonte Springs, FL 32714
Telephone: (407) 501-4833
Facsimile: (407) 501-4856
Ali@thekrfirm.com
Counsel for Plaintiff



1925 NE 10th Terrace
Unit#104
Cape Coral, Fl 33909
239-297-5668
License# CBC1262403

Pine Island Paradise                                October 16th, 2023
4205 Pine Island Rd NW
Matlacha, Fl 33993

<u>Project Proposal</u>

We propose to rehab/rebuild the two buildings on the property that still have structures back to the original condition prior to the damage. We will need to get approval through the city on what will be allowed based on the historical guidelines. The other two buildings that were damaged and removed from the property will be rebuilt. The garage should be able to remain at the existing elevation, being non-livable space. The cottage building will be rebuilt to the new code required by the city. Due to this being an unknown, we have in the proposal to build back to the existing elevation. Any added foundation support or elevation requirements will be an added cost, unknown at this time.

<u>Improvement of the Restaurant-</u>

Exterior-
Demo all of the exterior siding
Remove parts of the wood framing
Remove parts of the foundation in order to make the necessary repairs
Make all necessary repairs to the structure, assuming that the foundation is indeed a monolithically poured slab on concrete fill and stem wall footings
The roof trusses and metal roof system seem to be in decent shape, we will make necessary repairs under engineered guidelines
When the structure has been inspected and approved, we will install impact windows and vinyl siding to match the historical guidelines required by the city
Install city approved doors and sliders
We believe there should be adequate lighting on the exterior eaves and awnings for evening dining

We will rebuild the front deck, walkways and wood picket railings to the original condition based on the historical guidelines
Replace all soffit and fascia to it's original condition
Paint building as necessary
Exterior signage TBD

Interior-
Remove all drywall, insulation, ceiling panels and any other substrate needed to get to the truss system
Remove any necessary kitchen equipment, trying to salvage as much as possible. We will need a professional to make these decisions on whether the ANSUL system and fire safety components are in working order
Rebuild everything back to owner's specifications, taking into account any historical guideline and code requirements
We will provide allowances for materials such as flooring, countertops, plumbing fixtures, etc. at a later date
Based on owner's inspection report, it states that "there are adequate electrical, plumbing and HVAC systems and they are assumed to be up to code". We are presuming they have damage and have in our proposal to redo those systems, with the exception of the commercial cooking facilities.

Single family residence

Exterior-
Remove any necessary stucco to make repairs to the building
Make any necessary repairs to the foundation, undetermined at this time
Repair the structural beam that was cut out of the side of the house, it appears there was a sliding glass door installed incorrectly at one point
The roof trusses and metal roof system seem to be in decent shape, we will make necessary repairs under engineered guidelines
When the structure has been inspected and approved, we will install impact windows and doors and re-stucco any effected areas
Install exterior lighting
Make any necessary repairs to the substrate behind the soffit and fascia
Install new soffit and fascia
Paint exterior, color TBD

Interior-
Remove all drywall, insulation, flooring, etc.
Rebuild interior to meet current building code and city requirements
Inspect and repair all electrical, plumbing and mechanical systems
All finishes to owner's specifications-cabinets, countertops, flooring, plumbing fixtures, lighting fixtures, appliances, paint, etc.-Allowances-to be provided at a later date

<u>Cottage</u>
Approximately 324 sq ft-Building specifications to be determined
Building no longer exists and we will need plans. We have a basic cost for the build but until we receive what the city will require, we do not have an exact cost due to foundation requirements

<u>Garage</u>
Approximately 306 sq ft single car garage (setbacks may not allow for the requested 2-car garage, the proposal includes the single car garage previously on-site, the additional square footage for the 2-car garage will be an additional cost)
Built to engineered and architectural specifications, along with any historical requirements by the city

All 4 structures-Restaurant, Single Family, Cottage and Garage
All decks and paver walkways
New asphalt parking and striping
All landscaping with (10) semi-mature/medium tropical fruit trees

Total Project Cost---------------------------------------------------------------$ 1,584,062.50

Additional items NOT included in quote:

Pergola and patio-TBD, unknown square footage

(4) Tiki huts-12 ft x 12 ft-$10,000 each (does not include electrical work)

Seawall and docks-estimated cost $100,000

Boatlift repairs-TBD, extent of damage unknown

Any fencing-TBD

# Mora's Custom Designs & consulting Inc.

# INVOICE

2568 Dora Street
Fort Myers, Florida 33901

## Milestone Builders LLC

PE # 84862
CGC1519724,
CCC1331922,
CAC1820364

Office 239-267-7777
Cell:  239-898-1624 George
Cell:  239-333-9763 Peter

| INVOICE # | DATE |
|---|---|
| 11 | 3/6/2023 |

| BILL TO |
|---|

Pine Island Resorts
4205 PINE ISLAND RD NW
MATLACHA FL 33993

| DESCRIPTION | AMOUNT |
|---|---|
| Full set of permit plans to include Redesign ,Structural electrical to 2020 florida building codes for commercial building , life safety plan to meet all required life saftey codes (ADA), elevations | $13,000 |
| * new Shippimng container Rental unit 1 or 2 bedoom with rooftop deck | |
| * Candy Cottage complete remodel with addition in rear and new deck covered | |
| * Dolphins den & Sand castle to become restaurant 1st flr /Bar and deck 2nd flr | |
| * new deck over pool with under lighting  and water features | |
| * new pool remodel with water feature | |
| * MEP'S (Mech.Plumb &elec calcs )  for restaurant and bar | 5,200.00 |
| * New shipping container  pool side area with bar and upper deck | |
|   with structural for new concrete pad for pool side container suport | |
|   all electrical and plumbing layout for both containers | |
| Pool renovation permit will be a separate permit as well per county | |
| Demo Permit to prep building and demo for shipping container rental | |
| **All 3 permit submittals are included** | 1,500.00 |
| **All Energy calculations req by county for permit** | |
| **All prelim truss layouts req by county for permit** | |

**Please make all check payable to Mora Designs**

| TOTAL | $ | 19,700.00 |
|---|---|---|
| Deposit | | $9,850 |
| FINAL DUE | $ | 9,850.00 |

03/10/2023 Sivan Lam

## Nonlawyer Disclosure

**Instructions to Licensee:** Before you begin to complete the next form, you must give this nonlawyer disclosure to the landlord or tenant for whom you are filling in the blanks. (If you are filling in the blanks for both landlord and tenant, complete two nonlawyer disclosures and give one to each.)

1. Insert your name in the first 5 blank "*Name*" spaces and **sign** below.

2. Have the landlord or tenant whom you are assisting complete the provision regarding her/his ability to read English, and have her/him **sign** below.

3. Give this completed disclosure to the landlord or tenant, as appropriate. Keep a copy of this completed disclosure and all forms you give to the landlord or tenant in your files for at least 6 years.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

_Phuong (Cindi) Hoang_ _____ told me that he/she is a nonlawyer and may not give legal
　　　　　　　　　　　　(Name)
advice, cannot tell me what my rights or remedies are, cannot tell me how to testify in court, and cannot represent me in court.

　　　　Rule 10-2.1(b) of the Rules Regulating The Florida Bar defines a paralegal as a person who works under the supervision of a member of The Florida Bar, an out-of-state lawyer engaged in the authorized practice of law in Florida, or a foreign lawyer engaged in the authorized practice of law in Florida, and who performs specifically delegated substantive legal work for which the supervising lawyer is responsible. Only persons who meet the definition may call themselves paralegals. _Phuong (Cindi) Hoang_ _____ informed me that he/she is
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　(Name)
not a paralegal as defined by the rule and cannot call himself/herself a paralegal.

_Phuong (Cindi) Hoang_ _____ told me that he/she may only type the factual information
　　　　　　　　　　　　(Name)
provided by me in writing into the blanks on the form. Except for typing, _Cindi Hoang_ _____
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　(Name)
may not tell me what to put in the form and may not complete the form for me. However, if using a form approved by the Supreme Court of Florida, _Cindi Hoang_ _____ may ask me factual questions to fill in
　　　　　　　　　　　　　　　　　　　　　(Name)
the blanks on the form and may also tell me how to file the form.

**Landlord or Tenant:**

_____ ☑  I can read English.

_____ ☐  I cannot read English but this notice was read to me by _____
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　(Name)
in _____ which I understand.
　　　(Language)

_Sivan Lam_
dotloop verified
07/11/22 11:27 AM EDT
7RST-AJK9-7LWA-MNR0
Landlord or Tenant signature

_Phuong (Cindi) Hoang_
dotloop verified
07/11/22 12:20 PM EDT
HWWN-ZYT9-MTWT-L3OA
Licensee signature

_Karl M Friedheim_
dotloop verified
08/17/22 9:52 AM EDT
RSOW-9SYV-HK0N-3SZL
Landlord or Tenant signature

©2022 Florida Realtors®

dotloop signature verification: M-xEWD-3HdC

## Residential Lease for Single Family Home or Duplex
## (FOR A TERM NOT TO EXCEED ONE YEAR)



A BOX (☐) OR A BLANK SPACE (____) INDICATES A PROVISION WHERE A CHOICE OR DECISION MUST BE MADE BY THE PARTIES.

THE LEASE IMPOSES IMPORTANT LEGAL OBLIGATIONS. MANY RIGHTS AND RESPONSIBILITIES OF THE PARTIES ARE GOVERNED BY CHAPTER 83, PART II, RESIDENTIAL LANDLORD AND TENANT ACT, FLORIDA STATUTES. A COPY OF THE RESIDENTIAL LANDLORD AND TENANT ACT IS ATTACHED TO THIS LEASE.

**1. PARTIES.** This is a lease (the "Lease") between Sivan Lam
_____
(name and address of the owner of the property)

4205 Pine Island Rd, Matlacha, Fl 33993 _____ ("Landlord") and

Karl M. Friedheim _____
(name(s) of person(s) to whom the property is leased)
_____ ("Tenant").

Landlord's E-mail Address:      4689pineislandparadise@gmail.com

Landlord's Telephone Number:  239-219-2513

Tenant's E-mail Address:        Karlmfriedheim@gmail.com

Tenant's Telephone Number:   410-660-7785

KMF  9:35 AM EDT  dotloop verified
SL  09/02/22  7:20 PM EDT  dotloop verified

**2. PROPERTY RENTED.** Landlord leases to Tenant the land and buildings located at ~~3924 Plumosa Dr.~~  4205 Pine Island Rd.
(street address)

~~St James City~~    Matlacha _____    33993 _____, Florida ~~33956~~
(zip code)

together with the following furniture and appliances [List all furniture and appliances. If none, write "none."] (In the Lease, the property leased, including furniture and appliances, if any, is called the "Premises"):

Fully furnished studio unit

The Premises shall be occupied only by the Tenant and the following persons: _____
_____

**3. TERM.** This is a lease for a term, not to exceed twelve months, beginning on ~~08/01/2022~~  Aug 15, 2022  and
(month, day, year)
ending ~~07/31/2023~~  Aug 31, 2023  (the "Lease Term").
(month, day, year)

KMF  09/08/22  9:35 AM EDT  dotloop verified
SL  09/02/22  7:20 PM EDT  dotloop verified

**4. RENT PAYMENTS, TAXES AND CHARGES.** Tenant shall pay total rent in the amount of $1500.00 _____ (excluding taxes) for the Lease Term. The rent shall be payable by Tenant in advance in installments or in full as provided in the options below:

☐ in installments. If in installments, rent shall be payable

☑ monthly, on the 1st _____ day of each month (if left blank, on the first day of each month) in the amount of

$1500.00 _____ per installment.

OR

☐ weekly, on the _____ day of each week (If left blank, on Monday of each week.) in the amount of $ _____
per installment.

☐ in full on _____ in the amount of $ _____
(date)

**Tenant [ KMF ] [ ____ ] and Landlord [ ____ ] [ SL ] acknowledge receipt of a copy of this page which is Page 1 of 18**
RLHD-3x    Rev 7/18    Approved on April 15, 2010, by the Supreme Court of Florida, for use under rule 10-2.1(a) of the Rules Regulating the Florida Bar.

Tenant shall also be obligated to pay taxes on the rent when applicable in the amount of $ _____ ☐ with each rent installment ☐ with the rent for the full term of the Lease. Landlord will notify Tenant if the amount of the tax changes.

**Payment Summary**

☑ **If rent is paid in installments, the total payment per installment including taxes shall be in the amount of $**1500.00__ .

☑ **If rent is paid in full, the total payment including taxes shall be in the amount of $**18,000__ .

All rent payments shall be payable to Sivan Lam _____ at

74 Alicia Rd, Dorchester, MA 02124 _____ . (If left blank, to Landlord at Landlord's address.)
(name)
(address)

☐ If the tenancy starts on a day other than the first day of the month or week as designated above, the rent shall be prorated from

_____Aug 15, 2022_____  through  ____Aug 31, 2022____  in the amount of $ _750.00__ and shall be due
(date)                              (date)

on  ____Aug 15, 2022____ .  (If rent paid monthly, prorate on a 30-day month.)
(date)

Tenant shall make rent payments required under the Lease by (choose all applicable) ☑ cash, ☐ personal check, ☑ money order, ☑ cashier's check, or ☑ other zelle or venmo to Sivan Lam's phone number (specify). If payment is accepted by any means other than cash, payment is not considered made until the other instrument is collected.

If Tenant makes a rent payment with a worthless check, Landlord can require Tenant ☑ to pay all future payments by ☑ money order, cashier's check, or official bank check or ☑ cash or other (specify) _____ and ☑ to pay bad check fees in the amount of $25.00 (not to exceed the amount prescribed by Section 68.065, Florida Statutes).

$750 + 1500 = $2300 / Received

**5. MONEY DUE PRIOR TO OCCUPANCY.** Tenant shall pay the sum of $ _____ in accordance with this paragraph prior to occupying the Premises. Tenant shall not be entitled to move in or to keys to the Premises until all money due prior to occupancy has been paid. If no date is specified below, then funds shall be due prior to Tenant occupancy. Any funds designated in this paragraph due after occupancy, shall be paid accordingly. Any funds due under this paragraph shall be payable to Landlord at Landlord's address or

to Sivan Lam _____
(name)

at 74 Alicia Rd, Dorchester, MA 02124 _____
(address)

First ☑ month's ☐ week's rent plus applicable taxes  $~~1500.00~~  due  ~~08/01/2022~~  Aug 15, 2022

Prorated rent plus applicable taxes  $ _750.00__  due _____

Advance rent for ☐ month ☐ week of

_____ plus applicable taxes  $ _____  due _____

Last ☐ month's ☐ week's rent plus applicable taxes  $ _____  due _____

Security deposit  $1500.00  due  ~~08/01/2022~~  Aug 15, 2022

Additional security deposit  $ _____  due _____

Security deposit for homeowners' association  $ _____  due _____

Pet Deposit  $ _____  due _____

Other _____  $ _____  due _____

Other _____  $ _____  due _____

Tenant [ KMF ] and Landlord [ SL ] acknowledge receipt of a copy of this page which is Page 2 of 18

RLHD-3x    Rev 7/18    Approved on April 15, 2010, by the Supreme Court of Florida, for use under rule 10-2.1(a) of the Rules Regulating the Florida Bar.

**6. LATE FEES.** (Complete if applicable)  In addition to rent, Tenant shall pay a late charge in the amount of $_____ (If left blank, 4% of the rent payment) for each rent payment made _____ days after the day it is due (if left blank, 5 days if rent is paid monthly, 1 day if rent is paid weekly).

**7. PETS AND SMOKING.** Unless this box ☐ is checked or a pet deposit is paid, Tenant may not keep pets or animals on the Premises.  If Tenant may keep pets, the pets described in this paragraph are permitted on the Premises.

_____

(Specify number of pets, type(s), breed, maximum adult weight of pets.)

Unless this box ☐ is checked, no smoking is permitted in the Premises.

**8. NOTICES.**

Phuong (Cindi) Hoang _____  is  Landlord's  Agent.  All  notices  must  be  sent  to

☑ Landlord Sivan Lam _____  at 74 Alicia Rd, Dorchester, MA 02124 _____

☐ Landlord's Agent _____  at _____

unless Landlord gives Tenant written notice of a change. All notices of such names and addresses or changes thereto shall be delivered to the Tenant's residence or, if specified in writing by the Tenant, to any other address. All notices to the Landlord or the Landlord's Agent (whichever is specified above) shall be given by U.S. mail or by hand delivery.

Any notice to Tenant shall be given by U.S. mail or delivered to Tenant at the Premises. If Tenant is absent from the Premises, a notice to Tenant may be given by leaving a copy of the notice at Premises.

**9. UTILITIES.**  Tenant shall pay for all utilities services during the Lease Term and connection charges and deposits for activating existing utility connections to the Premises except for _____, that Landlord agrees to provide at Landlord's expense (If blank, then "NONE").

**10. MAINTENANCE.**  Landlord shall be responsible for compliance with Section 83.51, Florida Statutes, and shall be responsible for maintenance and repair of the Premises, unless otherwise stated below:  (Fill in each blank space with "Landlord" for Landlord or "Tenant" for Tenant, if left blank, Landlord will be responsible for the item):

| Landlord/Tenant | | | Landlord/Tenant | | | Landlord/Tenant | | | Landlord/Tenant | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| ☑ | ☐ | roofs | ☑ | ☐ | windows | ☑ | ☐ | screens | ☑ | ☐ | steps |
| ☑ | ☐ | doors | ☑ | ☐ | floors | ☑ | ☐ | porches | ☑ | ☐ | exterior walls |
| ☑ | ☐ | foundations | ☑ | ☐ | plumbing | ☑ | ☐ | structural components | | | |
| ☑ | ☐ | heating | ☑ | ☐ | hot water | ☑ | ☐ | running water | ☑ | ☐ | locks and keys |
| ☑ | ☐ | electrical system | | | | ☑ | ☐ | cooling | ☑ | ☐ | smoke detection devices |

| | | |
|---|---|---|
| ☑ ☐ | garbage removal/ outside receptacles | |
| ☑ ☐ | extermination of rats, mice, roaches, ants and bedbugs | |
| ☑ ☐ | extermination of wood-destroying organisms | |
| ☑ ☐ | lawn /shrubbery | ☐ ☐ pool/spa/hot tub |
| ☑ ☐ | water treatment | ☐ ☐ filters (specify) |
| ☑ ☐ | ceilings | ☐ ☐ interior walls |
| ☐ ☐ | Other (specify) | |

*KMF* 09/08/22 9:35 AM EDT dotloop verified    *SL* 09/02/22 7:20 PM EDT dotloop verified

Tenant shall notify Phuong (Cindi) Hoang _____  at 119 SE 1St Pl,  Cape Coral, FL 33990 _____
                    (name)                                              (address)

(if left blank, Landlord at Landlord's address) and 239-203-8702 _____ of maintenance and repair requests.
                                                  (telephone number)

**11. ASSIGNMENT.** Unless this box ☐ is checked, Tenant may not assign the Lease or sublease all or any part of the Premises without first obtaining the Landlord's written approval and consent to the assignment or sublease.

**12. KEYS AND LOCKS.**  Landlord shall furnish Tenant

1 set _____  # of sets of keys to the dwelling
_____  # of mail box keys
_____  # of garage door openers

**Tenant** [  *KMF* 08/17/22 dotloop verified ] **and Landlord** [  *SL* 08/17/22 dotloop verified ] **acknowledge receipt of a copy of this page which is Page 3 of 18**
RLHD-3x    Rev. 7/16    Approved on April 15, 2011 by the Supreme Court of Florida, for use under rule 10-2.1(a) of the Rules Regulating the Florida Bar.

If there is a  homeowners' association,  Tenant will be provided with the  following to  access  the  association's common  areas/facilities:

_____ # of keys to _____
_____ # of remote controls to _____
_____ # of  electronic cards to _____
_____ other (specify) to _____

At end of Lease Term, all items specified in this paragraph shall be returned to Sivan Lam or Phuong (Cindi) Hoang
_____
                                                                                              (name)
at 119 SE 1st Pl, Cape Coral, FL 33990 _____ (If left blank, Landlord at Landlord's address).
                          (address)

**13.  LEAD-BASED PAINT.** ☐ Check and complete if the dwelling was built before January 1, 1978.  **Lead Warning Statement** (when used in this article, the term Lessor refers to Landlord and the term Lessee refers to Tenant).

Housing built before 1978 may contain lead-based paint. Lead from paint, paint chips, and dust can pose health hazards if not managed properly. Lead exposure is especially harmful to young children and pregnant women. Before renting pre-1978 housing, Lessors must disclose the presence of known lead-based paint and/or lead-based paint hazards in the dwelling. Lessees must also receive a federally approved pamphlet on lead poisoning prevention.

**Lessor's Disclosure (initial)**

_____ (a) Presence of lead-based paint or lead-based paint hazards (check (i) or (ii) below):

             (i)  ☐   Known lead-based paint and/or lead-based paint hazards are present in the housing (explain).

N/A- panels & new drywall with paint (2022),  No lead based paint

             (ii) ☑   Lessor has no knowledge of lead-based paint and/or lead-based paint hazards in the housing.

_____ (b) Records  and reports available to the Lessor (check (i) or (ii) below):

             (i)  ☐   Lessor has provided the Lessee with all available records and reports pertaining to lead-based paint and/or lead-based paint hazards in the housing (list documents below).

             (ii) ☑   Lessor has  no reports  or records  pertaining to lead-based  paint and/or  lead-based  paint hazards  in the housing.

**Lessee's Acknowledgment (initial)**

_____ (c) Lessee has received copies of all information listed above.
_____ (d) Lessee has received the pamphlet *Protect Your Family From Lead in Your Home*.

**Agent's Acknowledgment (initial)**

_CW___ (e) Agent has informed the Lessor of the Lessor's obligations under 42 U.S.C.  4852d and  is aware of  his/her  responsibility to ensure compliance.

**Certification of Accuracy**
The following parties have reviewed the information above and certify, to the best of their knowledge, that the information provided by the signatory is true and accurate.

| Sivan Lam  dotloop verified 08/17/22 9:17 AM EDT XOYG-HIIGP-GBYM-GP1G | 08/15/2022 | | |
|---|---|---|---|
| Lessor's signature | Date | Lessor's signature | Date |
| Karl M Friedheim  dotloop verified 08/17/22 9:52 AM EDT IFTB-6QVO-KIMW-LJEL | 08/15/2022 | | |
| Lessee's signature | Date | Lessee's signature | Date |
| Phuong (Cindi) Hoang  dotloop verified 07/11/22 12:20 PM EDT HRWE-FBBA-T2KH-HICH | | | |
| Agent's signature | Date | Agent's signature | Date |

**14.  SERVICEMEMBER.** If Tenant is a member of the United States Armed Forces on active duty or state active duty or a member of the Florida National Guard or United States Reserve Forces, the Tenant has rights to terminate the Lease as provided in Section 83.682, Florida Statutes, the provisions of which can be found in the attachment to this Lease.

Tenant _KMF_ and Landlord _SL_ acknowledge receipt of a copy of this page which is Page 4 of 18
RLHD-3x    Rev. 7/18    Approved on April 15, 2011 by the Supreme Court of Florida, for use under rule 10-2.1(a) of the Rules Regulating the Florida Bar.

**15. LANDLORD'S ACCESS TO THE PREMISES.** Landlord's Agent may enter the Premises in the following circumstances:

A. At any time for the protection or preservation of the Premises.

B. After reasonable notice to Tenant at reasonable times for the purpose of repairing the Premises.

C. To inspect the Premises; make necessary or agreed-upon repairs, decorations, alterations, or improvements; supply agreed services; or exhibit the Premises to prospective or actual purchasers, mortgagees, tenants, workers, or contractors under any of the following circumstances:

(1) with Tenant's consent;

(2) in case of emergency;

(3) when Tenant unreasonably withholds consent; or

(4) if Tenant is absent from the Premises for a period of at least one-half a rental installment period. (If the rent is current and Tenant notifies Landlord of an intended absence, then Landlord may enter only with Tenant's consent or for the protection or preservation of the Premises.)

**16. HOMEOWNERS' ASSOCIATION. IF TENANT MUST BE APPROVED BY A HOMEOWNERS' ASSOCIATION ("ASSOCIATION"), LANDLORD AND TENANT AGREE THAT THE LEASE IS CONTINGENT UPON RECEIVING APPROVAL FROM THE ASSOCIATION. ANY APPLICATION FEE REQUIRED BY AN ASSOCIATION SHALL BE PAID BY ☐ LANDLORD ☐ TENANT. IF SUCH APPROVAL IS NOT OBTAINED PRIOR TO COMMENCEMENT OF LEASE TERM, EITHER PARTY MAY TERMINATE THE LEASE BY WRITTEN NOTICE TO THE OTHER GIVEN AT ANY TIME PRIOR TO APPROVAL BY THE ASSOCIATION, AND IF THE LEASE IS TERMINATED, TENANT SHALL RECEIVE RETURN OF DEPOSITS SPECIFIED IN ARTICLE 5, IF MADE.** If the Lease is not terminated, rent shall abate until the approval is obtained from the association. Tenant agrees to use due diligence in applying for association approval and to comply with the requirements for obtaining approval. ☐ Landlord ☐ Tenant shall pay the security deposit required by the association, if applicable.

**17. USE OF THE PREMISES.** Tenant shall use the Premises for residential purposes. Tenant shall have exclusive use and right of possession to the dwelling. The Premises shall be used so as to comply with all state, county, municipal laws and ordinances, and all covenants and restrictions affecting the Premises and all rules and regulations of homeowners' associations affecting the Premises. Tenant may not paint or make any alterations or improvements to the Premises without first obtaining the Landlord's written consent to the alteration or improvement. However, unless this box ☐ is checked, Tenant may hang pictures and install window treatments in the Premises without Landlord's consent, provided Tenant removes all such items before the end of the Lease Term and repairs all damage resulting from the removal. Any improvements or alterations to the Premises made by the Tenant shall become Landlord's property. Tenant agrees not to use, keep, or store on the Premises any dangerous, explosive, toxic material which would increase the probability of fire or which would increase the cost of insuring the Premises.

**18. RISK OF LOSS/INSURANCE.**

A. Landlord and Tenant shall each be responsible for loss, damage, or injury caused by its own negligence or willful conduct.

B. Tenant should carry insurance covering Tenant's personal property and Tenant's liability insurance.

**19. PROHIBITED ACTS BY LANDLORD.** Landlord is prohibited from taking certain actions as described in Section 83.67, Florida Statutes, the provisions of which can be found in the attachment to this Lease.

**20. CASUALTY DAMAGE.** If the Premises are damaged or destroyed other than by wrongful or negligent acts of Tenant or persons on the Premises with Tenant's consent, so that the use of the Premises is substantially impaired, Tenant may terminate the Lease within 30 days after the damage or destruction and Tenant will immediately vacate the Premises. If Tenant vacates, Tenant is not liable for rent that would have been due after the date of termination. Tenant may vacate the part of the Premises rendered unusable by the damage or destruction, in which case Tenant's liability for rent shall be reduced by the fair rental value of the part of the Premises that was damaged or destroyed.

**21. DEFAULTS/REMEDIES.** Should a party to the Lease fail to fulfill their responsibilities under the Lease or need to determine whether there has been a default of the Lease, refer to Part II, Chapter 83, entitled Florida Residential Landlord and Tenant Act which contains information on defaults and remedies. A copy of the current version of this Act is attached to the Lease.

**22. SUBORDINATION.** The Lease is automatically subordinate to the lien of any mortgage encumbering the fee title to the Premises from time to time.

**23. LIENS. THE INTEREST OF THE LANDLORD SHALL NOT BE SUBJECT TO LIENS FOR IMPROVEMENTS MADE BY THE TENANT AS PROVIDED IN SECTION 713.10, FLORIDA STATUTES.** Tenant shall notify all parties performing work on the Premises at Tenant's request that the Lease does not allow any liens to attach to Landlord's interest.

**24. RENEWAL/EXTENSION.** The Lease can be renewed or extended only by a written agreement signed by both Landlord and Tenant, but the term of a renewal or extension together with the original Lease Term may not exceed one year. A new lease is required for each year.

**25. TENANT'S TELEPHONE NUMBER.** Tenant shall, within 5 business days of obtaining telephone services at the Premises, send written notice to Landlord of Tenant's telephone numbers at the Premises.

**26. ATTORNEYS' FEES.** In any lawsuit brought to enforce the Lease or under applicable law, the party in whose favor a judgment or decree has been rendered may recover reasonable court costs, including attorneys' fees, from the non-prevailing party.

Tenant [ ___KMF___ ] and Landlord [ ___SL___ ] acknowledge receipt of a copy of this page which is Page 5 of 18
RLHD-3x    Rev 7/16    Approved on April 15, 2010 by the Supreme Court of Florida, for use under rule 10-2.1(a) of the Rules Regulating the Florida Bar.

**27. MISCELLANEOUS.**
   A.  Time is of the essence of the performance of each party's obligations under the Lease.
   B.  The Lease shall be binding upon and for the benefit of the heirs, personal representatives, successors, and permitted assigns of Landlord and Tenant, subject to the requirements specifically mentioned in the Lease.  Whenever used, the singular number shall include the plural or singular and the use of any gender shall include all appropriate genders.
   C.  The agreements contained in the Lease set forth the complete understanding of the parties and may not be changed or terminated orally.
   D.  No agreement to accept surrender of the Premises from Tenant will be valid unless in writing and signed by Landlord.
   E.  All questions concerning the meaning, execution, construction, effect, validity, and enforcement of the Lease shall be determined pursuant to the laws of Florida.
   F.  A facsimile copy of the Lease and any signatures hereon shall be considered for all purposes originals.
   G.  As required by law, Landlord makes the following disclosure: "RADON GAS." Radon is a naturally occurring radioactive gas that, when it has accumulated in a building in sufficient quantities, may present health risks to persons who are exposed to it over time. Levels of radon that exceed federal and state guidelines have been found in buildings in Florida. Additional information regarding radon and radon testing may be obtained from your county health department.

**28. BROKERS' COMMISSION.** ☐ Check and complete if applicable. The brokerage companies named below will be paid the commission set forth in this paragraph by ☐ Landlord ☐ Tenant for procuring a tenant for this transaction.

_____          _____
Real Estate Licensee                                  Real Estate Licensee

_____          _____
Real Estate Brokerage Company                   Real Estate Brokerage Company

_____          _____
Commission                                              Commission

**29. TENANT'S PERSONAL PROPERTY.** TENANT MUST INITIAL IN THIS BOX ☐ FOR THE FOLLOWING PROVISION TO APPLY.  BY SIGNING THIS RENTAL AGREEMENT, THE TENANT AGREES THAT UPON SURRENDER, ABANDONMENT, OR RECOVERY OF POSSESSION OF THE DWELLING UNIT DUE TO THE DEATH OF THE LAST REMAINING TENANT, AS PROVIDED BY CHAPTER 83, FLORIDA STATUTES, THE LANDLORD SHALL NOT BE LIABLE OR RESPONSIBLE FOR STORAGE OR DISPOSITION OF THE TENANT'S PERSONAL PROPERTY.

The Lease has been executed by the parties on the dates indicated below.

_____          _____
Landlord's Signature                                    Date

*Sivan Lam*                                                   _____
Landlord's Signature                                    Date

_____          _____
Landlord's Signature                                    Date

*Karl M Friedheim*                                        08/15/2022
Tenant's Signature                                       Date

_____          _____
Tenant's Signature                                       Date

This form was completed with the assistance of:

Name of Individual:   Phuong (Cindi) Hoang
Name of Business:
Address:
Telephone Number:   239-203-8702

Tenant [____] and Landlord [____] acknowledge receipt of a copy of this page which is Page 6 of 18
RLHD-3x    Rev 7/2010    Approved on April 15, 2011 by the Supreme Court of Florida, for use under rule 10-2.1(a) of the Rules Regulating the Florida Bar.

## Early Termination Fee/Liquidated Damages Addendum

☑ I agree, as provided in the rental agreement, to pay $ _____ (an amount that does not exceed two months' rent) as liquidated damages or an early termination fee if I elect to terminate the rental agreement and the landlord waives the right to seek additional rent beyond the month in which the landlord retakes possession.

> Reasonable notice- 30 days to landlord- no termination fee if adequate notice provided

☐ I do not agree to liquidated damages or an early termination fee, and I acknowledge that the landlord may seek damages as provided by law.

*Sivan Lam*

dotloop verified
07/11/22 11:26 AM EDT
MYNU-SG6Q-ZIPA-KHDT

Landlord's Signature                                    Date

Landlord's Signature                                    Date

Landlord's Signature                                    Date

*Karl M Friedheim*

dotloop verified
08/17/22 9:52 AM EDT
SOM8-GXZS-Y0WN-1SEB

08/15/2022

Tenant's Signature                                     Date

Tenant's Signature                                     Date

**Tenant** [ KMF ] **and Landlord** [ SL ] **acknowledge receipt of a copy of this page which is Page 7 of 18**

RLHD-3x    Rev. 7/18    Approved on April 15, 2016 by the Supreme Court of Florida, for use under rule 10-2.1(a) of the Rules Regulating the Florida Bar.

Florida Residential Landlord and Tenant Act

## PART II

## RESIDENTIAL TENANCIES

83.40    Short title.
83.41    Application.
83.42    Exclusions from application of part.
83.43    Definitions.
83.44    Obligation of good faith.
83.45    Unconscionable rental agreement or provision.
83.46    Rent; duration of tenancies.
83.47    Prohibited provisions in rental agreements.
83.48    Attorney fees.
83.49    Deposit money or advance rent; duty of landlord and tenant.
83.50    Disclosure of landlord's address.
83.51    Landlord's obligation to maintain premises.
83.52    Tenant's obligation to maintain dwelling unit.
83.53    Landlord's access to dwelling unit.
83.535   Flotation bedding system; restrictions on use.
83.54    Enforcement of rights and duties; civil action; criminal offenses.
83.55    Right of action for damages.
83.56    Termination of rental agreement.
83.561   Termination of rental agreement upon foreclosure.
83.57    Termination of tenancy without specific term.
83.575   Termination of tenancy with specific duration.
83.58    Remedies; tenant holding over.
83.59    Right of action for possession.
83.595   Choice of remedies upon breach or early termination by tenant.
83.60    Defenses to action for rent or possession; procedure.
83.61    Disbursement of funds in registry of court; prompt final hearing.
83.62    Restoration of possession to landlord.
83.625   Power to award possession and enter money judgment.
83.63    Casualty damage.
83.64    Retaliatory conduct.
83.67    Prohibited practices.
83.681   Orders to enjoin violations of this part.
83.682   Termination of rental agreement by a servicemember.
83.683   Rental application by a servicemember

**83.40 Short title.**—This part shall be known as the "Florida Residential Landlord and Tenant Act."
**History.**—s. 2, ch. 73-330.

**83.41 Application.**—This part applies to the rental of a dwelling unit.
**History.**—s. 2, ch. 73-330; ss. 2, 20, ch. 82-66.

**83.42 Exclusions from application of part.**—This part does not apply to:
(1) Residency or detention in a facility, whether public or private, when residence or detention is incidental to the provision of medical, geriatric, educational, counseling, religious, or similar services. For residents of a facility licensed under part II of chapter 400, the provisions of s. 400.0255 are the exclusive procedures for all transfers and discharges.
(2) Occupancy under a contract of sale of a dwelling unit or the property of which it is a part in which the buyer has paid at least 12 months' rent or in which the buyer has paid at least 1 month's rent and a deposit of at least 5 percent of the purchase price of the property.
(3) Transient occupancy in a hotel, condominium, motel, roominghouse, or similar public lodging, or transient occupancy in a mobile home park.
(4) Occupancy by a holder of a proprietary lease in a cooperative apartment.
(5) Occupancy by an owner of a condominium unit.
**History.**—s. 2, ch. 73-330; s. 40, ch. 2012-160; s. 1, ch. 2013-136.

**83.43 Definitions.**—As used in this part, the following words and terms shall have the following meanings unless some other meaning is plainly indicated:
(1) "Building, housing, and health codes" means any law, ordinance, or governmental regulation concerning health, safety, sanitation or fitness for habitation, or the construction, maintenance, operation, occupancy, use, or appearance, of any dwelling unit.
(2) "Dwelling unit" means:
(a) A structure or part of a structure that is rented for use as a home, residence, or sleeping place by one person or by two or more persons who maintain a common household.
(b) A mobile home rented by a tenant.
(c) A structure or part of a structure that is furnished, with or without rent, as an incident of employment for use as a home, residence, or sleeping place by one or more persons.
(3) "Landlord" means the owner or lessor of a dwelling unit.
(4) "Tenant" means any person entitled to occupy a dwelling unit under a rental agreement.



Tenant [ ]    nd Landlord [ ]    cknowledge receipt of a copy of this page which is Page 8 of 18

(5) "Premises" means a dwelling unit and the structure of which it is a part and a mobile home lot and the appurtenant facilities and grounds, areas, facilities, and property held out for the use of tenants generally.

(6) "Rent" means the periodic payments due the landlord from the tenant for occupancy under a rental agreement and any other payments due the landlord from the tenant as may be designated as rent in a written rental agreement.

(7) "Rental agreement" means any written agreement, including amendments or addenda, or oral agreement for a duration of less than 1 year, providing for use and occupancy of premises.

(8) "Good faith" means honesty in fact in the conduct or transaction concerned.

(9) "Advance rent" means moneys paid to the landlord to be applied to future rent payment periods, but does not include rent paid in advance for a current rent payment period.

(10) "Transient occupancy" means occupancy when it is the intention of the parties that the occupancy will be temporary.

(11) "Deposit money" means any money held by the landlord on behalf of the tenant, including, but not limited to, damage deposits, security deposits, advance rent deposit, pet deposit, or any contractual deposit agreed to between landlord and tenant either in writing or orally.

(12) "Security deposits" means any moneys held by the landlord as security for the performance of the rental agreement, including, but not limited to, monetary damage to the landlord caused by the tenant's breach of lease prior to the expiration thereof.

(13) "Legal holiday" means holidays observed by the clerk of the court.

(14) "Servicemember" shall have the same meaning as provided in s. 250.01.

(15) "Active duty" shall have the same meaning as provided in s. 250.01.

(16) "State active duty" shall have the same meaning as provided in s. 250.01.

(17) "Early termination fee" means any charge, fee, or forfeiture that is provided for in a written rental agreement and is assessed to a tenant when a tenant elects to terminate the rental agreement, as provided in the agreement, and vacates a dwelling unit before the end of the rental agreement. An early termination fee does not include:

(a) Unpaid rent and other accrued charges through the end of the month in which the landlord retakes possession of the dwelling unit.

(b) Charges for damages to the dwelling unit.

(c) Charges associated with a rental agreement settlement, release, buyout, or accord and satisfaction agreement.

**History.**—s. 2, ch. 73-330; s. 1, ch. 74-143; s. 1, ch. 81-190; s. 3, ch. 83-151; s. 17, ch. 94-170; s. 2, ch. 2003-72; s. 1, ch. 2008-131.

**83.44 Obligation of good faith.**—Every rental agreement or duty within this part imposes an obligation of good faith in its performance or enforcement.

**History.**—s. 2, ch. 73-330.

**83.45 Unconscionable rental agreement or provision.**—

(1) If the court as a matter of law finds a rental agreement or any provision of a rental agreement to have been unconscionable at the time it was made, the court may refuse to enforce the rental agreement, enforce the remainder of the rental agreement without the unconscionable provision, or so limit the application of any unconscionable provision as to avoid any unconscionable result.

(2) When it is claimed or appears to the court that the rental agreement or any provision thereof may be unconscionable, the parties shall be afforded a reasonable opportunity to present evidence as to meaning, relationship of the parties, purpose, and effect to aid the court in making the determination.

**History.**—s. 2, ch. 73-330.

**83.46 Rent; duration of tenancies.**—

(1) Unless otherwise agreed, rent is payable without demand or notice; periodic rent is payable at the beginning of each rent payment period; and rent is uniformly apportionable from day to day.

(2) If the rental agreement contains no provision as to duration of the tenancy, the duration is determined by the periods for which the rent is payable. If the rent is payable weekly, then the tenancy is from week to week; if payable monthly, tenancy is from month to month; if payable quarterly, tenancy is from quarter to quarter; if payable yearly, tenancy is from year to year.

(3) If the dwelling unit is furnished without rent as an incident of employment and there is no agreement as to the duration of the tenancy, the duration is determined by the periods for which wages are payable. If wages are payable weekly or more frequently, then the tenancy is from week to week; and if wages are payable monthly or no wages are payable, then the tenancy is from month to month. In the event that the employee ceases employment, the employer shall be entitled to rent for the period from the day after the employee ceases employment until the day that the dwelling unit is vacated at a rate equivalent to the rate charged for similarly situated residences in the area. This subsection shall not apply to an employee or a resident manager of an apartment house or an apartment complex when there is a written agreement to the contrary.

**History.**—s. 2, ch. 73-330; s. 2, ch. 81-190; s. 2, ch. 87-195; s. 2, ch. 90-133; s. 1, ch. 93-255.

**83.47 Prohibited provisions in rental agreements.**—

(1) A provision in a rental agreement is void and unenforceable to the extent that it:

(a) Purports to waive or preclude the rights, remedies, or requirements set forth in this part.

(b) Purports to limit or preclude any liability of the landlord to the tenant or of the tenant to the landlord, arising under law.

(2) If such a void and unenforceable provision is included in a rental agreement entered into, extended, or renewed after the effective date of this part and either party suffers actual damages as a result of the inclusion, the aggrieved party may recover those damages sustained after the effective date of this part.

**History.**—s. 2, ch. 73-330.

**83.48 Attorney fees.**—In any civil action brought to enforce the provisions of the rental agreement or this part, the party in whose favor a judgment or decree has been rendered may recover reasonable attorney fees and court costs from the nonprevailing party. The right to attorney fees in this section may not be waived in a lease agreement. However, attorney fees may not be awarded under this section in a claim for personal injury damages based on a breach of duty under s. 83.51.

**History.**—s. 2, ch. 73-330; ch. 4, ch. 83-151; s. 2, ch. 2013-136.

**83.49 Deposit money or advance rent; duty of landlord and tenant.**—



Tenant _____ and Landlord _____ acknowledge receipt of a copy of this page which is Page 9 of 18

(1) Whenever money is deposited or advanced by a tenant on a rental agreement as security for performance of the rental agreement or as advance rent for other than the next immediate rental period, the landlord or the landlord's agent shall either:

(a) Hold the total amount of such money in a separate non-interest-bearing account in a Florida banking institution for the benefit of the tenant or tenants. The landlord shall not commingle such moneys with any other funds of the landlord or hypothecate, pledge, or in any other way make use of such moneys until such moneys are actually due the landlord;

(b) Hold the total amount of such money in a separate interest-bearing account in a Florida banking institution for the benefit of the tenant or tenants, in which case the tenant shall receive and collect interest in an amount of at least 75 percent of the annualized average interest rate payable on such account or interest at the rate of 5 percent per year, simple interest, whichever the landlord elects. The landlord shall not commingle such moneys with any other funds of the landlord or hypothecate, pledge, or in any other way make use of such moneys until such moneys are actually due the landlord; or

(c) Post a surety bond, executed by the landlord as principal and a surety company authorized and licensed to do business in the state as surety, with the clerk of the circuit court in the county in which the dwelling unit is located in the total amount of the security deposits and advance rent he or she holds on behalf of the tenants or $50,000, whichever is less. The bond shall be conditioned upon the faithful compliance of the landlord with the provisions of this section and shall run to the Governor for the benefit of any tenant injured by the landlord's violation of the provisions of this section. In addition to posting the surety bond, the landlord shall pay to the tenant interest at the rate of 5 percent per year, simple interest. A landlord, or the landlord's agent, engaged in the renting of dwelling units in five or more counties, who holds deposit moneys or advance rent and who is otherwise subject to the provisions of this section, may, in lieu of posting a surety bond in each county, elect to post a surety bond in the form and manner provided in this paragraph with the office of the Secretary of State. The bond shall be in the total amount of the security deposit or advance rent held on behalf of tenants or in the amount of $250,000, whichever is less. The bond shall be conditioned upon the faithful compliance of the landlord with the provisions of this section and shall run to the Governor for the benefit of any tenant injured by the landlord's violation of this section. In addition to posting a surety bond, the landlord shall pay to the tenant interest on the security deposit or advance rent held on behalf of that tenant at the rate of 5 percent per year simple interest.

(2) The landlord shall, in the lease agreement or within 30 days after receipt of advance rent or a security deposit, give written notice to the tenant which includes disclosure of the advance rent or security deposit. Subsequent to providing such written notice, if the landlord changes the manner or location in which he or she is holding the advance rent or security deposit, he or she must notify the tenant within 30 days after the change as provided in paragraphs (a)-(d). The landlord is not required to give new or additional notice solely because the depository has merged with another financial institution, changed its name, or transferred ownership to a different financial institution. This subsection does not apply to any landlord who rents fewer than five individual dwelling units. Failure to give this notice is not a defense to the payment of rent when due. The written notice must:

(a) Be given in person or by mail to the tenant.

(b) State the name and address of the depository where the advance rent or security deposit is being held or state that the landlord has posted a surety bond as provided by law.

(c) State whether the tenant is entitled to interest on the deposit.

(d) Contain the following disclosure:

YOUR LEASE REQUIRES PAYMENT OF CERTAIN DEPOSITS. THE LANDLORD MAY TRANSFER ADVANCE RENTS TO THE LANDLORD'S ACCOUNT AS THEY ARE DUE AND WITHOUT NOTICE. WHEN YOU MOVE OUT, YOU MUST GIVE THE LANDLORD YOUR NEW ADDRESS SO THAT THE LANDLORD CAN SEND YOU NOTICES REGARDING YOUR DEPOSIT. THE LANDLORD MUST MAIL YOU NOTICE, WITHIN 30 DAYS AFTER YOU MOVE OUT, OF THE LANDLORD'S INTENT TO IMPOSE A CLAIM AGAINST THE DEPOSIT. IF YOU DO NOT REPLY TO THE LANDLORD STATING YOUR OBJECTION TO THE CLAIM WITHIN 15 DAYS AFTER RECEIPT OF THE LANDLORD'S NOTICE, THE LANDLORD WILL COLLECT THE CLAIM AND MUST MAIL YOU THE REMAINING DEPOSIT, IF ANY.

IF THE LANDLORD FAILS TO TIMELY MAIL YOU NOTICE, THE LANDLORD MUST RETURN THE DEPOSIT BUT MAY LATER FILE A LAWSUIT AGAINST YOU FOR DAMAGES. IF YOU FAIL TO TIMELY OBJECT TO A CLAIM, THE LANDLORD MAY COLLECT FROM THE DEPOSIT, BUT YOU MAY LATER FILE A LAWSUIT CLAIMING A REFUND.

YOU SHOULD ATTEMPT TO INFORMALLY RESOLVE ANY DISPUTE BEFORE FILING A LAWSUIT. GENERALLY, THE PARTY IN WHOSE FAVOR A JUDGMENT IS RENDERED WILL BE AWARDED COSTS AND ATTORNEY FEES PAYABLE BY THE LOSING PARTY.

THIS DISCLOSURE IS BASIC. PLEASE REFER TO PART II OF CHAPTER 83, FLORIDA STATUTES, TO DETERMINE YOUR LEGAL RIGHTS AND OBLIGATIONS.

(3) The landlord or the landlord's agent may disburse advance rents from the deposit account to the landlord's benefit when the advance rental period commences and without notice to the tenant. For all other deposits:

(a) Upon the vacating of the premises for termination of the lease, if the landlord does not intend to impose a claim on the security deposit, the landlord shall have 15 days to return the security deposit together with interest if otherwise required, or the landlord shall have 30 days to give the tenant written notice by certified mail to the tenant's last known mailing address of his or her intention to impose a claim on the deposit and the reason for imposing the claim. The notice shall contain a statement in substantially the following form:

This is a notice of my intention to impose a claim for damages in the amount of _____ upon your security deposit, due to _____. It is sent to you as required by s. 83.49(3), Florida Statutes. You are hereby notified that you must object in writing to this deduction from your security deposit within 15 days from the time you receive this notice or I will be authorized to deduct my claim from your security deposit. Your objection must be sent to   (landlord's address)  .

Tenant [ KMF ] nd Landlord [ SL ] cknowledge receipt of a copy of this page which is Page 10 of 18

If the landlord fails to give the required notice within the 30-day period, he or she forfeits the right to impose a claim upon the security deposit and may not seek a setoff against the deposit but may file an action for damages after return of the deposit.

(b) Unless the tenant objects to the imposition of the landlord's claim or the amount thereof within 15 days after receipt of the landlord's notice of intention to impose a claim, the landlord may then deduct the amount of his or her claim and shall remit the balance of the deposit to the tenant within 30 days after the date of the notice of intention to impose a claim for damages. The failure of the tenant to make a timely objection does not waive any rights of the tenant to seek damages in a separate action.

(c) If either party institutes an action in a court of competent jurisdiction to adjudicate the party's right to the security deposit, the prevailing party is entitled to receive his or her court costs plus a reasonable fee for his or her attorney. The court shall advance the cause on the calendar.

(d) Compliance with this section by an individual or business entity authorized to conduct business in this state, including Florida-licensed real estate brokers and sales associates, constitutes compliance with all other relevant Florida Statutes pertaining to security deposits held pursuant to a rental agreement or other landlord-tenant relationship. Enforcement personnel shall look solely to this section to determine compliance. This section prevails over any conflicting provisions in chapter 475 and in other sections of the Florida Statutes, and shall operate to permit licensed real estate brokers to disburse security deposits and deposit money without having to comply with the notice and settlement procedures contained in s. 475.25(1)(d).

(4) The provisions of this section do not apply to transient rentals by hotels or motels as defined in chapter 509; nor do they apply to those instances in which the amount of rent or deposit, or both, is regulated by law or by rules or regulations of a public body, including public housing authorities and federally administered or regulated housing programs including s. 202, s. 221(d)(3) and (4), s. 236, or s. 8 of the National Housing Act, as amended, other than for rent stabilization. With the exception of subsections (3), (5), and (6), this section is not applicable to housing authorities or public housing agencies created pursuant to chapter 421 or other statutes.

(5) Except when otherwise provided by the terms of a written lease, any tenant who vacates or abandons the premises prior to the expiration of the term specified in the written lease, or any tenant who vacates or abandons premises which are the subject of a tenancy from week to week, month to month, quarter to quarter, or year to year, shall give at least 7 days' written notice by certified mail or personal delivery to the landlord prior to vacating or abandoning the premises which notice shall include the address where the tenant may be reached. Failure to give such notice shall relieve the landlord of the notice requirement of paragraph (3)(a) but shall not waive any right the tenant may have to the security deposit or any part of it.

(6) For the purposes of this part, a renewal of an existing rental agreement shall be considered a new rental agreement, and any security deposit carried forward shall be considered a new security deposit.

(7) Upon the sale or transfer of title of the rental property from one owner to another, or upon a change in the designated rental agent, any and all security deposits or advance rents being held for the benefit of the tenants shall be transferred to the new owner or agent, together with any earned interest and with an accurate accounting showing the amounts to be credited to each tenant account. Upon the transfer of such funds and records to the new owner or agent, and upon transmittal of a written receipt therefor, the transferor is free from the obligation imposed in subsection (1) to hold such moneys on behalf of the tenant. There is a rebuttable presumption that any new owner or agent received the security deposit from the previous owner or agent; however, this presumption is limited to 1 month's rent. This subsection does not excuse the landlord or agent for a violation of other provisions of this section while in possession of such deposits.

(8) Any person licensed under the provisions of s. 509.241, unless excluded by the provisions of this part, who fails to comply with the provisions of this part shall be subject to a fine or to the suspension or revocation of his or her license by the Division of Hotels and Restaurants of the Department of Business and Professional Regulation in the manner provided in s. 509.261.

(9) In those cases in which interest is required to be paid to the tenant, the landlord shall pay directly to the tenant, or credit against the current month's rent, the interest due to the tenant at least once annually. However, no interest shall be due a tenant who wrongfully terminates his or her tenancy prior to the end of the rental term.

**History.**—s. 1, ch. 69-282; s. 3, ch. 70-360; s. 1, ch. 72-19; s. 1, ch. 72-43; s. 5, ch. 73-330; s. 1, ch. 74-93; s. 3, ch. 74-146; ss. 1, 2, ch. 75-133; s. 1, ch. 76-15; s. 1, ch. 77-445; s. 20, ch. 79-400; s. 21, ch. 82-66; s. 5, ch. 83-151; s. 13, ch. 83-217; s. 3, ch. 87-195; s. 1, ch. 87-369; s. 3, ch. 88-379; s. 2, ch. 93-255; s. 5, ch. 94-218; s. 1372, ch. 95-147; s. 1, ch. 96-146; s. 1, ch. 2001-179; s. 53, ch. 2003-164; s. 3, ch. 2013-136.

Note.—Former s. 83.261.

**83.50 Disclosure of landlord's address.**—In addition to any other disclosure required by law, the landlord, or a person authorized to enter into a rental agreement on the landlord's behalf, shall disclose in writing to the tenant, at or before the commencement of the tenancy, the name and address of the landlord or a person authorized to receive notices and demands in the landlord's behalf. The person so authorized to receive notices and demands retains authority until the tenant is notified otherwise. All notices of such names and addresses or changes thereto shall be delivered to the tenant's residence or, if specified in writing by the tenant, to any other address.

**History.**—s. 2, ch. 73-330; s. 443, ch. 95-147; s. 5, ch. 2013-136.

**83.51 Landlord's obligation to maintain premises.**—

(1) The landlord at all times during the tenancy shall:

(a) Comply with the requirements of applicable building, housing, and health codes; or

(b) Where there are no applicable building, housing, or health codes, maintain the roofs, windows, doors, floors, steps, porches, exterior walls, foundations, and all other structural components in good repair and capable of resisting normal forces and loads and the plumbing in reasonable working condition. The landlord, at commencement of the tenancy, must ensure that screens are installed in a reasonable condition. Thereafter, the landlord must repair damage to screens once annually, when necessary, until termination of the rental agreement.

The landlord is not required to maintain a mobile home or other structure owned by the tenant. The landlord's obligations under this subsection may be altered or modified in writing with respect to a single-family home or duplex.

(2)(a) Unless otherwise agreed in writing, in addition to the requirements of subsection (1), the landlord of a dwelling unit other than a single-family home or duplex shall, at all times during the tenancy, make reasonable provisions for:

Tenant [ *KMF* ] and Landlord [ *SL* ] acknowledge receipt of a copy of this page which is Page 11 of 18

1. The extermination of rats, mice, roaches, ants, wood-destroying organisms, and bedbugs. When vacation of the premises is required for such extermination, the landlord is not liable for damages but shall abate the rent. The tenant must temporarily vacate the premises for a period of time not to exceed 4 days, on 7 days' written notice, if necessary, for extermination pursuant to this subparagraph.

2. Locks and keys.

3. The clean and safe condition of common areas.

4. Garbage removal and outside receptacles therefor.

5. Functioning facilities for heat during winter, running water, and hot water.

(b) Unless otherwise agreed in writing, at the commencement of the tenancy of a single-family home or duplex, the landlord shall install working smoke detection devices. As used in this paragraph, the term "smoke detection device" means an electrical or battery-operated device which detects visible or invisible particles of combustion and which is listed by Underwriters Laboratories, Inc., Factory Mutual Laboratories, Inc., or any other nationally recognized testing laboratory using nationally accepted testing standards.

(c) Nothing in this part authorizes the tenant to raise a noncompliance by the landlord with this subsection as a defense to an action for possession under s. 83.59.

(d) This subsection shall not apply to a mobile home owned by a tenant.

(e) Nothing contained in this subsection prohibits the landlord from providing in the rental agreement that the tenant is obligated to pay costs or charges for garbage removal, water, fuel, or utilities.

(3) If the duty imposed by subsection (1) is the same or greater than any duty imposed by subsection (2), the landlord's duty is determined by subsection (1).

(4) The landlord is not responsible to the tenant under this section for conditions created or caused by the negligent or wrongful act or omission of the tenant, a member of the tenant's family, or other person on the premises with the tenant's consent.

**History.**—s. 2, ch. 73-330; s. 22, ch. 82-66; s. 4, ch. 87-195; s. 1, ch. 90-133; s. 3, ch. 93-255; s. 444, ch. 95-147; s. 8, ch. 97-95; s. 6, ch. 2013-136.

**83.52 Tenant's obligation to maintain dwelling unit.**—The tenant at all times during the tenancy shall:

(1) Comply with all obligations imposed upon tenants by applicable provisions of building, housing, and health codes.

(2) Keep that part of the premises which he or she occupies and uses clean and sanitary.

(3) Remove from the tenant's dwelling unit all garbage in a clean and sanitary manner.

(4) Keep all plumbing fixtures in the dwelling unit or used by the tenant clean and sanitary and in repair.

(5) Use and operate in a reasonable manner all electrical, plumbing, sanitary, heating, ventilating, air-conditioning and other facilities and appliances, including elevators.

(6) Not destroy, deface, damage, impair, or remove any part of the premises or property therein belonging to the landlord nor permit any person to do so.

(7) Conduct himself or herself, and require other persons on the premises with his or her consent to conduct themselves, in a manner that does not unreasonably disturb the tenant's neighbors or constitute a breach of the peace.

**History.**—s. 2, ch. 73-330; s. 445, ch. 95-147.

**83.53 Landlord's access to dwelling unit.**—

(1) The tenant shall not unreasonably withhold consent to the landlord to enter the dwelling unit from time to time in order to inspect the premises; make necessary or agreed repairs, decorations, alterations, or improvements; supply agreed services; or exhibit the dwelling unit to prospective or actual purchasers, mortgagees, tenants, workers, or contractors.

(2) The landlord may enter the dwelling unit at any time for the protection or preservation of the premises. The landlord may enter the dwelling unit upon reasonable notice to the tenant and at a reasonable time for the purpose of repair of the premises. "Reasonable notice" for the purpose of repair is notice given at least 12 hours prior to the entry, and reasonable time for the purpose of repair shall be between the hours of 7:30 a.m. and 8:00 p.m. The landlord may enter the dwelling unit when necessary for the further purposes set forth in subsection (1) under any of the following circumstances:

(a) With the consent of the tenant;

(b) In case of emergency;

(c) When the tenant unreasonably withholds consent; or

(d) If the tenant is absent from the premises for a period of time equal to one-half the time for periodic rental payments. If the rent is current and the tenant notifies the landlord of an intended absence, then the landlord may enter only with the consent of the tenant or for the protection or preservation of the premises.

(3) The landlord shall not abuse the right of access nor use it to harass the tenant.

**History.**—s. 2, ch. 73-330; s. 5, ch. 87-195; s. 4, ch. 93-255; s. 446, ch. 95-147.

**83.535 Flotation bedding system; restrictions on use.**—No landlord may prohibit a tenant from using a flotation bedding system in a dwelling unit, provided the flotation bedding system does not violate applicable building codes. The tenant shall be required to carry in the tenant's name flotation insurance as is standard in the industry in an amount deemed reasonable to protect the tenant and owner against personal injury and property damage to the dwelling units. In any case, the policy shall carry a loss payable clause to the owner of the building.

**History.**—s. 7, ch. 82-66; s. 5, ch. 93-255.

**83.54 Enforcement of rights and duties; civil action; criminal offenses.**—Any right or duty declared in this part is enforceable by civil action. A right or duty enforced by civil action under this section does not preclude prosecution for a criminal offense related to the lease or leased property.

**History.**—s. 2, ch. 73-330; s. 7, ch. 2013-136.

**83.55 Right of action for damages.**—If either the landlord or the tenant fails to comply with the requirements of the rental agreement or this part, the aggrieved party may recover the damages caused by the noncompliance.

**History.**—s. 2, ch. 73-330.

**83.56 Termination of rental agreement.**—

Tenant [KMF] and Landlord [SL] acknowledge receipt of a copy of this page which is Page 12 of 18

(1) If the landlord materially fails to comply with s. 83.51(1) or material provisions of the rental agreement within 7 days after delivery of written notice by the tenant specifying the noncompliance and indicating the intention of the tenant to terminate the rental agreement by reason thereof, the tenant may terminate the rental agreement. If the failure to comply with s. 83.51(1) or material provisions of the rental agreement is due to causes beyond the control of the landlord and the landlord has made and continues to make every reasonable effort to correct the failure to comply, the rental agreement may be terminated or altered by the parties, as follows:

(a) If the landlord's failure to comply renders the dwelling unit untenantable and the tenant vacates, the tenant shall not be liable for rent during the period the dwelling unit remains uninhabitable.

(b) If the landlord's failure to comply does not render the dwelling unit untenantable and the tenant remains in occupancy, the rent for the period of noncompliance shall be reduced by an amount in proportion to the loss of rental value caused by the noncompliance.

(2) If the tenant materially fails to comply with s. 83.52 or material provisions of the rental agreement, other than a failure to pay rent, or reasonable rules or regulations, the landlord may:

(a) If such noncompliance is of a nature that the tenant should not be given an opportunity to cure it or if the noncompliance constitutes a subsequent or continuing noncompliance within 12 months of a written warning by the landlord of a similar violation, deliver a written notice to the tenant specifying the noncompliance and the landlord's intent to terminate the rental agreement by reason thereof. Examples of noncompliance which are of a nature that the tenant should not be given an opportunity to cure include, but are not limited to, destruction, damage, or misuse of the landlord's or other tenants' property by intentional act or a subsequent or continued unreasonable disturbance. In such event, the landlord may terminate the rental agreement, and the tenant shall have 7 days from the date that the notice is delivered to vacate the premises. The notice shall be in substantially the following form:

You are advised that your lease is terminated effective immediately. You shall have 7 days from the delivery of this letter to vacate the premises. This action is taken because   (cite the noncompliance)  .

(b) If such noncompliance is of a nature that the tenant should be given an opportunity to cure it, deliver a written notice to the tenant specifying the noncompliance, including a notice that, if the noncompliance is not corrected within 7 days from the date that the written notice is delivered, the landlord shall terminate the rental agreement by reason thereof. Examples of such noncompliance include, but are not limited to, activities in contravention of the lease or this part such as having or permitting unauthorized pets, guests, or vehicles; parking in an unauthorized manner or permitting such parking; or failing to keep the premises clean and sanitary. If such noncompliance recurs within 12 months after notice, an eviction action may commence without delivering a subsequent notice pursuant to paragraph (a) or this paragraph. The notice shall be in substantially the following form:

You are hereby notified that   (cite the noncompliance)  . Demand is hereby made that you remedy the noncompliance within 7 days of receipt of this notice or your lease shall be deemed terminated and you shall vacate the premises upon such termination. If this same conduct or conduct of a similar nature is repeated within 12 months, your tenancy is subject to termination without further warning and without your being given an opportunity to cure the noncompliance.

(3) If the tenant fails to pay rent when due and the default continues for 3 days, excluding Saturday, Sunday, and legal holidays, after delivery of written demand by the landlord for payment of the rent or possession of the premises, the landlord may terminate the rental agreement. Legal holidays for the purpose of this section shall be court-observed holidays only. The 3-day notice shall contain a statement in substantially the following form:

You are hereby notified that you are indebted to me in the sum of _____ dollars for the rent and use of the premises   (address of leased premises, including county)  , Florida, now occupied by you and that I demand payment of the rent or possession of the premises within 3 days (excluding Saturday, Sunday, and legal holidays) from the date of delivery of this notice, to wit: on or before the   day of  ,   (year)  .

  (landlord's name, address and phone number)
(4) The delivery of the written notices required by subsections (1), (2), and (3) shall be by mailing or delivery of a true copy thereof or, if the tenant is absent from the premises, by leaving a copy thereof at the residence. The notice requirements of subsections (1), (2), and (3) may not be waived in the lease.

(5)(a) If the landlord accepts rent with actual knowledge of a noncompliance by the tenant or accepts performance by the tenant of any other provision of the rental agreement that is at variance with its provisions, or if the tenant pays rent with actual knowledge of a noncompliance by the landlord or accepts performance by the landlord of any other provision of the rental agreement that is at variance with its provisions, the landlord or tenant waives his or her right to terminate the rental agreement or to bring a civil action for that noncompliance, but not for any subsequent or continuing noncompliance. However, a landlord does not waive the right to terminate the rental agreement or to bring a civil action for that noncompliance by accepting partial rent for the period. If partial rent is accepted after posting the notice for nonpayment, the landlord must:

1. Provide the tenant with a receipt stating the date and amount received and the agreed upon date and balance of rent due before filing an action for possession;

2. Place the amount of partial rent accepted from the tenant in the registry of the court upon filing the action for possession; or

3. Post a new 3-day notice reflecting the new amount due.

(b) Any tenant who wishes to defend against an action by the landlord for possession of the unit for noncompliance of the rental agreement or of relevant statutes must comply with s. 83.60(2). The court may not set a date for mediation or trial unless the provisions of s. 83.60(2) have been met, but must enter a default judgment for removal of the tenant with a writ of possession to issue immediately if the tenant fails to comply with s. 83.60(2).

(c) This subsection does not apply to that portion of rent subsidies received from a local, state, or national government or an agency of local, state, or national government; however, waiver will occur if an action has not been instituted within 45 days after the landlord obtains actual knowledge of the noncompliance.

(6) If the rental agreement is terminated, the landlord shall comply with s. 83.49(3).

**History.**—s. 2, ch. 73-330; s. 23, ch. 82-66; s. 6, ch. 83-151; s. 14, ch. 83-217; s. 6, ch. 87-195; s. 6, ch. 93-255; s. 6, ch. 94-170; s. 1373, ch. 95-147; s. 5, ch. 99-6; s. 8, ch. 2013-136.



Tenant _____ and Landlord _____ acknowledge receipt of a copy of this page which is Page 13 of 18

dotloop signature verification: ɔ.us/tiM1M-xEWD-3HdC

**83.561 Termination of rental agreement upon foreclosure.**—
(1) If a tenant is occupying residential premises that are the subject of a foreclosure sale, upon issuance of a certificate of title following the sale, the purchaser named in the certificate of title takes title to the residential premises subject to the rights of the tenant under this section.
(a) The tenant may remain in possession of the premises for 30 days following the date of the purchaser's delivery of a written 30-day notice of termination.
(b) The tenant is entitled to the protections of s. 83.67.
(c) The 30-day notice of termination must be in substantially the following form:

NOTICE TO TENANT OF TERMINATION

You are hereby notified that your rental agreement is terminated on the date of delivery of this notice, that your occupancy is terminated 30 days following the date of the delivery of this notice, and that I demand possession of the premises on   (date)  . If you do not vacate the premises by that date, I will ask the court for an order allowing me to remove you and your belongings from the premises. You are obligated to pay rent during the 30-day period for any amount that might accrue during that period. Your rent must be delivered to (landlord's name and address)  .
(d) The 30-day notice of termination shall be delivered in the same manner as provided in s. 83.56(4).
(2) The purchaser at the foreclosure sale may apply to the court for a writ of possession based upon a sworn affidavit that the 30-day notice of termination was delivered to the tenant and the tenant has failed to vacate the premises at the conclusion of the 30-day period. If the court awards a writ of possession, the writ must be served on the tenant. The writ of possession shall be governed by s. 83.62.
(3) This section does not apply if:
(a) The tenant is the mortgagor in the subject foreclosure or is the child, spouse, or parent of the mortgagor in the subject foreclosure.
(b) The tenant's rental agreement is not the result of an arm's length transaction.
(c) The tenant's rental agreement allows the tenant to pay rent that is substantially less than the fair market rent for the premises, unless the rent is reduced or subsidized due to a federal, state, or local subsidy.
(4) A purchaser at a foreclosure sale of a residential premises occupied by a tenant does not assume the obligations of a landlord, except as provided in paragraph (1)(b), unless or until the purchaser assumes an existing rental agreement with the tenant that has not ended or enters into a new rental agreement with the tenant.
**History.**—s. 1, ch. 2015-96.

**83.57 Termination of tenancy without specific term.**—A tenancy without a specific duration, as defined in s. 83.46(2) or (3), may be terminated by either party giving written notice in the manner provided in s. 83.56(4), as follows:
(1) When the tenancy is from year to year, by giving not less than 60 days' notice prior to the end of any annual period;
(2) When the tenancy is from quarter to quarter, by giving not less than 30 days' notice prior to the end of any quarterly period;
(3) When the tenancy is from month to month, by giving not less than 15 days' notice prior to the end of any monthly period; and
(4) When the tenancy is from week to week, by giving not less than 7 days' notice prior to the end of any weekly period.
**History.**—s. 2, ch. 73-330; s. 3, ch. 81-190; s. 15, ch. 83-217.

**83.575 Termination of tenancy with specific duration.**—
(1) A rental agreement with a specific duration may contain a provision requiring the tenant to notify the landlord within a specified period before vacating the premises at the end of the rental agreement, if such provision requires the landlord to notify the tenant within such notice period if the rental agreement will not be renewed; however, a rental agreement may not require more than 60 days' notice from either the tenant or the landlord.
(2) A rental agreement with a specific duration may provide that if a tenant fails to give the required notice before vacating the premises at the end of the rental agreement, the tenant may be liable for liquidated damages as specified in the rental agreement if the landlord provides written notice to the tenant specifying the tenant's obligations under the notification provision contained in the lease and the date the rental agreement is terminated. The landlord must provide such written notice to the tenant within 15 days before the start of the notification period contained in the lease. The written notice shall list all fees, penalties, and other charges applicable to the tenant under this subsection.
(3) If the tenant remains on the premises with the permission of the landlord after the rental agreement has terminated and fails to give notice required under s. 83.57(1), the tenant is liable to the landlord for an additional 1 month's rent.
**History.**—s. 3, ch. 2003-30; s. 1, ch. 2004-375; s. 9, ch. 2013-136.

**83.58 Remedies; tenant holding over.**—If the tenant holds over and continues in possession of the dwelling unit or any part thereof after the expiration of the rental agreement without the permission of the landlord, the landlord may recover possession of the dwelling unit in the manner provided for in s. 83.59. The landlord may also recover double the amount of rent due on the dwelling unit, or any part thereof, for the period during which the tenant refuses to surrender possession.
**History.**—s. 2, ch. 73-330; s. 10, ch. 2013-136.

**83.59 Right of action for possession.**—
(1) If the rental agreement is terminated and the tenant does not vacate the premises, the landlord may recover possession of the dwelling unit as provided in this section.
(2) A landlord, the landlord's attorney, or the landlord's agent, applying for the removal of a tenant, shall file in the county court of the county where the premises are situated a complaint describing the dwelling unit and stating the facts that authorize its recovery. A landlord's agent is not permitted to take any action other than the initial filing of the complaint, unless the landlord's agent is an attorney. The landlord is entitled to the summary procedure provided in s. 51.011, and the court shall advance the cause on the calendar.
(3) The landlord shall not recover possession of a dwelling unit except:
(a) In an action for possession under subsection (2) or other civil action in which the issue of right of possession is determined;
(b) When the tenant has surrendered possession of the dwelling unit to the landlord;



Tenant [KMF 08/17/22] and Landlord [SL 08/17/22] acknowledge receipt of a copy of this page which is Page 14 of 18

(c) When the tenant has abandoned the dwelling unit. In the absence of actual knowledge of abandonment, it shall be presumed that the tenant has abandoned the dwelling unit if he or she is absent from the premises for a period of time equal to one-half the time for periodic rental payments. However, this presumption does not apply if the rent is current or the tenant has notified the landlord, in writing, of an intended absence; or

(d) When the last remaining tenant of a dwelling unit is deceased, personal property remains on the premises, rent is unpaid, at least 60 days have elapsed following the date of death, and the landlord has not been notified in writing of the existence of a probate estate or of the name and address of a personal representative. This paragraph does not apply to a dwelling unit used in connection with a federally administered or regulated housing program, including programs under s. 202, s. 221(d)(3) and (4), s. 236, or s. 8 of the National Housing Act, as amended.

(4) The prevailing party is entitled to have judgment for costs and execution therefor.

**History.**—s. 2, ch. 73-330; s. 1, ch. 74-146; s. 24, ch. 82-66; s. 1, ch. 92-36; s. 447, ch. 95-147; s. 1, ch. 2007-136; s. 11, ch. 2013-136.

**83.595 Choice of remedies upon breach or early termination by tenant.**—If the tenant breaches the rental agreement for the dwelling unit and the landlord has obtained a writ of possession, or the tenant has surrendered possession of the dwelling unit to the landlord, or the tenant has abandoned the dwelling unit, the landlord may:

(1) Treat the rental agreement as terminated and retake possession for his or her own account, thereby terminating any further liability of the tenant;

(2) Retake possession of the dwelling unit for the account of the tenant, holding the tenant liable for the difference between the rent stipulated to be paid under the rental agreement and what the landlord is able to recover from a reletting. If the landlord retakes possession, the landlord has a duty to exercise good faith in attempting to relet the premises, and any rent received by the landlord as a result of the reletting must be deducted from the balance of rent due from the tenant. For purposes of this subsection, the term "good faith in attempting to relet the premises" means that the landlord uses at least the same efforts to relet the premises as were used in the initial rental or at least the same efforts as the landlord uses in attempting to rent other similar rental units but does not require the landlord to give a preference in renting the premises over other vacant dwelling units that the landlord owns or has the responsibility to rent;

(3) Stand by and do nothing, holding the lessee liable for the rent as it comes due; or

(4) Charge liquidated damages, as provided in the rental agreement, or an early termination fee to the tenant if the landlord and tenant have agreed to liquidated damages or an early termination fee, if the amount does not exceed 2 months' rent, and if, in the case of an early termination fee, the tenant is required to give no more than 60 days' notice, as provided in the rental agreement, prior to the proposed date of early termination. This remedy is available only if the tenant and the landlord, at the time the rental agreement was made, indicated acceptance of liquidated damages or an early termination fee. The tenant must indicate acceptance of liquidated damages or an early termination fee by signing a separate addendum to the rental agreement containing a provision in substantially the following form:

☑ I agree, as provided in the rental agreement, to pay $ ___30 days notice to landlord___ (an amount that does not exceed 2 months' rent) as liquidated damages or an early termination fee if I elect to terminate the rental agreement, and the landlord waives the right to seek additional rent beyond the month in which the landlord retakes possession.

☐ I do not agree to liquidated damages or an early termination fee, and I acknowledge that the landlord may seek damages as provided by law.

(a) In addition to liquidated damages or an early termination fee, the landlord is entitled to the rent and other charges accrued through the end of the month in which the landlord retakes possession of the dwelling unit and charges for damages to the dwelling unit.

(b) This subsection does not apply if the breach is failure to give notice as provided in s. 83.575.

**History.**—s. 2, ch. 87-369; s. 4, ch. 88-379; s. 448, ch. 95-147; s. 2, ch. 2008-131.

**83.60 Defenses to action for rent or possession; procedure.**—

(1)(a) In an action by the landlord for possession of a dwelling unit based upon nonpayment of rent or in an action by the landlord under s. 83.55 seeking to recover unpaid rent, the tenant may defend upon the ground of a material noncompliance with s. 83.51(1), or may raise any other defense, whether legal or equitable, that he or she may have, including the defense of retaliatory conduct in accordance with s. 83.64. The landlord must be given an opportunity to cure a deficiency in a notice or in the pleadings before dismissal of the action.

(b) The defense of a material noncompliance with s. 83.51(1) may be raised by the tenant if 7 days have elapsed after the delivery of written notice by the tenant to the landlord, specifying the noncompliance and indicating the intention of the tenant not to pay rent by reason thereof. Such notice by the tenant may be given to the landlord, the landlord's representative as designated pursuant to s. 83.50, a resident manager, or the person or entity who collects the rent on behalf of the landlord. A material noncompliance with s. 83.51(1) by the landlord is a complete defense to an action for possession based upon nonpayment of rent, and, upon hearing, the court or the jury, as the case may be, shall determine the amount, if any, by which the rent is to be reduced to reflect the diminution in value of the dwelling unit during the period of noncompliance with s. 83.51(1). After consideration of all other relevant issues, the court shall enter appropriate judgment.

(2) In an action by the landlord for possession of a dwelling unit, if the tenant interposes any defense other than payment, including, but not limited to, the defense of a defective 3-day notice, the tenant shall pay into the registry of the court the accrued rent as alleged in the complaint or as determined by the court and the rent that accrues during the pendency of the proceeding, when due. The clerk shall notify the tenant of such requirement in the summons. Failure of the tenant to pay the rent into the registry of the court or to file a motion to determine the amount of rent to be paid into the registry within 5 days, excluding Saturdays, Sundays, and legal holidays, after the date of service of process constitutes an absolute waiver of the tenant's defenses other than payment, and the landlord is entitled to an immediate default judgment for removal of the tenant with a writ of possession to issue without further notice or hearing thereon. If a motion to determine rent is filed, documentation in support of the allegation that the rent as alleged in the complaint is in error is required. Public housing tenants or tenants receiving rent subsidies are required to deposit only that portion of the full rent for which they are responsible pursuant to the federal, state, or local program in which they are participating.

**History.**—s. 2, ch. 73-330; s. 7, ch. 83-151; s. 7, ch. 87-195; s. 7, ch. 93-255; s. 7, ch. 94-170; s. 1374, ch. 95-147; s. 12, ch. 2013-136.

**83.61 Disbursement of funds in registry of court; prompt final hearing.**—When the tenant has deposited funds into the registry of the court in accordance with the provisions of s. 83.60(2) and the landlord is in actual danger of loss of the premises or other personal hardship

resulting from the loss of rental income from the premises, the landlord may apply to the court for disbursement of all or part of the funds or for prompt final hearing. The court shall advance the cause on the calendar. The court, after preliminary hearing, may award all or any portion of the funds on deposit to the landlord or may proceed immediately to a final resolution of the cause.

**History.**—s. 2, ch. 73-330; s. 2, ch. 74-146.

**83.62 Restoration of possession to landlord.**—

(1) In an action for possession, after entry of judgment in favor of the landlord, the clerk shall issue a writ to the sheriff describing the premises and commanding the sheriff to put the landlord in possession after 24 hours' notice conspicuously posted on the premises. Saturdays, Sundays, and legal holidays do not stay the 24-hour notice period.

(2) At the time the sheriff executes the writ of possession or at any time thereafter, the landlord or the landlord's agent may remove any personal property found on the premises to or near the property line. Subsequent to executing the writ of possession, the landlord may request the sheriff to stand by to keep the peace while the landlord changes the locks and removes the personal property from the premises. When such a request is made, the sheriff may charge a reasonable hourly rate, and the person requesting the sheriff to stand by to keep the peace shall be responsible for paying the reasonable hourly rate set by the sheriff. Neither the sheriff nor the landlord or the landlord's agent shall be liable to the tenant or any other party for the loss, destruction, or damage to the property after it has been removed.

**History.**—s. 2, ch. 73-330; s. 3, ch. 82-66; s. 5, ch. 88-379; s. 8, ch. 94-170; s. 1375, ch. 95-147; s. 2, ch. 96-146; s. 13, ch. 2013-136.

**83.625 Power to award possession and enter money judgment.**—In an action by the landlord for possession of a dwelling unit based upon nonpayment of rent, if the court finds the rent is due, owing, and unpaid and by reason thereof the landlord is entitled to possession of the premises, the court, in addition to awarding possession of the premises to the landlord, shall direct, in an amount which is within its jurisdictional limitations, the entry of a money judgment with costs in favor of the landlord and against the tenant for the amount of money found due, owing, and unpaid by the tenant to the landlord. However, no money judgment shall be entered unless service of process has been effected by personal service or, where authorized by law, by certified or registered mail, return receipt, or in any other manner prescribed by law or the rules of the court; and no money judgment may be entered except in compliance with the Florida Rules of Civil Procedure. The prevailing party in the action may also be awarded attorney's fees and costs.

**History.**—s. 1, ch. 75-147; s. 8, ch. 87-195; s. 6, ch. 88-379.

**83.63 Casualty damage.**—If the premises are damaged or destroyed other than by the wrongful or negligent acts of the tenant so that the enjoyment of the premises is substantially impaired, the tenant may terminate the rental agreement and immediately vacate the premises. The tenant may vacate the part of the premises rendered unusable by the casualty, in which case the tenant's liability for rent shall be reduced by the fair rental value of that part of the premises damaged or destroyed. If the rental agreement is terminated, the landlord shall comply with s. 83.49(3).

**History.**—s. 2, ch. 73-330; s. 449, ch. 95-147; s. 14, ch. 2013-136.

**83.64 Retaliatory conduct.**—

(1) It is unlawful for a landlord to discriminatorily increase a tenant's rent or decrease services to a tenant, or to bring or threaten to bring an action for possession or other civil action, primarily because the landlord is retaliating against the tenant. In order for the tenant to raise the defense of retaliatory conduct, the tenant must have acted in good faith. Examples of conduct for which the landlord may not retaliate include, but are not limited to, situations where:

(a) The tenant has complained to a governmental agency charged with responsibility for enforcement of a building, housing, or health code of a suspected violation applicable to the premises;

(b) The tenant has organized, encouraged, or participated in a tenant organization;

(c) The tenant has complained to the landlord pursuant to s. 83.56(1);

(d) The tenant is a servicemember who has terminated a rental agreement pursuant to s. 83.682;

(e) The tenant has paid rent to a condominium, cooperative, or homeowners' association after demand from the association in order to pay the landlord's obligation to the association; or

(f) The tenant has exercised his or her rights under local, state, or federal fair housing laws.

(2) Evidence of retaliatory conduct may be raised by the tenant as a defense in any action brought against him or her for possession.

(3) In any event, this section does not apply if the landlord proves that the eviction is for good cause. Examples of good cause include, but are not limited to, good faith actions for nonpayment of rent, violation of the rental agreement or of reasonable rules, or violation of the terms of this chapter.

(4) "Discrimination" under this section means that a tenant is being treated differently as to the rent charged, the services rendered, or the action being taken by the landlord, which shall be a prerequisite to a finding of retaliatory conduct.

**History.**—s. 8, ch. 83-151; s. 450, ch. 95-147; s. 3, ch. 2003-72; s. 15, ch. 2013-136.

**83.67 Prohibited practices.**—

(1) A landlord of any dwelling unit governed by this part shall not cause, directly or indirectly, the termination or interruption of any utility service furnished the tenant, including, but not limited to, water, heat, light, electricity, gas, elevator, garbage collection, or refrigeration, whether or not the utility service is under the control of, or payment is made by, the landlord.

(2) A landlord of any dwelling unit governed by this part shall not prevent the tenant from gaining reasonable access to the dwelling unit by any means, including, but not limited to, changing the locks or using any bootlock or similar device.

(3) A landlord of any dwelling unit governed by this part shall not discriminate against a servicemember in offering a dwelling unit for rent or in any of the terms of the rental agreement.

(4) A landlord shall not prohibit a tenant from displaying one portable, removable, cloth or plastic United States flag, not larger than 4 and 1/2 feet by 6 feet, in a respectful manner in or on the dwelling unit regardless of any provision in the rental agreement dealing with flags or decorations. The United States flag shall be displayed in accordance with s. 83.52(6). The landlord is not liable for damages caused by a United States flag displayed by a tenant. Any United States flag may not infringe upon the space rented by any other tenant.

(5) A landlord of any dwelling unit governed by this part shall not remove the outside doors, locks, roof, walls, or windows of the unit except for purposes of maintenance, repair, or replacement; and the landlord shall not remove the tenant's personal property from the dwelling unit unless such action is taken after surrender, abandonment, recovery of possession of the dwelling unit due to the death of the last remaining

Tenant [KWF 08/17/22 9:52 AM EDT dotloop verified] and Landlord [SL 08/17/22 9:17 AM EDT dotloop verified] acknowledge receipt of a copy of this page which is Page 16 of 18

tenant in accordance with s. 83.59(3)(d), or a lawful eviction. If provided in the rental agreement or a written agreement separate from the rental agreement, upon surrender or abandonment by the tenant, the landlord is not required to comply with s. 715.104 and is not liable or responsible for storage or disposition of the tenant's personal property; if provided in the rental agreement, there must be printed or clearly stamped on such rental agreement a legend in substantially the following form:

BY SIGNING THIS RENTAL AGREEMENT, THE TENANT AGREES THAT UPON SURRENDER, ABANDONMENT, OR RECOVERY OF POSSESSION OF THE DWELLING UNIT DUE TO THE DEATH OF THE LAST REMAINING TENANT, AS PROVIDED BY CHAPTER 83, FLORIDA STATUTES, THE LANDLORD SHALL NOT BE LIABLE OR RESPONSIBLE FOR STORAGE OR DISPOSITION OF THE TENANT'S PERSONAL PROPERTY.

For the purposes of this section, abandonment shall be as set forth in s. 83.59(3)(c).
(6) A landlord who violates any provision of this section shall be liable to the tenant for actual and consequential damages or 3 months' rent, whichever is greater, and costs, including attorney's fees. Subsequent or repeated violations that are not contemporaneous with the initial violation shall be subject to separate awards of damages.
(7) A violation of this section constitutes irreparable harm for the purposes of injunctive relief.
(8) The remedies provided by this section are not exclusive and do not preclude the tenant from pursuing any other remedy at law or equity that the tenant may have. The remedies provided by this section shall also apply to a servicemember who is a prospective tenant who has been discriminated against under subsection (3).
**History**.—s. 3, ch. 87-369; s. 7, ch. 88-379; s. 3, ch. 90-133; s. 3, ch. 96-146; s. 2, ch. 2001-179; s. 2, ch. 2003-30; s. 4, ch. 2003-72; s. 1, ch. 2004-236; s. 2, ch. 2007-136.

**83.681 Orders to enjoin violations of this part.—**
(1) A landlord who gives notice to a tenant of the landlord's intent to terminate the tenant's lease pursuant to s. 83.56(2)(a), due to the tenant's intentional destruction, damage, or misuse of the landlord's property may petition the county or circuit court for an injunction prohibiting the tenant from continuing to violate any of the provisions of that part.
(2) The court shall grant the relief requested pursuant to subsection (1) in conformity with the principles that govern the granting of injunctive relief from threatened loss or damage in other civil cases.
(3) Evidence of a tenant's intentional destruction, damage, or misuse of the landlord's property in an amount greater than twice the value of money deposited with the landlord pursuant to s. 83.49 or $300, whichever is greater, shall constitute irreparable harm for the purposes of injunctive relief.
**History**.—s. 8, ch. 93-255; s. 451, ch. 95-147.

**83.682 Termination of rental agreement by a servicemember.—**
(1) Any servicemember may terminate his or her rental agreement by providing the landlord with a written notice of termination to be effective on the date stated in the notice that is at least 30 days after the landlord's receipt of the notice if any of the following criteria are met:
(a) The servicemember is required, pursuant to a permanent change of station orders, to move 35 miles or more from the location of the rental premises;
(b) The servicemember is prematurely or involuntarily discharged or released from active duty or state active duty;
(c) The servicemember is released from active duty or state active duty after having leased the rental premises while on active duty or state active duty status and the rental premises is 35 miles or more from the servicemember's home of record prior to entering active duty or state active duty;
(d) After entering into a rental agreement, the servicemember receives military orders requiring him or her to move into government quarters or the servicemember becomes eligible to live in and opts to move into government quarters;
(e) The servicemember receives temporary duty orders, temporary change of station orders, or state active duty orders to an area 35 miles or more from the location of the rental premises, provided such orders are for a period exceeding 60 days; or
(f) The servicemember has leased the property, but prior to taking possession of the rental premises, receives a change of orders to an area that is 35 miles or more from the location of the rental premises.
(2) The notice to the landlord must be accompanied by either a copy of the official military orders or a written verification signed by the servicemember's commanding officer.
(3) In the event a servicemember dies during active duty, an adult member of his or her immediate family may terminate the servicemember's rental agreement by providing the landlord with a written notice of termination to be effective on the date stated in the notice that is at least 30 days after the landlord's receipt of the notice. The notice to the landlord must be accompanied by either a copy of the official military orders showing the servicemember was on active duty or a written verification signed by the servicemember's commanding officer and a copy of the servicemember's death certificate.
(4) Upon termination of a rental agreement under this section, the tenant is liable for the rent due under the rental agreement prorated to the effective date of the termination payable at such time as would have otherwise been required by the terms of the rental agreement. The tenant is not liable for any other rent or damages due to the early termination of the tenancy as provided for in this section. Notwithstanding any provision of this section to the contrary, if a tenant terminates the rental agreement pursuant to this section 14 or more days prior to occupancy, no damages or penalties of any kind will be assessable.
(5) The provisions of this section may not be waived or modified by the agreement of the parties under any circumstances.
**History**.—s. 6, ch. 2001-179; s. 1, ch. 2002-4; s. 1, ch. 2003-30; s. 5, ch. 2003-72.
**83.683 Rental application by a servicemember. –**
(1) If a landlord requires a prospective tenant to complete a rental application before residing in a rental unit, the landlord must complete processing of a rental application submitted by a prospective tenant who is a servicemember, as defined in s. 250.01, within 7 days after submission and must, within that 7-day period, notify the servicemember in writing of an application approval or denial and, if denied, the reason for denial. Absent a timely denial of the rental application, the landlord must lease the rental unit to the servicemember if all other terms of the application and lease are complied with.

Tenant [KMF 08/17/22 9:52 AM EDT dotloop verified] and Landlord [SL 08/17/22 9:17 AM EDT dotloop verified] acknowledge receipt of a copy of this page which is Page 17 of 18

(2) If a condominium association, as defined in chapter 718, a cooperative association, as defined in chapter 719, or a homeowners' association, as defined in chapter 720, requires a prospective tenant of a condominium unit, cooperative unit, or parcel within the association's control to complete a rental application before residing in a rental unit or parcel, the association must complete processing of a rental application submitted by a prospective tenant who is a servicemember, as defined in s. 250.01, within 7 days after submission and must, within that 7-day period, notify the servicemember in writing of an application approval or denial and, if denied, the reason for the denial. Absent timely denial of the rental application, the association must allow the unit or parcel owner to lease the rental unit or parcel to the servicemember and the landlord must lease the unit or parcel to the servicemember if all other terms of the application and lease are complied with.

(3) The provisions of this section may not be waived or modified by the agreement of the parties under any circumstances.

Tenant [____] and Landlord [____] acknowledge receipt of a copy of this page which is Page 18 of 18

## COMMERCIAL LEASE AGREEMENT
## Portion of 4205 PINE ISLAND RD NW
## MATLACHA, FLORIDA 33993

**THIS LEASE AGREEMENT** is made and entered into this 4th Day of May, 2021, by and between **4205 Pine Island LLC, a Florida Limited Liability**, whose address is, **4205 Pine Island Road NW Matlacha, Florida 33993** (hereinafter referred to as "Landlord"), and **Island Pho and Grill Restaurant LLC, a Florida Limited Liability**, whose address is, **4205 Pine Island Road NW Matlacha, Florida 33993** (hereinafter referred to as "Tenant").

## ARTICLE I - GRANT OF LEASE

Landlord, in consideration of the rents to be paid and the covenants and agreements to be performed and observed by the Tenant, does hereby lease to the Tenant and the Tenant does hereby lease and take from the Landlord the property described below (the "Leased Premises"), together with, as part of the parcel, all improvements located thereon, specifically defined as follows:

**A portion of the following legally described real property, to wit,**

All that tract or parcel of land situated in Government Lot 1, (Mainland), Section 24, Township 44 South, Range 22 East, more particularly described as follows: From the Northerly corner of Lot 25, Block 1, Pine Island Fill Subdivision, on the Southwesterly line of Government Lot 1, (Mainland) as recorded in Plat Book 8, Page 86, of the public records of Lee County, Florida, run North 45 degrees 00' East on an assumed bearing parallel to and 33 feet from the centerline of State Road No. 78, for 101 feet to the point of beginning; thence run North 45 degrees 00' East 77 feet; thence run South 45 degrees 00' East 167 feet; thence run South 45 degrees 00' West 100 feet; thence run North 45 degrees 00' West 50 feet; thence run North 45 degrees 00' East 23 feet; thence run North 45 degrees 00' West 117 feet to the point of beginning.

**Also known as**

**4205 Pine Island Road NW Matlacha, Florida 33993 consisting of the front outbuilding (restaurant) consisting of approximately 1,039 +/- square feet and the outside patio area in the front of the restaurant and to the west of the restaurant and the parking area located to the right or easterly of the restaurant. This lease does not include any of the patio space behind or southerly to the restaurant. In addition to the leased space defined above, the Tenant may also use the back garage for storage space for restaurant purposes only.**

## ARTICLE II - LEASE TERM

Section 1.    Total Term of Lease.    The term of this Lease shall begin on the commencement date, as defined in Section 2 of this Article II, and shall terminate on ~~June 30th, 2026.~~
DECEMBER 30th, 2027 ——
_TD_

Landlord's
Initials

Tenant's
Initials

_TD_

Section 1. Total Term of Lease. The term of this Lease shall begin on the commencement date, as defined in Section 2 of this Article II, and shall terminate on June 30th, 2027.

Section 2. Commencement Date. The "Commencement Date" shall be July 1st, 2024.

*Jan 15, 2022*

## ARTICLE III - EXTENSIONS

Upon the expiration of the term of this lease, the Tenant shall have the option to extend this lease one (1) additional five (5) year term provided the Tenant provides the Landlord sixty (60) days prior written notification, notifying the Landlord of the Tenant's intent to exercise the option to extend. If the Tenant does exercise the option to extend the lease, the rent shall be adjusted during the extended term as provided for below. Thereafter, the parties hereto may elect to extend this Agreement upon such terms and conditions as may be agreed upon in writing and signed by the parties at the time of any such extension.

## ARTICLE IV - DETERMINATION OF RENT

The Tenant agrees to pay the Landlord and the Landlord agrees to accept, during the term hereof, at such place as the Landlord shall from time to time direct by notice to the Tenant, rent at the following rates and times:

Section 1. Annual Rent. Annual rent for the term of the Lease shall be THIRTY THOUSAND DOLLARS and 00/100 [$30,000.00] Dollars, inclusive of applicable sales tax, if any.

Section 2. Payment of Yearly Rent. The annual rent shall be payable in advance in equal monthly installments of one-twelfth (1/12th) of the total yearly rent, which shall be TWO THOUSAND FIVE HUNDRED DOLLARS and 00/100 [ $2,500.00], on the first day of each and every calendar month during the term hereof.

Reference to yearly rent hereunder shall not be implied or construed to the effect that this Lease or the obligation to pay rent hereunder is from year to year, or for any term shorter than the existing Lease term, plus any extensions as may be agreed upon.

Section 3. Late Payments. Other remedies for nonpayment notwithstanding, if any payment of any rent due hereunder, is not received by the Landlord on or before the fifth (5th) day after the rent due date, the Tenant shall also pay a late fee in the amount of FIFTY DOLLARS ($50.00) plus interest in the amount of 18% per annum on the remaining unpaid balance of the rent due, retroactively to the date that the rent was actually due, until paid.

| Landlord's | Tenant's |
|---|---|
| Initials | Initials |

____sl____

Section 2.  Commencement Date. The "Commencement Date" shall be ~~July 1st, 2021.~~
*January 18th, 2022*

## ARTICLE III - EXTENSIONS

Upon the expiration of the term of this lease, the Tenant shall have the option to extend this lease one (1) additional five (5) year term provided the Tenant provides the Landlord sixty (60) days prior written notification, notifying the Landlord of the Tenant's intent to exercise the option to extend. If the Tenant does exercise the option to extend the lease, the rent shall be adjusted during the extended term as provided for below. Thereafter, the parties hereto may elect to extend this Agreement upon such terms and conditions as may be agreed upon in writing and signed by the parties at the time of any such extension.

## ARTICLE IV - DETERMINATION OF RENT

The Tenant agrees to pay the Landlord and the Landlord agrees to accept, during the term hereof, at such place as the Landlord shall from time to time direct by notice to the Tenant, rent at the following rates and times:

Section 1.  Annual Rent.  Annual rent for the term of the Lease shall be THIRTY THOUSAND DOLLARS and 00/100 [$30,000.00] Dollars, inclusive of applicable sales tax, if any.

Section 2.  Payment of Yearly Rent.  The annual rent shall be payable in advance in equal monthly installments of one-twelfth (1/12th) of the total yearly rent, which shall be TWO THOUSAND FIVE HUNDRED DOLLARS and 00/100 [ $2,500.00], on the first day of each and every calendar month during the term hereof.

Reference to yearly rent hereunder shall not be implied or construed to the effect that this Lease or the obligation to pay rent hereunder is from year to year, or for any term shorter than the existing Lease term, plus any extensions as may be agreed upon.

Section 3. Late Payments. Other remedies for nonpayment notwithstanding, if any payment of any rent due hereunder, is not received by the Landlord on or before the fifth (5th) day after the rent due date, the Tenant shall also pay a late fee in the amount of FIFTY DOLLARS ($50.00) plus interest in the amount of 18% per annum on the remaining unpaid balance of the rent due, retroactively to the date that the rent was actually due, until paid.

Section 4. Rental Increase / Extended term. The rent shall remain constant during the initial term herein. However, if the Tenant exercises the option to extend the term for an additional five (5) years. There shall be a rental increase in the amount of three percent (3%) during the extended five (5) year term. The increase shall take effect commencing on the first day of the extended term and remain constant during the remainder of the extended term. There will not be any further increase during the extended term.

Landlord's                                          Tenant's
Initials                                            Initials

**ARTICLE V - SECURITY DEPOSIT**

The Tenant has deposited with the Landlord and the Landlord has received the sum of TWO THOUSAND DOLLARS [$2,000.00] as security for the full and faithful performance by the Tenant of all the terms of this lease required to be performed by the Tenant. Such sum shall be returned to the Tenant after the expiration of this lease, provided the Tenant has fully and faithfully carried out all of its terms. In the event of a bona fide sale of the property of which the leased premises are a part, the Landlord shall have the right to transfer the security to the purchaser to be held under the terms of this lease, and the Landlord shall be released from all liability for the return of such security to the Tenant.

**ARTICLE VI - TAXES**

Section 1.  Personal Property Taxes.  The Tenant shall be liable for all taxes levied against any leasehold interest of the Tenant or personal property and trade fixtures owned or placed by the Tenant in the Leased Premises.

Section 2.  Real Estate Taxes.  The Landlord, shall pay all ad valorum and all non-ad valorum real property taxes that are assessed against the property.

Section 3.  Contest of Taxes.  Intentionally left blank

Section 4. Triple Net Lease. This is NOT a triple net lease.

Section 5. Sales Tax. The Tenant shall be responsible for collecting and paying all Sales tax that may be generated through the operation of the Tenant's restaurant business that is operated on the leased property.

**ARTICLE VII - CONSTRUCTION AND COMPLETION**

Section 1.  Improvements.  All improvements to the property are completed. The Tenant is receiving and accepts the premises in "As-Is" condition. Any and all future improvements, unless agreed to otherwise shall be at the expense of the Tenant and shall be performed in accordance with all of the terms and conditions set forth herein.

Section 2.  Utilities.  Landlord shall provide or cause to be provided the mains, conduits and other facilities to provide water, electricity, telephone service and sewage service to the premises.  Tenant shall however arrange and pay for all water, sanitation, sewer, electricity, light, heat, gas, power, fuel, janitorial, and other services incident to Tenant's use of the Leased Premises, whether or not the cost thereof be a charge or imposition against the Leased Premises.

**ARTICLE VIII - OBLIGATIONS FOR REPAIRS**

Landlord's                                              Tenant's
Initials                                                Initials

Section 1.  LANDLORD'S Repairs.  Subject to any provisions herein to the contrary, and except for maintenance or replacement necessitated as the result of the act or omission of sublessees, licensees or contractors, the Landlord shall be required to repair only defects, deficiencies, deviations or failures of materials or workmanship in the building. The Landlord shall keep the Leased Premises free of such defects, deficiencies, deviations or failures during the term hereof.

Section 2.  TENANT'S Repairs.  The Tenant shall repair and maintain the Leased Premises in good order and condition, except for reasonable wear and tear, the repairs required of Landlord pursuant hereto, and maintenance or replacement necessitated as the result of the act or omission or negligence of the Landlord, its employees, agents, or contractors.

Section 3.  Requirements of the Law.  The Tenant agrees that if any federal, state or municipal government or any department or division thereof shall condemn the Leased Premises or any part thereof as not in conformity with the laws and regulations relating to the construction thereof as of the commencement date with respect to conditions latent or otherwise which existed on the Commencement Date, or, with respect to items which are the Landlord's duty to repair pursuant to Section 1 and 3 of this Article; and such federal, state or municipal government or any other department or division thereof, has ordered or required, or shall hereafter order or require, any alterations or repairs thereof or installations and repairs as may be necessary to comply with such laws, orders or requirements (the validity of which the Tenant shall be entitled to contest); and if by reason of such laws, orders or the work done by the Landlord in connection therewith, the Tenant is deprived of the use of the Leased Premises, the rent shall be abated or adjusted, as the case may be, in proportion to that time during which, and to that portion of the Leased Premises of which, the Tenant shall shall be deprived as a result thereof, and the Landlord shall be obligated to make such repairs, alterations or modifications at Landlord's expense.

Section 4.  TENANT'S Alterations.  The Tenant shall have the right, at its sole expense, from time to time, to redecorate the Leased Premises and to make such non-structural alterations and changes in such parts thereof as the Tenant shall deem expedient or necessary for its purposes; provided, however, that such alterations and changes shall neither impair the structural soundness nor diminish the value of the Leased Premises. The Tenant may make structural alterations and additions to the Leased Premises provided that Tenant has first obtained the consent thereto of the Landlord in writing. The Landlord agrees that it shall not withhold such consent unreasonably. The Landlord shall execute and deliver upon the request of the Tenant such instrument or instruments embodying the approval of the

Landlord's                                             Tenant's
Initials                                               Initials



Landlord which may be required by the public or quasi public authority for the purpose of obtaining any licenses or permits for the making of such alterations, changes and/or installations in, to or upon the Leased Premises and the Tenant agrees to pay for such licenses or permits. Tenant shall have the right to renovate the outdoor space covered under this lease subject to the terms and provisions herein.

Section 5. Outdoor Maintenance. The Tenant shall be responsible for maintaining the parking lot in a clean and orderly manner absent of any trash or rubbish and shall maintain all landscaping in the outdoor areas referenced herein, that are on the restaurant side of the privacy fence located on the southerly side of the leased premises. As part of the maintenance, the Tenant shall have the right to reasonably trim back the mango tree on the side of the restaurant.

Section 6. Permits and Expenses. Each party agrees that it will procure all necessary permits for making any repairs, alterations, or other improvements for installations, when applicable. Each Party hereto shall give written notice to the other party of any repairs required of the other pursuant to the provisions of this Article and the party responsible for said repairs agrees promptly to commence such repairs and to prosecute the same to completion diligently, subject, however, to the delays occasioned by events beyond the control of such party.

Each party agrees to pay promptly when due the entire cost of any work done by it upon the Leased Premises so that the Leased Premises at all times shall be free of liens for labor and materials. Each party further agrees to hold harmless and indemnify the other party from and against any and all injury, loss, claims or damage to any person or property occasioned by or arising out of the doing of any such work by such party or its employees, agents or contractors. Each party further agrees that in doing such work that it will employ materials of good quality and comply with all governmental requirements, and perform such work in a good and workmanlike manner.

## ARTICLE IX - TENANT'S COVENANTS

Section 1. TENANT's Covenants. Tenant covenants and agrees as follows:

a. To procure any licenses and permits required for any use made of the Leased Premises by Tenant, and upon the expiration or termination of this Lease, to remove its goods and effects and those of all persons claiming under it, and to yield up peaceably to Landlord the Leased Premises in good order, repair and condition in all respects; excepting only damage by fire and casualty covered by Tenant's insurance coverage, structural repairs (unless Tenant is obligated to make such repairs hereunder) and reasonable

Landlord's
Initials

Tenant's
Initials

wear and tear;

b. To permit Landlord and its agents to examine the Leased Premises at reasonable times and to show the Leased Premises to prospective purchasers of the Building and to provide Landlord, if not already available, with a set of keys for the purpose of said examination, provided that Landlord shall not thereby unreasonably interfere with the conduct of Tenant's business;

c. To permit Landlord to enter the Leased Premises to inspect such repairs, improvements, alterations or additions thereto as may be required under the provisions of this Lease. If, as a result of such repairs, improvements, alterations, or additions, Tenant is deprived of the use of the Leased Premises, the rent shall be abated or adjusted, as the case may be, in proportion to that time during which, and to that portion of the Leased Premises of which, Tenant shall be deprived as a result thereof.

## ARTICLE X - INDEMNITY BY TENANT

Section l. Indemnity and Public Liability.  The Tenant shall save Landlord harmless and indemnify Landlord from all injury, loss, claims or damage to any person or property while on the Leased Premises, unless caused by the willful acts or omissions or gross negligence of Landlord, its employees, agents, licensees or contractors. Tenant shall maintain, with respect to the Leased Premises, public liability insurance with limits of not less than one million dollars for injury or death from one accident and $250,000.00 property damage insurance, insuring Landlord and Tenant against injury to persons or damage to property on or about the Leased Premises. A copy of the policy or a certificate of insurance shall be delivered to Landlord on or before the commencement date and no such policy shall be cancellable without ten (10) days prior written notice to Landlord.

## ARTICLE XI - USE OF PROPERTY BY TENANT

Section 1.  Use.  The Leased Premises may be occupied and used by Tenant exclusively as a restaurant and for no other purpose. The restaurant is commonly known as Island Pho and Grill. The Tenant shall not do or suffer anything to be done in or about the premises, nor shall the Tenant bring or allow to be brought into the premises, which in anyway will increase the rate of any fire insurance upon the building or the contents, cause a cancellation of said insurance or otherwise affect said insurance in any way. The Tenant shall not do or suffer anything to be done in or about the premises, which will in anyway obstruct or interfere with the rights of other occupants located about the property. The Tenant shall not do or suffer anything to be done in or about the premises that is an unlawful or an objectionable purpose. Tenant further agrees not to commit waste in or upon the premises nor create any nuisances.

Landlord's                                                    Tenant's
Initials                                                        Initials



Nothing herein shall give Tenant the right to use the property for any other purpose or to sublease, assign, or license the use of the property to any sublessee, assignee, or licensee, which or who shall use the property for any other use.

## ARTICLE XII - SIGNAGE

Section 1. Exterior Signs. Tenant shall have the right, at its sole risk and expense and in conformity with applicable laws and ordinances, to erect and thereafter, to repair or replace, if it shall so elect signs on any portion of the Leased Premises, providing that Tenant shall remove any such signs upon termination of this lease, and repair all damage occasioned thereby to the Leased Premises.

Section 2. Interior Signs. Tenant shall have the right, at its sole risk and expense and in conformity with applicable laws and ordinances, to erect, maintain, place and install its usual and customary signs and fixtures in the interior of the Leased Premises.

## ARTICLE XIII - INSURANCE

Section 1. Insurance Proceeds. In the event of any damage to or destruction of the Leased Premises, Tenant shall adjust the loss and settle all claims with the insurance companies issuing such policies. The parties hereto do irrevocably assign the proceeds from such insurance policies for the purposes hereinafter stated to any institutional first mortgagee or to Landlord and Tenant jointly, if no institutional first mortgagee then holds an interest in the Leased Premises. All proceeds of said insurance shall be paid into a trust fund under the control of any institutional first mortgagee, or of Landlord and Tenant if no institutional first mortgagee then holds an interest in the Leased Premises, for repair, restoration, rebuilding or replacement, or any combination thereof, of the Leased Premises or of the improvements in the Leased Premises. In case of such damage or destruction, Landlord shall be entitled to make withdrawals from such trust fund, from time to time, upon presentation of:

a. bills for labor and materials expended in repair, restoration, rebuilding or replacement, or any combination thereof;

b. Landlord's sworn statement that such labor and materials for which payment is being made have been furnished or delivered on site; and

c. the certificate of a supervising architect (selected by Landlord and Tenant and approved by an institutional first mortgagee, if any, whose fees

Landlord's
Initials

Tenant's
Initials

will be paid out of said insurance proceeds) certifying that the work being
paid for has been completed in accordance with the Plans and Specifications
previously approved by Landlord , Tenant and any institutional first
mortgagee in a first class, good and workmanlike manner and in accordance
with all pertinent governmental requirements.

Any insurance proceeds in excess of such proceeds as shall be necessary for
such repair, restoration, rebuilding, replacement or any combination
thereof shall be the sole property of Landlord subject to any rights
therein of Landlord's mortgagee, and if the proceeds necessary for such
repair, restoration, rebuilding or replacement, or any combination thereof
shall be inadequate to pay the cost thereof, Tenant shall suffer the
deficiency.

Section 2.  Subrogation.  Landlord and Tenant hereby release each other, to
the extent of the insurance coverage provided hereunder, from any and all
liability or responsibility (to the other or anyone claiming through or
under the other by way of subrogation or otherwise) for any loss to or
damage of property covered by the fire and extended coverage insurance
policies insuring the Leased Premises and any of Tenant's property, even if
such loss or damage shall have been caused by the fault or negligence of
the other party.

## ARTICLE XIV - DAMAGE TO DEMISED PREMISES

Section 1.  Abatement or Adjustment of Rent.  If the whole or any part of
the Leased Premises shall be damaged or destroyed by fire or other casualty
after the execution of this Lease and before the termination hereof, then
in every case the rent reserved in Article IV herein and other charges, if
any, shall be abated or adjusted, as the case may be, in proportion to that
portion of the Leased Premises of which Tenant shall be deprived on account
of such damage or destruction and the work of repair, restoration,
rebuilding, or replacement or any combination thereof, of the improvements
so damaged or destroyed, shall in no way be construed by any person to
effect any reduction of sums or proceeds payable under any rent insurance
policy.

Section 2.  Repairs and Restoration.  Landlord agrees that in the event of
the damage or destruction of the Leased Premises, Landlord forthwith shall
proceed to repair, restore, replace or rebuild the Leased Premises
(excluding Tenant's leasehold improvements), to substantially the condition
in which the same were immediately prior to such damage or destruction. The
Landlord thereafter shall diligently prosecute said work to completion
without delay or interruption except for events beyond the reasonable
control of Landlord . Notwithstanding the foregoing, if Landlord does not

Landlord's                                          Tenant's
Initials                                            Initials

                                

either obtain a building permit within ninety (90) days of the date of such damage or destruction, or complete such repairs, rebuilding or restoration and comply with conditions (a), (b) and (c) in Section 1 of Article XIII within nine (9) months of such damage or destruction, then Tenant may at any time thereafter cancel and terminate this Lease by sending ninety (90) days written notice thereof to Landlord , or, in the alternative, Tenant may, during said ninety (90) day period, apply for the same and Landlord shall cooperate with Tenant in Tenant's application. Notwithstanding the foregoing, if such damage or destruction shall occur during the last year of the term of this Lease, or during any renewal term, and shall amount to twenty-five (25%) percent or more of the replacement cost, (exclusive of the land and foundations), this Lease, except as hereinafter provided in Section 3 of Article XV, may be terminated at the election of either Landlord or Tenant, provided that notice of such election shall be sent by the party so electing to the other within thirty (30) days after the occurrence of such damage or destruction. Upon termination, as aforesaid, by either party hereto, this Lease and the term thereof shall cease and come to an end, any unearned rent or other charges paid in advance by Tenant shall be refunded to Tenant, and the parties shall be released hereunder, each to the other, from all liability and obligations hereunder thereafter arising.

## ARTICLE XV - CONDEMNATION

Section 1.  Total Taking.  If, after the execution of this Lease and prior to the expiration of the term hereof, the whole of the Leased Premises shall be taken under power of eminent domain by any public or private authority, or conveyed by Landlord to said authority in lieu of such taking, then this Lease and the term hereof shall cease and terminate as of the date when possession of the Leased Premises shall be taken by the taking authority and any unearned rent or other charges, if any, paid in advance, shall be refunded to Tenant.

Section 2.  Partial Taking.  If, after the execution of this Lease and prior to the expiration of the term hereof, any public or private authority shall, under the power of eminent domain, take, or Landlord shall convey to said authority in lieu of such taking, property which results in a reduction by fifteen (15%) percent or more of the area in the Leased Premises, or of a portion of the Leased Premises that substantially interrupts or substantially obstructs the conducting of business on the Leased Premises; then Tenant may, at its election, terminate this Lease by giving Landlord notice of the exercise of Tenant's election within thirty (30) days after Tenant shall receive notice of such taking. In the event of termination by Tenant under the provisions of Section 1 of this Article XV, this Lease and the term hereof shall cease and terminate as of the date

Landlord's                                                    Tenant's
Initials                                                      Initials



when possession shall be taken by the appropriate authority of that portion of the Entire Property that results in one of the above takings, and any unearned rent or other charges, if any, paid in advance by Tenant shall be refunded to Tenant.

Section 3. Restoration. In the event of a taking in respect of which Tenant shall not have the right to elect to terminate this Lease or, having such right, shall not elect to terminate this Lease, this Lease and the term thereof shall continue in full force and effect and Landlord , at Landlord's sole cost and expense, forthwith shall restore the remaining portions of the Leased Premises, including any and all improvements made theretofore to an architectural whole in substantially the same condition that the same were in prior to such taking. A just proportion of the rent reserved herein and any other charges payable by Tenant hereunder, according to the nature and extent of the injury to the Leased Premises and to Tenant's business, shall be suspended or abated until the completion of such restoration and thereafter the rent and any other charges shall be reduced in proportion to the square footage of the Leased Premises remaining after such taking.

Section 4. The Award. All compensation awarded for any taking, whether for the whole or a portion of the Leased Premises, shall be the sole property of the Landlord whether such compensation shall be awarded for diminution in the value of, or loss of, the leasehold or for diminution in the value of, or loss of, the fee in the Leased Premises, or otherwise. The Tenant hereby assigns to Landlord all of Tenant's right and title to and interest in any and all such compensation. However, the Landlord shall not be entitled to and Tenant shall have the sole right to make its independent claim for and retain any portion of any award made by the appropriating authority directly to Tenant for loss of business, or damage to or depreciation of, and cost of removal of fixtures, personalty and improvements installed in the Leased Premises by, or at the expense of Tenant, and to any other award made by the appropriating authority directly to Tenant.

Section 5. Release. In the event of any termination of this Lease as the result of the provisions of this Article XV, the parties, effective as of such termination, shall be released, each to the other, from all liability and obligations thereafter arising under this lease.

## ARTICLE XVI - DEFAULT

Section 1. LANDLORD'S Remedies. In the event that:

a. Tenant shall on three or more occasions be in default in the payment of

| Landlord's Initials | Tenant's Initials |
|---|---|

rent or other charges herein required to be paid by Tenant (default herein being defined as payment received by Landlord ten or more days subsequent to the due date), regardless of whether or not such default has occurred on consecutive or non-consecutive months; or

b. Tenant has caused a lien to be filed against the Landlord's property and said lien is not removed within thirty (30) days of recordation thereof; or

c. Tenant shall default in the observance or performance of any of the covenants and agreements required to be performed and observed by Tenant hereunder for a period of thirty (30) days after notice to Tenant in writing of such default (or if such default shall reasonably take more than thirty (30) days to cure, Tenant shall not have commenced the same within the thirty (30) days and diligently prosecuted the same to completion); or

d. Sixty (60) days have elapsed after the commencement of any proceeding by or against Tenant, whether by the filing of a petition or otherwise, seeking any reorganization, arrangement, composition, readjustment, liquidation, dissolution or similar relief under the present or future Federal Bankruptcy Act or any other present or future applicable federal, state or other statute or law, whereby such proceeding shall not have been dismissed (provided, however, that the non-dismissal of any such proceeding shall not be a default hereunder so long as all of Tenant's covenants and obligations hereunder are being performed by or on behalf of Tenant); then Landlord shall be entitled to its election (unless Tenant shall cure such default prior to such election), to exercise concurrently or successively, any one or more of the following rights:

i. Terminate this Lease by giving Tenant notice of termination, in which event this Lease shall expire and terminate on the date specified in such notice of termination, with the same force and effect as though the date so specified were the date herein originally fixed as the termination date of the term of this Lease, and all rights of Tenant under this Lease and in and to the Premises shall expire and terminate, and Tenant shall remain liable for all obligations under this Lease arising up to the date of such termination, and Tenant shall surrender the Premises to Landlord on the date specified in such notice; or

ii. Terminate this Lease as provided herein and recover from Tenant all damages Landlord may incur by reason of Tenant's default, including, without limitation, a sum which, at the date of such termination, represents the then value of the excess, if any, of (a) the Minimum Rent, Percentage Rent, Taxes and all other sums which would have been payable hereunder by Tenant for the period commencing with the day following the

Landlord's                                                      Tenant's
Initials                                                         Initials



date of such termination and ending with the date herein before set for the expiration of the full term hereby granted, over (b) the aggregate reasonable rental value of the Premises for the same period, all of which excess sum shall be deemed immediately due and payable; or

iii.  Without terminating this Lease, declare immediately due and payable all Minimum Rent, Taxes, and other rents and amounts due and coming due under this Lease for the entire remaining term hereof, together with all other amounts previously due, at once; provided, however, that such payment shall not be deemed a penalty or liquidated damages but shall merely constitute payment in advance of rent for the remainder of said term. Upon making such payment, Tenant shall be entitled to receive from Landlord all rents received by Landlord from other assignees, tenants, and subtenants on account of said Premises during the term of this Lease, provided that the monies to which tenant shall so become entitled shall in no event exceed the entire amount actually paid by Tenant to Landlord pursuant to the preceding sentence less all costs, expenses and attorney's fees of Landlord incurred in connection with the reletting of the Premises; or

iv.  Without terminating this Lease, and with or without notice to Tenant, Landlord may in its own name but as agent for Tenant enter into and upon and take possession of the Premises or any part thereof, and, at landlord's option, remove persons and property therefrom, and such property, if any, may be removed and stored in a warehouse or elsewhere at the cost of, and for the account of Tenant, all without being deemed guilty of trespass or becoming liable for any loss or damage which may be occasioned thereby, and Landlord may rent the Premises or any portion thereof as the agent of Tenant with or without advertisement, and by private negotiations and for any term upon such terms and conditions as Landlord may deem necessary or desirable in order to relet the Premises. Landlord shall in no way be responsible or liable for any rental concessions or any failure to rent the Premises or any part thereof, or for any failure to collect any rent due upon such reletting. Upon such reletting, all rentals received by Landlord from such reletting shall be applied: first, to the payment of any indebtedness (other than any rent due hereunder) from Tenant to Landlord; second, to the payment of any costs and expenses of such reletting, including, without limitation, brokerage fees and attorney's fees and costs of alterations and repairs; third, to the payment of rent and other charges then due and unpaid hereunder; and the residue, if any shall be held by Landlord to the extent of and for application in payment of future rent as the same may become due and payable hereunder. In reletting the Premises as aforesaid, Landlord may grant rent concessions and Tenant shall not be credited therefor. If such rentals received from such reletting shall at any time or from time to time be less than sufficient to pay to Landlord the entire sums then due from Tenant hereunder, Tenant shall pay any such

Landlord's                                                      Tenant's
Initials                                                        Initials



deficiency to Landlord. Such deficiency shall, at Landlord's option, be calculated and paid monthly. No such reletting shall be construed as an election by Landlord to terminate this Lease unless a written notice of such election has been given to Tenant by Landlord. Notwithstanding any such reletting without termination, Landlord may at any time thereafter elect to terminate this Lease for any such previous default provided same has not been cured; or

v. Without liability to Tenant or any other party and without constituting a constructive or actual eviction, suspend or discontinue furnishing or rendering to Tenant any property, material, labor, Utilities or other service, whether Landlord is obligated to furnish or render the same, so long as Tenant is in default under this Lease; or

vi. Allow the Premises to remain unoccupied and collect rent from Tenant as it comes due; or

vii. Foreclose the security interest described herein, including the immediate taking of possession of all property on or in the Premises; or

viii. Pursue such other remedies as are available at law or equity.

e. Landlord's pursuit of any remedy of remedies, including without limitation, any one or more of the remedies stated herein shall not (1) constitute an election of remedies or preclude pursuit of any other remedy or remedies provided in this Lease or any other remedy or remedies provided by law or in equity, separately or concurrently or in any combination, or (2) sever as the basis for any claim of constructive eviction, or allow Tenant to withhold any payments under this Lease.

Section 2. LANDLORD'S Self Help. If in the performance or observance of any agreement or condition in this Lease contained on its part to be performed or observed and shall not cure such default within thirty (30) days after notice from Landlord specifying the default (or if such default shall reasonably take more than thirty (30) days to cure, shall diligently prosecuted the same to completion), Landlord may, at its option, without waiving any claim for damages for breach of agreement, at any time thereafter cure such default for the account of Tenant, and any amount paid or contractual liability incurred by Landlord in so doing shall be deemed paid or incurred for the account of Tenant and Tenant agrees to reimburse Landlord therefor and save Landlord harmless therefrom. Provided, however, that Landlord may cure any such default as aforesaid prior to the expiration of said waiting period, without notice to Tenant if any emergency situation exists, or after notice to Tenant, if the curing of such default prior to the expiration of said waiting period is reasonably

Landlord's
Initials



Tenant's
Initials

necessary to protect the Leased Premises or Landlord's interest therein, or to prevent injury or damage to persons or property. If Tenant shall fail to reimburse Landlord upon demand for any amount paid for the account of Tenant hereunder, said amount shall be added to and become due as a part of the next payment of rent due and shall for all purposes be deemed and treated as rent hereunder.

Section 3. TENANT'S Self Help. If Landlord shall default in the performance or observance of any agreement or condition in this Lease contained on its part to be performed or observed, and if Landlord shall not cure such default within thirty (30) days after notice from Tenant specifying the default (or, if such default shall reasonably take more than thirty (30) days to cure, and Landlord shall not have commenced the same within the thirty (30) days and diligently prosecuted the same to completion), Tenant may, at its option, without waiving any claim for damages for breach of agreement, at any time thereafter cure such default for the account of Landlord and any amount paid or any contractual liability incurred by Tenant in so doing shall be deemed paid or incurred for the account of Landlord and Landlord shall reimburse Tenant therefor and save Tenant harmless therefrom. Provided, however, that Tenant may cure any such default as aforesaid prior to the expiration of said waiting period, without notice to Landlord if an emergency situation exists, or after notice to Landlord, if the curing of such default prior to the expiration of said waiting period is reasonably necessary to protect the Leased Premises or Tenant's interest therein or to prevent injury or damage to persons or property. If Landlord shall fail to reimburse Tenant upon demand for any amount paid or liability incurred for the account of Landlord hereunder, said amount or liability may be deducted by Tenant from the next or any succeeding payments of rent due hereunder; provided, however, that should said amount or the liability therefor be disputed by Landlord, Landlord may contest its liability or the amount thereof, through arbitration or through a declaratory judgment action and Landlord shall bear the cost of the filing fees therefor.

## ARTICLE XVII - TITLE

Section l. Subordination. Tenant shall, upon the request of Landlord in writing, subordinate this Lease to the lien of any present or future institutional mortgage upon the Leased Premises irrespective of the time of execution or the time of recording of any such mortgage. Provided, however, that as a condition to such subordination, the holder of any such mortgage shall enter first into a written agreement with Tenant in form suitable for recording to the effect that:

a. in the event of foreclosure or other action taken under the mortgage by

Landlord's
Initials

Tenant's
Initials



the holder thereof, this Lease and the rights of Tenant hereunder shall not be disturbed but shall continue in full force and effect so long as Tenant shall not be in default hereunder, and

b. such holder shall permit insurance proceeds and condemnation proceeds to be used for any restoration and repair required by the provisions of Articles XIII, XIV or XV, respectively. Tenant agrees that if the mortgagee or any person claiming under the mortgagee shall succeed to the interest of Landlord in this Lease, Tenant will recognize said mortgagee or person as its Landlord under the terms of this Lease, provided that said mortgagee or person for the period during which said mortgagee or person respectively shall be in possession of the Leased Premises and thereafter their respective successors in interest shall assume all of the obligations of Landlord hereunder. The word "mortgage", as used herein includes mortgages, deeds of trust or other similar instruments, and modifications, and extensions thereof. The term "institutional mortgage" as used in this Article XVII means a mortgage securing a loan from a bank (commercial or savings) or trust company, insurance company or pension trust or any other lender institutional in nature and constituting a lien upon the Leased Premises.

Section 2. Quiet Enjoyment. Landlord covenants and agrees that upon Tenant paying the rent and observing and performing all of the terms, covenants and conditions on Tenant's part to be observed and performed hereunder, that Tenant may peaceably and quietly have, hold, occupy and enjoy the Leased Premises in accordance with the terms of this Lease without hindrance or molestation from Landlord or any persons lawfully claiming through Landlord .

Section 3. Zoning and Good Title. Landlord warrants and represents, upon which warranty and representation Tenant has relied in the execution of this Lease, that Landlord is the owner of the Leased Premises, in fee simple absolute, free and clear of all encumbrances, except for the easements, covenants and restrictions of record as of the date of this Lease. Such exceptions shall not impede or interfere with the quiet use and enjoyment of the Leased Premises by Tenant. Landlord further warrants and covenants that this Lease is and shall be a first lien on the Leased Premises, subject only to any Mortgage to which this Lease is subordinate or may become subordinate pursuant to an agreement executed by Tenant, and to such encumbrances as shall be caused by the acts or omissions of Tenant; that Landlord has full right and lawful authority to execute this Lease for the term, in the manner, and upon the conditions and provisions herein contained; that there is no legal impediment to the use of the Leased Premises as set out herein; that the Leased Premises are not subject to any easements, restrictions, zoning ordinances or similar governmental

| Landlord's Initials | Tenant's Initials |
|---|---|
|  | TD |

regulations which prevent their use as set out herein; that the Leased Premises presently are zoned for the use contemplated herein and throughout the term of this lease may continue to be so used therefor by virtue of said zoning, under the doctrine of "non-conforming use", or valid and binding decision of appropriate authority, except, however, that said representation and warranty by Landlord shall not be applicable in the event that Tenant's act or omission shall invalidate the application of said zoning, the doctrine of "non-conforming use" or the valid and binding decision of the appropriate authority. Landlord shall furnish without expense to Tenant, within thirty (30) days after written request therefor by Tenant, a title report covering the Leased Premises showing the condition of title as of the date of such certificate, provided, however, that Landlord's obligation hereunder shall be limited to the furnishing of only one such title report.

Section 4.  Licenses.  It shall be the Tenant's responsibility to obtain any and all necessary licenses and the Landlord shall bear no responsibility therefor; the Tenant shall promptly notify Landlord of the fact that it has obtained the necessary licenses in order to prevent any delay to Landlord in commencing construction of the Leased Premises.

Section 5. Subsequent Owners.  It is understood and agreed that the terms set forth in the this lease, inclusive of any extensions provided hereunder shall survive the transfer of ownership of any interest in the property at any giver subsequent date.

## ARTICLE XVIII - EXTENSIONS/WAIVERS/DISPUTES

Section l.  Extension Period.  Any extension hereof shall be subject to the provisions of Article III hereof.

Section 2.  Holding Over.  In the event that Tenant or anyone claiming under Tenant shall continue occupancy of the Leased Premises after the expiration of the term of this Lease or any renewal or extension thereof without any agreement in writing between Landlord and Tenant with respect thereto, such occupancy shall not be deemed to extend or renew the term of the Lease, but such occupancy shall continue as a tenancy at will, from month to month, upon the covenants, provisions and conditions herein contained. The rental shall be the rental in effect during the term of this Lease as extended or renewed, prorated and payable for the period of such occupancy.

Section 3.  Waivers.  Failure of either party to complain of any act or omission on the part of the other party, no matter how long the same may continue, shall not be deemed to be a waiver by said party of any of its rights hereunder. No waiver by either party at any time, express or

Landlord's
Initials

Tenant's
Initials





implied, of any breach of any provision of this Lease shall be deemed a waiver of a breach of any other provision of this Lease or a consent to any subsequent breach of the same or any other provision. If any action by either party shall require the consent or approval of the other party, the other party's consent to or approval of such action on any one occasion shall not be deemed a consent to or approval of said action on any subsequent occasion or a consent to or approval of any other action on the same or any subsequent occasion. Any and all rights and remedies which either party may have under this Lease or by operation of law, either at law or in equity, upon any breach, shall be distinct, separate and cumulative and shall not be deemed inconsistent with each other, and no one of them, whether exercised by said party or not, shall be deemed to be an exclusion of any other; and any two or more or all of such rights and remedies may be exercised at the same time.

Section 4.  Disputes.  It is agreed that, if at any time a dispute shall arise as to any amount or sum of money to be paid by one party to the other under the provisions hereof, the party against whom the obligation to pay the money is asserted shall have the right to make payment "under protest" and such payment shall not be regarded as a voluntary payment and there shall survive the right on the part of the said party to institute suit for the recovery of such sum. If it shall be adjudged that there was no legal obligation on the part of said party to pay such sum or any part thereof, said party shall be entitled to recover such sum or so much thereof as it was not legally required to pay under the provisions of this Lease. If at any time a dispute shall arise between the parties hereto as to any work to be performed by either of them under the provisions hereof, the party against whom the obligation to perform the work is asserted may perform such work and pay the costs thereof "under protest" and the performance of such work shall in no event be regarded as a voluntary performance and shall survive the right on the part of the said party to institute suit for the recovery of the costs of such work. If it shall be adjudged that there was no legal obligation on the part of the said party to perform the same or any part thereof, said party shall be entitled to recover the costs of such work or the cost of so much thereof as said party was not legally required to perform under the provisions of this Lease and the amount so paid by Tenant may be withheld or deducted by Tenant from any rents herein reserved.

Section 5.  TENANT'S Right to cure LANDLORD'S Default.  In the event that Landlord shall fail, refuse or neglect to pay any mortgages, liens or encumbrances, the judicial sale of which might affect the interest of Tenant hereunder, or shall fail, refuse or neglect to pay any interest due or payable on any such mortgage, lien or encumbrance, Tenant may pay said mortgages, liens or encumbrances, or interest or perform said conditions

Landlord's
Initials

Tenant's
Initials





and charge to Landlord the amount so paid and withhold and deduct from any rents herein reserved such amounts so paid, and any excess over and above the amounts of said rents shall be paid by Landlord to Tenant.

Section 6.  Notices.  All notices and other communications authorized or required hereunder shall be in writing and shall be given by mailing the same by certified mail, return receipt requested, postage prepaid, and any such notice or other communication shall be deemed to have been given when received by the party to whom such notice or other communication shall be addressed. If intended for Landlord the same will be mailed to the address herein above set forth or such other address as Landlord may hereafter designate by notice to Tenant, and if intended for Tenant, the same shall be mailed to Tenant at the address herein above set forth, or such other address or addresses as Tenant may hereafter designate by notice to Landlord.

## ARTICLE XIX - PROPERTY DAMAGE

Section l.  Loss and Damage.  Notwithstanding any contrary provisions of this Lease, Landlord shall not be responsible for any loss of or damage to property of Tenant or of others located on the Leased Premises, except where caused by the willful act or omission or negligence of Landlord , or Landlord's agents, employees or contractors, provided, however, that if Tenant shall notify Landlord in writing of repairs which are the responsibility of Landlord under Article VII hereof, and Landlord shall fail to commence and diligently prosecute to completion said repairs promptly after such notice, and if after the giving of such notice and the occurrence of such failure, loss of or damage to Tenant's property shall result from the condition as to which Landlord has been notified, Landlord shall indemnify and hold harmless Tenant from any loss, cost or expense arising therefrom.

Section 2.  Force Majeure.  In the event that Landlord or Tenant shall be delayed or hindered in or prevented from the performance of any act other than Tenant's obligation to make payments of rent, additional rent, and other charges required hereunder, by reason of strikes, lockouts, unavailability of materials, failure of power, restrictive governmental laws or regulations, riots, insurrections, the act, failure to act, or default of the other party, war or other reason beyond its control, then performance of such act shall be excused for the period of the delay and the period for the performance of such act shall be extended for a period equivalent to the period of such delay.  Notwithstanding the foregoing, lack of funds shall not be deemed to be a cause beyond control of either party.

Landlord's
Initials



Tenant's
Initials



## ARTICLE XX - MISCELLANEOUS

Section 1.  Assignment and Subletting.  Under the terms and conditions hereunder, Tenant shall have the absolute right to transfer and assign this lease or to sublet all or any portion of the Leased Premises or to cease operating Tenant's business on the Leased Premises provided that at the time of such assignment or sublease Tenant shall not be in default in the performance and observance of the obligations imposed upon Tenant hereunder, and in the event that Tenant assigns or sublets this property for an amount in excess of the rental amount then being paid, then Landlord shall require as further consideration for the granting of the right to assign or sublet, a sum equal to fifty (50%) percent of the difference between the amount of rental to be charged by Tenant to Tenant's sublessee or assignee and the amount provided for herein, payable in a manner consistent with the method of payment by the sublessee or assignee to the Tenant, and/or fifty (50%) percent of the consideration paid or to be paid to Tenant by Tenant's sublessee or assignee. Landlord must consent in writing to any such sublessee or assignee, although such consent shall not be unreasonably withheld. The use of the Leased Premises by such assignee or sublessee shall be expressly limited by and to the provisions of this lease.

Section 2.  Fixtures.  All personal property, furnishings and equipment presently and all other trade fixtures installed in or hereafter by or at the expense of Tenant and all additions and/or improvements, exclusive of structural, mechanical, electrical, and plumbing, affixed to the Leased Premises and used in the operation of the Tenant's business made to, in or on the Leased Premises by and at the expense of Tenant and susceptible of being removed from the Leased Premises without damage, unless such damage be repaired by Tenant, shall remain the property of Tenant and Tenant may, but shall not be obligated to, remove the same or any part thereof at any time or times during the term hereof, provided that Tenant, at its sole cost and expense, shall make any repairs occasioned by such removal.

Section 3.  Estoppel Certificates.  At any time and from time to time, Landlord and Tenant each agree, upon request in writing from the other, to execute, acknowledge and deliver to the other or to any person designated by the other a statement in writing certifying that the Lease is unmodified and is in full force and effect, or if there have been modifications, that the same is in full force and effect as modified (stating the modifications), that the other party is not in default in the performance of its covenants hereunder, or if there have been such defaults, specifying the same, and the dates to which the rent and other charges have been paid.

Landlord's                                              Tenant's
Initials                                                Initials

                                    

Section 4. Invalidity of Particular Provision. If any term or provision of this Lease or the application hereof to any person or circumstance shall, to any extent, be held invalid or unenforceable, the remainder of this Lease, or the application of such term or provision to persons or circumstances other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and each term and provision of this Lease shall be valid and be enforced to the fullest extent permitted by law.

Section 5. Captions and Definitions of Parties. The captions of the Sections of this Lease are for convenience only and are not a part of this Lease and do not in any way limit or amplify the terms and provisions of this Lease. The word "Landlord" and the pronouns referring thereto, shall mean, where the context so admits or requires, the persons, firm or corporation named herein as Landlord or the mortgagee in possession at any time, of the land and building comprising the Leased Premises. If there is more than one Landlord, the covenants of Landlord shall be the joint and several obligations of each of them, and if Landlord is a partnership, the covenants of Landlord shall be the joint and several obligations of each of the partners and the obligations of the firm. Any pronoun shall be read in the singular or plural and in such gender as the context may require. Except as in this Lease otherwise provided, the terms and provisions of this Lease shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns.

Nothing contained herein shall be deemed or construed by the parties hereto nor by any third party as creating the relationship of principal and agent or of partnership or of a joint venture between the parties hereto, it being understood and agreed that neither any provision contained herein, nor any acts of the parties hereto, shall be deemed to create any relationship between the parties hereto other than the relationship of Landlord and Tenant.

Section 6. Brokerage. No party has acted as, by or through a broker in the effectuation of this Agreement, except as set out hereinafter.

Section 7. Entire Agreement. This instrument contains the entire and only agreement between the parties, and no oral statements or representations or prior written matter not contained in this instrument shall have any force and effect. This Lease shall not be modified in any way except by a writing executed by both parties.

Section 8. Governing Law. All matters pertaining to this agreement (including its interpretation, application, validity, performance and breach) in whatever jurisdiction action may be brought, shall be governed

Landlord's
Initials

Tenant's
Initials





by, construed and enforced in accordance with the laws of the State of Florida. The parties herein waive trial by jury and agree to submit to the personal jurisdiction and venue of a court of subject matter jurisdiction located in Lee County, State of Florida. In the event that litigation results from or arises out of this Agreement or the performance thereof, the parties agree to reimburse the prevailing party's reasonable attorney's fees, court costs, and all other expenses, whether or not taxable by the court as costs, in addition to any other relief to which the prevailing party may be entitled. In such event, no action shall be entertained by said court or any court of competent jurisdiction if filed more than one year subsequent to the date the cause(s) of action actually accrued regardless of whether damages were otherwise as of said time calculable.

Section 9.  Contractual Procedures.  Unless specifically disallowed by law, should litigation arise hereunder, service of process therefor may be obtained through certified mail, return receipt requested; the parties hereto waiving any and all rights they may have to object to the method by which service was perfected.

Section 10.  Extraordinary remedies.  To the extent cognizable at law, the parties hereto, in the event of breach and in addition to any and all other remedies available thereto, may obtain injunctive relief, regardless of whether the injured party can demonstrate that no adequate remedy exists at law.

Section 11.  Reliance on Financial Statement.  Tenant shall furnish concurrently with the execution of this lease, a financial statement of Tenant prepared by an accountant. Tenant, both in corporate capacity, if applicable, and individually, hereby represents and warrants that all the information contained therein is complete, true, and correct. Tenant understands that Landlord is relying upon the accuracy of the information contained therein. Should there be found to exist any inaccuracy within the financial statement which adversely affects Tenant's financial standing, or should Tenant's financial circumstances materially change, Landlord may demand, as additional security, an amount equal to an additional two (2) months' rent, which additional security shall be subject to all terms and conditions herein, require a fully executed guaranty by a third party acceptable to Landlord, elect to terminate this Lease, or hold Tenant personally and individually liable hereunder.

IN WITNESS WHEREOF, the parties hereto have executed this Lease the day and year first above written or have caused this Lease to be executed by their respective officers thereunto duly authorized.

Landlord's                                          Tenant's
Initials                                            Initials



Signed, sealed and delivered in the presence of:

**4205 Pine Island LLC, a Florida Limited Liability**

By: SIVAN LAM, its MGR "LANDLORD"

Witness TIMOTHY J. BRUEHL

Witness

STATE OF FLORIDA
COUNTY OF LEE

The foregoing instrument was acknowledged before me, by means of (✓) physical presence or ( ) online notarization, this 4th day of May, 2021, by **SIVAN LAM**, Manager of **4205 Pine Island LLC, a Florida Limited Liability**, who personally appeared before me at the time of notarization, and ( ✓ ) who are personally known to me or  ( ) who have produced _____ as identification.

My commission expires: 10|10|22

Notary Public

TIMOTHY JOHN BRUEHL
Notary Public - State of Florida
Commission # GG 228240
Comm. Expires Oct 10, 2022
Bonded through National Notary Assn.

Prepared by:
Timothy J. Bruehl, Esq.
Waggoner & Bruehl, P.A.
5400 Pine Island Road, Suite D
Bokeelia FL   33922

Landlord's
Initials

Tenant's
Initials

Signed, sealed and delivered in the presence of:

**Island Pho and Grill Restaurant LLC, a Florida Limited Liability**


**By: DOUNG TON, its MMGR "TENANT"**

Witness

Witness

STATE OF FLORIDA
COUNTY OF LEE

The foregoing instrument was acknowledged before me, by means of ( ) physical presence or ( ) online notarization, this ____ day of May, 2021, by **DOUNG TON**. Managing Member of **Island Pho and Grill Restaurant LLC,  a Florida Limited Liability**, who personally appeared before me at the time of notarization, and ( ) who are personally known to me or (  ) who have  produced _____ as identification.


My commission expires:                                         Notary Public


Prepared by:
Timothy J. Bruehl, Esq.
Waggoner & Bruehl, P.A.
5400 Pine Island Road, Suite D
Bokeelia FL   33922


Landlord's
Initials

Tenant's
Initials





# FLORIDA POLICYHOLDER NOTICE

**SURPLUS LINES INSURERS' POLICY RATES AND FORMS ARE NOT APPROVED BY ANY FLORIDA REGULATORY AGENCY.**


Nationwide

**Scottsdale Insurance Company**
**National Casualty Company**
**Scottsdale Indemnity Company**
**Scottsdale Surplus Lines Insurance Company**

## CLAIM REPORTING INFORMATION

Your insurance policy has been placed with a Nationwide® insurance company.

Our commitment to you is to provide fast, fair claim service. Promptly reporting an event that could lead to a claim, as required by your policy, helps us fulfill this commitment to you. Please refer to your policy for this and all other terms and conditions.

To report a claim, you may contact us 24 hours a day, 7 days a week, by calling 1-800-423-7675 or via our website at www.nationwideexcessandsurplus.com.

Thank you for your business and as always, we appreciate the opportunity to serve you.

| HOW TO REPORT A CLAIM |
|---|
| Call **1-800-423-7675** or visit our website at www.nationwideexcessandsurplus.com. |
| In order to expedite this process, please be prepared to furnish as much of the following information as possible: |
| • Your policy number |
| • Date, time and location of the loss/accident |
| • Details of the loss/accident |
| • Name, address and phone number of any involved parties |
| • If applicable, name of law enforcement agency or fire department along with the incident number |
| **Please refer to your policy for specific claim reporting requirements.** |

 Nationwide

Underwritten by: Scottsdale Insurance Company
Home Office: One Nationwide Plaza • Columbus, Ohio 43215
Administrative Office: 18700 North Hayden Road • Scottsdale, Arizona 85255
1-800-423-7675 • A Stock Company

In Witness Whereof, the Company has caused this policy to be executed and attested.

Secretary

President

The information contained herein replaces any similar information contained elsewhere in the policy.

Insured's Name: 4205 Pine Island, LLC                    Policy #: CPS7560688

Policy Dates: From: 04/14/2022                To:        04/14/2023

Surplus Lines Agent's Name: Mick Kroll

Surplus Lines Agent's Physical Address: 21550 Oxnard St. Suite 1100 Woodland Hills, CA 91367

Surplus Lines Agent's License #: W239665

Producing Agent's Name: Jay Steetzer

Producing Agent's Physical Address: 10034 N Ambassador Dr Kansas City MO 64153

THIS INSURANCE IS ISSUED PURSUANT TO THE FLORIDA SURPLUS LINES LAW. PERSONS INSURED BY SURPLUS LINES CARRIERS DO NOT HAVE THE PROTECTION OF THE FLORIDA INSURANCE GUARANTY ACT TO THE EXTENT OF ANY RIGHT OF RECOVERY FOR THE OBLIGATION OF AN INSOLVENT UNLICENSED INSURER.

**SURPLUS LINES INSURERS' POLICY RATES AND FORMS ARE NOT APPROVED BY ANY FLORIDA REGULATORY AGENCY.**

Policy Premium: $2,952.00                Policy Fee: $300.00

Inspection Fee:                          Service Fee: $1.95

Tax: $160.65                             Citizen's Assessment:

EMPA Surcharge: $4.00                    FHCF Assessment:

Surplus Lines Agent's Countersignature:

☐    **THIS POLICY CONTAINS A SEPARATE DEDUCTIBLE FOR HURRICANE OR WIND LOSSES, WHICH MAY RESULT IN HIGH OUT-OF-POCKET EXPENSES TO YOU.**

☐    **THIS POLICY CONTAINS A CO-PAY PROVISION THAT MAY RESULT IN HIGH OUT-OF-POCKET EXPENSES TO YOU.**

# COMMON POLICY DECLARATIONS

Underwritten by: Scottsdale Insurance Company
Home Office:
One Nationwide Plaza • Columbus, Ohio 43215
Administrative Office:
18700 North Hayden Road • Scottsdale, Arizona 85255
1-800-423-7675 • A Stock Company

CPS7338754
**Renewal of Number**

**Policy Number**

**CPS7560688**

**ITEM 1.** NAMED INSURED AND MAILING ADDRESS

4205 PINE ISLAND LLC

74 ALICIA RD
BOSTON MA 02124

NO FLAT CANCELLATION

**AGENT NAME AND ADDRESS**

AMWINS GROUP (PALM BEACH GARDENS, FL) 7108
FAIRWAY DR STE 200 PALM BEACH GARDENS FL
33418-3757

Agent No.: 09012          Program No.:   JQ

**ITEM 2.** POLICY PERIOD    From: 04/14/2022    To: 04/14/2023    Term: 365

**12:01 A.M., Standard Time at the mailing address shown in ITEM 1.**

Business Description: PEANUT FARMING

In return for the payment of the premium, and subject to all the terms of this policy, we agree with you to provide the insurance as stated in this policy. This policy consists of the following coverage parts for which a premium is indicated. Where no premium is shown, there is no coverage. This premium may be subject to adjustment.

| Coverage Part(s) | Premium Summary |
|---|---|
| Commercial General Liability Coverage Part | $ $652 |
| Commercial Property Coverage Part | $ $2,300 |
| Commercial Crime And Fidelity Coverage Part | $ NOT COVERED |
| Commercial Inland Marine Coverage Part | $ NOT COVERED |
| Commercial Auto Coverage Part | $ NOT COVERED |
| Professional Liability Coverage Part | $ NOT COVERED |
| | $ |
| | $ |
| | $ |
| | $ |
| **Total Policy Premium** | $ 2,952.00 |
| TOTAL TAXES AND FEES | $ 466.60 |
| | $ |
| **Policy Total** | $ 3,418.60 |

Form(s) and Endorsement(s) made a part of this policy at time of issue:

**See Schedule of Forms and Endorsements**

AMWINS GROUP (PALM BEACH GARDENS, FL)
7108 FAIRWAY DR STE 200
PALM BEACH GARDENS FL 33418-3757
04/25/2022-BR/SP

THIS COMMON POLICY DECLARATION AND THE SUPPLEMENTAL DECLARATION(S), TOGETHER WITH
THE COMMON POLICY CONDITIONS, COVERAGE PART(S), COVERAGE FORM(S) AND FORM(S)
AND ENDORSEMENT(S), IF ANY, COMPLETE THE ABOVE-NUMBERED POLICY.

OPS-D-1-0117 (01-21)

 Nationwide®



## SCOTTSDALE INSURANCE COMPANY®

### SCHEDULE OF TAXES, SURCHARGES OR FEES

Policy No. CPS7560688

Effective Date: 04/14/2022
12:01 A.M., Standard Time

Named Insured    4205 PINE ISLAND LLC

Agent No. 09012

```
POLICY FEE                               300.00
SURPLUS LINES TAX                        160.65
STAMP FEE                                  1.95
DEM EMP                                    4.00
                                 ---------------------
        TOTAL TAXES, SURCHARGES OR FEES:  466.60
```

UTS-126L 10-93



**SCOTTSDALE INSURANCE COMPANY®**

## SCHEDULE OF FORMS AND ENDORSEMENTS

Policy No.  CPS7560688

Effective Date  04/14/2022

12:01 A.M. Standard Time

Named Insured  4205 PINE ISLAND LLC

Agent No.  09012

---

**COMMON POLICY**

| | | |
|---|---|---|
| NOTS0381FL | 07-09 | FLORIDA POLICYHOLDER NOTICE |
| NOTX0178CW | 03-16 | CLAIM REPORTING INFORMATION |
| NOTX0423CW | 12-20 | POLICYHOLDER DISCLOSURE - NOTICE OF TERRORISM INSURANCE COVERAGE |
| UTS-COVPG | 03-21 | COVER PAGE |
| OPS-D-1-0117 | 01-21 | COMMON POLICY DECLARATIONS |
| UTS-126L | 10-93 | SCHEDULE OF TAXES, SURCHARGES OR FEES |
| UTS-SP-2 | 12-95 | SCHEDULE OF FORMS AND ENDORSEMENTS |
| UTS-SP-3 | 08-96 | SCHEDULE OF LOCATIONS |
| IL 00 17 | 11-98 | COMMON POLICY CONDITIONS |
| IL 09 53 | 01-15 | EXCLUSION OF CERTIFIED ACTS OF TERRORISM |
| UTS-29-FL | 06-97 | CANCELLATION AND NONRENEWAL-FLORIDA |
| UTS-496 | 06-19 | MINIMUM EARNED CANCELLATION PREMIUM |
| UTS-9g | 06-20 | SERVICE OF SUIT CLAUSE |
| UTS-491 | 01-19 | ASSIGNMENT OF CLAIM BENEFITS |

**COMMERCIAL LIABILITY**

| | | |
|---|---|---|
| CLS-SD-1L | 08-01 | COMMERCIAL GENERAL LIABILITY COVERAGE PART SUPPLEMENTAL DECLARATIONS |
| CLS-SP-1L | 10-93 | COMMERCIAL GENERAL LIABILITY COVERAGE PART EXTENSION OF SUPPLEMENTAL DECLARATIONS |
| CG 00 01 | 04-13 | COMMERCIAL GENERAL LIABILITY COVERAGE FORM |
| CG 21 06 | 05-14 | EXCLUSION-ACCESS OR DISCLOSURE OF CONFIDENTIAL OR PERSONAL INFORMATION AND DATA-RELATED LIABILITY-WITH LIMITED BODILY INJURY EXCEPTION |
| CG 21 16 | 04-13 | EXCLUSION-DESIGNATED PROFESSIONAL SERVICES |
| CG 21 44 | 04-17 | LIMITATION OF COVERAGE TO DESIGNATED PREMISES, PROJECT OR OPERATION |
| CG 21 47 | 12-07 | EMPLOYMENT-RELATED PRACTICES EXCLUSION |
| CG 21 49 | 09-99 | TOTAL POLLUTION EXCLUSION ENDORSEMENT |
| CG 21 67 | 12-04 | FUNGI OR BACTERIA EXCLUSION |
| CG 21 73 | 01-15 | EXCLUSION OF CERTIFIED ACTS OF TERRORISM |
| CG 24 26 | 04-13 | AMENDMENT OF INSURED CONTRACT DEFINITION |



## SCOTTSDALE INSURANCE COMPANY®

## SCHEDULE OF FORMS AND ENDORSEMENTS

Policy No.  CPS7560688

Effective Date  04/14/2022

12:01 A.M. Standard Time

Named Insured  4205 PINE ISLAND LLC

Agent No.  09012

### COMMERCIAL LIABILITY

| CG 40 12 | 12-19 | EXCLUSION - ALL HAZARDS IN CONNECTION WITH AN ELECTRONIC SMOKING DEVICE, ITS VAPOR, COMPONENT PARTS, EQUIPMENT AND ACCESSORIES |
| CG 40 15 | 12-20 | CANNABIS EXCLUSION WITH HEMP EXCEPTION |
| GLS-106s | 12-13 | TOTAL LIQUOR LIABILITY EXCLUSION |
| GLS-152s | 08-16 | AMENDMENT TO OTHER INSURANCE CONDITION |
| GLS-287s | 11-19 | HABITABILITY EXCLUSION |
| GLS-289s | 11-07 | KNOWN INJURY OR DAMAGE EXCLUSION-PERSONAL AND ADVERTISING INJURY |
| GLS-341s | 08-12 | HYDRAULIC FRACTURING EXCLUSION |
| GLS-457s | 10-14 | AIRCRAFT EXCLUSION |
| GLS-47s | 10-07 | MINIMUM AND ADVANCE PREMIUM ENDORSEMENT |
| GLS-537 | 02-19 | CONTROLLED SUBSTANCE EXCLUSION |
| GLS-570 | 07-21 | CONTRACTORS SPECIAL CONDITIONS |
| GLS-94s | 06-15 | BODILY INJURY, PROPERTY DAMAGE, PERSONAL AND ADVERTISING INJURY LIABILITY DEDUCTIBLE ENDORSEMENT (PER CLAIMANT) |
| IL 00 21 | 09-08 | NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT |
| UTS-266g | 05-98 | ASBESTOS EXCLUSION |
| UTS-267g | 05-98 | LEAD CONTAMINATION EXCLUSION |
| UTS-365s | 02-09 | AMENDMENT OF NONPAYMENT CANCELLATION CONDITION |
| UTS-428g | 11-12 | PREMIUM AUDIT |
| UTS-429g | 07-13 | EXCLUSION-VERMIN |
| UTS-74g | 08-95 | PUNITIVE OR EXEMPLARY DAMAGE EXCLUSION |
| UTS-85g | 02-98 | ANIMAL EXCLUSION |

### COMMERCIAL PROPERTY

| CPS-SD-1-0219 | 01-21 | COMMERCIAL PROPERTY COVERAGE PART SUPPLEMENTAL DECLARATIONS |
| CPS-SD-2 | 01-21 | COMMERCIAL PROPERTY COVERAGE PART EXTENSION OF SUPPLEMENTAL DECLARATIONS |
| CP 00 10 | 10-12 | BUILDING AND PERSONAL PROPERTY COVERAGE FORM |
| CP 00 30 | 10-12 | BUSINESS INCOME (AND EXTRA EXPENSE) COVERAGE FORM |
| CP 00 90 | 07-88 | COMMERCIAL PROPERTY CONDITIONS |

SCOTTSDALE INSURANCE COMPANY®

## SCHEDULE OF FORMS AND ENDORSEMENTS

Policy No.  CPS7560688                                    Effective Date  04/14/2022

12:01 A.M. Standard Time

Named Insured   4205 PINE ISLAND LLC                    Agent No.  09012

| **COMMERCIAL PROPERTY** | | |
|---|---|---|
| CFS-103-FL | 01-16 | SEWER OR DRAIN DEFINITION ENDORSEMENT-FLORIDA |
| CFS-20s | 10-17 | COMMERCIAL PROPERTY EXTENSION |
| CFS-21s | 10-17 | EQUIPMENT BREAKDOWN COVERAGE |
| CFS-68s-FL | 01-12 | CHANGES-FLORIDA |
| CP 01 40 | 07-06 | EXCLUSION OF LOSS DUE TO VIRUS OR BACTERIA |
| CP 04 11 | 09-17 | PROTECTIVE SAFEGUARDS |
| CP 10 30 | 09-17 | CAUSES OF LOSS-SPECIAL FORM |
| CP 10 54 | 06-07 | WINDSTORM OR HAIL EXCLUSION |
| CP 10 75 | 12-20 | CYBER INCIDENT EXCLUSION |
| CP 12 11 | 09-17 | BURGLARY AND ROBBERY PROTECTIVE SAFEGUARDS |
| IL 04 01 | 02-12 | FLORIDA-SINKHOLE LOSS COVERAGE |

UTS-SP-2 (12-95)



## SCHEDULE OF LOCATIONS

Policy No.  CPS7560688

Effective Date  04/14/2022

12:01 A.M. Standard Time

Named Insured  4205 PINE ISLAND LLC

Agent No.  09012

| Prem. No. | Bldg. No. | Designated Premises (Address, City, State, Zip Code) | Occupancy |
|-----------|-----------|------------------------------------------------------|-----------|
| 1 | | 4205 PINE ISLAND RD NW   MATLACHA FL 33993 | See Liability Dec(s) |
| 1 | 1 | 4205 PINE ISLAND RD NW   MATLACHA FL 33993 | DWELLING - TENANT OCCUPIED |
| 1 | 2 | 4205 PINE ISLAND RD NW   MATLACHA FL 33993 | RESTAURANT/DELI |
| 1 | 3 | 4205 PINE ISLAND RD NW   MATLACHA FL 33993 | DWELLING - TENANT OCCUPIED |
| 1 | 4 | 4205 PINE ISLAND RD NW   MATLACHA FL 33993 | Property in the Open |
| 1 | 5 | 4205 PINE ISLAND RD NW   MATLACHA FL 33993 | Property in the Open |

UTS-SP-3 08-96

IL 00 17 11 98

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

## A. Cancellation

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. Changes

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. Examination Of Your Books And Records

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. Inspections And Surveys

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs 1. and 2. of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph 2. of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

## E. Premiums

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

## F. Transfer Of Your Rights And Duties Under This Policy

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

Copyright, Insurance Services Office, Inc., 1998

POLICY NUMBER: CPS7560688                                                    IL 09 53 01 15

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION OF CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

> BOILER AND MACHINERY COVERAGE PART
> COMMERCIAL INLAND MARINE COVERAGE PART
> COMMERCIAL PROPERTY COVERAGE PART
> CRIME AND FIDELITY COVERAGE PART
> EQUIPMENT BREAKDOWN COVERAGE PART
> FARM COVERAGE PART
> STANDARD PROPERTY POLICY

## SCHEDULE

The **Exception Covering Certain Fire Losses** (Paragraph **C**) applies to property located in the following state(s), if covered under the indicated Coverage Form, Coverage Part or Policy:

| State(s) | Coverage Form, Coverage Part Or Policy |
|---|---|
| FL | COMMERCIAL PROPERTY COVERAGE PART |
|  |  |
|  |  |
|  |  |
|  |  |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. ||

**A.** The following definition is added with respect to the provisions of this endorsement:

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

**1.** The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

**2.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**B.** The following exclusion is added:

**CERTIFIED ACT OF TERRORISM EXCLUSION**

We will not pay for loss or damage caused directly or indirectly by a "certified act of terrorism". Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

**C. Exception Covering Certain Fire Losses**

The following exception to the exclusion in Paragraph **B.** applies only if indicated and as indicated in the Schedule of this endorsement.

If a "certified act of terrorism" results in fire, we will pay for the loss or damage caused by that fire. Such coverage for fire applies only to direct loss or damage by fire to Covered Property. Therefore, for example, the coverage does not apply to insurance provided under Business Income and/or Extra Expense coverage forms or endorsements which apply to those forms, or to the Legal Liability Coverage Form or the Leasehold Interest Coverage Form.

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

**D. Application Of Other Exclusions**

The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for any loss which would otherwise be excluded under this Coverage Part or Policy, such as losses excluded by the Nuclear Hazard Exclusion or the War And Military Action Exclusion.

© Insurance Services Office, Inc., 2015

# SCOTTSDALE INSURANCE COMPANY ®

**ENDORSEMENT NO.** _____

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| CPS7560688 | 04/14/2022 | 4205 PINE ISLAND LLC | 09012 |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## CANCELLATION AND NONRENEWAL—FLORIDA

The Cancellation Condition is deleted in its entirety and replaced by the following:

A. Cancellation

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. If this policy has been in effect for ninety (90) days or less and is not a renewal of a policy we issued, we may cancel by mailing or delivering written notice of cancellation, including the specific reasons for cancellation, to the first Named Insured at least:

   a. Ten (10) days before the effective date of cancellation, if we cancel for nonpayment of any premium when due; or

   b. Twenty (20) days before the effective date of cancellation, if we cancel for any other reason, except, we may cancel immediately if there has been:

      (1) A material misstatement or misrepresentation; or

      (2) A failure to comply with underwriting requirements established by us.

3. If this policy has been in effect for more than ninety (90) days or is a renewal or continuation of a policy we issued, we may cancel by mailing or

delivering written notice of cancellation, including the specific reasons for cancellation, to the first Named Insured at least:

   a. Ten (10) days before the effective date of cancellation, if we cancel for nonpayment of any premium when due; or

   b. Forty-five (45) days before the effective date of cancellation, if we cancel for any other reason.

4. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

5. Notice of cancellation by us will state the effective date of the cancellation. The policy period will end on that date.

6. If we fail to mail or deliver our written notice of cancellation to the first Named Insured at least forty-five (45) days or twenty (20) days as required in A.2.b. and A.3.b. above, the coverage will remain in effect until forty-five (45) days after the notice is given or until the effective date of replacement coverage obtained by the first Named Insured, whichever occurs first. The premium for the coverage shall remain the same during any such extension period.

7. If this policy is canceled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first

UTS-29-FL (6-97)

Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

8.  If notice is mailed, proof of mailing will be sufficient proof of notice.

The following Condition is added to the policy and supersedes any other provision to the contrary:

B.  Nonrenewal

1.  If we decide not to renew this policy, we will mail or deliver written notice of nonrenewal, including the specific reasons for nonrenewal, to the first Named Insured at least forty-five (45) days prior to the expiration of the policy.

2.  If notice is mailed, we will mail it to the last mailing address known to us of the first Named Insured. Proof of mailing will be sufficient proof of notice.

3.  If we fail to mail or deliver written notice of nonrenewal to the first Named Insured at least forty-five (45) days prior to the effective date of nonrenewal, the coverage will remain in effect until forty-five (45) days after the notice is given or until the effective date of replacement coverage obtained by the first Named Insured, whichever occurs first. The premium for the coverage shall remain the same during any such extension period.

---

AUTHORIZED REPRESENTATIVE                    DATE

UTS-29-FL (6-97)

Underwritten by Scottsdale Insurance Company

# ENDORSEMENT
## NO. _____

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| CPS7560688 | 04/14/2022 | 4205 PINE ISLAND LLC | 09012 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## MINIMUM EARNED CANCELLATION PREMIUM

The following provision is added to the Cancellation Condition:

If You request cancellation of this policy, We will retain not less than _____ 25% _____ of the premium.

_____ / _____
AUTHORIZED REPRESENTATIVE                                          DATE



Underwritten by Scottsdale Insurance Company

# ENDORSEMENT
## NO. _____

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| CPS7560688 | 04/14/2022 | 4205 PINE ISLAND LLC | 09012 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## SERVICE OF SUIT CLAUSE

It is agreed that in the event of the failure of the Company to pay any amount claimed to be due under this policy, the Company at the request of the Insured (or reinsured), will submit to the jurisdiction of any court of competent jurisdiction within the United States of America and will comply with all requirements necessary to give the Court jurisdiction. All matters which arise will be determined in accordance with the law and practice of the Court. In a suit instituted against any one of them under this contract, the Company agrees to abide by the final decision of the Court or of any Appellate Court in the event of an appeal. However, nothing in this endorsement constitutes a waiver of company's right to remove an action to a United States District Court or to seek a transfer of a case to another court as permitted by the laws of the United States or of any state in the United States.

Pursuant to any statute of any state, territory or district of the United States of America which makes a provision, the Company will designate the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit, or proceeding instituted by or on behalf of the Insured (or reinsured) or any beneficiary arising out of this contract of insurance (or reinsurance).

The person named below is authorized and directed to accept service of process on behalf of the Company:

CHIEF FINANCIAL OFFICER

DEPARTMENT OF FINANCIAL SERVICES, 200 EAST GAINES STREET

TALLAHASSEE, FL 32399

Having accepted service of process on behalf of the Company, the person designated above is authorized to mail the process or a true copy to:

NOT REQUIRED

AUTHORIZED REPRESENTATIVE                         DATE





# COMMERCIAL GENERAL LIABILITY COVERAGE PART
# SUPPLEMENTAL DECLARATIONS

Policy No. <u>CPS7560688</u>                 Effective Date <u>04/14/2022</u>
                                              12:01 A.M., Standard Time

Named Insured <u>4205 PINE ISLAND LLC</u>       Agent No. <u>09012</u>

---

**Item 1.**  Limits of Insurance

| Coverage | Limit of Liability | |
|---|---|---|
| Aggregate Limits of Liability | $_____2,000,000 | Products/Completed Operations Aggregate |
| | $_____2,000,000 | General Aggregate (other than Products/Completed Operations) |
| Coverage A—Bodily Injury and Property Damage Liability | $_____1,000,000 | any one occurrence subject to the Products/Completed Operations and General Aggregate Limits of Liability |
| Damage to Premises Rented to You Limit | $_____100,000 | any one premises subject to the Coverage A occurrence and the General Aggregate Limits of Liability |
| Coverage B—Personal and Advertising Injury Liability | $_____1,000,000 | any one person or organization subject to the General Aggregate Limits of Liability |
| Coverage C—Medical Payments | | any one person subject to the Coverage A occurrence and the General Aggregate Limits $_____5,000 |

**Item 2.**  Description of Business

Form of Business:

❑ Individual       ❑ Partnership ❑ Joint Venture    ❑ Trust    ☒ Limited Liability Company

❑ Organization including a corporation (other than Partnership, Joint Venture or Limited Liability Company)

Location of All Premises You Own, Rent or Occupy:
SEE SCHEDULE OF LOCATIONS

**Item 3.**  Forms and Endorsements

Form(s) and Endorsement(s) made a part of this policy at time of issue:
**See Schedule of Forms and Endorsements**

**Item 4.**  Premiums

| | | |
|---|---|---|
| Coverage Part Premium: | $ | $652 |
| Other Premium: | $ | |
| Total Premium: | $ | $652 |

THESE DECLARATIONS ARE PART OF THE POLICY DECLARATIONS CONTAINING THE NAME OF THE INSURED AND THE POLICY PERIOD.

CLS-SD-1L (8-01)



### SCOTTSDALE INSURANCE COMPANY®

## COMMERCIAL GENERAL LIABILITY COVERAGE PART
## EXTENSION OF SUPPLEMENTAL DECLARATIONS

Policy No. CPS7560688

Effective Date: 04/14/2022
12:01 A.M., Standard Time

Named Insured 4205 PINE ISLAND LLC

Agent No. 09012

| Prem. No. | Bldg. No. | Class Code | Exposure | Basis |
|---|---|---|---|---|
| 1 | 1 | 60012 | 24,000 | PER 1000/GROSS SALES |

| Class Description: | Premises/Operations | |
|---|---|---|
| DWELLINGS - VACATION RENTAL | Rate | Premium |
| + PRODUCTS/COMPLETED OPERATIONS ARE SUBJECT TO THE GENERAL AGGREGATE LIMIT | $7.50 | $180 |
| | Products/Comp Operations | |
| | Rate | Premium |
| | INCLUDED | INCLUDED |

| Prem. No. | Bldg. No. | Class Code | Exposure | Basis |
|---|---|---|---|---|
| 1 | 2 | 60012 | 10,000 | PER 1000/GROSS SALES |

| Class Description: | Premises/Operations | |
|---|---|---|
| DWELLINGS - VACATION RENTAL | Rate | Premium |
| + PRODUCTS/COMPLETED OPERATIONS ARE SUBJECT TO THE GENERAL AGGREGATE LIMIT | $7.50 | $75 |
| | Products/Comp Operations | |
| | Rate | Premium |
| | INCLUDED | INCLUDED |

| Prem. No. | Bldg. No. | Class Code | Exposure | Basis |
|---|---|---|---|---|
| 1 | 3 | 60012 | 35,000 | PER 1000/GROSS SALES |

| Class Description: | Premises/Operations | |
|---|---|---|
| DWELLINGS - VACATION RENTAL | Rate | Premium |
| + PRODUCTS/COMPLETED OPERATIONS ARE SUBJECT TO THE GENERAL AGGREGATE LIMIT | $7.50 | $263 |
| | Products/Comp Operations | |
| | Rate | Premium |
| | INCLUDED | INCLUDED |

| Prem. No. | Bldg. No. | Class Code | Exposure | Basis |
|---|---|---|---|---|
| 1 | 4 | 61217 | 1,000 | PER 1000 SQ FT/AREA |

| Class Description: | Premises/Operations | |
|---|---|---|
| BUILDINGS OR PREMISES - BANK OR OFFICE - MERCANTILE OR MANUFACTURING - MAINTAINED BY THE INSURED - OTHER THAN NOT-FOR-PROFIT (LESSOR'S RISK ONLY) | Rate | Premium |
| | $133.65 | $134 |
| | Products/Comp Operations | |
| + PRODUCTS/COMPLETED OPERATIONS ARE SUBJECT TO THE GENERAL AGGREGATE LIMIT | Rate | Premium |
| | INCLUDED | INCLUDED |

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section **II** – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **V** – Definitions.

## SECTION I – COVERAGES

## COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**1. Insuring Agreement**

  **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

    **(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

    **(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

  No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

  **b.** This insurance applies to "bodily injury" and "property damage" only if:

    **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

    **(2)** The "bodily injury" or "property damage" occurs during the policy period; and

    **(3)** Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

  **c.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

  **d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

    **(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

    **(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

    **(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

  **e.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

 © Insurance Services Office, Inc., 2012

## 2. Exclusions

This insurance does not apply to:

**a. Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**b. Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of the contract or agreement; or

**(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorneys' fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

**(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

**(b)** Such attorneys' fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

**c. Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

**(1)** Causing or contributing to the intoxication of any person;

**(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in:

**(a)** The supervision, hiring, employment, training or monitoring of others by that insured; or

**(b)** Providing or failing to provide transportation with respect to any person that may be under the influence of alcohol;

if the "occurrence" which caused the "bodily injury" or "property damage", involved that which is described in Paragraph **(1)**, **(2)** or **(3)** above.

However, this exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages. For the purposes of this exclusion, permitting a person to bring alcoholic beverages on your premises, for consumption on your premises, whether or not a fee is charged or a license is required for such activity, is not by itself considered the business of selling, serving or furnishing alcoholic beverages.

**d. Workers' Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

**e. Employer's Liability**

"Bodily injury" to:

**(1)** An "employee" of the insured arising out of and in the course of:

**(a)** Employment by the insured; or

**(b)** Performing duties related to the conduct of the insured's business; or

**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **(1)** above.

This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

**f. Pollution**

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

    (i) "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

    (ii) "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

    (iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

(b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

(c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

    (i) Any insured; or

    (ii) Any person or organization for whom you may be legally responsible; or

(d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

    (i) "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

    (ii) "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

    (iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

(e) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

(2) Any loss, cost or expense arising out of any:

   (a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

   (b) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

**g. Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

(1) A watercraft while ashore on premises you own or rent;

(2) A watercraft you do not own that is:

   (a) Less than 26 feet long; and

   (b) Not being used to carry persons or property for a charge;

(3) Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

(4) Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

(5) "Bodily injury" or "property damage" arising out of:

   (a) The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged; or

   (b) The operation of any of the machinery or equipment listed in Paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment".

**h. Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

(1) The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

(2) The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**i. War**

"Bodily injury" or "property damage", however caused, arising, directly or indirectly, out of:

(1) War, including undeclared or civil war;

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**j. Damage To Property**

"Property damage" to:

(1) Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

(2) Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

(3) Property loaned to you;

(4) Personal property in the care, custody or control of the insured;

(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs (1), (3) and (4) of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of seven or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section III – Limits Of Insurance.

Paragraph (2) of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs (3), (4), (5) and (6) of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1) "Your product";

(2) "Your work"; or

(3) "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**o. Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

**p. Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

However, this exclusion does not apply to liability for damages because of "bodily injury".

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**q. Recording And Distribution Of Material Or Information In Violation Of Law**

"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

(1) The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

(2) The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

(3) The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transactions Act (FACTA); or

 © Insurance Services Office, Inc., 2012

(4) Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

Exclusions **c.** through **n.** do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section **III** – Limits Of Insurance.

## COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

(2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C.**

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B.**

**b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

**2. Exclusions**

This insurance does not apply to:

**a. Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

**b. Material Published With Knowledge Of Falsity**

"Personal and advertising injury" arising out of oral or written publication, in any manner, of material, if done by or at the direction of the insured with knowledge of its falsity.

**c. Material Published Prior To Policy Period**

"Personal and advertising injury" arising out of oral or written publication, in any manner, of material whose first publication took place before the beginning of the policy period.

**d. Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

**e. Contractual Liability**

"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

**f. Breach Of Contract**

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

**g. Quality Or Performance Of Goods – Failure To Conform To Statements**

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

**h. Wrong Description Of Prices**

"Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

© Insurance Services Office, Inc., 2012

**i. Infringement Of Copyright, Patent, Trademark Or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your "advertisement".

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

**j. Insureds In Media And Internet Type Businesses**

"Personal and advertising injury" committed by an insured whose business is:

**(1)** Advertising, broadcasting, publishing or telecasting;

**(2)** Designing or determining content of web sites for others; or

**(3)** An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **14.a., b.** and **c.** of "personal and advertising injury" under the Definitions section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

**k. Electronic Chatrooms Or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

**l. Unauthorized Use Of Another's Name Or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

**m. Pollution**

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**n. Pollution-related**

Any loss, cost or expense arising out of any:

**(1)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(2)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

**o. War**

"Personal and advertising injury", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**p. Recording And Distribution Of Material Or Information In Violation Of Law**

"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

**(3)** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transactions Act (FACTA); or

**(4)** Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

 © Insurance Services Office, Inc., 2012

**COVERAGE C – MEDICAL PAYMENTS**

**1. Insuring Agreement**

**a.** We will pay medical expenses as described below for "bodily injury" caused by an accident:

**(1)** On premises you own or rent;

**(2)** On ways next to premises you own or rent; or

**(3)** Because of your operations;

provided that:

**(a)** The accident takes place in the "coverage territory" and during the policy period;

**(b)** The expenses are incurred and reported to us within one year of the date of the accident; and

**(c)** The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

**b.** We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

**(1)** First aid administered at the time of an accident;

**(2)** Necessary medical, surgical, X-ray and dental services, including prosthetic devices; and

**(3)** Necessary ambulance, hospital, professional nursing and funeral services.

**2. Exclusions**

We will not pay expenses for "bodily injury":

**a. Any Insured**

To any insured, except "volunteer workers".

**b. Hired Person**

To a person hired to do work for or on behalf of any insured or a tenant of any insured.

**c. Injury On Normally Occupied Premises**

To a person injured on that part of premises you own or rent that the person normally occupies.

**d. Workers' Compensation And Similar Laws**

To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

**e. Athletics Activities**

To a person injured while practicing, instructing or participating in any physical exercises or games, sports, or athletic contests.

**f. Products-Completed Operations Hazard**

Included within the "products-completed operations hazard".

**g. Coverage A Exclusions**

Excluded under Coverage **A**.

**SUPPLEMENTARY PAYMENTS – COVERAGES A AND B**

**1.** We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

**a.** All expenses we incur.

**b.** Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

**c.** The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

**d.** All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

**e.** All court costs taxed against the insured in the "suit". However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.

**f.** Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

© Insurance Services Office, Inc., 2012

CG 00 01 04 13

**g.** All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

**2.** If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

**a.** The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

**b.** This insurance applies to such liability assumed by the insured;

**c.** The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

**d.** The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

**e.** The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

**f.** The indemnitee:

**(1)** Agrees in writing to:

**(a)** Cooperate with us in the investigation, settlement or defense of the "suit";

**(b)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

**(c)** Notify any other insurer whose coverage is available to the indemnitee; and

**(d)** Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

**(2)** Provides us with written authorization to:

**(a)** Obtain records and other information related to the "suit"; and

**(b)** Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph **2.b.(2)** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when we have used up the applicable limit of insurance in the payment of judgments or settlements or the conditions set forth above, or the terms of the agreement described in Paragraph **f.** above, are no longer met.

## SECTION II – WHO IS AN INSURED

**1.** If you are designated in the Declarations as:

**a.** An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

**b.** A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

**c.** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

**d.** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

**e.** A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

**2.** Each of the following is also an insured:

**a.** Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

**(1)** "Bodily injury" or "personal and advertising injury":

**(a)** To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

**(b)** To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph **(1)(a)** above;

**(c)** For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraph **(1)(a)** or **(b)** above; or

**(d)** Arising out of his or her providing or failing to provide professional health care services.

**(2)** "Property damage" to property:

**(a)** Owned, occupied or used by;

**(b)** Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by;

you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

**b.** Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

**c.** Any person or organization having proper temporary custody of your property if you die, but only:

**(1)** With respect to liability arising out of the maintenance or use of that property; and

**(2)** Until your legal representative has been appointed.

**d.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

**3.** Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

**a.** Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

**b.** Coverage **A** does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

**c.** Coverage **B** does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

**SECTION III – LIMITS OF INSURANCE**

**1.** The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

**a.** Insureds;

**b.** Claims made or "suits" brought; or

**c.** Persons or organizations making claims or bringing "suits".

**2.** The General Aggregate Limit is the most we will pay for the sum of:

**a.** Medical expenses under Coverage **C;**

**b.** Damages under Coverage **A,** except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

**c.** Damages under Coverage **B.**

© Insurance Services Office, Inc., 2012

3. The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage **A** for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

4. Subject to Paragraph **2.** above, the Personal And Advertising Injury Limit is the most we will pay under Coverage **B** for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

5. Subject to Paragraph **2.** or **3.** above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

   **a.** Damages under Coverage **A; and**

   **b.** Medical expenses under Coverage **C**

   because of all "bodily injury" and "property damage" arising out of any one "occurrence".

6. Subject to Paragraph **5.** above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage **A** for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

7. Subject to Paragraph **5.** above, the Medical Expense Limit is the most we will pay under Coverage **C** for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

**SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**

1. **Bankruptcy**

   Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

2. **Duties In The Event Of Occurrence, Offense, Claim Or Suit**

   **a.** You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

   **(1)** How, when and where the "occurrence" or offense took place;

   **(2)** The names and addresses of any injured persons and witnesses; and

   **(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.

   **b.** If a claim is made or "suit" is brought against any insured, you must:

   **(1)** Immediately record the specifics of the claim or "suit" and the date received; and

   **(2)** Notify us as soon as practicable.

   You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

   **c.** You and any other involved insured must:

   **(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

   **(2)** Authorize us to obtain records and other information;

   **(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

   **(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

   **d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

3. **Legal Action Against Us**

   No person or organization has a right under this Coverage Part:

   **a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

   **b.** To sue us on this Coverage Part unless all of its terms have been fully complied with.

   A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when Paragraph **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph **c.** below.

**b. Excess Insurance**

**(1)** This insurance is excess over:

**(a)** Any of the other insurance, whether primary, excess, contingent or on any other basis:

**(i)** That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

**(ii)** That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

**(iii)** That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

**(iv)** If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability.

**(b)** Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured.

**(2)** When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

**(3)** When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

**(a)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

**(b)** The total of all deductible and self-insured amounts under all that other insurance.

**(4)** We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5. Premium Audit**

**a.** We will compute all premiums for this Coverage Part in accordance with our rules and rates.

**b.** Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

**c.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6. Representations**

By accepting this policy, you agree:

**a.** The statements in the Declarations are accurate and complete;

© Insurance Services Office, Inc., 2012

**b.** Those statements are based upon representations you made to us; and

**c.** We have issued this policy in reliance upon your representations.

**7. Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each insured against whom claim is made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

## SECTION V – DEFINITIONS

**1.** "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

**a.** Notices that are published include material placed on the Internet or on similar electronic means of communication; and

**b.** Regarding web sites, only that part of a web site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

**2.** "Auto" means:

**a.** A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

**b.** Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

**3.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

**4.** "Coverage territory" means:

**a.** The United States of America (including its territories and possessions), Puerto Rico and Canada;

**b.** International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in Paragraph **a.** above; or

**c.** All other parts of the world if the injury or damage arises out of:

**(1)** Goods or products made or sold by you in the territory described in Paragraph **a.** above;

**(2)** The activities of a person whose home is in the territory described in Paragraph **a.** above, but is away for a short time on your business; or

**(3)** "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication;

provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in Paragraph **a.** above or in a settlement we agree to.

**5.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**6.** "Executive officer" means a person holding any of the officer positions created by your charter, constitution, bylaws or any other similar governing document.

**7.** "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

**8.** "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

**a.** It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

**b.** You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work" or your fulfilling the terms of the contract or agreement.

 © Insurance Services Office, Inc., 2012

9. "Insured contract" means:

**a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

**b.** A sidetrack agreement;

**c.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

**d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

**e.** An elevator maintenance agreement;

**f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

**(1)** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

**(2)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

**(a)** Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

**(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

**(3)** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection, architectural or engineering activities.

10. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

11. "Loading or unloading" means the handling of property:

**a.** After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

**b.** While it is in or on an aircraft, watercraft or "auto"; or

**c.** While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

12. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

**a.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

**b.** Vehicles maintained for use solely on or next to premises you own or rent;

**c.** Vehicles that travel on crawler treads;

**d.** Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

**(1)** Power cranes, shovels, loaders, diggers or drills; or

**(2)** Road construction or resurfacing equipment such as graders, scrapers or rollers;

**e.** Vehicles not described in Paragraph **a., b., c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

**(1)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

**(2)** Cherry pickers and similar devices used to raise or lower workers;

**f.** Vehicles not described in Paragraph **a., b., c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

© Insurance Services Office, Inc., 2012

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

**(1)** Equipment designed primarily for:

  **(a)** Snow removal;

  **(b)** Road maintenance, but not construction or resurfacing; or

  **(c)** Street cleaning;

**(2)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

**(3)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**14.** "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

**a.** False arrest, detention or imprisonment;

**b.** Malicious prosecution;

**c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

**d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

**e.** Oral or written publication, in any manner, of material that violates a person's right of privacy;

**f.** The use of another's advertising idea in your "advertisement"; or

**g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

**15.** "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**16.** "Products-completed operations hazard":

**a.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

  **(1)** Products that are still in your physical possession; or

  **(2)** Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

    **(a)** When all of the work called for in your contract has been completed.

    **(b)** When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

    **(c)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

    Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

**b.** Does not include "bodily injury" or "property damage" arising out of:

  **(1)** The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

  **(2)** The existence of tools, uninstalled equipment or abandoned or unused materials; or

  **(3)** Products or operations for which the classification, listed in the Declarations or in a policy Schedule, states that products-completed operations are subject to the General Aggregate Limit.

**17.** "Property damage" means:

**a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**18.** "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

   **a.** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

   **b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

**19.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**20.** "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

**21.** "Your product":

   **a.** Means:

      **(1)** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

         **(a)** You;

         **(b)** Others trading under your name; or

         **(c)** A person or organization whose business or assets you have acquired; and

      **(2)** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

   **b.** Includes:

      **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

      **(2)** The providing of or failure to provide warnings or instructions.

   **c.** Does not include vending machines or other property rented to or located for the use of others but not sold.

**22.** "Your work":

   **a.** Means:

      **(1)** Work or operations performed by you or on your behalf; and

      **(2)** Materials, parts or equipment furnished in connection with such work or operations.

   **b.** Includes:

      **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

      **(2)** The providing of or failure to provide warnings or instructions.

COMMERCIAL GENERAL LIABILITY
CG 21 06 05 14

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION – ACCESS OR DISCLOSURE OF CONFIDENTIAL OR PERSONAL INFORMATION AND DATA-RELATED LIABILITY – WITH LIMITED BODILY INJURY EXCEPTION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** Exclusion **2.p.** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

**2. Exclusions**

This insurance does not apply to:

**p. Access Or Disclosure Of Confidential Or Personal Information And Data-related Liability**

Damages arising out of:

**(1)** Any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information; or

**(2)** The loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of that which is described in Paragraph **(1)** or **(2)** above.

However, unless Paragraph **(1)** above applies, this exclusion does not apply to damages because of "bodily injury".

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**B.** The following is added to Paragraph **2. Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**Access Or Disclosure Of Confidential Or Personal Information**

"Personal and advertising injury" arising out of any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of any access to or disclosure of any person's or organization's confidential or personal information.

POLICY NUMBER: CPS7560688                                   **COMMERCIAL GENERAL LIABILITY**
                                                           **CG 21 16 04 13**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION – DESIGNATED PROFESSIONAL SERVICES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| Description Of Professional Services |
| --- |
| **1.** ANY AND ALL PROFESSIONAL EXPOSURES |
| **2.** |
| **3.** |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

With respect to any professional services shown in the Schedule, the following exclusion is added to Paragraph **2. Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** and Paragraph **2. Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability**:

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" due to the rendering of or failure to render any professional service.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage", or the offense which caused the "personal and advertising injury", involved the rendering of or failure to render any professional service.

              © Insurance Services Office, Inc., 2012

POLICY NUMBER: CPS7560688

**COMMERCIAL GENERAL LIABILITY**
**CG 21 44 04 17**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# LIMITATION OF COVERAGE TO DESIGNATED PREMISES, PROJECT OR OPERATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

| |
|---|
| **Premises:** |
| 4205 PINE ISLAND RD NW, MATLACHA, FL, 33993 |
| |
| **Project Or Operation:** |
| |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

**A.** If this endorsement is attached to Commercial General Liability Coverage Form **CG 00 01**, the provisions under this Paragraph **A.** apply:

1. Paragraph **1.b.** under **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

   **b.** This insurance applies to "bodily injury" and "property damage" caused by an "occurrence" that takes place in the "coverage territory" only if:

   **(1)** The "bodily injury" or "property damage":

      **(a)** Occurs on the premises shown in the Schedule or the grounds and structures appurtenant to those premises; or

      **(b)** Arises out of the project or operation shown in the Schedule;

   **(2)** The "bodily injury" or "property damage" occurs during the policy period; and

**(3)** Prior to the policy period, no insured listed under Paragraph **1.** of Section II – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

2. Paragraph **1.b.** under **Section I – Coverage B – Personal And Advertising Injury Liability** is replaced by the following:

   **b.** This insurance applies to "personal and advertising injury" caused by an offense committed in the "coverage territory" but only if:

   **(1)** The offense arises out of your business:

      **(a)** Performed on the premises shown in the Schedule; or

**(b)** In connection with the project or operation shown in the Schedule; and

**(2)** The offense was committed during the policy period.

However, with respect to Paragraph **1.b.(1)(a)** of this Insuring Agreement, if the "personal and advertising injury" is caused by:

**(1)** False arrest, detention or imprisonment; or

**(2)** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

then such offense must arise out of your business performed on the premises shown in the Schedule and the offense must have been committed on the premises shown in the Schedule or the grounds and structures appurtenant to those premises.

**3.** Paragraph **1.a.** under **Section I – Coverage C – Medical Payments** is replaced by the following:

**a.** We will pay medical expenses as described below for "bodily injury" caused by an accident that takes place in the "coverage territory" if the "bodily injury":

**(1)** Occurs on the premises shown in the Schedule or the grounds and structures appurtenant to those premises; or

**(2)** Arises out of the project or operation shown in the Schedule;

provided that:

**(a)** The accident takes place during the policy period;

**(b)** The expenses are incurred and reported to us within one year of the date of the accident; and

**(c)** The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

**B.** If this endorsement is attached to Commercial General Liability Coverage Form **CG 00 02,** the provisions under this Paragraph **B.** apply:

**1.** Paragraph **1.b.** under **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

**b.** This insurance applies to "bodily injury" and "property damage" caused by an "occurrence" that takes place in the "coverage territory" only if:

**(1)** The "bodily injury" or "property damage":

**(a)** Occurs on the premises shown in the Schedule or the grounds and structures appurtenant to those premises; or

**(b)** Arises out of the project or operation shown in the Schedule;

**(2)** The "bodily injury" or "property damage" did not occur before the Retroactive Date, if any, shown in the Declarations or after the end of the policy period; and

**(3)** A claim for damages because of the "bodily injury" or "property damage" is first made against any insured, in accordance with Paragraph **1.c.** of this Insuring Agreement, during the policy period or any Extended Reporting Period we provide under Section **V** – Extended Reporting Periods.

**2.** Paragraph **1.b.** under **Section I – Coverage B – Personal And Advertising Injury Liability** is replaced by the following:

**b.** This insurance applies to "personal and advertising injury" caused by an offense committed in the "coverage territory" but only if:

**(1)** The offense arises out of your business:

**(a)** Performed on the premises shown in the Schedule; or

**(b)** In connection with the project or operation shown in the Schedule;

**(2)** The offense was not committed before the Retroactive Date, if any, shown in the Declarations or after the end of the policy period; and

**(3)** A claim for damages because of the "personal and advertising injury" is first made against any insured, in accordance with Paragraph **1.c.** of this Insuring Agreement, during the policy period or any Extended Reporting Period we provide under Section **V – Extended Reporting Periods.**

However, with respect to Paragraph **1.b.(1)(a)** of this Insuring Agreement, if the "personal and advertising injury" is caused by:

**(1)** False arrest, detention or imprisonment; or

**(2)** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

then such offense must arise out of your business performed on the premises shown in the Schedule and the offense must have been committed on the premises shown in the Schedule or the grounds and structures appurtenant to those premises.

**3.** Paragraph **1.a.** under **Section I – Coverage C – Medical Payments** is replaced by the following:

**a.** We will pay medical expenses as described below for "bodily injury" caused by an accident that takes place in the "coverage territory" if the "bodily injury":

**(1)** Occurs on the premises shown in the Schedule or the grounds and structures appurtenant to those premises; or

**(2)** Arises out of the project or operation shown in the Schedule;

provided that:

**(a)** The accident takes place during the policy period;

**(b)** The expenses are incurred and reported to us within one year of the date of the accident; and

**(c)** The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

 © Insurance Services Office, Inc., 2016

COMMERCIAL GENERAL LIABILITY
CG 21 47 12 07

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EMPLOYMENT-RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2., Exclusions** of Section I – Coverage A – Bodily Injury And Property Damage Liability:

This insurance does not apply to:

"Bodily injury" to:

**(1)** A person arising out of any:

 **(a)** Refusal to employ that person;

 **(b)** Termination of that person's employment; or

 **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in Paragraphs **(a)**, **(b)**, or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the injury-causing event described in Paragraphs **(a)**, **(b)** or **(c)** above occurs before employment, during employment or after employment of that person;

**(2)** Whether the insured may be liable as an employer or in any other capacity; and

**(3)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**B.** The following exclusion is added to Paragraph **2., Exclusions** of Section I – Coverage B – Personal And Advertising Injury Liability:

This insurance does not apply to:

"Personal and advertising injury" to:

**(1)** A person arising out of any:

 **(a)** Refusal to employ that person;

 **(b)** Termination of that person's employment; or

 **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraphs **(a)**, **(b)**, or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the injury-causing event described in Paragraphs **(a)**, **(b)** or **(c)** above occurs before employment, during employment or after employment of that person;

**(2)** Whether the insured may be liable as an employer or in any other capacity; and

**(3)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

© ISO Properties, Inc., 2006

COMMERCIAL GENERAL LIABILITY
CG 21 49 09 99

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# TOTAL POLLUTION EXCLUSION ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Exclusion **f.** under Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

This insurance does not apply to:

**f. Pollution**

  **(1)** "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

  **(2)** Any loss, cost or expense arising out of any:

    **(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

    **(b)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of,  "pollutants".

Copyright, Insurance Services Office, Inc.,  1998

COMMERCIAL GENERAL LIABILITY
CG 21 67 12 04

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# FUNGI OR BACTERIA EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2. Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability:**

**2. Exclusions**

This insurance does not apply to:

**Fungi Or Bacteria**

**a.** "Bodily injury" or "property damage" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

**b.** Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

This exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for bodily consumption.

**B.** The following exclusion is added to Paragraph **2. Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**Fungi Or Bacteria**

**a.** "Personal and advertising injury" which would not have taken place, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury.

**b.** Any loss, cost or expense arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

**C.** The following definition is added to the **Definitions** Section:

"Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

© ISO Properties, Inc., 2003

COMMERCIAL GENERAL LIABILITY
CG 21 73 01 15

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION OF CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

**A.** The following exclusion is added:

This insurance does not apply to:

**TERRORISM**

"Any injury or damage" arising, directly or indirectly, out of a "certified act of terrorism".

**B.** The following definitions are added:

**1.** For the purposes of this endorsement, "any injury or damage" means any injury or damage covered under any Coverage Part to which this endorsement is applicable, and includes but is not limited to "bodily injury", "property damage", "personal and advertising injury", "injury" or "environmental damage" as may be defined in any applicable Coverage Part.

**2.** "Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

**a.** The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

**b.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**C.** The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for injury or damage that is otherwise excluded under this Coverage Part.

**COMMERCIAL GENERAL LIABILITY**
**CG 24 26 04 13**

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# AMENDMENT OF INSURED CONTRACT DEFINITION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

The definition of "insured contract" in the **Definitions** section is replaced by the following:

"Insured contract" means:

**a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

**b.** A sidetrack agreement;

**c.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

**d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

**e.** An elevator maintenance agreement;

**f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization, provided the "bodily injury" or "property damage" is caused, in whole or in part, by you or by those acting on your behalf. However, such part of a contract or agreement shall only be considered an "insured contract" to the extent your assumption of the tort liability is permitted by law. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

**(1)** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

**(2)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

**(a)** Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

**(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

**(3)** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection, architectural or engineering activities.

---

    © Insurance Services Office, Inc., 2012

COMMERCIAL GENERAL LIABILITY
CG 40 12 12 19

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION – ALL HAZARDS IN CONNECTION WITH AN ELECTRONIC SMOKING DEVICE, ITS VAPOR, COMPONENT PARTS, EQUIPMENT AND ACCESSORIES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** The following exclusion is added:

This insurance does not apply to:

**Electronic Smoking Device**

"Bodily injury", "property damage" or "personal and advertising injury" arising out of the following:

**1.** The design, manufacture, distribution, sale, maintenance, use or repair of:

  **a.** An "electronic smoking device"; or

  **b.** Any component part of, or equipment or accessory designed for use with an "electronic smoking device", including, but not limited to, a mouthpiece, tube, tank, connector, atomizer, cartomizer, clearomizer, coil, battery, charger, cartridge, liquid, flavoring, solutions of any kind, or ingredients therein;

**2.** The actual, alleged, threatened or suspected inhalation of, contact with, exposure to, existence of, or presence of, vapor delivered from an "electronic smoking device"; or

**3.** Any component part of, or equipment or accessory designed for use with an "electronic smoking device", including, but not limited to those items listed in Paragraph **A.1.b.** of this endorsement, and in connection with the actual, alleged, threatened or suspected inhalation of, contact with, exposure to, existence of, or presence of, vapor delivered from an "electronic smoking device".

**B.** The following definition is added:

"Electronic smoking device" means a battery-powered device that delivers a vaporized inhalable substance through a mouthpiece. "Electronic smoking devices" include, but are not limited to, battery-powered:

**1.** Cigarettes;

**2.** Pipes;

**3.** Cigars;

**4.** Hookahs; and

**5.** Vaporizers, other than steam or mist inhalers.

COMMERCIAL GENERAL LIABILITY
CG 40 15 12 20

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# CANNABIS EXCLUSION WITH HEMP EXCEPTION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** The following exclusion is added:

This insurance does not apply to:

**1.** "Bodily injury", "property damage" or "personal and advertising injury" arising out of:

**a.** The design, cultivation, manufacture, storage, processing, packaging, handling, testing, distribution, sale, serving, furnishing, possession or disposal of "cannabis"; or

**b.** The actual, alleged, threatened or suspected inhalation, ingestion, absorption or consumption of, contact with, exposure to, existence of, or presence of "cannabis"; or

**2.** "Property damage" to "cannabis".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage", or the offense which caused the "personal and advertising injury", involved that which is described in Paragraph **A.1.** or **A.2.** above.

However, Paragraph **A.1.b.** does not apply to "bodily injury" or "property damage" arising out of the actual, alleged, threatened or suspected inhalation, ingestion, absorption or consumption of, or contact with, "cannabis" by:

**(1)** An insured; or

**(2)** Any other person for whom you are legally responsible;

but only if the "bodily injury" or "property damage" does not arise out of your selling, serving or furnishing of "cannabis" to any person described above.

**B.** The exclusion in Paragraph **A.** does not apply to:

**1.** "Bodily injury", "property damage" or "personal and advertising injury" arising out of goods or products containing or derived from hemp, including, but not limited to:

**a.** Seeds;

**b.** Food;

**c.** Clothing;

**d.** Lotions, oils or extracts;

**e.** Building materials; or

**f.** Paper.

**2.** "Property damage" to goods or products described in Paragraph **B.1.** above.

However, Paragraphs **B.1.** and **B.2.** above do not apply to the extent any such goods or products are prohibited under an applicable state or local statute, regulation or ordinance in the state wherein:

**(1)** The "bodily injury" or "property damage" occurs;

**(2)** The "occurrence" which caused the "bodily injury" or "property damage" takes place; or

**(3)** The offense which caused the "personal and advertising injury" was committed.

**3.** "Personal and advertising injury" arising out of the following offenses:

**a.** False arrest, detention or imprisonment; or

**b.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor.

 © Insurance Services Office, Inc., 2020

**C.** The following definition is added to the **Definitions** section:

"Cannabis":

**1.** Means:

Any good or product that consists of or contains any amount of Tetrahydrocannabinol (THC) or any other cannabinoid, regardless of whether any such THC or cannabinoid is natural or synthetic.

**2.** Paragraph **C.1.** above includes, but is not limited to, any of the following containing such THC or cannabinoid:

**a.** Any plant of the genus Cannabis L., or any part thereof, such as seeds, stems, flowers, stalks and roots; or

**b.** Any compound, by-product, extract, derivative, mixture or combination, such as:

**(1)** Resin, oil or wax;

**(2)** Hash or hemp; or

**(3)** Infused liquid or edible cannabis;

whether or not derived from any plant or part of any plant set forth in Paragraph **C.2.a.**

© Insurance Services Office, Inc., 2020

# SCOTTSDALE INSURANCE COMPANY ®

**ENDORSEMENT NO.** _____

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| CPS7560688 | 04/14/2022 | 4205 PINE ISLAND LLC | 09012 |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## TOTAL LIQUOR LIABILITY EXCLUSION

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**

Paragraph **Exclusion 2.c.** of **SECTION I—COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY** is replaced by:

**c. Liquor Liability**

**(1)** "Bodily injury" or "property damage" for which any insured or an indemnity of the insured may be held liable by reason of:

**(a)** Causing or contributing to the intoxication of any person, including causing or contributing to the intoxication of any person because alcoholic beverages were permitted to be brought on your premises, for consumption on your premises;

**(b)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(c)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

**(2)** Paragraph **(1)** applies even if the claims or "suits" against any insured or an indemnity of the insured allege negligence or other wrongdoing in the:

**(a)** Supervision, hiring, employment, training or monitoring of others who are manufacturing, distributing, selling, serving or furnishing alcoholic beverage; or

**(b)** Providing or failing to provide transportation to any person that may be under the influence of alcohol.

_____     _____
AUTHORIZED REPRESENTATIVE              DATE

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2010

**SCOTTSDALE INSURANCE COMPANY ®**

**ENDORSEMENT NO.** _____

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| CPS7560688 | 04/14/2022 | 4205 PINE ISLAND LLC | 09012 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## AMENDMENT TO OTHER INSURANCE CONDITION

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

Condition **4. Other Insurance** of **SECTION IV—COMMERCIAL GENERAL LIABILITY CONDITIONS** is deleted in its entirety and is replaced by the following:

**4.   Other Insurance**

    **a.   Primary Insurance**

        This insurance is primary except when **b.** below applies.

    **b.   Excess Insurance**

        **(1)**   This insurance is excess over any other insurance, whether primary, excess, contingent or on any other basis:

            **(a)**   That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

            **(b)**   That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

            **(c)**   That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner;

            **(d)**   If the loss arises out of the maintenance or use of aircraft, "auto" or watercraft to the extent not subject to Exclusion **g.** of Coverage **A (SECTION I);** or

            **(e)**   That is valid and collectible insurance available to any insured under any other policy.

        **(2)**   When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit." If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

        **(3)**   When this insurance is excess over other insurance, we will pay only the amount of the loss, if any, that exceeds the sum of:

            **(a)**   The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2013

**(b)** The total of all deductible and self-insured amounts under all other insurance.

If a loss occurs involving two or more policies, each of which states that its insurance will be excess, then our policy will contribute on a pro rata basis.

|  |  |
|---|---|
| AUTHORIZED REPRESENTATIVE | DATE |

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2013

 SCOTTSDALE INSURANCE COMPANY ®

**ENDORSEMENT NO.** _____

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| CPS7560688 | 04/14/2022 | 4205 PINE ISLAND LLC | 09012 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# HABITABILITY EXCLUSION

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**

The following is added to **SECTION 1—COVERAGES, COVERAGE A—BODILY INJURY AND PROPERTY DAMAGE LIABILITY,** subsection **2. Exclusions;** and **COVERAGE B—PERSONAL AND ADVERTISING INJURY LIABILITY,** subsection **2. Exclusions:**

This insurance does not apply to any claim, allegation, demand, "suit," action, litigation, arbitration, alternative dispute resolution or other judicial or administrative proceeding alleging "bodily injury," "property damage," or "personal and advertising injury" arising directly or indirectly out of:

**a.** Alleged or actual violation(s) of any of the following, including any amendments, as they pertain to habitability or maintenance of any short-term or long-term habitational unit:

**(1)** Judicial decisions including Common Law Rulings;

**(2)** Civil Codes;

**(3)** Health and Safety Codes;

**(4)** Any Housing and Urban Development laws, regulations, ordinances or statutes;

**(5)** Rent stabilization laws, regulations or ordinances;

**(6)** Section 8 Housing Programs, including other federal, state and local government subsidized housing programs;

**(7)** Any administrative rules or regulations pertaining to **(1)** through **(6)** above or any of those promulgated by local municipalities; or

**b.** Alleged or actual failure to maintain any premises, site or location in, or restore any premises, site or location to, a safe, sanitary, healthy, habitable and tenantable condition; or

**c.** Actual or constructive wrongful eviction arising out of **a.** or **b.** above.

This exclusion applies even if negligence or other wrongdoing is alleged in the supervision, hiring, employment, training, investigation, reporting to authorities, or monitoring of others by an insured if the "occurrence" which caused the "bodily injury," "property damage," or "personal and advertising injury" involves any one or more of **a., b.** or **c.** above.

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2013

 Nationwide

We shall not have any duty to defend or indemnify for any claim, proceeding or "suit" in any way based on, attributed to, arising out of, resulting from or any manner related to that which is described above, including, but not limited to, the diminished value of property or mental, physical or emotional injuries alleged. This coverage limitation applies regardless of whether the habitability allegation or claim is the proximate cause of damage or injury.

**All other terms and conditions remain unchanged.**

_____

AUTHORIZED REPRESENTATIVE                    DATE

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2013

Nationwide



**ENDORSEMENT NO.** _____

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| CPS7560688 | 04/14/2022 | 4205 PINE ISLAND LLC | 09012 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## KNOWN INJURY OR DAMAGE EXCLUSION— PERSONAL AND ADVERTISING INJURY

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**

The following exclusion is added to Paragraph **2. Exclusions** of **SECTION I—COVERAGES, COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY:**

**Known Injury Or Damage**

This insurance does not apply to "personal and advertising injury" arising from an offense:

**a.** That occurs during the policy period and, prior to the policy period, an insured listed under Paragraph **1.** of **SECTION II—WHO IS AN INSURED** or an "employee" authorized by you to give or receive notice of an offense or claim, knew that the "personal and advertising injury" had occurred prior to the policy period, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "personal and advertising injury" occurred, then any continuation, change or resumption of such offense during or after the policy period will be deemed to have been known prior to the policy period; or

**b.** That occurs during the policy period and was, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of **SECTION II—WHO IS AN INSURED** or an "employee" authorized by you to give or receive notice of an offense or claim, includes any continuation, change or resumption of that "personal and advertising injury" after the end of the policy period.

A "personal and advertising injury" arising from an offense will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of **SECTION II—WHO IS AN INSURED** or an "employee" authorized by you to give or receive notice of an offense or claim:

**(1)** Reports all, or any part, of the "personal and advertising injury" to us or any other insurer;

**(2)** Receives a written or verbal demand or claim for damages because of the "personal and advertising injury"; or

**(3)** Becomes aware by any other means that "personal and advertising injury" has occurred or has begun to occur.

_____    _____
AUTHORIZED REPRESENTATIVE          DATE

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2006



SCOTTSDALE INSURANCE COMPANY ®

**ENDORSEMENT NO.** _____

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| CPS7560688 | 04/14/2022 | 4205 PINE ISLAND LLC | 09012 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## HYDRAULIC FRACTURING EXCLUSION

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**
**ERRORS AND OMISSIONS COVERAGE PART**

**A.** The following is added to Paragraph **2. Exclusions** of **Section I—Coverage A. Bodily Injury And Property Damage Liability** of the Commercial General Liability Coverage Part and Paragraph **2. Exclusions** of **SECTION I—COVERAGE** of the Errors And Omissions Coverage Part:

This insurance does not apply to:

**Hydraulic Fracturing**

**1.** "Bodily injury," "property damage" or "error or omission":

    **a.** Arising, in whole or in part, out of any operation involving substances under pressure being pumped underground with the objective of creating fractures in geologic formations to facilitate the release and extraction of hydrocarbons, including, but not limited to, oil or natural gas. Such operations include, but are not limited to, "hydraulic fracturing," "gas fracking" and/or the actual, alleged, threatened or suspected contact with, exposure to, existence of or presence of any "flowback" or the handling, transporting, storage, release or disposal of any "flowback" by any insured or by any other person or entity; or

    **b.** Caused, directly or indirectly or in whole or in part, by the movement, in any direction, of earth or land arising, in whole or in part, out of any operation involving substances under pressure being pumped underground with the objective of creating fractures in underground geologic formations to facilitate the release and extraction of hydrocarbons, including, but not limited to, oil or natural gas. Such operations include, but are not limited to, "hydraulic fracturing" or "gas fracking."

**2.** Any loss, cost or expense arising, in whole or in part, out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, remediating or disposing of, or in any way responding to or assessing the effects of "hydraulic fracturing," "gas fracking" or "flowback," by any insured or by any other person or entity.

We will have no duty to settle any claim or defend any "suit" against the insured arising out of or in any way related to items **1.** or **2.** above.

**B.** The following is added to Paragraph **2. Exclusions** of **Section I—Coverage B. Personal And Advertising Injury** Liability of the Commercial General Liability Coverage Part:

This insurance does not apply to:

**Hydraulic Fracturing**

**1.** "Personal and advertising injury":

    **a.** Arising, in whole or in part, out of any operation involving substances under pressure being pumped underground with the objective of creating fractures in underground geologic formations to facilitate the release and extraction of hydrocarbons, including, but not limited to, oil or natural gas. Such operations include,

but are not limited to, "hydraulic fracturing," "gas fracking" and/or the actual, alleged, threatened or suspected contact with, exposure to, existence of or presence of any "flowback" or the handling, transporting, storage, release or disposal of any "flowback" by any "insured" or by any other person or entity; or

**b.** Caused, directly or indirectly or in whole or in part, by the movement, in any direction, of earth or land arising, in whole or in part, out of any operation involving substances under pressure being pumped underground with the objective of creating fractures in underground geologic formations to facilitate the release and extraction of hydrocarbons, including, but not limited to, oil or natural gas. Such operations include, but are not limited to, "hydraulic fracturing" or "gas fracking."

**2.** Any loss, cost or expense arising, in whole or in part, out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, remediating or disposing of, or in any way responding to or assessing the effects of "hydraulic fracturing," "gas fracking" or "flowback," by any insured or by any other person or entity.

We will have no duty to settle any claim or defend any "suit" against the insured arising out of or in any way related to items **1.** or **2.** above.

For purposes of this endorsement, the following definitions apply:

1. "Hydraulic fracturing," or hydrofracking means the process by which water, "proppants," chemicals and/or other fluid additives are injected at high pressure into underground geologic formations to create fractures, to facilitate the extraction of any hydrocarbons including but not limited to natural gas and/or oil.

2. "Flowback" means any substance containing returned "hydraulic fracturing" fluid, including but not limited to water, "proppants," "hydraulic fracturing" fluid additives; and, any hydrocarbon compounds, salts, conventional pollutants, organics, metals, and naturally occurring radioactive material brought to the surface with the water.

3. "Gas fracking" or liquefied propane/butane gas fracturing means the waterless process by which propane gel and "proppants" are injected at high pressure into underground geologic formations to create fractures, to facilitate the release and extraction of natural gas.

4. "Proppant" means particles that are used to keep fractures open after a hydraulic fracturing treatment.

AUTHORIZED REPRESENTATIVE                    DATE

 SCOTTSDALE INSURANCE COMPANY ®

**ENDORSEMENT NO.** _____

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| CPS7560688 | 04/14/2022 | 4205 PINE ISLAND LLC | 09012 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## AIRCRAFT EXCLUSION

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**

The following is added to paragraph **2. Exclusions** of **SECTION I—COVERAGES, COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY:**

This insurance does not apply to:

"Personal and advertising injury" arising out of the ownership, maintenance, use or entrustment to others of any aircraft. Use includes operation and "loading and unloading."

This exclusion applies even if claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by any insured.

AUTHORIZED REPRESENTATIVE                    DATE

 **SCOTTSDALE INSURANCE COMPANY®**

**ENDORSEMENT NO.** _____

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| CPS7560688 | 04/14/2022 | 4205 PINE ISLAND LLC | 09012 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## MINIMUM AND ADVANCE PREMIUM ENDORSEMENT

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**
**LIQUOR LIABILITY COVERAGE PART**
**PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART**

### SCHEDULE

**MINIMUM PREMIUM _____ 100 _____ %**

Item **5.b.** of the **Premium Audit** condition under **SECTION IV—COMMERCIAL GENERAL LIABILITY CONDITIONS, SECTION IV—LIQUOR LIABILITY CONDITIONS** and **SECTION IV—PRODUCTS/ COMPLETED OPERATIONS LIABILITY CONDITIONS** is amended to read:

**b.** The advance premium for this Coverage Part is a deposit premium only. The final premium shall be subject to audit. At the close of each audit period we will compute the earned premium for that period. Any audit premiums are due and payable to us on notice to the first Named Insured. If the sum of the advance and audit premiums paid for the policy term is greater than the earned premium, we will return the excess to the first Named Insured, subject to the minimum premium as defined below. In the event the first Named Insured fails or refuses to allow our representative to audit your books and records, we may unilaterally charge a final premium for the Policy Period at double the minimum or advance premium, whichever is greater, and such final premium shall be immediately due and payable on notice to the first Named Insured.

For purposes of this endorsement, the terms advance premium, earned premium, and minimum premium are defined as follows:

Advance Premium—the premium that is stated in the applicable initial policy Declarations or Renewal Certificate and payable in full by the first Named Insured at the inception of each Policy Period.

Earned Premium—the premium that is developed by applying the rate(s) scheduled in the policy to the actual premium basis for the audit period.

Minimum Premium—the lowest premium for which this insurance will be written for the Policy Period stated in **Item 2.** of the Declarations of the applicable initial policy or subsequent Renewal Certificate. This minimum premium is equal to 100% (unless a different percentage [%] is shown in the Schedule above) of the advance premium including any premium adjustments made by endorsement to this policy during the Policy Period. Premium adjustments do not include the audit premium developed for the Policy Period stated in **Item 2.** of the Declarations.

AUTHORIZED REPRESENTATIVE                    DATE

Underwritten by Scottsdale Insurance Company

**ENDORSEMENT NO.** _____

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| CPS7560688 | 04/14/2022 | 4205 PINE ISLAND LLC | 09012 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# CONTROLLED SUBSTANCE EXCLUSION

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**

The following exclusion is added to **SECTION I—COVERAGES, COVERAGE A—BODILY INJURY AND PROPERTY DAMAGE LIABILITY,** paragraph **2. Exclusions** and **COVERAGE B—PERSONAL AND ADVERTISING INJURY,** paragraph **2. Exclusions:**

This insurance does not apply to any "bodily injury," "property damage," "personal and advertising injury" or damages for which any insured may be held liable by reason of:

1. The abuse, misuse, addictive use, illicit use, overuse, unlawful distribution or diversion from the intended legal use of:

   a. Codeine, fentanyl, hydrocodone, oxycontin, hydromorphone, meperidine, methadone, oxycodone, naloxone or any other opioid or narcotic drug, medication or substance of any type, nature, or kind; or

   b. Controlled substance as defined by or included in the Schedules of the Controlled Substance Act of the United States of America or any other judicial, statutory, regulatory or legal measure in any nation, province, state, municipality or other governmental division or subdivision;

2. The failure or inadequacy of any controls, practices or procedures to prevent or report behavior relating to the actual or alleged abuse, misuse, addictive use, illicit use, overuse, unlawful distribution or diversion from the intended legal use of any substances referenced in **1.a.** or **1.b.** above; or

3. The failure to warn or inadequacy of warnings related to the consequences of any abuse, misuse, addictive use, illicit use, overuse, unlawful distribution or diversion from the intended legal use of any substances referenced in **1.a.** or **1.b.** above.

However, this exclusion shall not apply to any liability arising out of an insured's failure to provide the correct drug or correct dosage while filling a prescription.

Subsection **1.a.** and **1.b.** of this exclusion shall not apply for the treatment of the substances listed in **1.a.** or **1.b.** above provided that such treatment is in compliance with Certification of Opioid Treatment Programs, 42 Code of Federal Regulation (CFR) 8.

**All other terms and conditions of the policy remain unchanged.**

_____     ___/_____

AUTHORIZED REPRESENTATIVE                                          DATE

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2013



Underwritten by Scottsdale Insurance Company

**ENDORSEMENT NO. _____**

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| CPS7560688 | 04/14/2022 | 4205 PINE ISLAND LLC | 09012 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## CONTRACTORS SPECIAL CONDITIONS

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**
**PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE FORM**

### SCHEDULE

| Coverage | Limit of Insurance |
|---|---|
| Each Occurrence Limit | $ |
| Personal and Advertising Injury Limit | $ |
| General Aggregate Limit (Other than Products/Completed Operations) | $ |
| Products/Completed Operations Aggregate Limit | $ |
| (If no entry appears above, the minimum limits of insurance will be equal to the limits of insurance shown in the Declarations). | |

**A.** The following is added to **SECTION IV—COMMERCIAL GENERAL LIABILITY CONDITIONS** and **SECTION IV—PRODUCTS/COMPLETED OPERATIONS LIABILITY CONDITIONS:**

**Contractors Special Conditions**

You will obtain current certificates of insurance from all contractors and subcontractors, evidencing such contractors and subcontractors are "adequately insured," including evidence of:

**1.** Commercial General Liability insurance, including Products/Completed Operations insurance; and

**2.** Effective dates of coverage that "coincide" with the effective dates of coverage on this policy.

Failure to comply with this condition does not alter the coverage provided by this policy but will result in an additional premium charge.

**B.** The following is added to **SECTION IV—COMMERCIAL GENERAL LIABILITY CONDITIONS** and **SECTION IV—PRODUCTS/COMPLETED OPERATIONS LIABILITY CONDITIONS,** subsection **5. Premium Audit:**

Should you fail to provide current certificates of insurance from all "adequately insured" contractors at such times as we request to complete a premium audit, a premium charge will be made as follows:

**1.** If the Premium Basis indicated in the Declarations is payroll, the premium charge will be computed by multiplying the "total cost" for all sublet work that fails to meet Contractors Special Conditions, by a rate per $1,000 payroll for the applicable classification of the work performed. If the policy

Nationwide

does not contain the applicable classification and rate, we will multiply our usual and customary rate per $1,000 payroll for that classification.

2.  If the Premium Basis indicated in the Declarations is gross sales/gross receipts, the premium charge will be computed by multiplying a rate per $1,000 of the "total cost" for all sublet work that fails to meet Contractors Special Conditions, by a rate per $1,000 of gross sales/gross receipts for the applicable classification of the work performed. If the policy does not contain the applicable classification and rate, we will multiply our usual and customary rate per $1,000 gross sales/gross receipts for that classification.

    This premium calculation will be made in addition to the premium charged for payroll or gross sales/gross receipts as indicated in the Declarations. The insured's payroll or gross sales/gross receipts will not in any way be reduced.

C.  For purposes of this endorsement, the following definitions apply:

1.  "Adequately insured" means that the contractors and subcontractors that perform operations for you maintain Commercial General Liability including Products/Completed Operations insurance in force with the minimum Limits of Insurance shown in the Schedule for their operations, including operations performed for them by others.

2.  "Coincide" means that the effective dates of coverage for all policies of all contractors and subcontractors that cover that period of time during which work was performed for you within the effective dates covered by this policy.

3.  "Total cost" means the cost of all labor, materials and equipment furnished, used or delivered for use in the execution of the work and all fees, bonuses or commissions paid.

**All other terms and conditions of this policy remain unchanged.**

AUTHORIZED REPRESENTATIVE                          DATE



# SCOTTSDALE INSURANCE COMPANY®

**ENDORSEMENT NO.** _____

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| CPS7560688 | 04/14/2022 | 4205 PINE ISLAND LLC | 09012 |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## BODILY INJURY, PROPERTY DAMAGE, PERSONAL AND ADVERTISING INJURY LIABILITY DEDUCTIBLE ENDORSEMENT (PER CLAIMANT)

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

### SCHEDULE

| Coverage | Amount and Basis of Deductible |
|---|---|
| Bodily Injury Liability | $ 1,000 per claimant |
| Property Damage Liability | $ 1,000 per claimant |
| Personal and Advertising Injury Liability | $ 1,000 per claimant |

1. Our obligation under the Bodily Injury Liability, Property Damage Liability, Personal and Advertising Injury Liability coverages to pay damages on your behalf applies only to the amount of damages in excess of any deductible amounts stated in the Schedule above as applicable to such coverages, and the Limits of Insurance applicable to Each Occurrence or offense for such coverages will be reduced by the amount of such deductible. Aggregate Limits for such coverages shall not be reduced by the application of such deductible amount.

2. The deductible amounts apply to damages and "loss adjustment expenses."

   "Loss Adjustment Expenses" means the expenses which are incurred in conjunction with the defense, adjustment or settlement of claims made under any one of the policies and which are allocable to such claims according to generally accepted insurance industry practices; such expenses include, but are not limited to, expenditures for legal costs, attorneys fees, investigations, experts, independent adjustment services, and expenses incurred in obtaining recovery against any third party.

3. The deductible amounts stated in the Schedule above apply, respectively:

   a. Under the Bodily Injury Liability Coverage to all damages because of "bodily injury" sustained by one person;

   b. Under the Property Damage Liability Coverage to all damages because of "property damage" sustained by one person, organization or association; and

   c. Under the Personal and Advertising Injury Liability coverage to all damages sustained by one person, organization or association;

   as the result of any one "occurrence" or offense.

GLS-94s (6-15)                               Page 1 of 2

4.  The terms of this insurance, including those with respect to our right and duty to defend any "suits" seeking those damages and your duties in the event of an "occurrence," offense, claim or "suit," apply irrespective of the application of the deductible amount.

5.  We may pay any part or all of the deductible amount to effect settlement of any claim or "suit" and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as has been paid by us.

_____/_____

AUTHORIZED REPRESENTATIVE                                    DATE

IL 00 21 09 08

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
### (Broad Form)

This endorsement modifies insurance provided under the following:

    COMMERCIAL AUTOMOBILE COVERAGE PART
    COMMERCIAL GENERAL LIABILITY COVERAGE PART
    FARM COVERAGE PART
    LIQUOR LIABILITY COVERAGE PART
    MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
    OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
    POLLUTION LIABILITY COVERAGE PART
    PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
    RAILROAD PROTECTIVE LIABILITY COVERAGE PART
    UNDERGROUND STORAGE TANK POLICY

1. The insurance does not apply:

   A. Under any Liability Coverage, to "bodily injury" or "property damage":

      (1) With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

      (2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

   B. Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

   C. Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

      (1) The "nuclear material" (a) is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or (b) has been discharged or dispersed therefrom;

      (2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

      (3) The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to "property damage" to such "nuclear facility" and any property thereat.

2. As used in this endorsement:

   "Hazardous properties" includes radioactive, toxic or explosive properties.

   "Nuclear material" means "source material", "special nuclear material" or "by-product material".

© ISO Properties, Inc., 2007

"Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste material **(a)** containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and **(b)** resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

   **(a)** Any "nuclear reactor";

   **(b)** Any equipment or device designed or used for **(1)** separating the isotopes of uranium or plutonium, **(2)** processing or utilizing "spent fuel", or **(3)** handling, processing or packaging "waste";

   **(c)** Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

   **(d)** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

    © ISO Properties, Inc., 2007    IL 00 21 09 08    □

# SCOTTSDALE INSURANCE COMPANY ®

**ENDORSEMENT NO.** _____

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| CPS7560688 | 04/14/2022 | 4205 PINE ISLAND LLC | 09012 |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## ASBESTOS EXCLUSION

This policy does not apply to:

(1) Damages in any way or to any extent arising out of or involving asbestos, asbestos fibers, or any product containing asbestos or asbestos fibers.

(2) Any economic loss, diminution of property value, abatement costs, or any other loss, cost or expense including equitable relief, in any way or to any extent arising out of or involving asbestos, asbestos fibers or any product containing asbestos or asbestos fibers.

(3) Any fees, fines, costs, or expenses of any nature whatsoever in the investigation or defense of any claim or suit arising out of or involving asbestos, as-bestos fibers, or any product containing asbestos or asbestos fibers.

_____ /_____
AUTHORIZED REPRESENTATIVE         DATE

UTS-266g (5-98)

**SCOTTSDALE INSURANCE COMPANY** ®

**ENDORSEMENT NO.** _____

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| CPS7560688 | 04/14/2022 | 4205 PINE ISLAND LLC | 09012 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## LEAD CONTAMINATION EXCLUSION

This policy does not apply to:

1. Any damages arising out of the ingestion, inhalation or absorption of lead in any form.

2. Any loss, cost or expense arising out of any:

    (a) Request, demand or order that any "insured" or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of lead; or

    (b) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of lead.

_____ / _____
AUTHORIZED REPRESENTATIVE                    DATE

UTS-267g (5-98)



## SCOTTSDALE INSURANCE COMPANY ®

**ENDORSEMENT NO.** _____

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| CPS7560688 | 04/14/2022 | 4205 PINE ISLAND LLC | 09012 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## AMENDMENT OF NONPAYMENT CANCELLATION CONDITION

Wherever a Cancellation Condition for nonpayment of premium is found in the policy, the following is added:

If the insured failed to pay premium charged on a prior policy we issued and payment was due during the current renewal policy term, we may cancel this policy by mailing or delivering to the first Named Insured and mortgagee, if any, written notice of cancellation at least ten (10) days before the effective date of cancellation.

AUTHORIZED REPRESENTATIVE                          DATE

Page 1 of 1

UTS-365s (2-09)

 SCOTTSDALE INSURANCE COMPANY ®

**ENDORSEMENT NO.** _____

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| CPS7560688 | 04/14/2022 | 4205 PINE ISLAND LLC | 09012 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## PREMIUM AUDIT

The following is added to the Premium Audit provision:

If the first Named Insured fails or refuses to provide documentation adequate to determine the apportionment of exposures by class code, we may unilaterally apply all exposures to the class code with the highest rate stated in the policy including any class code adjustments made by endorsement.

_____  _____
AUTHORIZED REPRESENTATIVE          DATE

**SCOTTSDALE INSURANCE COMPANY** ®

**ENDORSEMENT NO.** _____

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| CPS7560688 | 04/14/2022 | 4205 PINE ISLAND LLC | 09012 |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## EXCLUSION—VERMIN

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

The following exclusion is added to paragraph **2. Exclusions** of SECTION I—COVERAGES, COVER-AGE A—BODILY INJURY AND PROPERTY DAMAGE LIABILITY and SECTION I—COVERAGES, COVERAGE B—PERSONAL AND ADVERTISING INJURY LIABILITY:

This insurance does not apply to "bodily injury," "property damage" and/or "personal and advertising injury" arising out of the alleged exposure to "vermin."

This exclusion applies even if claims against any insured allege negligence or other wrongdoing in the:

**a.** Act or failure to act by any insured;

**b.** Supervising, hiring, employing, training or monitoring of others with the responsibility for controlling "vermin";

**c.** Testing for "vermin";

**d.** Failure to prevent the spread of "vermin;" and/or

**e.** Failure to report the presence of "vermin" as required by local, state or federal law, statute or regulation.

For purposes of this endorsement, the following definition applies:

"Vermin" means bugs, spiders or insects and any other arthropods, including, but not limited to lice, fleas, ticks, bed bugs, dust mites, flies, bees and cockroaches, as well as rodents or any other small animal that inflicts bodily harm or damage to persons or property.

_____ / _____
AUTHORIZED REPRESENTATIVE                         DATE

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2008

SCOTTSDALE INSURANCE COMPANY ®

**ENDORSEMENT NO.** _____

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| CPS7560688 | 04/14/2022 | 4205 PINE ISLAND LLC | 09012 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## PUNITIVE OR EXEMPLARY DAMAGE EXCLUSION

In consideration of the premium charged, it is agreed that this policy does not apply to a claim of or indemnification for punitive or exemplary damages.

Punitive or exemplary damages also include any damages awarded pursuant to statute in the form of double, treble or other multiple damages in excess of compensatory damages.

If suit is brought against any insured for a claim falling within coverage provided under the policy, seeking both compensatory and punitive or exemplary damages, then the Company will afford a defense to such action; however, the Company will have no obligation to pay for any costs, interest or damages attributable to punitive or exemplary damages.

_____ / _____
AUTHORIZED REPRESENTATIVE             DATE

UTS-74g (8-95)

# SCOTTSDALE INSURANCE COMPANY ®

**ENDORSEMENT NO.** _____

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| CPS7560688 | 04/14/2022 | 4205 PINE ISLAND LLC | 09012 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## ANIMAL EXCLUSION

This policy does not provide coverage for:

**Bodily injury, property damage or medical payments** to others, caused by any animal, whether owned or not owned by any insured.

_____ / _____
AUTHORIZED REPRESENTATIVE                        DATE

UTS-85g (2-98)

Underwritten by: Scottsdale Insurance Company
Home Office: One Nationwide Plaza • Columbus, Ohio 43215
Administrative Office: 18700 North Hayden Road • Scottsdale, Arizona 85255
1-800-423-7675 • A Stock Company

## COMMERCIAL PROPERTY COVERAGE PART
## SUPPLEMENTAL DECLARATIONS

Policy Number: <u>CPS7560688</u>                    Effective Date: <u>04/14/2022</u>
                                                            (12:01 A.M. Standard Time)

Named Insured: <u>4205 PINE ISLAND LLC</u>          Agent Number: <u>09012</u>

| **Item 1.** Business Description:   PEANUT FARMING |
|---|

| **Item 2.** Premises Described: **See Schedule of Locations** |
|---|

| **Item 3.** $500 Deductible unless otherwise indicated. |
|---|

**Item 4.** Coverages Provided:

| Prem. No. | Bldg. No. | Coverage | Limit of Insurance | Covered Causes of Loss | Coins. |
|---|---|---|---|---|---|
| 1 | 1 | BUILDING | $ 150,000 | SPECIAL | 80 % |

Construction: <u>FRAME</u>                       Year Built: <u>1946</u>   No. of Stories: <u>1</u>
☐ Agreed Value: _____   Expires: _____   ☒ Replacement Cost: _____
☐ Business Income: Monthly Limit: _____   Maximum Period: _____   Extended Period: _____
Policy Deductible: <u>$10000</u>   ☐ Reporting: _____   ☐ Inflation Guard: _____ %

### Special Deductibles

| Wind or Hail | Named Storm | Earthquake |
|---|---|---|
| Form: | Form: | Form: |
| Amount: | Amount: | Amount: |

| Prem. No. | Bldg. No. | Coverage | Limit of Insurance | Covered Causes of Loss | Coins. |
|---|---|---|---|---|---|
| 1 | 1 | BUSINESS INCOME WITH EXTRA EXPENSE | $ 24,000 | | % |

Construction: <u>FRAME</u>                       Year Built: <u>1946</u>   No. of Stories: <u>1</u>
☐ Agreed Value: _____   Expires: _____   ☐ Replacement Cost: _____
☒ Business Income: Monthly Limit: <u>1/3</u>   Maximum Period: _____   Extended Period: _____
Policy Deductible: _____   ☐ Reporting: _____   ☐ Inflation Guard: _____ %

### Special Deductibles

| Wind or Hail | Named Storm | Earthquake |
|---|---|---|
| Form: | Form: | Form: |
| Amount: | Amount: | Amount: |



Underwritten by: Scottsdale Insurance Company
Home Office: One Nationwide Plaza • Columbus, Ohio 43215
Administrative Office: 18700 North Hayden Road • Scottsdale, Arizona 85255
1-800-423-7675 • A Stock Company

## COMMERCIAL PROPERTY COVERAGE PART
## SUPPLEMENTAL DECLARATIONS (continued)

Policy Number: CPS7560688                          Effective Date: 04/14/2022
                                                              (12:01 A.M. Standard Time)

Named Insured: 4205 PINE ISLAND LLC                Agent Number: 09012

| Prem. No. | Bldg. No. | Coverage | Limit of Insurance | Covered Causes of Loss | Coins. |
|---|---|---|---|---|---|
| 1 | 2 | BUILDING | $ 22,000 | SPECIAL | 80 % |

Construction: FRAME                        Year Built: 1946    No. of Stories: 1
☐ Agreed Value: _____    Expires: _____    ☒ Replacement Cost: _____
☐ Business Income: Monthly Limit: _____    Maximum Period: _____    Extended Period: _____
Policy Deductible: $10000    ☐ Reporting: _____    ☐ Inflation Guard: _____%

### Special Deductibles

| Wind or Hail | Named Storm | Earthquake |
|---|---|---|
| Form: | Form: | Form: |
| Amount: | Amount: | Amount: |

**SPECIAL PROVISIONS (if any):**

**Item 5.** Forms and Endorsements
Form(s) and Endorsement(s) made part of this policy at the time of issue:
**See Schedule of Forms and Endorsements**

THIS SUPPLEMENTAL DECLARATIONS AND THE COMMON POLICY DECLARATIONS, TOGETHER
WITH THE COMMON POLICY CONDITIONS, COVERAGE FORM(S) AND ENDORSEMENT(S),
IF ANY, COMPLETE THE ABOVE-NUMBERED POLICY.



Underwritten by: Scottsdale Insurance Company
Home Office: One Nationwide Plaza • Columbus, Ohio 43215
Administrative Office: 18700 North Hayden Road • Scottsdale, Arizona 85255
1-800-423-7675 • A Stock Company

## COMMERCIAL PROPERTY COVERAGE PART
## SUPPLEMENTAL DECLARATIONS EXTENSION

Policy Number: CPS7560688                    Effective Date: 04/14/2022

(12:01 A.M. Standard Time)

Named Insured: 4205 PINE ISLAND LLC          Agent Number: 09012

**Item 4.** Coverages Provided:

| Prem. No. | Bldg. No. | Coverage | Limit of Insurance | Covered Causes of Loss | Coins. |
|---|---|---|---|---|---|
| 1 | 2 | BUSINESS INCOME WITH EXTRA EXPENSE | $  10,000 | | % |

Construction:  FRAME                         Year Built: 1946    No. of Stories: 1

☐ Agreed Value: _____  Expires: _____  ☐ Replacement Cost: _____

☒ Business Income: Monthly Limit: 1/3    Maximum Period: _____  Extended Period: _____

Policy Deductible: _____  ☐ Reporting: _____  ☐ Inflation Guard: _____%

### Special Deductibles

| Wind or Hail | Named Storm | Earthquake |
|---|---|---|
| Form: | Form: | Form: |
| Amount: | Amount: | Amount: |

| Prem. No. | Bldg. No. | Coverage | Limit of Insurance | Covered Causes of Loss | Coins. |
|---|---|---|---|---|---|
| 1 | 3 | BUILDING | $  150,000 | SPECIAL | 80 % |

Construction:  FRAME                         Year Built: 1946    No. of Stories: 1

☐ Agreed Value: _____  Expires: _____  ☒ Replacement Cost: _____

☐ Business Income: Monthly Limit: _____    Maximum Period: _____  Extended Period: _____

Policy Deductible: ____$10000____  ☐ Reporting: _____  ☐ Inflation Guard: _____%

### Special Deductibles

| Wind or Hail | Named Storm | Earthquake |
|---|---|---|
| Form: | Form: | Form: |
| Amount: | Amount: | Amount: |

THIS SUPPLEMENTAL DECLARATIONS AND THE COMMON POLICY DECLARATIONS, TOGETHER
WITH THE COMMON POLICY CONDITIONS, COVERAGE FORM(S) AND ENDORSEMENT(S),
IF ANY, COMPLETE THE ABOVE-NUMBERED POLICY.



Underwritten by: Scottsdale Insurance Company
Home Office: One Nationwide Plaza • Columbus, Ohio 43215
Administrative Office: 18700 North Hayden Road • Scottsdale, Arizona 85255
1-800-423-7675 • A Stock Company

## COMMERCIAL PROPERTY COVERAGE PART
## SUPPLEMENTAL DECLARATIONS EXTENSION

Policy Number: CPS7560688                              Effective Date: 04/14/2022

(12:01 A.M. Standard Time)

Named Insured: 4205 PINE ISLAND LLC                    Agent Number: 09012

**Item 4.** Coverages Provided:

| Prem. No. | Bldg. No. | Coverage | Limit of Insurance | Covered Causes of Loss | Coins. |
|-----------|-----------|----------|--------------------|------------------------|--------|
| 1 | 3 | BUSINESS INCOME WITH EXTRA EXPENSE | $ 35,000 | | % |

Construction: FRAME                    Year Built: 1946    No. of Stories: 1
☐ Agreed Value: _____    Expires: _____    ☐ Replacement Cost: _____
☒ Business Income: Monthly Limit: 1/3    Maximum Period: _____    Extended Period: _____
Policy Deductible: _____    ☐ Reporting: _____    ☐ Inflation Guard: _____%

### Special Deductibles

| Wind or Hail | Named Storm | Earthquake |
|--------------|-------------|------------|
| Form: | Form: | Form: |
| Amount: | Amount: | Amount: |

| Prem. No. | Bldg. No. | Coverage | Limit of Insurance | Covered Causes of Loss | Coins. |
|-----------|-----------|----------|--------------------|------------------------|--------|
| 1 | 4 | PIO - PROPERTY IN THE OPEN | $ 10,000 | SPECIAL | 80 % |

Construction: _____                    Year Built: _____    No. of Stories: _____
☐ Agreed Value: _____    Expires: _____    ☒ Replacement Cost: _____
☐ Business Income: Monthly Limit: _____    Maximum Period: _____    Extended Period: _____
Policy Deductible: $10000    ☐ Reporting: _____    ☐ Inflation Guard: _____%

### Special Deductibles

| Wind or Hail | Named Storm | Earthquake |
|--------------|-------------|------------|
| Form: | Form: | Form: |
| Amount: | Amount: | Amount: |

THIS SUPPLEMENTAL DECLARATIONS AND THE COMMON POLICY DECLARATIONS, TOGETHER
WITH THE COMMON POLICY CONDITIONS, COVERAGE FORM(S) AND ENDORSEMENT(S),
IF ANY, COMPLETE THE ABOVE-NUMBERED POLICY.



Underwritten by: Scottsdale Insurance Company
Home Office: One Nationwide Plaza • Columbus, Ohio 43215
Administrative Office: 18700 North Hayden Road • Scottsdale, Arizona 85255
1-800-423-7675 • A Stock Company

## COMMERCIAL PROPERTY COVERAGE PART
## SUPPLEMENTAL DECLARATIONS EXTENSION

Policy Number: CPS7560688                          Effective Date: 04/14/2022

(12:01 A.M. Standard Time)

Named Insured: 4205 PINE ISLAND LLC              Agent Number: 09012

**Item 4.** Coverages Provided:

| Prem. No. | Bldg. No. | Coverage | Limit of Insurance | Covered Causes of Loss | Coins. |
|---|---|---|---|---|---|
| 1 | 5 | PIO - PROPERTY IN THE OPEN | $ 28,000 | SPECIAL | 80 % |

Construction: _____  Year Built: _____  No. of Stories: _____
❑ Agreed Value: _____  Expires: _____  ☒ Replacement Cost: _____
❑ Business Income: Monthly Limit: _____  Maximum Period: _____  Extended Period: _____
Policy Deductible: _____$10000_____  ❑ Reporting: _____  ❑ Inflation Guard: _____%

### Special Deductibles

| Wind or Hail | Named Storm | Earthquake |
|---|---|---|
| Form: | Form: | Form: |
| Amount: | Amount: | Amount: |

| Prem. No. | Bldg. No. | Coverage | Limit of Insurance | Covered Causes of Loss | Coins. |
|---|---|---|---|---|---|
|  |  |  | $ |  | % |

Construction: _____  Year Built: _____  No. of Stories: _____
❑ Agreed Value: _____  Expires: _____  ❑ Replacement Cost: _____
❑ Business Income: Monthly Limit: _____  Maximum Period: _____  Extended Period: _____
Policy Deductible: _____  ❑ Reporting: _____  ❑ Inflation Guard: _____%

### Special Deductibles

| Wind or Hail | Named Storm | Earthquake |
|---|---|---|
| Form: | Form: | Form: |
| Amount: | Amount: | Amount: |

THIS SUPPLEMENTAL DECLARATIONS AND THE COMMON POLICY DECLARATIONS, TOGETHER
WITH THE COMMON POLICY CONDITIONS, COVERAGE FORM(S) AND ENDORSEMENT(S),
IF ANY, COMPLETE THE ABOVE-NUMBERED POLICY.



COMMERCIAL PROPERTY
CP 00 10 10 12

# BUILDING AND PERSONAL PROPERTY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy, the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **H.** Definitions.

## A. Coverage

We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

### 1. Covered Property

Covered Property, as used in this Coverage Part, means the type of property described in this section, **A.1.,** and limited in **A.2.** Property Not Covered, if a Limit Of Insurance is shown in the Declarations for that type of property.

**a. Building,** meaning the building or structure described in the Declarations, including:

(1) Completed additions;

(2) Fixtures, including outdoor fixtures;

(3) Permanently installed:

(a) Machinery; and

(b) Equipment;

(4) Personal property owned by you that is used to maintain or service the building or structure or its premises, including:

(a) Fire-extinguishing equipment;

(b) Outdoor furniture;

(c) Floor coverings; and

(d) Appliances used for refrigerating, ventilating, cooking, dishwashing or laundering;

(5) If not covered by other insurance:

(a) Additions under construction, alterations and repairs to the building or structure;

(b) Materials, equipment, supplies and temporary structures, on or within 100 feet of the described premises, used for making additions, alterations or repairs to the building or structure.

**b. Your Business Personal Property** consists of the following property located in or on the building or structure described in the Declarations or in the open (or in a vehicle) within 100 feet of the building or structure or within 100 feet of the premises described in the Declarations, whichever distance is greater:

(1) Furniture and fixtures;

(2) Machinery and equipment;

(3) "Stock";

(4) All other personal property owned by you and used in your business;

(5) Labor, materials or services furnished or arranged by you on personal property of others;

(6) Your use interest as tenant in improvements and betterments. Improvements and betterments are fixtures, alterations, installations or additions:

(a) Made a part of the building or structure you occupy but do not own; and

(b) You acquired or made at your expense but cannot legally remove;

(7) Leased personal property for which you have a contractual responsibility to insure, unless otherwise provided for under Personal Property Of Others.

**c. Personal Property Of Others** that is:

(1) In your care, custody or control; and

(2) Located in or on the building or structure described in the Declarations or in the open (or in a vehicle) within 100 feet of the building or structure or within 100 feet of the premises described in the Declarations, whichever distance is greater.

However, our payment for loss or damage to personal property of others will only be for the account of the owner of the property.

**2. Property Not Covered**

Covered Property does not include:

**a.** Accounts, bills, currency, food stamps or other evidences of debt, money, notes or securities. Lottery tickets held for sale are not securities;

**b.** Animals, unless owned by others and boarded by you, or if owned by you, only as "stock" while inside of buildings;

**c.** Automobiles held for sale;

**d.** Bridges, roadways, walks, patios or other paved surfaces;

**e.** Contraband, or property in the course of illegal transportation or trade;

**f.** The cost of excavations, grading, backfilling or filling;

**g.** Foundations of buildings, structures, machinery or boilers if their foundations are below:

**(1)** The lowest basement floor; or

**(2)** The surface of the ground, if there is no basement;

**h.** Land (including land on which the property is located), water, growing crops or lawns (other than lawns which are part of a vegetated roof);

**i.** Personal property while airborne or waterborne;

**j.** Bulkheads, pilings, piers, wharves or docks;

**k.** Property that is covered under another coverage form of this or any other policy in which it is more specifically described, except for the excess of the amount due (whether you can collect on it or not) from that other insurance;

**l.** Retaining walls that are not part of a building;

**m.** Underground pipes, flues or drains;

**n.** Electronic data, except as provided under the Additional Coverage, Electronic Data. Electronic data means information, facts or computer programs stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software), on hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other repositories of computer software which are used with electronically controlled equipment. The term computer programs, referred to in the foregoing description of electronic data, means a set of related electronic instructions which direct the operations and functions of a computer or device connected to it, which enable the computer or device to receive, process, store, retrieve or send data. This paragraph, **n.,** does not apply to your "stock" of prepackaged software, or to electronic data which is integrated in and operates or controls the building's elevator, lighting, heating, ventilation, air conditioning or security system;

**o.** The cost to replace or restore the information on valuable papers and records, including those which exist as electronic data. Valuable papers and records include but are not limited to proprietary information, books of account, deeds, manuscripts, abstracts, drawings and card index systems. Refer to the Coverage Extension for Valuable Papers And Records (Other Than Electronic Data) for limited coverage for valuable papers and records other than those which exist as electronic data;

**p.** Vehicles or self-propelled machines (including aircraft or watercraft) that:

**(1)** Are licensed for use on public roads; or

**(2)** Are operated principally away from the described premises.

This paragraph does not apply to:

**(a)** Vehicles or self-propelled machines or autos you manufacture, process or warehouse;

  © Insurance Services Office, Inc., 2011  CP 00 10 10 12

    **(b)** Vehicles or self-propelled machines, other than autos, you hold for sale;

    **(c)** Rowboats or canoes out of water at the described premises; or

    **(d)** Trailers, but only to the extent provided for in the Coverage Extension for Non-owned Detached Trailers; or

**q.** The following property while outside of buildings:

    **(1)** Grain, hay, straw or other crops;

    **(2)** Fences, radio or television antennas (including satellite dishes) and their lead-in wiring, masts or towers, trees, shrubs or plants (other than trees, shrubs or plants which are "stock" or are part of a vegetated roof), all except as provided in the Coverage Extensions.

**3. Covered Causes Of Loss**

See applicable Causes Of Loss form as shown in the Declarations.

**4. Additional Coverages**

  **a. Debris Removal**

    **(1)** Subject to Paragraphs **(2)**, **(3)** and **(4)**, we will pay your expense to remove debris of Covered Property and other debris that is on the described premises, when such debris is caused by or results from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the date of direct physical loss or damage.

    **(2)** Debris Removal does not apply to costs to:

      **(a)** Remove debris of property of yours that is not insured under this policy, or property in your possession that is not Covered Property;

      **(b)** Remove debris of property owned by or leased to the landlord of the building where your described premises are located, unless you have a contractual responsibility to insure such property and it is insured under this policy;

      **(c)** Remove any property that is Property Not Covered, including property addressed under the Outdoor Property Coverage Extension;

      **(d)** Remove property of others of a type that would not be Covered Property under this Coverage Form;

      **(e)** Remove deposits of mud or earth from the grounds of the described premises;

      **(f)** Extract "pollutants" from land or water; or

      **(g)** Remove, restore or replace polluted land and water.

    **(3)** Subject to the exceptions in Paragraph **(4)**, the following provisions apply:

      **(a)** The most we will pay for the total of direct physical loss or damage plus debris removal expense is the Limit of Insurance applicable to the Covered Property that has sustained loss or damage.

      **(b)** Subject to **(a)** above, the amount we will pay for debris removal expense is limited to 25% of the sum of the deductible plus the amount that we pay for direct physical loss or damage to the Covered Property that has sustained loss or damage. However, if no Covered Property has sustained direct physical loss or damage, the most we will pay for removal of debris of other property (if such removal is covered under this Additional Coverage) is $5,000 at each location.

    **(4)** We will pay up to an additional $25,000 for debris removal expense, for each location, in any one occurrence of physical loss or damage to Covered Property, if one or both of the following circumstances apply:

      **(a)** The total of the actual debris removal expense plus the amount we pay for direct physical loss or damage exceeds the Limit of Insurance on the Covered Property that has sustained loss or damage.

      **(b)** The actual debris removal expense exceeds 25% of the sum of the deductible plus the amount that we pay for direct physical loss or damage to the Covered Property that has sustained loss or damage.

 © Insurance Services Office, Inc., 2011

Therefore, if **(4)(a)** and/or **(4)(b)** applies, our total payment for direct physical loss or damage and debris removal expense may reach but will never exceed the Limit of Insurance on the Covered Property that has sustained loss or damage, plus $25,000.

**(5) Examples**

The following examples assume that there is no Coinsurance penalty.

**Example 1**

| | |
|---|---|
| Limit of Insurance: | $ 90,000 |
| Amount of Deductible: | $   500 |
| Amount of Loss: | $ 50,000 |
| Amount of Loss Payable: | $ 49,500 |
| | ($50,000 – $500) |
| Debris Removal Expense: | $ 10,000 |
| Debris Removal Expense Payable: | $ 10,000 |
| ($10,000 is 20% of $50,000.) | |

The debris removal expense is less than 25% of the sum of the loss payable plus the deductible. The sum of the loss payable and the debris removal expense ($49,500 + $10,000 = $59,500) is less than the Limit of Insurance. Therefore, the full amount of debris removal expense is payable in accordance with the terms of Paragraph **(3)**.

**Example 2**

| | |
|---|---|
| Limit of Insurance: | $ 90,000 |
| Amount of Deductible: | $   500 |
| Amount of Loss: | $ 80,000 |
| Amount of Loss Payable: | $ 79,500 |
| | ($80,000 – $500) |
| Debris Removal Expense: | $ 40,000 |
| Debris Removal Expense Payable | |
| Basic Amount: | $ 10,500 |
| Additional Amount: | $ 25,000 |

The basic amount payable for debris removal expense under the terms of Paragraph **(3)** is calculated as follows: $80,000 ($79,500 + $500) x .25 = $20,000, capped at $10,500. The cap applies because the sum of the loss payable ($79,500) and the basic amount payable for debris removal expense ($10,500) cannot exceed the Limit of Insurance ($90,000).

The additional amount payable for debris removal expense is provided in accordance with the terms of Paragraph **(4)**, because the debris removal expense ($40,000) exceeds 25% of the loss payable plus the deductible ($40,000 is 50% of $80,000), and because the sum of the loss payable and debris removal expense ($79,500 + $40,000 = $119,500) would exceed the Limit of Insurance ($90,000). The additional amount of covered debris removal expense is $25,000, the maximum payable under Paragraph **(4)**. Thus, the total payable for debris removal expense in this example is $35,500; $4,500 of the debris removal expense is not covered.

**b. Preservation Of Property**

If it is necessary to move Covered Property from the described premises to preserve it from loss or damage by a Covered Cause of Loss, we will pay for any direct physical loss or damage to that property:

**(1)** While it is being moved or while temporarily stored at another location; and

**(2)** Only if the loss or damage occurs within 30 days after the property is first moved.

**c. Fire Department Service Charge**

When the fire department is called to save or protect Covered Property from a Covered Cause of Loss, we will pay up to $1,000 for service at each premises described in the Declarations, unless a higher limit is shown in the Declarations. Such limit is the most we will pay regardless of the number of responding fire departments or fire units, and regardless of the number or type of services performed.

This Additional Coverage applies to your liability for fire department service charges:

**(1)** Assumed by contract or agreement prior to loss; or

**(2)** Required by local ordinance.

No Deductible applies to this Additional Coverage.

© Insurance Services Office, Inc., 2011

**d. Pollutant Clean-up And Removal**

We will pay your expense to extract "pollutants" from land or water at the described premises if the discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused by or results from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the date on which the Covered Cause of Loss occurs.

This Additional Coverage does not apply to costs to test for, monitor or assess the existence, concentration or effects of "pollutants". But we will pay for testing which is performed in the course of extracting the "pollutants" from the land or water.

The most we will pay under this Additional Coverage for each described premises is $10,000 for the sum of all covered expenses arising out of Covered Causes of Loss occurring during each separate 12-month period of this policy.

**e. Increased Cost Of Construction**

(1) This Additional Coverage applies only to buildings to which the Replacement Cost Optional Coverage applies.

(2) In the event of damage by a Covered Cause of Loss to a building that is Covered Property, we will pay the increased costs incurred to comply with the minimum standards of an ordinance or law in the course of repair, rebuilding or replacement of damaged parts of that property, subject to the limitations stated in **e.(3)** through **e.(9)** of this Additional Coverage.

(3) The ordinance or law referred to in **e.(2)** of this Additional Coverage is an ordinance or law that regulates the construction or repair of buildings or establishes zoning or land use requirements at the described premises and is in force at the time of loss.

(4) Under this Additional Coverage, we will not pay any costs due to an ordinance or law that:

(a) You were required to comply with before the loss, even when the building was undamaged; and

(b) You failed to comply with.

(5) Under this Additional Coverage, we will not pay for:

(a) The enforcement of or compliance with any ordinance or law which requires demolition, repair, replacement, reconstruction, remodeling or remediation of property due to contamination by "pollutants" or due to the presence, growth, proliferation, spread or any activity of "fungus", wet or dry rot or bacteria; or

(b) Any costs associated with the enforcement of or compliance with an ordinance or law which requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants", "fungus", wet or dry rot or bacteria.

(6) The most we will pay under this Additional Coverage, for each described building insured under this Coverage Form, is $10,000 or 5% of the Limit of Insurance applicable to that building, whichever is less. If a damaged building is covered under a blanket Limit of Insurance which applies to more than one building or item of property, then the most we will pay under this Additional Coverage, for that damaged building, is the lesser of $10,000 or 5% times the value of the damaged building as of the time of loss times the applicable Coinsurance percentage.

The amount payable under this Additional Coverage is additional insurance.

(7) With respect to this Additional Coverage:

(a) We will not pay for the Increased Cost of Construction:

(i) Until the property is actually repaired or replaced at the same or another premises; and

(ii) Unless the repair or replacement is made as soon as reasonably possible after the loss or damage, not to exceed two years. We may extend this period in writing during the two years.

© Insurance Services Office, Inc., 2011

**(b)** If the building is repaired or replaced at the same premises, or if you elect to rebuild at another premises, the most we will pay for the Increased Cost of Construction, subject to the provisions of **e.(6)** of this Additional Coverage, is the increased cost of construction at the same premises.

**(c)** If the ordinance or law requires relocation to another premises, the most we will pay for the Increased Cost of Construction, subject to the provisions of **e.(6)** of this Additional Coverage, is the increased cost of construction at the new premises.

**(8)** This Additional Coverage is not subject to the terms of the Ordinance Or Law Exclusion to the extent that such Exclusion would conflict with the provisions of this Additional Coverage.

**(9)** The costs addressed in the Loss Payment and Valuation Conditions and the Replacement Cost Optional Coverage, in this Coverage Form, do not include the increased cost attributable to enforcement of or compliance with an ordinance or law. The amount payable under this Additional Coverage, as stated in **e.(6)** of this Additional Coverage, is not subject to such limitation.

**f. Electronic Data**

**(1)** Under this Additional Coverage, electronic data has the meaning described under Property Not Covered, Electronic Data. This Additional Coverage does not apply to your "stock" of prepackaged software, or to electronic data which is integrated in and operates or controls the building's elevator, lighting, heating, ventilation, air conditioning or security system.

**(2)** Subject to the provisions of this Additional Coverage, we will pay for the cost to replace or restore electronic data which has been destroyed or corrupted by a Covered Cause of Loss. To the extent that electronic data is not replaced or restored, the loss will be valued at the cost of replacement of the media on which the electronic data was stored, with blank media of substantially identical type.

**(3)** The Covered Causes of Loss applicable to Your Business Personal Property apply to this Additional Coverage, Electronic Data, subject to the following:

**(a)** If the Causes Of Loss – Special Form applies, coverage under this Additional Coverage, Electronic Data, is limited to the "specified causes of loss" as defined in that form and Collapse as set forth in that form.

**(b)** If the Causes Of Loss – Broad Form applies, coverage under this Additional Coverage, Electronic Data, includes Collapse as set forth in that form.

**(c)** If the Causes Of Loss form is endorsed to add a Covered Cause of Loss, the additional Covered Cause of Loss does not apply to the coverage provided under this Additional Coverage, Electronic Data.

**(d)** The Covered Causes of Loss include a virus, harmful code or similar instruction introduced into or enacted on a computer system (including electronic data) or a network to which it is connected, designed to damage or destroy any part of the system or disrupt its normal operation. But there is no coverage for loss or damage caused by or resulting from manipulation of a computer system (including electronic data) by any employee, including a temporary or leased employee, or by an entity retained by you or for you to inspect, design, install, modify, maintain, repair or replace that system.

 © Insurance Services Office, Inc., 2011

(4) The most we will pay under this Additional Coverage, Electronic Data, is $2,500 (unless a higher limit is shown in the Declarations) for all loss or damage sustained in any one policy year, regardless of the number of occurrences of loss or damage or the number of premises, locations or computer systems involved. If loss payment on the first occurrence does not exhaust this amount, then the balance is available for subsequent loss or damage sustained in but not after that policy year. With respect to an occurrence which begins in one policy year and continues or results in additional loss or damage in a subsequent policy year(s), all loss or damage is deemed to be sustained in the policy year in which the occurrence began.

**5. Coverage Extensions**

Except as otherwise provided, the following Extensions apply to property located in or on the building described in the Declarations or in the open (or in a vehicle) within 100 feet of the described premises.

If a Coinsurance percentage of 80% or more, or a Value Reporting period symbol, is shown in the Declarations, you may extend the insurance provided by this Coverage Part as follows:

**a. Newly Acquired Or Constructed Property**

**(1) Buildings**

If this policy covers Building, you may extend that insurance to apply to:

(a) Your new buildings while being built on the described premises; and

(b) Buildings you acquire at locations, other than the described premises, intended for:

(i) Similar use as the building described in the Declarations; or

(ii) Use as a warehouse.

The most we will pay for loss or damage under this Extension is $250,000 at each building.

**(2) Your Business Personal Property**

(a) If this policy covers Your Business Personal Property, you may extend that insurance to apply to:

(i) Business personal property, including such property that you newly acquire, at any location you acquire other than at fairs, trade shows or exhibitions; or

(ii) Business personal property, including such property that you newly acquire, located at your newly constructed or acquired buildings at the location described in the Declarations.

The most we will pay for loss or damage under this Extension is $100,000 at each building.

(b) This Extension does not apply to:

(i) Personal property of others that is temporarily in your possession in the course of installing or performing work on such property; or

(ii) Personal property of others that is temporarily in your possession in the course of your manufacturing or wholesaling activities.

**(3) Period Of Coverage**

With respect to insurance provided under this Coverage Extension for Newly Acquired Or Constructed Property, coverage will end when any of the following first occurs:

(a) This policy expires;

(b) 30 days expire after you acquire the property or begin construction of that part of the building that would qualify as covered property; or

(c) You report values to us.

We will charge you additional premium for values reported from the date you acquire the property or begin construction of that part of the building that would qualify as covered property.

**b. Personal Effects And Property Of Others**

You may extend the insurance that applies to Your Business Personal Property to apply to:

**(1)** Personal effects owned by you, your officers, your partners or members, your managers or your employees. This Extension does not apply to loss or damage by theft.

**(2)** Personal property of others in your care, custody or control.

The most we will pay for loss or damage under this Extension is $2,500 at each described premises. Our payment for loss of or damage to personal property of others will only be for the account of the owner of the property.

**c. Valuable Papers And Records (Other Than Electronic Data)**

**(1)** You may extend the insurance that applies to Your Business Personal Property to apply to the cost to replace or restore the lost information on valuable papers and records for which duplicates do not exist. But this Extension does not apply to valuable papers and records which exist as electronic data. Electronic data has the meaning described under Property Not Covered, Electronic Data.

**(2)** If the Causes Of Loss – Special Form applies, coverage under this Extension is limited to the "specified causes of loss" as defined in that form and Collapse as set forth in that form.

**(3)** If the Causes Of Loss – Broad Form applies, coverage under this Extension includes Collapse as set forth in that form.

**(4)** Under this Extension, the most we will pay to replace or restore the lost information is $2,500 at each described premises, unless a higher limit is shown in the Declarations. Such amount is additional insurance. We will also pay for the cost of blank material for reproducing the records (whether or not duplicates exist) and (when there is a duplicate) for the cost of labor to transcribe or copy the records. The costs of blank material and labor are subject to the applicable Limit of Insurance on Your Business Personal Property and, therefore, coverage of such costs is not additional insurance.

**d. Property Off-premises**

**(1)** You may extend the insurance provided by this Coverage Form to apply to your Covered Property while it is away from the described premises, if it is:

**(a)** Temporarily at a location you do not own, lease or operate;

**(b)** In storage at a location you lease, provided the lease was executed after the beginning of the current policy term; or

**(c)** At any fair, trade show or exhibition.

**(2)** This Extension does not apply to property:

**(a)** In or on a vehicle; or

**(b)** In the care, custody or control of your salespersons, unless the property is in such care, custody or control at a fair, trade show or exhibition.

**(3)** The most we will pay for loss or damage under this Extension is $10,000.

**e. Outdoor Property**

You may extend the insurance provided by this Coverage Form to apply to your outdoor fences, radio and television antennas (including satellite dishes), trees, shrubs and plants (other than trees, shrubs or plants which are "stock" or are part of a vegetated roof), including debris removal expense, caused by or resulting from any of the following causes of loss if they are Covered Causes of Loss:

**(1)** Fire;

**(2)** Lightning;

**(3)** Explosion;

**(4)** Riot or Civil Commotion; or

**(5)** Aircraft.

The most we will pay for loss or damage under this Extension is $1,000, but not more than $250 for any one tree, shrub or plant. These limits apply to any one occurrence, regardless of the types or number of items lost or damaged in that occurrence.

Subject to all aforementioned terms and limitations of coverage, this Coverage Extension includes the expense of removing from the described premises the debris of trees, shrubs and plants which are the property of others, except in the situation in which you are a tenant and such property is owned by the landlord of the described premises.

**f. Non-owned Detached Trailers**

(1) You may extend the insurance that applies to Your Business Personal Property to apply to loss or damage to trailers that you do not own, provided that:

   (a) The trailer is used in your business;

   (b) The trailer is in your care, custody or control at the premises described in the Declarations; and

   (c) You have a contractual responsibility to pay for loss or damage to the trailer.

(2) We will not pay for any loss or damage that occurs:

   (a) While the trailer is attached to any motor vehicle or motorized conveyance, whether or not the motor vehicle or motorized conveyance is in motion;

   (b) During hitching or unhitching operations, or when a trailer becomes accidentally unhitched from a motor vehicle or motorized conveyance.

(3) The most we will pay for loss or damage under this Extension is $5,000, unless a higher limit is shown in the Declarations.

(4) This insurance is excess over the amount due (whether you can collect on it or not) from any other insurance covering such property.

**g. Business Personal Property Temporarily In Portable Storage Units**

(1) You may extend the insurance that applies to Your Business Personal Property to apply to such property while temporarily stored in a portable storage unit (including a detached trailer) located within 100 feet of the building or structure described in the Declarations or within 100 feet of the premises described in the Declarations, whichever distance is greater.

(2) If the applicable Covered Causes of Loss form or endorsement contains a limitation or exclusion concerning loss or damage from sand, dust, sleet, snow, ice or rain to property in a structure, such limitation or exclusion also applies to property in a portable storage unit.

(3) Coverage under this Extension:

   (a) Will end 90 days after the business personal property has been placed in the storage unit;

   (b) Does not apply if the storage unit itself has been in use at the described premises for more than 90 consecutive days, even if the business personal property has been stored there for 90 or fewer days as of the time of loss or damage.

(4) Under this Extension, the most we will pay for the total of all loss or damage to business personal property is $10,000 (unless a higher limit is indicated in the Declarations for such Extension) regardless of the number of storage units. Such limit is part of, not in addition to, the applicable Limit of Insurance on Your Business Personal Property. Therefore, payment under this Extension will not increase the applicable Limit of Insurance on Your Business Personal Property.

(5) This Extension does not apply to loss or damage otherwise covered under this Coverage Form or any endorsement to this Coverage Form or policy, and does not apply to loss or damage to the storage unit itself.

Each of these Extensions is additional insurance unless otherwise indicated. The Additional Condition, Coinsurance, does not apply to these Extensions.

**B. Exclusions And Limitations**

See applicable Causes Of Loss form as shown in the Declarations.

**C. Limits Of Insurance**

The most we will pay for loss or damage in any one occurrence is the applicable Limit Of Insurance shown in the Declarations.

The most we will pay for loss or damage to outdoor signs, whether or not the sign is attached to a building, is $2,500 per sign in any one occurrence.

 © Insurance Services Office, Inc., 2011

The amounts of insurance stated in the following Additional Coverages apply in accordance with the terms of such coverages and are separate from the Limit(s) Of Insurance shown in the Declarations for any other coverage:

1. Fire Department Service Charge;

2. Pollutant Clean-up And Removal;

3. Increased Cost Of Construction; and

4. Electronic Data.

Payments under the Preservation Of Property Additional Coverage will not increase the applicable Limit of Insurance.

**D. Deductible**

In any one occurrence of loss or damage (hereinafter referred to as loss), we will first reduce the amount of loss if required by the Coinsurance Condition or the Agreed Value Optional Coverage. If the adjusted amount of loss is less than or equal to the Deductible, we will not pay for that loss. If the adjusted amount of loss exceeds the Deductible, we will then subtract the Deductible from the adjusted amount of loss and will pay the resulting amount or the Limit of Insurance, whichever is less.

When the occurrence involves loss to more than one item of Covered Property and separate Limits of Insurance apply, the losses will not be combined in determining application of the Deductible. But the Deductible will be applied only once per occurrence.

**Example 1**

(This example assumes there is no Coinsurance penalty.)

| | |
|---|---|
| Deductible: | $ 250 |
| Limit of Insurance – Building 1: | $ 60,000 |
| Limit of Insurance – Building 2: | $ 80,000 |
| Loss to Building 1: | $ 60,100 |
| Loss to Building 2: | $ 90,000 |

The amount of loss to Building 1 ($60,100) is less than the sum ($60,250) of the Limit of Insurance applicable to Building 1 plus the Deductible.

The Deductible will be subtracted from the amount of loss in calculating the loss payable for Building 1:

$ 60,100
−    250
$ 59,850 Loss Payable – Building 1

The Deductible applies once per occurrence and therefore is not subtracted in determining the amount of loss payable for Building 2. Loss payable for Building 2 is the Limit of Insurance of $80,000.

Total amount of loss payable:

$59,850 + $80,000 = $139,850

**Example 2**

(This example, too, assumes there is no Coinsurance penalty.)

The Deductible and Limits of Insurance are the same as those in Example 1.

| | |
|---|---|
| Loss to Building 1: | $ 70,000 |
| (Exceeds Limit of Insurance plus Deductible) | |
| Loss to Building 2: | $ 90,000 |
| (Exceeds Limit of Insurance plus Deductible) | |
| Loss Payable – Building 1: | $ 60,000 |
| (Limit of Insurance) | |
| Loss Payable – Building 2: | $ 80,000 |
| (Limit of Insurance) | |
| Total amount of loss payable: | $ 140,000 |

**E. Loss Conditions**

The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions:

**1. Abandonment**

There can be no abandonment of any property to us.

**2. Appraisal**

If we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

**a.** Pay its chosen appraiser; and

**b.** Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

**3. Duties In The Event Of Loss Or Damage**

**a.** You must see that the following are done in the event of loss or damage to Covered Property:

**(1)** Notify the police if a law may have been broken.

(2) Give us prompt notice of the loss or damage. Include a description of the property involved.

(3) As soon as possible, give us a description of how, when and where the loss or damage occurred.

(4) Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limit of Insurance. However, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss. Also, if feasible, set the damaged property aside and in the best possible order for examination.

(5) At our request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values and amount of loss claimed.

(6) As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records.

Also, permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

(7) Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

(8) Cooperate with us in the investigation or settlement of the claim.

**b.** We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

**4. Loss Payment**

**a.** In the event of loss or damage covered by this Coverage Form, at our option, we will either:

(1) Pay the value of lost or damaged property;

(2) Pay the cost of repairing or replacing the lost or damaged property, subject to **b.** below;

(3) Take all or any part of the property at an agreed or appraised value; or

(4) Repair, rebuild or replace the property with other property of like kind and quality, subject to **b.** below.

We will determine the value of lost or damaged property, or the cost of its repair or replacement, in accordance with the applicable terms of the Valuation Condition in this Coverage Form or any applicable provision which amends or supersedes the Valuation Condition.

**b.** The cost to repair, rebuild or replace does not include the increased cost attributable to enforcement of or compliance with any ordinance or law regulating the construction, use or repair of any property.

**c.** We will give notice of our intentions within 30 days after we receive the sworn proof of loss.

**d.** We will not pay you more than your financial interest in the Covered Property.

**e.** We may adjust losses with the owners of lost or damaged property if other than you. If we pay the owners, such payments will satisfy your claims against us for the owners' property. We will not pay the owners more than their financial interest in the Covered Property.

**f.** We may elect to defend you against suits arising from claims of owners of property. We will do this at our expense.

**g.** We will pay for covered loss or damage within 30 days after we receive the sworn proof of loss, if you have complied with all of the terms of this Coverage Part, and:

(1) We have reached agreement with you on the amount of loss; or

(2) An appraisal award has been made.

h. A party wall is a wall that separates and is common to adjoining buildings that are owned by different parties. In settling covered losses involving a party wall, we will pay a proportion of the loss to the party wall based on your interest in the wall in proportion to the interest of the owner of the adjoining building. However, if you elect to repair or replace your building and the owner of the adjoining building elects not to repair or replace that building, we will pay you the full value of the loss to the party wall, subject to all applicable policy provisions including Limits of Insurance, the Valuation and Coinsurance Conditions and all other provisions of this Loss Payment Condition. Our payment under the provisions of this paragraph does not alter any right of subrogation we may have against any entity, including the owner or insurer of the adjoining building, and does not alter the terms of the Transfer Of Rights Of Recovery Against Others To Us Condition in this policy.

**5. Recovered Property**

If either you or we recover any property after loss settlement, that party must give the other prompt notice. At your option, the property will be returned to you. You must then return to us the amount we paid to you for the property. We will pay recovery expenses and the expenses to repair the recovered property, subject to the Limit of Insurance.

**6. Vacancy**

**a. Description Of Terms**

(1) As used in this Vacancy Condition, the term building and the term vacant have the meanings set forth in **(1)(a)** and **(1)(b)** below:

(a) When this policy is issued to a tenant, and with respect to that tenant's interest in Covered Property, building means the unit or suite rented or leased to the tenant. Such building is vacant when it does not contain enough business personal property to conduct customary operations.

(b) When this policy is issued to the owner or general lessee of a building, building means the entire building. Such building is vacant unless at least 31% of its total square footage is:

(i) Rented to a lessee or sublessee and used by the lessee or sublessee to conduct its customary operations; and/or

(ii) Used by the building owner to conduct customary operations.

(2) Buildings under construction or renovation are not considered vacant.

**b. Vacancy Provisions**

If the building where loss or damage occurs has been vacant for more than 60 consecutive days before that loss or damage occurs:

(1) We will not pay for any loss or damage caused by any of the following, even if they are Covered Causes of Loss:

(a) Vandalism;

(b) Sprinkler leakage, unless you have protected the system against freezing;

(c) Building glass breakage;

(d) Water damage;

(e) Theft; or

(f) Attempted theft.

(2) With respect to Covered Causes of Loss other than those listed in **b.(1)(a)** through **b.(1)(f)** above, we will reduce the amount we would otherwise pay for the loss or damage by 15%.

**7. Valuation**

We will determine the value of Covered Property in the event of loss or damage as follows:

a. At actual cash value as of the time of loss or damage, except as provided in **b., c., d.** and **e.** below.

b. If the Limit of Insurance for Building satisfies the Additional Condition, Coinsurance, and the cost to repair or replace the damaged building property is $2,500 or less, we will pay the cost of building repairs or replacement.

The cost of building repairs or replacement does not include the increased cost attributable to enforcement of or compliance with any ordinance or law regulating the construction, use or repair of any property.

However, the following property will be valued at the actual cash value, even when attached to the building:

**(1)** Awnings or floor coverings;

**(2)** Appliances for refrigerating, ventilating, cooking, dishwashing or laundering; or

**(3)** Outdoor equipment or furniture.

**c.** "Stock" you have sold but not delivered at the selling price less discounts and expenses you otherwise would have had.

**d.** Glass at the cost of replacement with safety-glazing material if required by law.

**e.** Tenants' Improvements and Betterments at:

**(1)** Actual cash value of the lost or damaged property if you make repairs promptly.

**(2)** A proportion of your original cost if you do not make repairs promptly. We will determine the proportionate value as follows:

**(a)** Multiply the original cost by the number of days from the loss or damage to the expiration of the lease; and

**(b)** Divide the amount determined in **(a)** above by the number of days from the installation of improvements to the expiration of the lease.

If your lease contains a renewal option, the expiration of the renewal option period will replace the expiration of the lease in this procedure.

**(3)** Nothing if others pay for repairs or replacement.

**F. Additional Conditions**

The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions:

**1. Coinsurance**

If a Coinsurance percentage is shown in the Declarations, the following condition applies:

**a.** We will not pay the full amount of any loss if the value of Covered Property at the time of loss times the Coinsurance percentage shown for it in the Declarations is greater than the Limit of Insurance for the property.

Instead, we will determine the most we will pay using the following steps:

**(1)** Multiply the value of Covered Property at the time of loss by the Coinsurance percentage;

**(2)** Divide the Limit of Insurance of the property by the figure determined in Step **(1)**;

**(3)** Multiply the total amount of loss, before the application of any deductible, by the figure determined in Step **(2)**; and

**(4)** Subtract the deductible from the figure determined in Step **(3)**.

We will pay the amount determined in Step **(4)** or the Limit of Insurance, whichever is less. For the remainder, you will either have to rely on other insurance or absorb the loss yourself.

**Example 1 (Underinsurance)**

| When: | | |
|---|---|---|
| The value of the property is: | $ 250,000 |
| The Coinsurance percentage for it is: | 80% |
| The Limit of Insurance for it is: | $ 100,000 |
| The Deductible is: | $      250 |
| The amount of loss is: | $   40,000 |

Step **(1):** $250,000 x 80% = $200,000

(the minimum amount of insurance to meet your Coinsurance requirements)

Step **(2):** $100,000 ÷ $200,000 = .50

Step **(3):** $40,000 x .50 = $20,000

Step **(4):** $20,000 – $250 = $19,750

We will pay no more than $19,750. The remaining $20,250 is not covered.

**Example 2 (Adequate Insurance)**

| When: | | |
|---|---|---|
| The value of the property is: | $ 250,000 |
| The Coinsurance percentage for it is: | 80% |
| The Limit of Insurance for it is: | $ 200,000 |
| The Deductible is: | $      250 |
| The amount of loss is: | $   40,000 |

The minimum amount of insurance to meet your Coinsurance requirement is $200,000 ($250,000 x 80%). Therefore, the Limit of Insurance in this example is adequate, and no penalty applies. We will pay no more than $39,750 ($40,000 amount of loss minus the deductible of $250).

 © Insurance Services Office, Inc., 2011

**b.** If one Limit of Insurance applies to two or more separate items, this condition will apply to the total of all property to which the limit applies.

**Example 3**

When:    The value of the property is:

| | |
|---|---|
| Building at Location 1: | $  75,000 |
| Building at Location 2: | $ 100,000 |
| Personal Property at Location 2: | $  75,000 |
| | $ 250,000 |

| | |
|---|---|
| The Coinsurance percentage for it is: | 90% |
| The Limit of Insurance for Buildings and Personal Property at Locations 1 and 2 is: | $ 180,000 |
| The Deductible is: | $   1,000 |

The amount of loss is:

| | |
|---|---|
| Building at Location 2: | $  30,000 |
| Personal Property at Location 2: | $  20,000 |
| | $  50,000 |

Step **(1):** $250,000 x 90% = $225,000

(the minimum amount of insurance to meet your Coinsurance requirements and to avoid the penalty shown below)

Step **(2):** $180,000 ÷ $225,000 = .80

Step **(3):** $50,000 x .80 = $40,000

Step **(4):** $40,000 − $1,000 = $39,000

We will pay no more than $39,000. The remaining $11,000 is not covered.

**2. Mortgageholders**

**a.** The term mortgageholder includes trustee.

**b.** We will pay for covered loss of or damage to buildings or structures to each mortgageholder shown in the Declarations in their order of precedence, as interests may appear.

**c.** The mortgageholder has the right to receive loss payment even if the mortgageholder has started foreclosure or similar action on the building or structure.

**d.** If we deny your claim because of your acts or because you have failed to comply with the terms of this Coverage Part, the mortgageholder will still have the right to receive loss payment if the mortgageholder:

**(1)** Pays any premium due under this Coverage Part at our request if you have failed to do so;

**(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

**(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the mortgageholder.

All of the terms of this Coverage Part will then apply directly to the mortgageholder.

**e.** If we pay the mortgageholder for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Part:

**(1)** The mortgageholder's rights under the mortgage will be transferred to us to the extent of the amount we pay; and

**(2)** The mortgageholder's right to recover the full amount of the mortgageholder's claim will not be impaired.

At our option, we may pay to the mortgageholder the whole principal on the mortgage plus any accrued interest. In this event, your mortgage and note will be transferred to us and you will pay your remaining mortgage debt to us.

**f.** If we cancel this policy, we will give written notice to the mortgageholder at least:

**(1)** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

**(2)** 30 days before the effective date of cancellation if we cancel for any other reason.

**g.** If we elect not to renew this policy, we will give written notice to the mortgageholder at least 10 days before the expiration date of this policy.

**G. Optional Coverages**

If shown as applicable in the Declarations, the following Optional Coverages apply separately to each item:

**1. Agreed Value**

**a.** The Additional Condition, Coinsurance, does not apply to Covered Property to which this Optional Coverage applies. We will pay no more for loss of or damage to that property than the proportion that the Limit of Insurance under this Coverage Part for the property bears to the Agreed Value shown for it in the Declarations.

**b.** If the expiration date for this Optional Coverage shown in the Declarations is not extended, the Additional Condition, Coinsurance, is reinstated and this Optional Coverage expires.

**c.** The terms of this Optional Coverage apply only to loss or damage that occurs:

**(1)** On or after the effective date of this Optional Coverage; and

**(2)** Before the Agreed Value expiration date shown in the Declarations or the policy expiration date, whichever occurs first.

**2. Inflation Guard**

**a.** The Limit of Insurance for property to which this Optional Coverage applies will automatically increase by the annual percentage shown in the Declarations.

**b.** The amount of increase will be:

**(1)** The Limit of Insurance that applied on the most recent of the policy inception date, the policy anniversary date, or any other policy change amending the Limit of Insurance, times

**(2)** The percentage of annual increase shown in the Declarations, expressed as a decimal (example: 8% is .08), times

**(3)** The number of days since the beginning of the current policy year or the effective date of the most recent policy change amending the Limit of Insurance, divided by 365.

**Example**

| If: | The applicable Limit of Insurance is: | $ 100,000 |
|---|---|---|
| | The annual percentage increase is: | 8% |
| | The number of days since the beginning of the policy year (or last policy change) is: | 146 |
| | The amount of increase is: $100,000 x .08 x 146 ÷ 365 = | $ 3,200 |

**3. Replacement Cost**

**a.** Replacement Cost (without deduction for depreciation) replaces Actual Cash Value in the Valuation Loss Condition of this Coverage Form.

**b.** This Optional Coverage does not apply to:

**(1)** Personal property of others;

**(2)** Contents of a residence;

**(3)** Works of art, antiques or rare articles, including etchings, pictures, statuary, marbles, bronzes, porcelains and bric-a-brac; or

**(4)** "Stock", unless the Including "Stock" option is shown in the Declarations.

Under the terms of this Replacement Cost Optional Coverage, tenants' improvements and betterments are not considered to be the personal property of others.

**c.** You may make a claim for loss or damage covered by this insurance on an actual cash value basis instead of on a replacement cost basis. In the event you elect to have loss or damage settled on an actual cash value basis, you may still make a claim for the additional coverage this Optional Coverage provides if you notify us of your intent to do so within 180 days after the loss or damage.

**d.** We will not pay on a replacement cost basis for any loss or damage:

**(1)** Until the lost or damaged property is actually repaired or replaced; and

**(2)** Unless the repair or replacement is made as soon as reasonably possible after the loss or damage.

With respect to tenants' improvements and betterments, the following also apply:

**(3)** If the conditions in **d.(1)** and **d.(2)** above are not met, the value of tenants' improvements and betterments will be determined as a proportion of your original cost, as set forth in the Valuation Loss Condition of this Coverage Form; and

**(4)** We will not pay for loss or damage to tenants' improvements and betterments if others pay for repairs or replacement.

**e.** We will not pay more for loss or damage on a replacement cost basis than the least of **(1)**, **(2)** or **(3)**, subject to **f.** below:

**(1)** The Limit of Insurance applicable to the lost or damaged property;

**(2)** The cost to replace the lost or damaged property with other property:

**(a)** Of comparable material and quality; and

**(b)** Used for the same purpose; or

**(3)** The amount actually spent that is necessary to repair or replace the lost or damaged property.

If a building is rebuilt at a new premises, the cost described in **e.(2)** above is limited to the cost which would have been incurred if the building had been rebuilt at the original premises.

**f.** The cost of repair or replacement does not include the increased cost attributable to enforcement of or compliance with any ordinance or law regulating the construction, use or repair of any property.

**4. Extension Of Replacement Cost To Personal Property Of Others**

**a.** If the Replacement Cost Optional Coverage is shown as applicable in the Declarations, then this Extension may also be shown as applicable. If the Declarations show this Extension as applicable, then Paragraph **3.b.(1)** of the Replacement Cost Optional Coverage is deleted and all other provisions of the Replacement Cost Optional Coverage apply to replacement cost on personal property of others.

**b.** With respect to replacement cost on the personal property of others, the following limitation applies:

If an item(s) of personal property of others is subject to a written contract which governs your liability for loss or damage to that item(s), then valuation of that item(s) will be based on the amount for which you are liable under such contract, but not to exceed the lesser of the replacement cost of the property or the applicable Limit of Insurance.

**H. Definitions**

**1.** "Fungus" means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by fungi.

**2.** "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**3.** "Stock" means merchandise held in storage or for sale, raw materials and in-process or finished goods, including supplies used in their packing or shipping.

# BUSINESS INCOME (AND EXTRA EXPENSE) COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy, the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **F.** Definitions.

## A. Coverage

### 1. Business Income

Business Income means the:

**a.** Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred; and

**b.** Continuing normal operating expenses incurred, including payroll.

For manufacturing risks, Net Income includes the net sales value of production.

Coverage is provided as described and limited below for one or more of the following options for which a Limit Of Insurance is shown in the Declarations:

**(1)** Business Income Including "Rental Value".

**(2)** Business Income Other Than "Rental Value".

**(3)** "Rental Value".

If option **(1)** above is selected, the term Business Income will include "Rental Value". If option **(3)** above is selected, the term Business Income will mean "Rental Value" only.

If Limits of Insurance are shown under more than one of the above options, the provisions of this Coverage Part apply separately to each.

We will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" must be caused by direct physical loss of or damage to property at premises which are described in the Declarations and for which a Business Income Limit Of Insurance is shown in the Declarations. The loss or damage must be caused by or result from a Covered Cause of Loss. With respect to loss of or damage to personal property in the open or personal property in a vehicle, the described premises include the area within 100 feet of such premises.

With respect to the requirements set forth in the preceding paragraph, if you occupy only part of a building, your premises means:

**(a)** The portion of the building which you rent, lease or occupy;

**(b)** The area within 100 feet of the building or within 100 feet of the premises described in the Declarations, whichever distance is greater (with respect to loss of or damage to personal property in the open or personal property in a vehicle); and

**(c)** Any area within the building or at the described premises, if that area services, or is used to gain access to, the portion of the building which you rent, lease or occupy.

### 2. Extra Expense

**a.** Extra Expense Coverage is provided at the premises described in the Declarations only if the Declarations show that Business Income Coverage applies at that premises.

**b.** Extra Expense means necessary expenses you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss or damage to property caused by or resulting from a Covered Cause of Loss.

We will pay Extra Expense (other than the expense to repair or replace property) to:

**(1)** Avoid or minimize the "suspension" of business and to continue operations at the described premises or at replacement premises or temporary locations, including relocation expenses and costs to equip and operate the replacement location or temporary location.

 © Insurance Services Office, Inc., 2011

**(2)** Minimize the "suspension" of business if you cannot continue "operations".

We will also pay Extra Expense to repair or replace property, but only to the extent it reduces the amount of loss that otherwise would have been payable under this Coverage Form.

**3. Covered Causes Of Loss, Exclusions And Limitations**

See applicable Causes Of Loss form as shown in the Declarations.

**4. Additional Limitation – Interruption Of Computer Operations**

**a.** Coverage for Business Income does not apply when a "suspension" of "operations" is caused by destruction or corruption of electronic data, or any loss or damage to electronic data, except as provided under the Additional Coverage, Interruption Of Computer Operations.

**b.** Coverage for Extra Expense does not apply when action is taken to avoid or minimize a "suspension" of "operations" caused by destruction or corruption of electronic data, or any loss or damage to electronic data, except as provided under the Additional Coverage, Interruption Of Computer Operations.

**c.** Electronic data means information, facts or computer programs stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software), on hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other repositories of computer software which are used with electronically controlled equipment. The term computer programs, referred to in the foregoing description of electronic data, means a set of related electronic instructions which direct the operations and functions of a computer or device connected to it, which enable the computer or device to receive, process, store, retrieve or send data.

**d.** This Additional Limitation does not apply when loss or damage to electronic data involves only electronic data which is integrated in and operates or controls a building's elevator, lighting, heating, ventilation, air conditioning or security system.

**5. Additional Coverages**

**a. Civil Authority**

In this Additional Coverage, Civil Authority, the described premises are premises to which this Coverage Form applies, as shown in the Declarations.

When a Covered Cause of Loss causes damage to property other than property at the described premises, we will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises, provided that both of the following apply:

**(1)** Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described premises are within that area but are not more than one mile from the damaged property; and

**(2)** The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

Civil Authority Coverage for Business Income will begin 72 hours after the time of the first action of civil authority that prohibits access to the described premises and will apply for a period of up to four consecutive weeks from the date on which such coverage began.

Civil Authority Coverage for Extra Expense will begin immediately after the time of the first action of civil authority that prohibits access to the described premises and will end:

**(1)** Four consecutive weeks after the date of that action; or

**(2)** When your Civil Authority Coverage for Business Income ends;

whichever is later.

**b. Alterations And New Buildings**

We will pay for the actual loss of Business Income you sustain and necessary Extra Expense you incur due to direct physical loss or damage at the described premises caused by or resulting from any Covered Cause of Loss to:

**(1)** New buildings or structures, whether complete or under construction;

**(2)** Alterations or additions to existing buildings or structures; and

**(3)** Machinery, equipment, supplies or building materials located on or within 100 feet of the described premises and:

    **(a)** Used in the construction, alterations or additions; or

    **(b)** Incidental to the occupancy of new buildings.

If such direct physical loss or damage delays the start of "operations", the "period of restoration" for Business Income Coverage will begin on the date "operations" would have begun if the direct physical loss or damage had not occurred.

**c. Extended Business Income**

**(1) Business Income Other Than "Rental Value"**

If the necessary "suspension" of your "operations" produces a Business Income loss payable under this policy, we will pay for the actual loss of Business Income you incur during the period that:

    **(a)** Begins on the date property (except "finished stock") is actually repaired, rebuilt or replaced and "operations" are resumed; and

    **(b)** Ends on the earlier of:

        **(i)** The date you could restore your "operations", with reasonable speed, to the level which would generate the business income amount that would have existed if no direct physical loss or damage had occurred; or

        **(ii)** 60 consecutive days after the date determined in **(1)(a)** above.

However, Extended Business Income does not apply to loss of Business Income incurred as a result of unfavorable business conditions caused by the impact of the Covered Cause of Loss in the area where the described premises are located.

Loss of Business Income must be caused by direct physical loss or damage at the described premises caused by or resulting from any Covered Cause of Loss.

**(2) "Rental Value"**

If the necessary "suspension" of your "operations" produces a "Rental Value" loss payable under this policy, we will pay for the actual loss of "Rental Value" you incur during the period that:

    **(a)** Begins on the date property is actually repaired, rebuilt or replaced and tenantability is restored; and

    **(b)** Ends on the earlier of:

        **(i)** The date you could restore tenant occupancy, with reasonable speed, to the level which would generate the "Rental Value" that would have existed if no direct physical loss or damage had occurred; or

        **(ii)** 60 consecutive days after the date determined in **(2)(a)** above.

However, Extended Business Income does not apply to loss of "Rental Value" incurred as a result of unfavorable business conditions caused by the impact of the Covered Cause of Loss in the area where the described premises are located.

Loss of "Rental Value" must be caused by direct physical loss or damage at the described premises caused by or resulting from any Covered Cause of Loss.

**d. Interruption Of Computer Operations**

**(1)** Under this Additional Coverage, electronic data has the meaning described under Additional Limitation – Interruption Of Computer Operations.

© Insurance Services Office, Inc., 2011

**(2)** Subject to all provisions of this Additional Coverage, you may extend the insurance that applies to Business Income and Extra Expense to apply to a "suspension" of "operations" caused by an interruption in computer operations due to destruction or corruption of electronic data due to a Covered Cause of Loss. However, we will not provide coverage under this Additional Coverage when the Additional Limitation – Interruption Of Computer Operations does not apply based on Paragraph **A.4.d.** therein.

**(3)** With respect to the coverage provided under this Additional Coverage, the Covered Causes of Loss are subject to the following:

**(a)** If the Causes Of Loss – Special Form applies, coverage under this Additional Coverage, Interruption Of Computer Operations, is limited to the "specified causes of loss" as defined in that form and Collapse as set forth in that form.

**(b)** If the Causes Of Loss – Broad Form applies, coverage under this Additional Coverage, Interruption Of Computer Operations, includes Collapse as set forth in that form.

**(c)** If the Causes Of Loss Form is endorsed to add a Covered Cause of Loss, the additional Covered Cause of Loss does not apply to the coverage provided under this Additional Coverage, Interruption Of Computer Operations.

**(d)** The Covered Causes of Loss include a virus, harmful code or similar instruction introduced into or enacted on a computer system (including electronic data) or a network to which it is connected, designed to damage or destroy any part of the system or disrupt its normal operation. But there is no coverage for an interruption related to manipulation of a computer system (including electronic data) by any employee, including a temporary or leased employee, or by an entity retained by you or for you to inspect, design, install, maintain, repair or replace that system.

**(4)** The most we will pay under this Additional Coverage, Interruption Of Computer Operations, is $2,500 (unless a higher limit is shown in the Declarations) for all loss sustained and expense incurred in any one policy year, regardless of the number of interruptions or the number of premises, locations or computer systems involved. If loss payment relating to the first interruption does not exhaust this amount, then the balance is available for loss or expense sustained or incurred as a result of subsequent interruptions in that policy year. A balance remaining at the end of a policy year does not increase the amount of insurance in the next policy year. With respect to any interruption which begins in one policy year and continues or results in additional loss or expense in a subsequent policy year(s), all loss and expense is deemed to be sustained or incurred in the policy year in which the interruption began.

**(5)** This Additional Coverage, Interruption Of Computer Operations, does not apply to loss sustained or expense incurred after the end of the "period of restoration", even if the amount of insurance stated in **(4)** above has not been exhausted.

**6.** **Coverage Extension**

If a Coinsurance percentage of 50% or more is shown in the Declarations, you may extend the insurance provided by this Coverage Part as follows:

**Newly Acquired Locations**

**a.** You may extend your Business Income and Extra Expense Coverages to apply to property at any location you acquire other than fairs or exhibitions.

**b.** The most we will pay under this Extension, for the sum of Business Income loss and Extra Expense incurred, is $100,000 at each location, unless a higher limit is shown in the Declarations.

**c.** Insurance under this Extension for each newly acquired location will end when any of the following first occurs:

**(1)** This policy expires;

**(2)** 30 days expire after you acquire or begin to construct the property; or

**(3)** You report values to us.

We will charge you additional premium for values reported from the date you acquire the property.

The Additional Condition, Coinsurance, does not apply to this Extension.

## B. Limits Of Insurance

The most we will pay for loss in any one occurrence is the applicable Limit Of Insurance shown in the Declarations.

Payments under the following coverages will not increase the applicable Limit of Insurance:

**1.** Alterations And New Buildings;

**2.** Civil Authority;

**3.** Extra Expense; or

**4.** Extended Business Income.

The amounts of insurance stated in the Interruption Of Computer Operations Additional Coverage and the Newly Acquired Locations Coverage Extension apply in accordance with the terms of those coverages and are separate from the Limit(s) Of Insurance shown in the Declarations for any other coverage.

## C. Loss Conditions

The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions:

**1. Appraisal**

If we and you disagree on the amount of Net Income and operating expense or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser.

The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the amount of Net Income and operating expense or amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

**a.** Pay its chosen appraiser; and

**b.** Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

**2. Duties In The Event Of Loss**

**a.** You must see that the following are done in the event of loss:

**(1)** Notify the police if a law may have been broken.

**(2)** Give us prompt notice of the direct physical loss or damage. Include a description of the property involved.

**(3)** As soon as possible, give us a description of how, when and where the direct physical loss or damage occurred.

**(4)** Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limit of Insurance. However, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss. Also, if feasible, set the damaged property aside and in the best possible order for examination.

**(5)** As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records.

Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

**(6)** Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

**(7)** Cooperate with us in the investigation or settlement of the claim.

**(8)** If you intend to continue your business, you must resume all or part of your "operations" as quickly as possible.

**b.** We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

**3. Loss Determination**

   **a.** The amount of Business Income loss will be determined based on:

      **(1)** The Net Income of the business before the direct physical loss or damage occurred;

      **(2)** The likely Net Income of the business if no physical loss or damage had occurred, but not including any Net Income that would likely have been earned as a result of an increase in the volume of business due to favorable business conditions caused by the impact of the Covered Cause of Loss on customers or on other businesses;

      **(3)** The operating expenses, including payroll expenses, necessary to resume "operations" with the same quality of service that existed just before the direct physical loss or damage; and

      **(4)** Other relevant sources of information, including:

         **(a)** Your financial records and accounting procedures;

         **(b)** Bills, invoices and other vouchers; and

         **(c)** Deeds, liens or contracts.

   **b.** The amount of Extra Expense will be determined based on:

      **(1)** All expenses that exceed the normal operating expenses that would have been incurred by "operations" during the "period of restoration" if no direct physical loss or damage had occurred. We will deduct from the total of such expenses:

         **(a)** The salvage value that remains of any property bought for temporary use during the "period of restoration", once "operations" are resumed; and

         **(b)** Any Extra Expense that is paid for by other insurance, except for insurance that is written subject to the same plan, terms, conditions and provisions as this insurance; and

      **(2)** Necessary expenses that reduce the Business Income loss that otherwise would have been incurred.

**c. Resumption Of Operations**

   We will reduce the amount of your:

      **(1)** Business Income loss, other than Extra Expense, to the extent you can resume your "operations", in whole or in part, by using damaged or undamaged property (including merchandise or stock) at the described premises or elsewhere.

      **(2)** Extra Expense loss to the extent you can return "operations" to normal and discontinue such Extra Expense.

   **d.** If you do not resume "operations", or do not resume "operations" as quickly as possible, we will pay based on the length of time it would have taken to resume "operations" as quickly as possible.

**4. Loss Payment**

   We will pay for covered loss within 30 days after we receive the sworn proof of loss, if you have complied with all of the terms of this Coverage Part, and:

   **a.** We have reached agreement with you on the amount of loss; or

   **b.** An appraisal award has been made.

**D. Additional Condition**

**COINSURANCE**

If a Coinsurance percentage is shown in the Declarations, the following condition applies in addition to the Common Policy Conditions and the Commercial Property Conditions.

We will not pay the full amount of any Business Income loss if the Limit of Insurance for Business Income is less than:

**1.** The Coinsurance percentage shown for Business Income in the Declarations; times

**2.** The sum of:

   **a.** The Net Income (Net Profit or Loss before income taxes), and

   **b.** Operating expenses, including payroll expenses,

   that would have been earned or incurred (had no loss occurred) by your "operations" at the described premises for the 12 months following the inception, or last previous anniversary date, of this policy (whichever is later).

Instead, we will determine the most we will pay using the following steps:

Step **(1):** Multiply the Net Income and operating expense for the 12 months following the inception, or last previous anniversary date, of this policy by the Coinsurance percentage;

Step **(2):** Divide the Limit of Insurance for the described premises by the figure determined in Step **(1);** and

Step **(3):** Multiply the total amount of loss by the figure determined in Step **(2).**

We will pay the amount determined in Step **(3)** or the limit of insurance, whichever is less. For the remainder, you will either have to rely on other insurance or absorb the loss yourself.

In determining operating expenses for the purpose of applying the Coinsurance condition, the following expenses, if applicable, shall be deducted from the total of all operating expenses:

    **(1)** Prepaid freight – outgoing;

    **(2)** Returns and allowances;

    **(3)** Discounts;

    **(4)** Bad debts;

    **(5)** Collection expenses;

    **(6)** Cost of raw stock and factory supplies consumed (including transportation charges);

    **(7)** Cost of merchandise sold (including transportation charges);

    **(8)** Cost of other supplies consumed (including transportation charges);

    **(9)** Cost of services purchased from outsiders (not employees) to resell, that do not continue under contract;

    **(10)** Power, heat and refrigeration expenses that do not continue under contract (if Form **CP 15 11** is attached);

    **(11)** All payroll expenses or the amount of payroll expense excluded (if Form **CP 15 10** is attached); and

    **(12)** Special deductions for mining properties (royalties unless specifically included in coverage; actual depletion commonly known as unit or cost depletion – not percentage depletion; welfare and retirement fund charges based on tonnage; hired trucks).

**Example 1 (Underinsurance)**

When:    The Net Income and operating expenses for the 12 months following the inception, or last previous anniversary date, of this policy at the described premises would have been:   $ 400,000

    The Coinsurance percentage is:   50%

    The Limit of Insurance is:   $ 150,000

    The amount of loss is:   $ 80,000

Step **(1):** $400,000 x 50% = $200,000

    (the minimum amount of insurance to meet your Coinsurance requirements)

Step **(2):** $150,000 ÷ $200,000 = .75

Step **(3):** $80,000 x .75 = $60,000

We will pay no more than $60,000. The remaining $20,000 is not covered.

**Example 2 (Adequate Insurance)**

When:    The Net Income and operating expenses for the 12 months following the inception, or last previous anniversary date, of this policy at the described premises would have been:   $ 400,000

    The Coinsurance percentage is:   50%

    The Limit of Insurance is:   $ 200,000

    The amount of loss is:   $ 80,000

The minimum amount of insurance to meet your Coinsurance requirement is $200,000 ($400,000 x 50%). Therefore, the Limit of Insurance in this example is adequate and no penalty applies. We will pay no more than $80,000 (amount of loss).

This condition does not apply to Extra Expense Coverage.

**E. Optional Coverages**

    If shown as applicable in the Declarations, the following Optional Coverages apply separately to each item.

    **1. Maximum Period Of Indemnity**

        **a.** The Additional Condition, Coinsurance, does not apply to this Coverage Form at the described premises to which this Optional Coverage applies.

    **b.** The most we will pay for the total of Business Income loss and Extra Expense is the lesser of:

      **(1)** The amount of loss sustained and expenses incurred during the 120 days immediately following the beginning of the "period of restoration"; or

      **(2)** The Limit Of Insurance shown in the Declarations.

  **2. Monthly Limit Of Indemnity**

    **a.** The Additional Condition, Coinsurance, does not apply to this Coverage Form at the described premises to which this Optional Coverage applies.

    **b.** The most we will pay for loss of Business Income in each period of 30 consecutive days after the beginning of the "period of restoration" is:

      **(1)** The Limit of Insurance, multiplied by

      **(2)** The fraction shown in the Declarations for this Optional Coverage.

**Example**

| When: | The Limit of Insurance is: | $ 120,000 |
|---|---|---|
| | The fraction shown in the Declarations for this Optional Coverage is: | 1/4 |
| | The most we will pay for loss in each period of 30 consecutive days is: | $ 30,000 |

($120,000 x 1/4 = $30,000)

If, in this example, the actual amount of loss is:

| Days 1–30: | $ 40,000 |
|---|---|
| Days 31–60: | $ 20,000 |
| Days 61–90: | $ 30,000 |
| | $ 90,000 |

We will pay:

| Days 1–30: | $ 30,000 |
|---|---|
| Days 31–60: | $ 20,000 |
| Days 61–90: | $ 30,000 |
| | $ 80,000 |

The remaining $10,000 is not covered.

  **3. Business Income Agreed Value**

    **a.** To activate this Optional Coverage:

      **(1)** A Business Income Report/Work Sheet must be submitted to us and must show financial data for your "operations":

        **(a)** During the 12 months prior to the date of the Work Sheet; and

        **(b)** Estimated for the 12 months immediately following the inception of this Optional Coverage.

      **(2)** The Declarations must indicate that the Business Income Agreed Value Optional Coverage applies, and an Agreed Value must be shown in the Declarations. The Agreed Value should be at least equal to:

        **(a)** The Coinsurance percentage shown in the Declarations; multiplied by

        **(b)** The amount of Net Income and operating expenses for the following 12 months you report on the Work Sheet.

    **b.** The Additional Condition, Coinsurance, is suspended until:

      **(1)** 12 months after the effective date of this Optional Coverage; or

      **(2)** The expiration date of this policy;

    whichever occurs first.

    **c.** We will reinstate the Additional Condition, Coinsurance, automatically if you do not submit a new Work Sheet and Agreed Value:

      **(1)** Within 12 months of the effective date of this Optional Coverage; or

      **(2)** When you request a change in your Business Income Limit of Insurance.

    **d.** If the Business Income Limit of Insurance is less than the Agreed Value, we will not pay more of any loss than the amount of loss multiplied by:

      **(1)** The Business Income Limit of Insurance; divided by

      **(2)** The Agreed Value.

**Example**

| When: | The Limit of Insurance is: | $ 100,000 |
|---|---|---|
| | The Agreed Value is: | $ 200,000 |
| | The amount of loss is: | $ 80,000 |

Step **(1):** $100,000 ÷ $200,000 = .50

Step **(2):** .50 x $80,000 = $40,000

We will pay $40,000. The remaining $40,000 is not covered.

  **4. Extended Period Of Indemnity**

    Under Paragraph **A.5.c., Extended Business Income,** the number 60 in Subparagraphs **(1)(b)** and **(2)(b)** is replaced by the number shown in the Declarations for this Optional Coverage.

## F. Definitions

1. "Finished stock" means stock you have manufactured.

   "Finished stock" also includes whiskey and alcoholic products being aged, unless there is a Coinsurance percentage shown for Business Income in the Declarations.

   "Finished stock" does not include stock you have manufactured that is held for sale on the premises of any retail outlet insured under this Coverage Part.

2. "Operations" means:

   **a.** Your business activities occurring at the described premises; and

   **b.** The tenantability of the described premises, if coverage for Business Income Including "Rental Value" or "Rental Value" applies.

3. "Period of restoration" means the period of time that:

   **a.** Begins:

      **(1)** 72 hours after the time of direct physical loss or damage for Business Income Coverage; or

      **(2)** Immediately after the time of direct physical loss or damage for Extra Expense Coverage;

      caused by or resulting from any Covered Cause of Loss at the described premises; and

   **b.** Ends on the earlier of:

      **(1)** The date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality; or

      **(2)** The date when business is resumed at a new permanent location.

   "Period of restoration" does not include any increased period required due to the enforcement of or compliance with any ordinance or law that:

      **(1)** Regulates the construction, use or repair, or requires the tearing down, of any property; or

      **(2)** Requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants".

   The expiration date of this policy will not cut short the "period of restoration".

4. "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

5. "Rental Value" means Business Income that consists of:

   **a.** Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred as rental income from tenant occupancy of the premises described in the Declarations as furnished and equipped by you, including fair rental value of any portion of the described premises which is occupied by you; and

   **b.** Continuing normal operating expenses incurred in connection with that premises, including:

      **(1)** Payroll; and

      **(2)** The amount of charges which are the legal obligation of the tenant(s) but would otherwise be your obligations.

6. "Suspension" means:

   **a.** The slowdown or cessation of your business activities; or

   **b.** That a part or all of the described premises is rendered untenantable, if coverage for Business Income Including "Rental Value" or "Rental Value" applies.

COMMERCIAL PROPERTY

# COMMERCIAL PROPERTY CONDITIONS

This Coverage Part is subject to the following conditions, the Common Policy Conditions and applicable Loss Conditions and Additional Conditions in Commercial Property Coverage Forms.

**A. CONCEALMENT, MISREPRESENTATION OR FRAUD**

This Coverage Part is void in any case of fraud by you as it relates to this Coverage Part at any time. It is also void if you or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning:

**1.** This Coverage Part;

**2.** The Covered Property;

**3.** Your interest in the Covered Property; or

**4.** A claim under this Coverage Part.

**B. CONTROL OF PROPERTY**

Any act or neglect of any person other than you beyond your direction or control will not affect this insurance.

The breach of any condition of this Coverage Part at any one or more locations will not affect coverage at any location where, at the time of loss or damage, the breach of condition does not exist.

**C. INSURANCE UNDER TWO OR MORE COVERAGES**

If two or more of this policy's coverages apply to the same loss or damage, we will not pay more than the actual amount of the loss or damage.

**D. LEGAL ACTION AGAINST US**

No one may bring a legal action against us under this Coverage Part unless:

**1.** There has been full compliance with all of the terms of this Coverage Part; and

**2.** The action is brought within 2 years after the date on which the direct physical loss or damage occurred.

**E. LIBERALIZATION**

If we adopt any revision that would broaden the coverage under this Coverage Part without additional premium within 45 days prior to or during the policy period, the broadened coverage will immediately apply to this Coverage Part.

**F. NO BENEFIT TO BAILEE**

No person or organization, other than you, having custody of Covered Property will benefit from this insurance.

**G. OTHER INSURANCE**

**1.** You may have other insurance subject to the same plan, terms, conditions and provisions as the insurance under this Coverage Part. If you do, we will pay our share of the covered loss or damage. Our share is the proportion that the applicable Limit of Insurance under this Coverage Part bears to the Limits of Insurance of all insurance covering on the same basis.

**2.** If there is other insurance covering the same loss or damage, other than that described in 1. above, we will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether you can collect on it or not. But we will not pay more than the applicable Limit of Insurance.

**H. POLICY PERIOD, COVERAGE TERRITORY**

Under this Coverage Part:

**1.** We cover loss or damage commencing:

    **a.** During the policy period shown in the Declarations; and

    **b.** Within the coverage territory.

**2.** The coverage territory is:

    **a.** The United States of America (including its territories and possessions);

    **b.** Puerto Rico; and

    **c.** Canada.

**I. TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US**

If any person or organization to or for whom we make payment under this Coverage Part has rights to recover damages from another, those rights are transferred to us to the extent of our payment. That person or organization must do everything necessary to secure our rights and must do nothing after loss to impair them. But you may waive your rights against another party in writing:

1. Prior to a loss to your Covered Property or Covered Income.

2. After a loss to your Covered Property or Covered Income only if, at time of loss, that party is one of the following:

   **a.** Someone insured by this insurance;

   **b.** A business firm:

      **(1)** Owned or controlled by you; or

      **(2)** That owns or controls you; or

   **c.** Your tenant.

This will not restrict your insurance.

Copyright, ISO Commercial Risk Services, Inc.,  1983, 1987

 SCOTTSDALE INSURANCE COMPANY ®

**ENDORSEMENT NO.** _____

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| CPS7560688 | 04/14/2022 | 4205 PINE ISLAND LLC | 09012 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## SEWER OR DRAIN DEFINITION ENDORSEMENT—FLORIDA

This insurance modifies insurance provided under the following:

**CAUSES OF LOSS—BASIC FORM**
**CAUSES OF LOSS—BROAD FORM**
**CAUSES OF LOSS—SPECIAL FORM**

Under Section **B. Exclusions,** paragraph **g. Water,** subsection **(3)** the following is added:

For the purpose of this exclusion, "sewer" and "drain" are defined as:

1. "Sewer" means any underground pipe, channel or conduit for carrying water, wastewater or sewage on or away from the premises described in the Declarations;

2. "Drain" means any pipe, channel or conduit for carrying water, wastewater or sewage on or away from the premises described in the Declarations to a "sewer."

_____ / _____

AUTHORIZED REPRESENTATIVE                    DATE



# SCOTTSDALE INSURANCE COMPANY®

**ENDORSEMENT NO. _____**

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| CPS7560688 | 04/14/2022 | 4205 PINE ISLAND LLC | 09012 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## COMMERCIAL PROPERTY EXTENSION

This endorsement modifies insurance provided under the following:

**BUILDING AND PERSONAL PROPERTY COVERAGE FORM
CAUSES OF LOSS—SPECIAL FORM**

**PREMIUM CHARGE: $_____ 150 _____**

### SCHEDULE

| COVERAGE | LIMIT OF INSURANCE |
|---|---|
| Limited Equipment Breakdown | $25,000 |
| Computer Equipment | $25,000 |
| Accounts Receivable | $25,000 |
| Outdoor Signs | $25,000 |
| Spoilage | $25,000 |
| Valuable Papers | $25,000 |
| Money And Securities | $25,000 |
| Water Backup Or Overflow Of Sewers And Drains | $ 5,000 |
| Employee Dishonesty | $25,000 |

With respect to this endorsement, the following Deductible provisions apply:

The deductible for Limited Equipment Breakdown is five hundred dollars ($500) per occurrence. The deductible per occurrence for all other coverages in the schedule of this endorsement is five hundred dollars ($500) per coverage subject to a maximum of $1,000 in any one occurrence for all other coverages other than Limited Equipment Breakdown. We will not pay for loss or damage in any one occurrence until the amount of loss or damage exceeds the Deductible. We will then pay the amount of loss or damage in excess of that Deductible, up to the applicable Limit of Insurance provided by this endorsement.

For coverages other than Limited Equipment Breakdown, no other deductible in this policy applies to the coverage provided by this endorsement.

In the event that loss or damage from a Covered Cause of Loss under Limited Equipment Breakdown occurs to covered Property as a result of one occurrence, and more than one deductible under the policy can apply, the largest applicable deductible for that Covered Cause of Loss will apply.

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2007

The following is added as an Additional Coverage to the **CAUSES OF LOSS—SPECIAL FORM:**

**Additional Coverage—Limited Equipment Breakdown**

The term Covered Cause of Loss includes the **Additional Coverage—Limited Equipment Breakdown** as described and limited below.

1. We will pay for direct physical damage to Covered Property that is the direct result of an "accident." The "accident" must occur on the premises described in the Declarations not withstanding any other provision in the policy.

2. The following coverages also apply to the direct result of an "accident." These coverages do not provide additional amounts of insurance.

    **a.** Expediting Expenses

    With respect to your damaged Covered Property, we will pay the reasonable extra cost to:

    **(1)** Make temporary repairs; and

    **(2)** Expedite permanent repairs or permanent replacement.

    **b.** Hazardous Substances

    We will pay for the additional cost to repair or replace Covered Property because of contamination by a "hazardous substance." This includes the additional expenses to clean up or dispose of such property.

    As used in this coverage, additional costs means those beyond what would have been payable under this Limited Equipment Breakdown Coverage had no "hazardous substance" been involved.

3. Exclusions

    All exclusions in the **CAUSES OF LOSS—SPECIAL FORM** apply except as modified below and to the extent that coverage is specifically provided by this **Additional Coverage—Limited Equipment Breakdown.**

    **a.** The exclusions are modified as follows:

    As respects this Additional Coverage only, the last paragraph of Exclusion **B.2.d.** is replaced by:

    But if an excluded cause of loss that is listed in **2.d.(1)** through **(7)** results in an "accident," we will pay for the loss, damage or expense caused by that "accident."

    **b.** We will not pay under this Additional Coverage for loss, damage or expense caused by or resulting from:

    **(1)** Any defect, programming error, programming limitation, computer virus, malicious code, loss of "data," loss of access, loss of use, loss of functionality or other condition within or involving "data" or "media" of any kind. But if an "accident" results, we will pay for the resulting loss, damage or expense;

    **(2)** Any of the following tests:

    A hydrostatic, pneumatic or gas pressure test of any boiler or pressure vessel, or an electrical insulation breakdown test of any type of electrical equipment;

    **(3)** Change in temperature, humidity or pressure, whether or not resulting from an "accident"; or

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2007

**(4)** Contamination by a refrigerant resulting from an "accident."

**c.** We will not pay under this Additional Coverage for loss, damage or expense caused directly or indirectly by any of the following, whether or not caused by or resulting from an "accident":

Any earth movement, including, but not limited to earthquake, subsidence, sinkhole collapse, landslide, earth sinking, tsunami or volcanic action.

**d.** We will not pay under this Additional Coverage for any loss or damage to animals, land (including land on which the property is located) or lawns.

**e.** With respect to Business Income and Extra Expense coverages, we will also not pay for:

**(1)** Loss caused by your failure to use due diligence and dispatch and all reasonable means to resume business; or

**(2)** Any increase in loss resulting from an agreement between you and your customer or supplier.

The following conditions are in addition to Section **E. Loss Conditions** in the **BUILDING AND PERSONAL PROPERTY COVERAGE FORM** and the Common Policy Conditions.

**a. Suspension**

Whenever "covered equipment" is found to be in, or exposed to, a dangerous condition, any of our representatives may immediately suspend the insurance against loss from an "accident" to that "covered equipment." This can be done by mailing or delivering a written notice of suspension to:

**(1)** Your last known address; or

**(2)** The address where the "covered equipment" is located.

Once suspended in this way, your insurance can be reinstated only by an endorsement for that "covered equipment." If we suspend your insurance, you will get a pro rata refund of premium for that "covered equipment" for the period of suspension. But the suspension will be effective even if we have not yet made or offered a refund.

**b. Jurisdictional Inspections**

If any property that is "covered equipment" under this Additional Coverage requires inspection to comply with state or municipal boiler and pressure vessel regulations, we agree to perform such inspection on your behalf. We do not warrant that conditions are safe or healthful.

The most we will pay for loss, damage or expense under this Additional Coverage arising from any "one accident" is $25,000. Coverage provided under this Additional Coverage does not provide an additional amount of insurance.

If there is other coverage endorsed to this policy for the same loss, damage or expense, this Additional Coverage will pay only for the amount of covered loss, damage or expense in excess of the amount provided by the other coverage.

The following extensions are added to the **BUILDING AND PERSONAL PROPERTY COVERAGE FORM,** Section **A. Coverage,** paragraph **5. Coverage Extensions:**

**1. Accounts Receivable**

You may extend the insurance that applies to Your Business Personal Property to:

**a.** All amounts due from your customers that you are unable to collect;

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2007

**b.** Interest charges on any loan required to offset amounts you are unable to collect pending our payment of these amounts;

**c.** Collection expenses in excess of your normal collection expenses that are made necessary by the loss or damage; and

**d.** Other reasonable expenses that you incur to re-establish your Records of Accounts Receivable;

that result from loss or damage to your Records of Accounts Receivable.

The most we will pay under this Extension is $25,000 at each described premises.

**2. Computer Equipment**

   **a.** You may extend the insurance that applies to Your Business Personal Property to apply to:

     **(1)** Computer equipment and related component parts that are:

       **(a)** Your property; or

       **(b)** The property of others that is in your care, custody or control;

     **(2)** Your instructional material and prepackaged software programs purchased for use with your computer system; or

     **(3)** Your blank electronic or magnetic media.

   **b.** The following **CAUSES OF LOSS—SPECIAL FORM** Exclusions do not apply to this Extension:

     **(1)** Exclusion **1.e. Utility Services;**

     **(2)** Exclusion **2.a.** (Artificially generated electric current);

     **(3)** Exclusion **2.d.(6)** (Mechanical breakdown); or

     **(4)** Exclusion **2.d.(7)** (Dampness or dryness of atmosphere, changes in or extremes of temperature and marring or scratching).

   **c.** The most we will pay for loss or damage under this Extension is $25,000 at each described premises.

If there is other coverage endorsed to this policy for the same loss, damage or expense, this Additional Coverage will pay only for the amount of covered loss, damage or expense in excess of the amount provided by the other coverage.

**3. Money And Securities—Inside The Premises And Outside The Premises**

You may extend the insurance that applies to Your Business Personal Property to the loss of "money" and "securities" resulting from "theft," disappearance or destruction.

Under this Extension, we will also pay for loss of "money" and "securities" away from the premises described in the Declarations in the care and custody of a "messenger" or an armored motor vehicle company resulting directly from "theft," disappearance or destruction.

The most we will pay under this Extension is $25,000 in any one policy year, regardless of the number of occurrences of loss or the number of premises.

However, if this policy excludes loss or damage caused by or resulting from theft, coverage under this Extension is limited to loss or damage resulting from destruction of "money" and "securities.

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2007

4. **Outdoor Signs**

The second paragraph of Section **C. Limits Of Insurance** of the **BUILDING AND PERSONAL PROPERTY COVERAGE FORM** is replaced by:

> The most we will pay for loss or damage to outdoor signs, whether or not the sign is attached to a building, is $25,000 per sign in any one occurrence.

5. **Spoilage Coverage**

You may extend the insurance that applies to Your Business Personal Property for Covered Causes of Loss shown in the Declarations, but only with respect to coverage provided by this endorsement.

a. Paragraph **1. Covered Property** of Section **A. Coverage** is replaced by the following:

**Covered Property**

Covered Property means "perishable stock" at the premises described in the Declarations owned by you or by others that is in your care, custody or control.

b. The following is added to paragraph **2. Property Not Covered** of Section **A. Coverage:**

Covered Property does not include property located:

(1) On buildings;

(2) In the open; or

(3) In vehicles.

c. Paragraphs **A.5. Coverage Extensions** are deleted in their entirety.

d. Paragraph **B. Exclusions and Limitations** is replaced by:

(1) Only the following Exclusions contained in paragraph **B.1.** of the **CAUSES OF LOSS FORM—SPECIAL FORM** apply to Spoilage Coverage:

(a) Exclusion **b. Earth Movement;**

(b) Exclusion **c. Government Action;**

(c) Exclusion **d. Nuclear Hazard;**

(d) Exclusion **f. War and Military Action;** or

(e) Exclusion **g. Water;**

(2) The following Exclusions are added:

We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss:

(a) The disconnection of any refrigerating, cooling, or humidity control system from its source of power.

(b) The deactivation of electrical power caused by the manipulation of any switch or other device used to control the flow of electrical power or current.

(c) The inability of an Electrical Utility Company or other power source to provide sufficient power due to:

    **(i)** Lack of fuel; or

    **(ii)** Governmental order.

  **(d)** The inability of a power source at the described premises to provide sufficient power due to lack of generating capacity to meet demand.

  **(e)** Breaking of any glass that is a permanent part of any refrigerating, cooling or humidity control unit.

**e.** Paragraph **G. Optional Coverages** is deleted in its entirety.

**f.** Paragraph **A. Covered Causes of Loss** of **CAUSES OF LOSS—SPECIAL FORM** is replaced by:

  **A. Covered Causes of Loss**

  When Special is shown in the Declarations, Covered Causes of Loss means:

  **1.** Breakdown or Contamination by:

    **a.** Change in temperature or humidity resulting from mechanical breakdown or failure of refrigerating, cooling or humidity control apparatus or equipment, but only while such equipment or apparatus is at the premises described in the Declarations; and

    **b.** Contamination by the refrigerant.

  **2.** Power Outage, meaning a change in temperature or humidity resulting from complete or partial interruption of electrical power, either on or off the premises described in the Declarations, due to conditions beyond your control.

The most we will pay for any one occurrence is $25,000 per described premises.

If there is other coverage endorsed to this policy for the same loss or damage, this Additional Coverage will pay only for the amount of covered loss or damage in excess of the amount provided by the other coverage.

**6. Valuable Papers And Records (Other Than Electronic Data)**

Paragraph **(4)** of **5.c. Valuable Papers and Records (Other Than Electronic Data)** of the **BUILDING AND PERSONAL PROPERTY COVERAGE FORM,** Coverage Extension of Section **A. Coverage** is replaced by the following:

  **(4)** Under this Extension, the most we will pay to replace or restore the lost information is $25,000 at each described premises, unless a higher limit is shown in the Declarations. Such amount is additional insurance. We will also pay for the cost of blank material for reproducing the records (whether or not duplicates exist), and (when there is a duplicate) for the cost of labor to transcribe; or copy the records. The costs of blank material and labor are subject to the applicable Limit of Insurance on Your Business Personal Property and therefore coverage on such costs is not additional insurance.

**7. Water Backup Or Overflow Of Sewers And Drains**

**a.** We will pay for direct physical loss or damage to Covered Property caused by or resulting from water that backs up or overflows or is otherwise discharged from a sewer, drain, sump or sump pump.

The most we will pay for this Extension is $5,000 at each described premises.

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2007

**b.** Under the **CAUSES OF LOSS—SPECIAL FORM,** subsection **B. Exclusions,** paragraph **g.(3)** (Water that backs up or overflows from a sewer, drain or sump) is deleted for the purposes of this Extension only.

**8. Employee Dishonesty**

**a.** We will pay for direct loss of or damage to Business Personal Property and "money" and "securities" resulting from dishonest acts committed by any of your "employees" acting alone or in collusion with other persons (except you or your partner) with the manifest intent to:

**(1)** Cause you to sustain loss or damage; and also

**(2)** Obtain financial benefit (other than salaries, commissions, fees, bonuses, promotions, awards, profit sharing, pensions or other employee benefits earned in the normal course of employment) for:

**(a)** Any "employee"; or

**(b)** Any other person or organization.

**b.** We will not pay for loss or damage:

**(1)** Resulting from any dishonest or criminal act that you or any of your partners or "members" commit whether acting alone or in collusion with other persons.

**(2)** Resulting from any dishonest act committed by any of your "employees" (except as provided in paragraph **a.**), "managers" or directors:

**(a)** Whether acting alone or in collusion with other persons; or

**(b)** While performing services for you or otherwise.

**(3)** The only proof of which as to its existence or amount is:

**(a)** An inventory computation; or

**(b)** A profit and loss computation.

**c.** The most we will pay for loss or damage in any one occurrence under this Extension is $25,000 at each described premises.

**d.** All loss or damage:

**(1)** Caused by one or more persons; or

**(2)** Involving a single act or series of acts;

is considered one occurrence.

**e.** This Extension of coverage is canceled as to any "employee" immediately upon discovery by:

**(1)** You; or

**(2)** Any of your partners, "members," "managers," officers or directors not in collusion with the "employee";

of any dishonest act committed by that "employee" before or after being hired by you.

**f.** We will pay only for covered loss or damage sustained during the policy period and discovered by you during the policy period shown in the Declarations.

**g.** Under the **CAUSES OF LOSS—SPECIAL FORM,** subsection **B. Exclusions,** paragraph **2.h.** is deleted in its entirety for the purposes of this Extension only.

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2007

For the purpose of this endorsement only, the following definitions are added to the **G. DEFINITIONS** section of the **CAUSES OF LOSS—SPECIAL FORM** and the **H. DEFINITIONS** section of the **BUILDING AND PERSONAL PROPERTY COVERAGE FORM:**

1. "Accident" means a fortuitous event that causes direct physical damage to "covered equipment." The event must be one of the following:

    a. Mechanical breakdown, including rupture or bursting caused by centrifugal force;

    b. Artificially generated electrical current, including electric arcing, that disturbs electrical devices, appliances or wires;

    c. Explosion of steam boilers, steam pipes, steam engines or steam turbines owned or leased by you, or operated under your control;

    d. Loss or damage to steam boilers, steam pipes, steam engines or steam turbines caused by or resulting from any condition or event inside such equipment; or

    e. Loss or damage to hot water boilers or other water heating equipment caused by or resulting from any condition or event inside such boilers or equipment.

2. "Covered Equipment"

    a. "Covered equipment" means Covered Property:

        (1) That generates, transmits or utilizes energy, including electronic communications and data processing equipment; or

        (2) Which, during normal usage, operates under vacuum or pressure, other than the weight of its contents.

    b. None of the following is "covered equipment":

        (1) Structure, foundation, cabinet, compartment or air supported structure or building;

        (2) Insulating or refractory material;

        (3) Sewer piping, underground vessels or piping, or piping forming a part of a sprinkler system;

        (4) Water piping other than boiler feedwater piping, boiler condensate return piping or water piping forming a part of a refrigerating or air conditioning system;

        (5) "Vehicle" or any equipment mounted on a "vehicle";

        (6) Satellite, spacecraft or any equipment mounted on a satellite or spacecraft;

        (7) Dragline, excavation or construction equipment;

        (8) Equipment manufactured by you for sale; or

        (9) Electronic data processing equipment, unless used to control or operate "covered equipment." Electronic Data Processing Equipment includes programmable electronic equipment that is used to store, retrieve and process data; and associated peripheral equipment.

3. "Data" means information or instructions stored in digital code capable of being processed by machinery.

4. "Employee" means:

    a. Any natural person:

        (1) While in your service or for thirty (30) days after termination of service;

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2007

      **(2)**  Who you compensate directly by salary, wages or commissions; and

      **(3)**  Who you have the right to direct and control while performing services for you;

  **b.**  Any natural person who is furnished temporarily to you:

      **(1)**  To substitute for a permanent "employee" as defined in paragraph **a.** above, who is on leave; or

      **(2)**  To meet seasonal or short-term workload conditions;

  **c.**  Any natural person who is leased to you under a written agreement between you and a labor leasing firm, to perform duties related to the conduct of your business, but does not mean a temporary "employee" as defined in paragraph **b.** above;

  **d.**  Any natural person who is a former "employee," director, partner, member, manager, representative or trustee retained as a consultant while performing services for you; or

  **e.**  Any natural person who is a guest student or intern pursuing studies or duties, excluding, however, any such person while having care and custody of property outside any building you occupy in conducting your business.

But "employee" does not mean:

  **a.**  Any agent, broker, factor, commission merchant, consignee, independent contractor or representative of the same general character; or

  **b.**  Any "manager," director or trustee except while performing acts coming within the usual duties of an "employee."

**5.**  "Hazardous substance" means any substance that is hazardous to health or has been declared to be hazardous to health by a governmental agency.

**6.**  "Manager" means a person serving in a directorial capacity for a limited liability company.

**7.**  "Member" means an owner of a limited liability company represented by its membership interest, who also may serve as a "manager."

**8.**  "Media" means material on which "data" is recorded, such as magnetic tapes, hard disks, optical disks or floppy disks.

**9.**  "Messenger" means you, or your relative, or any of your partners or "members," or any "employee" while having care and custody of property away from the premises described in the Declarations.

**10.**  "Money" means:

  **a.**  Currency, coins and bank notes in current use and having a face value; and

  **b.**  Traveler's checks, registered checks and money orders held for sale to the public.

**11.**  "One accident" means: If an initial "accident" causes other "accidents," all will be considered "one accident." All "accidents" that are the result of the same event will be considered "one accident."

**12.**  "Perishable Stock" means personal property:

  **a.**  Maintained under temperature-controlled conditions for its preservation; and

  **b.**  Susceptible to loss or damage if changes in or extremes of temperature result.

**13.**  "Securities" means negotiable and nonnegotiable instruments or contracts representing either "money" or other property and includes:

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2007

**a.** Tokens, tickets revenue and other stamps (whether represented by actual stamps or unused value in a meter) in current use; and

**b.** Evidences of debt issued in connection with credit or charge cards, which cards are not issued by you;

but does not include "money."

**14.** "Theft" means the unlawful taking of "money" and "securities" to the deprivation of the insured.

**15.** "Vehicle" means, as respects this Additional Coverage only, any machine or apparatus that is used for transportation or moves under its own power. "Vehicle" includes, but is not limited to, car, truck, bus, trailer, train, aircraft, watercraft, forklift, bulldozer, tractor or harvester.

However, any property that is stationary, permanently installed at a covered location and that receives electrical power from an external power source will not be considered a "vehicle."

_____/_____

AUTHORIZED REPRESENTATIVE                                    DATE

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2007

SCOTTSDALE INSURANCE COMPANY®

**ENDORSEMENT NO.** _____

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| CPS7560688 | 04/14/2022 | 4205 PINE ISLAND LLC | 09012 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## EQUIPMENT BREAKDOWN COVERAGE

This endorsement modifies insurance provided under the following:

**BUILDING AND PERSONAL PROPERTY COVERAGE FORM
CONDOMINIUM ASSOCIATION COVERAGE FORM
CONDOMINIUM COMMERCIAL UNIT-OWNERS COVERAGE FORM
CAUSES OF LOSS—BASIC FORM
CAUSES OF LOSS—BROAD FORM
CAUSES OF LOSS—SPECIAL FORM**

Equipment Breakdown Coverage is provided subject to the limits shown on the Commercial Property Coverage Part Supplemental Declarations, except as specifically scheduled below. If no limit appears in the schedule below, the limits shown elsewhere in this endorsement apply.

The Deductible shown in the Declarations applies unless a Deductible is shown below.

**Total Premium for this endorsement at locations shown on the Commercial Property Coverage Part Supplemental Declarations: $** _____86_____ .

### SCHEDULE

| Coverages | Limits |
|---|---|
| Equipment Breakdown Limit | $ |
| Expediting Expenses | $ |
| Hazardous Substances | $ |
| Spoilage | $                    @ ____ % Coinsurance |
| Data Restoration | $ |
| Service Interruption | $ |
| Business Income | $ |
| Extra Expense | $ |
| | |
| **Deductibles** | |
| Combined, All Coverages | $            10,000 |
| Direct Coverages | $ |
| Indirect Coverages | $ |
| | or _____ hrs. |
| | or _____ times ADV |

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2007

| Spoilage | $ |  |
|---|---|---|
|  | *or* _____ % of loss, $ _____ *minimum* | |
|  |  | |
| **Other Conditions** | | |
|  | | |

**A.** The following is added as an Additional Coverage to the Causes of Loss—Basic Form, Broad Form or Special Form.

**Additional Coverage—Equipment Breakdown**

The term Covered Cause of Loss includes the Additional Coverage Equipment Breakdown as described and limited below.

**1.** We will pay for direct physical damage to Covered Property that is the direct result of an "accident." As used in this Additional Coverage, "accident" means a fortuitous event that causes direct physical damage to "covered equipment." The event must be one of the following:

   **a.** Mechanical breakdown, including rupture or bursting caused by centrifugal force;

   **b.** Artificially generated electrical, magnetic or electromagnetic energy, including electric arcing, that damages, disturbs, disrupts or otherwise interferes with any electrical or electronic wire, device, appliance, system or network;

   **c.** Explosion of steam boilers, steam pipes, steam engines or steam turbines owned or leased by you, or operated under your control;

   **d.** Loss or damage to steam boilers, steam pipes, steam engines or steam turbines caused by or resulting from any condition or event inside such equipment; or

   **e.** Loss or damage to hot water boilers or other water heating equipment caused by or resulting from any condition or event inside such boilers or equipment.

**2.** Unless otherwise shown in the Schedule of this endorsement, the following coverages also apply to the direct result of an "accident." These coverages do not provide additional amounts of insurance.

   **a. Expediting Expenses**

   With respect to your damaged Covered Property, we will pay the reasonable extra cost to:

   **(1)** Make temporary repairs; and

   **(2)** Expedite permanent repairs or permanent replacement.

   The most we will pay for loss or expense under this coverage is $100,000 unless otherwise shown in the Schedule of this endorsement.

   **b. Hazardous Substances**

   We will pay your additional cost to repair or replace Covered Property because of contamination by a "hazardous substance." This includes the additional expenses to clean up or dispose of such property.

   This does not include contamination of "perishable goods" by refrigerant, including, but not limited to ammonia, which is addressed in **2.c.(1)(b)** below. As used in this coverage, additional costs mean those beyond what would have been payable under this Equipment Breakdown Coverage had no "hazardous substance" been involved.

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2007

The most we will pay for loss, damage or expense under this coverage, including actual loss of Business Income you sustain and necessary Extra Expense you incur, if shown as covered, is $100,000 unless otherwise shown in the Schedule of this endorsement.

**c. Spoilage**

(1) We will pay:

(a) For physical damage to "perishable goods" due to spoilage;

(b) For physical damage to "perishable goods" due to contamination from the release of refrigerant, including, but not limited to ammonia;

(c) Any necessary expenses you incur to reduce the amount of loss under this coverage to the extent that they do not exceed the amount of loss that otherwise would have been payable under this coverage.

(2) If you are unable to replace the "perishable goods" before its anticipated sale, the amount of our payment will be determined on the basis of the sales price of the "perishable goods" at the time of the "accident," less discounts and expenses you otherwise would have had. Otherwise our payment will be determined in accordance with the Valuation condition.

The most we will pay for loss, damage or expense under this coverage is $100,000 unless otherwise shown in the Schedule of this endorsement.

**d. Data Restoration**

We will pay for your reasonable and necessary cost to research, replace and restore lost "data."

The most we will pay for loss or expense under this coverage, including actual loss of Business Income you sustain and necessary Extra Expense you incur, if shown as covered, is $100,000 unless otherwise shown in the Schedule of this endorsement.

**e. Service Interruption**

(1) Any insurance provided for Business Income, Extra Expense or Spoilage is extended to apply to your loss, damage or expense caused by the interruption of utility services. The interruption must result from an "accident" to equipment, including overhead transmission lines, that is owned by a utility, landlord, a landlord's utility or other supplier who provides you with any of the following services: electrical power, waste disposal, air conditioning, refrigeration, heating, natural gas, compressed air, water, steam, internet access, telecommunications services, wide area networks or data transmission. The equipment must meet the definition of "covered equipment" except that it is not Covered Property.

(2) Unless otherwise shown in the Schedule of this endorsement, Service Interruption coverage will not apply unless the failure or disruption of service exceeds twenty-four (24) hours immediately following the "accident." If the interruption exceeds twenty-four (24) hours, coverage will begin at the time of the interruption, and the applicable deductible will apply.

(3) The most we will pay in any "one accident" for loss, damage or expense under this coverage is the applicable limit for Business Income, Extra Expense or Spoilage, except that if a limit is shown in the Schedule of this endorsement for Service Interruption, that limit will apply to Business Income and Extra Expense loss under this coverage.

**f. Business Income and Extra Expense**

Any insurance provided under the coverage part for Business Income or Extra Expense is extended to the coverage provided by this endorsement. However, if a deductible is shown in the Schedule of this endorsement, then as respects Equipment Breakdown coverage, the "period of restoration" will begin immediately after the "accident," and the deductible shown in the Schedule of this endorsement will apply. The most we will pay for loss or expense under this

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2007

coverage is the applicable limit for Business Income and Extra Expense, unless otherwise shown in the Schedule of this endorsement.

**3.  EXCLUSIONS**

All exclusions in the applicable Causes of Loss form apply except as modified below and to the extent that coverage is specifically provided by this endorsement.

**a.**  The following exclusions are modified:

**(1)**  If the Causes of Loss—Basic Form or Causes of Loss—Broad Form applies, the following is added to Exclusion **B.2.:**

Depletion, deterioration, corrosion, erosion, wear and tear, or other gradually developing conditions. However, if an "accident" results, we will pay for the resulting loss, damage or expense caused by that "accident."

**(2)**  The following is added to Exclusion **B.1.g.:**

However, if electrical "covered equipment" requires drying out because of Water, we will pay for the direct expenses of such drying out subject to the applicable Limit of Insurance and deductible for Building or Business Personal Property, whichever applies.

**(3)**  If the Causes of Loss—Special Form applies, as respects this endorsement only, the last paragraph of Exclusion **B.2.d.** is deleted and replaced with the following:

But if an excluded cause of loss that is listed in **2.d.(1)** through **(7)** results in an "accident," we will pay for the loss, damage or expense caused by that "accident."

**b.**  The following exclusions are added:

**(1)**  We will not pay for loss, damage or expense caused by or resulting from:

**(a)**  A hydrostatic, pneumatic or gas pressure test of any boiler or pressure vessel, or an electrical insulation breakdown test of any type of electrical equipment; or

**(b)**  Any of the following:

**(i)**  Defect, programming error, programming limitation, computer virus, malicious code, loss of "data," loss of access, loss of use, loss of functionality or other condition within or involving "data" or "media" of any kind; or

**(ii)**  Misalignment, miscalibration, tripping off-line, or any condition which can be corrected by resetting, tightening, adjusting or cleaning, or by the performance of maintenance.

However, if an "accident" results, we will pay for the resulting loss, damage or expense caused by that "accident."

**(2)**  With respect to Service Interruption, we will also not pay for an "accident" caused by or resulting from: fire; lightning; windstorm or hail; explosion (except as specifically provided in **A.1.c.** above); smoke; aircraft or vehicles; riot or civil commotion; vandalism; sprinkler leakage; falling objects; weight of snow, ice or sleet; freezing; collapse; flood or earth movement.

**(3)**  With respect to Business Income, Extra Expense and Service Interruption coverages, we will also not pay for any increase in loss resulting from an agreement between you and your customer or supplier.

**(4)**  We will not pay for loss, damage or expense caused directly or indirectly by the following, whether or not caused by or resulting from an "accident": Any "fungus," wet rot, dry rot or bacteria, including any presence, growth, proliferation, spread or any activity of "fungus,"

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2007

wet rot, dry rot or bacteria. This includes, but is not limited to, costs arising from clean up, removal, or abatement of such "fungus," wet rot, dry rot or bacteria. However, this exclusion does not apply to spoilage of personal property that is "perishable goods," to the extent that such spoilage is covered under Spoilage coverage.

**(5)** We will not pay for any loss or damage to animals.

**(6)** We will not pay for loss, damage or expense caused directly or indirectly by any of the following, whether or not cause by or resulting from an "accident":

Any earth movement, including, but not limited to earthquake, subsidence, sinkhole collapse, landslide, earth sinking, tsunami or volcanic action.

**4. DEFINITIONS**

The following definitions are added:

**a.** "Boilers and vessels" means:

**(1)** Any boiler, including attached steam, condensate and feedwater piping; and

**(2)** Any fired or unfired pressure vessel subject to vacuum or internal pressure other than the static pressure of its contents.

This term does not appear elsewhere in this endorsement, but may appear in the Schedule of this endorsement.

**b.** "Covered equipment"

**(1)** "Covered equipment" means, unless otherwise specified in the Schedule of this endorsement, Covered Property:

**(a)** That generates, transmits or utilizes energy; or

**(b)** Which, during normal usage, operates under vacuum or pressure, other than the weight of its contents.

"Covered equipment" may utilize conventional design and technology or new or newly commercialized design and technology.

**(2)** None of the following is "covered equipment":

**(a)** Structure, foundation, cabinet or compartment;

**(b)** Insulating or refractory material;

**(c)** Sewer piping, buried vessels or piping, or piping forming a part of a sprinkler or fire suppression system;

**(d)** Water piping other than boiler feedwater piping, boiler condensate return piping or water piping forming a part of a refrigerating or air conditioning system;

**(e)** "Vehicle" or any equipment mounted on a "vehicle";

**(f)** Satellite, spacecraft or any equipment mounted on a satellite or spacecraft;

**(g)** Dragline, excavation or construction equipment; or

**(h)** Equipment manufactured by you for sale.

**c.** "Data" means information or instructions stored in digital code capable of being processed by machinery.

**d.** "Hazardous substance" means any substance that is hazardous to health or has been declared to be hazardous to health by a governmental agency.

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2007

**e.** "Media" means material on which "data" is recorded, such as magnetic tapes, hard disks, optical disks or floppy disks.

**f.** "One accident" means if an initial "accident" causes other "accidents," all will be considered "one accident." All "accidents" that are the result of the same event will be considered "one accident."

**g.** "Perishable goods" means personal property maintained under controlled conditions for its preservation and susceptible to loss or damage if the controlled conditions change.

**h.** "Production machinery" means any machine or apparatus that processes or produces a product intended for eventual sale. This includes all component parts of such machine or apparatus and any other equipment used exclusively with such machine or apparatus. However, "production machinery" does not mean any boiler, or fired or unfired pressure vessel.

This term does not appear elsewhere in this endorsement, but may appear in the Schedule of this endorsement.

**i.** "Vehicle" means, as respects this endorsement only, any machine or apparatus that is used for transportation or moves under its own power. "Vehicle" includes, but is not limited to, car, truck, bus, trailer, train, aircraft, watercraft, forklift, bulldozer, tractor or harvester.

However, any property that is stationary, permanently installed at a covered location and that receives electrical power from an external power source will not be considered a "vehicle."

**B.** The Building and Personal Property Coverage Form, Condominium Association Coverage Form, and Condominium Commercial Unit-Owners Coverage Form are modified as follows.

The definitions stated above also apply to section **B.** of this endorsement.

**1. DEDUCTIBLE**

In the event that loss or damage from a Covered Cause of Loss occurs to Covered Property as a result of one occurrence, and more than one deductible under the policy can apply, the largest applicable deductible for that Covered Cause of Loss will apply.

The deductible in the Declarations applies unless a separate Equipment Breakdown deductible is shown in the Schedule of this endorsement. If a separate Equipment Breakdown deductible is shown, the following applies.

Only as regards Equipment Breakdown Coverage, provision **D. DEDUCTIBLE** is deleted and replaced with the following:

**a. Deductibles for Each Coverage**

**(1)** Unless the Schedule of this endorsement indicates that your deductible is combined for all coverages, multiple deductibles may apply to any "one accident."

**(2)** We will not pay for loss, damage or expense under any coverage until the amount of the covered loss, damage or expense exceeds the deductible amount indicated for that coverage in the Schedule of this endorsement. We will then pay the amount of loss, damage or expense in excess of the applicable deductible amount, subject to the applicable limit.

**(3)** If deductibles vary by type of "covered equipment" and more than one type of "covered equipment" is involved in any "one accident," only the highest deductible for each coverage will apply.

**b. Direct and Indirect Coverages**

**(1)** Direct Coverages Deductibles and Indirect Coverages Deductibles may be indicated in the Schedule of this endorsement.

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2007

    **(2)** Unless more specifically indicated in the Schedule of this endorsement:

        **(a)** Indirect Coverages Deductibles apply to Business Income and Extra Expense loss; and

        **(b)** Direct Coverages Deductibles apply to all remaining loss, damage or expense covered by this endorsement.

**c. Application of Deductibles**

    **(1) Dollar Deductibles**

    We will not pay for loss, damage or expense resulting from any "one accident" until the amount of loss, damage or expense exceeds the applicable Deductible shown in the Schedule of this endorsement. We will then pay the amount of loss, damage or expense in excess of the applicable Deductible or Deductibles, up to the applicable Limit of Insurance.

    **(2) Time Deductible**

    If a time deductible is shown in the Schedule of this endorsement, we will not be liable for any loss occurring during the specified number of hours or days immediately following the "accident." If a time deductible is expressed in days, each day shall mean twenty-four (24) consecutive hours.

    **(3) Multiple of Average Daily Value (ADV)**

    If a deductible is expressed as a number times ADV, that amount will be calculated as follows:

    The ADV (Average Daily Value) will be the Business Income (as defined in any Business Income coverage that is part of this policy) that would have been earned during the period of interruption of business had no "accident" occurred, divided by the number of working days in that period. No reduction shall be made for the Business Income not being earned, or in the number of working days, because of the "accident" or any other scheduled or unscheduled shutdowns during the period of interruption. The ADV applies to the Business Income value of the entire location, whether or not the loss affects the entire location. If more than one location is included in the valuation of the loss, the ADV will be the combined value of all affected locations. For purposes of this calculation, the period of interruption may not extend beyond the "period of restoration."

    The number indicated in the Schedule of this endorsement will be multiplied by the ADV as determined above. The result shall be used as the applicable deductible.

    **(4) Percentage of Loss Deductibles**

    If a deductible is expressed as a percentage of loss, we will not be liable for the indicated percentage of the gross amount of loss, damage or expense (prior to any applicable deductible or coinsurance) insured under the applicable coverage. If the dollar amount of such percentage is less than the indicated minimum deductible, the minimum deductible will be the applicable deductible.

**2. CONDITIONS**

The following conditions are in addition to the Conditions in the Building and Personal Property Coverage Form, the Condominium Association Coverage Form, the Condominium Commercial Unit-Owners Coverage Form, the Commercial Property Conditions and the Common Policy Conditions.

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2007

**a. Suspension**

Whenever "covered equipment" is found to be in, or exposed to, a dangerous condition, any of our representatives may immediately suspend the insurance against loss from an "accident" to that "covered equipment." This can be done by mailing or delivering a written notice of suspension to:

**(1)** Your last known address; or

**(2)** The address where the "covered equipment" is located.

Once suspended in this way, your insurance can be reinstated only by an endorsement for that "covered equipment." If we suspend your insurance, you will get a pro rata refund of premium for that "covered equipment" for the period of suspension. But the suspension will be effective even if we have not yet made or offered a refund.

**b. Jurisdictional Inspections**

If any property that is "covered equipment" under this endorsement requires inspection to comply with state or municipal boiler and pressure vessel regulations, we agree to perform such inspection on your behalf. We do not warrant that conditions are safe or healthful.

**c. Environmental, Safety and Efficiency Improvements**

If "covered equipment" requires replacement due to an "accident," we will pay your additional cost to replace with equipment that is better for the environment, safer for people, or more energy or water efficient than the equipment being replaced.

However, we will not pay to increase the size or capacity of the equipment and we will not pay more than one hundred fifty percent (150%) of what the cost would have been to replace with like kind and quality. This condition does not apply to the replacement of component parts or to any property to which Actual Cash Value applies and does not increase any of the applicable limits.

**d. Coinsurance**

If a coinsurance percentage is shown in the Schedule of this endorsement for specified coverages, the following condition applies.

We will not pay for the full amount of your loss if the applicable limit is less than the product of the specified coinsurance percentage times the value of the property subject to the coverage at the time of the loss. Instead, we will determine what percentage this calculated product is compared to the applicable limit and apply that percentage to the gross amount of loss. We will then subtract the applicable deductible. The resulting amount, or the applicable limit, is the most we will pay. We will not pay for the remainder of the loss. Coinsurance applies separately to each insured location.

The most we will pay for loss, damage or expense under this endorsement arising from any "one accident" is the applicable Limit of Insurance in the Declarations unless otherwise shown in the Schedule of this endorsement. If no limit appears in the Schedule of this endorsement, the limits shown elsewhere in this endorsement apply. Coverage provided under this endorsement does not provide an additional amount of insurance.

---

AUTHORIZED REPRESENTATIVE                                    DATE

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2007

# SCOTTSDALE INSURANCE COMPANY®

**ENDORSEMENT NO. _____**

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| CPS7560688 | 04/14/2022 | 4205 PINE ISLAND LLC | 09012 |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## CHANGES—FLORIDA

This endorsement modifies insurance provided under the following:

**COMMERCIAL PROPERTY COVERAGE PART**

**A.** When this endorsement is attached to the Standard Property Policy **CP 00 99,** the term Coverage Part in this endorsement is replaced by the term Policy.

**B.** The following provision applies when a Coinsurance percentage is shown in the Declarations:

Florida law states as follows:

Coinsurance contract: The rate charged in this policy is based upon the use of the coinsurance clause attached to this policy, with the consent of the Insured.

**C.** The following is added:

If windstorm is a Covered Cause of Loss and loss or damage to Covered Property is caused by or results from windstorm, the following exclusion applies in:

1. Broward County;

2. Dade County;

3. Martin County;

4. Monroe County;

5. Palm Beach County; and

6. All the areas east of the west bank of the Intra-Coastal Waterway in the Counties of:

    a. Indian River; and

    b. St. Lucie.

**WINDSTORM EXTERIOR PAINT AND WATER-PROOFING EXCLUSION**

We will not pay for loss or damage caused by windstorm to:

1. Paint; or

2. Waterproofing material;

applied to the exterior of Buildings unless the Building to which such loss or damage occurs also sustains other loss or damage by windstorm in the course of the same storm event. But such coverage applies only if windstorm is a Covered Cause of Loss.

When loss or damage to exterior paint or waterproofing material is excluded, we will not include the value of paint or waterproofing material to determine:

    a. The amount of the Windstorm or Hail Deductible; or

    b. The value of Covered Property when applying the Coinsurance Condition.

**D.** Sinkhole Collapse Coverage Removed

Sinkhole Collapse coverage is removed as indicated in Paragraphs **D.1.** through **D.4. ;** and coverage for Catastrophic Ground Cover Collapse is added instead as set forth in Paragraph **E.**

1. In the Causes of Loss—Basic Form and in the Standard Property Policy, Sinkhole Collapse is deleted from the Covered Causes of Loss and sinkhole collapse is no longer an exception to the Earth Movement exclusion.

2. In the Causes of Loss—Broad Form, Sinkhole Collapse is deleted from the Covered Causes of Loss and from the Additional Coverage—Collapse; and sinkhole collapse is no longer an exception to the Earth Movement exclusion.

3. In the Causes of Loss—Special Form, sinkhole collapse is deleted from the "specified causes of

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2008

loss" and is no longer an exception to the Earth Movement exclusion.

4. In the Mortgageholders Errors And Omissions Coverage Form, sinkhole collapse is deleted from the Covered Causes of Loss under Coverage B and from the "specified causes of loss, and is no longer an exception to the Earth Movement exclusion.

Further, this Coverage Part does not insure against Sinkhole Loss as defined in Florida law unless an endorsement for Sinkhole Loss is made part of this policy. However, if Sinkhole Loss causes Catastrophic Ground Cover Collapse, coverage is provided for the resulting Catastrophic Ground Cover Collapse even if an endorsement for Sinkhole Loss is not made part of this policy.

E. The following is added to this Coverage Part as a Covered Cause Of Loss. In the Causes Of Loss—Special Form and Mortgageholders Errors And Omissions Coverage Form, the following is also added as a "specified cause of loss." However, as a "specified cause of loss, the following does not apply to the Additional Coverage—Collapse.

**CATASTROPHIC GROUND COVER COLLAPSE**

We will pay for direct physical loss or damage to Covered Property caused by or resulting from catastrophic ground cover collapse, meaning geological activity that results in all of the following:

1. The abrupt collapse of the ground cover;

2. A depression in the ground cover clearly visible to the naked eye;

3. Structural damage to the building, including the foundation; and

4. The insured structure being condemned and ordered to be vacated by the governmental agency authorized by law to issue such an order for that structure.

However, structural damage consisting merely of the settling or cracking of a foundation, structure or building does not constitute loss or damage resulting from a catastrophic ground cover collapse.

The Earth Movement exclusion and the Collapse exclusion do not apply to coverage for Catastrophic Ground Cover Collapse.

Coverage for Catastrophic Ground Cover Collapse does not increase the applicable Limit of Insurance. Regardless of whether loss or damage attributable to catastrophic ground cover collapse also qualifies as Sinkhole Loss or Earthquake (if either or both of those causes of loss are covered under this Coverage Part), only one Limit of Insurance will apply to such loss or damage.

F. The following applies to the **Additional Coverage—Civil Authority** under the Business Income (And Extra Expense) Coverage Form, Business Income (Without Extra Expense) Coverage Form and Extra Expense Coverage Form:

1. The Additional Coverage—Civil Authority includes a requirement that the described premises are not more than one mile from the damaged property. With respect to described premises located in Florida, such one-mile radius does not apply.

2. The Additional Coverage—Civil Authority is limited to a coverage period of up to four weeks. With respect to described premises located in Florida, such four week period is replaced by a three-week period.

3. Civil Authority coverage is subject to all other provisions of that Additional Coverage.

G. In the event where more than one peril causes damage to covered property and the damage cannot be separated by the cause(s) of loss, we will:

Deduct the amount paid by the other carriers from the amount payable under our policy subject to the policy terms and conditions if a cause of the loss is covered under our policy;

If the cause of loss under our policy is also covered under another policy payment will be prorated among all companies providing coverage for the covered cause(s) of loss; and,

In no event can payments made by all carriers total more than the full replacement cost of the insured building. Payment will be subject to the policy terms and conditions of the policy of the covered property regardless of the number of covered perils or policies covering the property, even if the insured property is totally destroyed by combined perils.

_____    _____/_____
AUTHORIZED REPRESENTATIVE                          DATE

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2008

COMMERCIAL PROPERTY
CP 01 40 07 06

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION OF LOSS DUE TO VIRUS OR BACTERIA

This endorsement modifies insurance provided under the following:

COMMERCIAL PROPERTY COVERAGE PART
STANDARD PROPERTY POLICY

**A.** The exclusion set forth in Paragraph **B.** applies to all coverage under all forms and endorsements that comprise this Coverage Part or Policy, including but not limited to forms or endorsements that cover property damage to buildings or personal property and forms or endorsements that cover business income, extra expense or action of civil authority.

**B.** We will not pay for loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease.

However, this exclusion does not apply to loss or damage caused by or resulting from "fungus", wet rot or dry rot. Such loss or damage is addressed in a separate exclusion in this Coverage Part or Policy.

**C.** With respect to any loss or damage subject to the exclusion in Paragraph **B.,** such exclusion supersedes any exclusion relating to "pollutants".

**D.** The following provisions in this Coverage Part or Policy are hereby amended to remove reference to bacteria:

**1.** Exclusion of "Fungus", Wet Rot, Dry Rot And Bacteria; and

**2.** Additional Coverage – Limited Coverage for "Fungus", Wet Rot, Dry Rot And Bacteria, including any endorsement increasing the scope or amount of coverage.

**E.** The terms of the exclusion in Paragraph **B.,** or the inapplicability of this exclusion to a particular loss, do not serve to create coverage for any loss that would otherwise be excluded under this Coverage Part or Policy.

POLICY NUMBER:

**COMMERCIAL PROPERTY**
**CP 04 11 09 17**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# PROTECTIVE SAFEGUARDS

This endorsement modifies insurance provided under the following:

COMMERCIAL PROPERTY COVERAGE PART
STANDARD PROPERTY POLICY

**SCHEDULE**

| Premises Number | Building Number | Protective Safeguards Symbols Applicable |
|---|---|---|
| 1 | 1 | P-9 |
| 1 | 2 | |
| 1 | 3 | P-9 |

| Describe Any "P-9": |
|---|
| SMOKE DETECTORS |
| SMOKE DETECTORS |

| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |
|---|

**A.** The following is added to the Commercial Property Conditions:

**Protective Safeguards**

As a condition of this insurance, you are required to:

**1.** Maintain the protective safeguards listed in the Schedule, and over which you have control, in complete working order;

**2.** Actively engage and maintain in the "on" position at all times any automatic fire alarm or other automatic system listed in the Schedule; and

**3.** Notify us if you know of any suspension of or impairment in any protective safeguard listed in the Schedule.

However, if part of an Automatic Sprinkler System or Automatic Commercial Cooking Exhaust And Extinguishing System is shut off due to breakage, leakage, freezing conditions or opening of sprinkler heads, notification to us will not be necessary if you can restore full protection within 48 hours.

**B.** The following is added to the **Exclusions** section of:

Causes Of Loss – Basic Form

Causes Of Loss – Broad Form

Causes Of Loss – Special Form

Mortgageholders Errors And Omissions Coverage Form

Standard Property Policy

We will not pay for loss or damage caused by or resulting from fire if, prior to the fire, you failed to comply with any condition set forth in Paragraph **A.**

**C.** The protective safeguards to which this endorsement applies are identified by the following symbols:

**"P-1" Automatic Sprinkler System,** including related supervisory services.

© Insurance Services Office, Inc., 2016

Automatic Sprinkler System means:

**a.** Any automatic fire protective or extinguishing system, including connected:

**(1)** Sprinklers and discharge nozzles;

**(2)** Ducts, pipes, valves and fittings;

**(3)** Tanks, their component parts and supports; and

**(4)** Pumps and private fire protection mains.

**b.** When supplied from an automatic fire protective system:

**(1)** Non-automatic fire protective systems; and

**(2)** Hydrants, standpipes and outlets.

**"P-2" Automatic Fire Alarm,** protecting the entire building, that is:

**a.** Connected to a central station; or

**b.** Reporting to a public or private fire alarm station.

**"P-3" Security Service,** with a recording system or watch clock, making hourly rounds covering the entire building, when the premises are not in actual operation.

**"P-4" Service Contract** with a privately owned fire department providing fire protection service to the described premises.

**"P-5" Automatic Commercial Cooking Exhaust And Extinguishing System** installed on cooking appliances and having the following components:

**a.** Hood;

**b.** Grease removal device;

**c.** Duct system; and

**d.** Wet chemical fire extinguishing equipment.

**"P-9",** the protective system described in the Schedule.

© Insurance Services Office, Inc., 2016

POLICY NUMBER:

**COMMERCIAL PROPERTY**
**CP 04 11 09 17**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# PROTECTIVE SAFEGUARDS

This endorsement modifies insurance provided under the following:

COMMERCIAL PROPERTY COVERAGE PART
STANDARD PROPERTY POLICY

### SCHEDULE

| Premises Number | Building Number | Protective Safeguards Symbols Applicable |
|---|---|---|
| 1 | 4 | |
| 1 | 5 | |
| | | |
| **Describe Any "P-9":** | | |
| | | |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | | |

**A.** The following is added to the Commercial Property Conditions:

**Protective Safeguards**

As a condition of this insurance, you are required to:

**1.** Maintain the protective safeguards listed in the Schedule, and over which you have control, in complete working order;

**2.** Actively engage and maintain in the "on" position at all times any automatic fire alarm or other automatic system listed in the Schedule; and

**3.** Notify us if you know of any suspension of or impairment in any protective safeguard listed in the Schedule.

However, if part of an Automatic Sprinkler System or Automatic Commercial Cooking Exhaust And Extinguishing System is shut off due to breakage, leakage, freezing conditions or opening of sprinkler heads, notification to us will not be necessary if you can restore full protection within 48 hours.

**B.** The following is added to the **Exclusions** section of:

Causes Of Loss – Basic Form

Causes Of Loss – Broad Form

Causes Of Loss – Special Form

Mortgageholders Errors And Omissions Coverage Form

Standard Property Policy

We will not pay for loss or damage caused by or resulting from fire if, prior to the fire, you failed to comply with any condition set forth in Paragraph **A.**

**C.** The protective safeguards to which this endorsement applies are identified by the following symbols:

**"P-1" Automatic Sprinkler System,** including related supervisory services.

© Insurance Services Office, Inc., 2016

Automatic Sprinkler System means:

**a.** Any automatic fire protective or extinguishing system, including connected:

**(1)** Sprinklers and discharge nozzles;

**(2)** Ducts, pipes, valves and fittings;

**(3)** Tanks, their component parts and supports; and

**(4)** Pumps and private fire protection mains.

**b.** When supplied from an automatic fire protective system:

**(1)** Non-automatic fire protective systems; and

**(2)** Hydrants, standpipes and outlets.

**"P-2" Automatic Fire Alarm,** protecting the entire building, that is:

**a.** Connected to a central station; or

**b.** Reporting to a public or private fire alarm station.

**"P-3" Security Service,** with a recording system or watch clock, making hourly rounds covering the entire building, when the premises are not in actual operation.

**"P-4" Service Contract** with a privately owned fire department providing fire protection service to the described premises.

**"P-5" Automatic Commercial Cooking Exhaust And Extinguishing System** installed on cooking appliances and having the following components:

**a.** Hood;

**b.** Grease removal device;

**c.** Duct system; and

**d.** Wet chemical fire extinguishing equipment.

**"P-9",** the protective system described in the Schedule.

© Insurance Services Office, Inc., 2016

COMMERCIAL PROPERTY
CP 10 30 09 17

# CAUSES OF LOSS – SPECIAL FORM

Words and phrases that appear in quotation marks have special meaning. Refer to Section **G.** Definitions.

**A. Covered Causes Of Loss**

When Special is shown in the Declarations, Covered Causes of Loss means direct physical loss unless the loss is excluded or limited in this policy.

**B. Exclusions**

**1.** We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

  **a. Ordinance Or Law**

    The enforcement of or compliance with any ordinance or law:

    **(1)** Regulating the construction, use or repair of any property; or

    **(2)** Requiring the tearing down of any property, including the cost of removing its debris.

    This exclusion, Ordinance Or Law, applies whether the loss results from:

      **(a)** An ordinance or law that is enforced even if the property has not been damaged; or

      **(b)** The increased costs incurred to comply with an ordinance or law in the course of construction, repair, renovation, remodeling or demolition of property, or removal of its debris, following a physical loss to that property.

  **b. Earth Movement**

    **(1)** Earthquake, including tremors and aftershocks and any earth sinking, rising or shifting related to such event;

    **(2)** Landslide, including any earth sinking, rising or shifting related to such event;

    **(3)** Mine subsidence, meaning subsidence of a man-made mine, whether or not mining activity has ceased;

    **(4)** Earth sinking (other than sinkhole collapse), rising or shifting including soil conditions which cause settling, cracking or other disarrangement of foundations or other parts of realty. Soil conditions include contraction, expansion, freezing, thawing, erosion, improperly compacted soil and the action of water under the ground surface.

    But if Earth Movement, as described in **b.(1)** through **(4)** above, results in fire or explosion, we will pay for the loss or damage caused by that fire or explosion.

    **(5)** Volcanic eruption, explosion or effusion. But if volcanic eruption, explosion or effusion results in fire, building glass breakage or Volcanic Action, we will pay for the loss or damage caused by that fire, building glass breakage or Volcanic Action.

    Volcanic Action means direct loss or damage resulting from the eruption of a volcano when the loss or damage is caused by:

      **(a)** Airborne volcanic blast or airborne shock waves;

      **(b)** Ash, dust or particulate matter; or

      **(c)** Lava flow.

    With respect to coverage for Volcanic Action as set forth in **(5)(a), (5)(b)** and **(5)(c),** all volcanic eruptions that occur within any 168-hour period will constitute a single occurrence.

    Volcanic Action does not include the cost to remove ash, dust or particulate matter that does not cause direct physical loss or damage to the described property.

    This exclusion applies regardless of whether any of the above, in Paragraphs **(1)** through **(5),** is caused by an act of nature or is otherwise caused.

 © Insurance Services Office, Inc., 2016

**c. Governmental Action**

Seizure or destruction of property by order of governmental authority.

But we will pay for loss or damage caused by or resulting from acts of destruction ordered by governmental authority and taken at the time of a fire to prevent its spread, if the fire would be covered under this Coverage Part.

**d. Nuclear Hazard**

Nuclear reaction or radiation, or radioactive contamination, however caused.

But if nuclear reaction or radiation, or radioactive contamination, results in fire, we will pay for the loss or damage caused by that fire.

**e. Utility Services**

The failure of power, communication, water or other utility service supplied to the described premises, however caused, if the failure:

(1) Originates away from the described premises; or

(2) Originates at the described premises, but only if such failure involves equipment used to supply the utility service to the described premises from a source away from the described premises.

Failure of any utility service includes lack of sufficient capacity and reduction in supply.

Loss or damage caused by a surge of power is also excluded, if the surge would not have occurred but for an event causing a failure of power.

But if the failure or surge of power, or the failure of communication, water or other utility service, results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

Communication services include but are not limited to service relating to Internet access or access to any electronic, cellular or satellite network.

**f. War And Military Action**

(1) War, including undeclared or civil war;

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**g. Water**

(1) Flood, surface water, waves (including tidal wave and tsunami), tides, tidal water, overflow of any body of water, or spray from any of these, all whether or not driven by wind (including storm surge);

(2) Mudslide or mudflow;

(3) Water that backs up or overflows or is otherwise discharged from a sewer, drain, sump, sump pump or related equipment;

(4) Water under the ground surface pressing on, or flowing or seeping through:

(a) Foundations, walls, floors or paved surfaces;

(b) Basements, whether paved or not; or

(c) Doors, windows or other openings; or

(5) Waterborne material carried or otherwise moved by any of the water referred to in Paragraph **(1), (3)** or **(4),** or material carried or otherwise moved by mudslide or mudflow.

This exclusion applies regardless of whether any of the above, in Paragraphs **(1)** through **(5),** is caused by an act of nature or is otherwise caused. An example of a situation to which this exclusion applies is the situation where a dam, levee, seawall or other boundary or containment system fails in whole or in part, for any reason, to contain the water.

© Insurance Services Office, Inc., 2016

But if any of the above, in Paragraphs **(1)** through **(5),** results in fire, explosion or sprinkler leakage, we will pay for the loss or damage caused by that fire, explosion or sprinkler leakage (if sprinkler leakage is a Covered Cause of Loss).

**h.** **"Fungus", Wet Rot, Dry Rot And Bacteria**

Presence, growth, proliferation, spread or any activity of "fungus", wet or dry rot or bacteria.

But if "fungus", wet or dry rot or bacteria result in a "specified cause of loss", we will pay for the loss or damage caused by that "specified cause of loss".

This exclusion does not apply:

**(1)** When "fungus", wet or dry rot or bacteria result from fire or lightning; or

**(2)** To the extent that coverage is provided in the Additional Coverage, Limited Coverage For "Fungus", Wet Rot, Dry Rot And Bacteria, with respect to loss or damage by a cause of loss other than fire or lightning.

Exclusions **B.1.a.** through **B.1.h.** apply whether or not the loss event results in widespread damage or affects a substantial area.

**2.** We will not pay for loss or damage caused by or resulting from any of the following:

**a.** Artificially generated electrical, magnetic or electromagnetic energy that damages, disturbs, disrupts or otherwise interferes with any:

**(1)** Electrical or electronic wire, device, appliance, system or network; or

**(2)** Device, appliance, system or network utilizing cellular or satellite technology.

For the purpose of this exclusion, electrical, magnetic or electromagnetic energy includes but is not limited to:

**(a)** Electrical current, including arcing;

**(b)** Electrical charge produced or conducted by a magnetic or electromagnetic field;

**(c)** Pulse of electromagnetic energy; or

**(d)** Electromagnetic waves or microwaves.

But if fire results, we will pay for the loss or damage caused by that fire.

**b.** Delay, loss of use or loss of market.

**c.** Smoke, vapor or gas from agricultural smudging or industrial operations.

**d.(1)** Wear and tear;

**(2)** Rust or other corrosion, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself;

**(3)** Smog;

**(4)** Settling, cracking, shrinking or expansion;

**(5)** Nesting or infestation, or discharge or release of waste products or secretions, by insects, birds, rodents or other animals.

**(6)** Mechanical breakdown, including rupture or bursting caused by centrifugal force. But if mechanical breakdown results in elevator collision, we will pay for the loss or damage caused by that elevator collision.

**(7)** The following causes of loss to personal property:

**(a)** Dampness or dryness of atmosphere;

**(b)** Changes in or extremes of temperature; or

**(c)** Marring or scratching.

But if an excluded cause of loss that is listed in **2.d.(1)** through **(7)** results in a "specified cause of loss" or building glass breakage, we will pay for the loss or damage caused by that "specified cause of loss" or building glass breakage.

**e.** Explosion of steam boilers, steam pipes, steam engines or steam turbines owned or leased by you, or operated under your control. But if explosion of steam boilers, steam pipes, steam engines or steam turbines results in fire or combustion explosion, we will pay for the loss or damage caused by that fire or combustion explosion. We will also pay for loss or damage caused by or resulting from the explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass.

**f.** Continuous or repeated seepage or leakage of water, or the presence or condensation of humidity, moisture or vapor, that occurs over a period of 14 days or more.

g. Water, other liquids, powder or molten material that leaks or flows from plumbing, heating, air conditioning or other equipment (except fire protective systems) caused by or resulting from freezing, unless:

(1) You do your best to maintain heat in the building or structure; or

(2) You drain the equipment and shut off the supply if the heat is not maintained.

h. Dishonest or criminal act (including theft) by you, any of your partners, members, officers, managers, employees (including temporary employees and leased workers), directors, trustees or authorized representatives, whether acting alone or in collusion with each other or with any other party; or theft by any person to whom you entrust the property for any purpose, whether acting alone or in collusion with any other party.

This exclusion:

(1) Applies whether or not an act occurs during your normal hours of operation;

(2) Does not apply to acts of destruction by your employees (including temporary employees and leased workers) or authorized representatives; but theft by your employees (including temporary employees and leased workers) or authorized representatives is not covered.

i. Voluntary parting with any property by you or anyone else to whom you have entrusted the property if induced to do so by any fraudulent scheme, trick, device or false pretense.

j. Rain, snow, ice or sleet to personal property in the open.

k. Collapse, including any of the following conditions of property or any part of the property:

(1) An abrupt falling down or caving in;

(2) Loss of structural integrity, including separation of parts of the property or property in danger of falling down or caving in; or

(3) Any cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion as such condition relates to (1) or (2) above.

But if collapse results in a Covered Cause of Loss at the described premises, we will pay for the loss or damage caused by that Covered Cause of Loss.

This exclusion, k., does not apply:

(a) To the extent that coverage is provided under the Additional Coverage, Collapse; or

(b) To collapse caused by one or more of the following:

(i) The "specified causes of loss";

(ii) Breakage of building glass;

(iii) Weight of rain that collects on a roof; or

(iv) Weight of people or personal property.

l. Discharge, dispersal, seepage, migration, release or escape of "pollutants" unless the discharge, dispersal, seepage, migration, release or escape is itself caused by any of the "specified causes of loss". But if the discharge, dispersal, seepage, migration, release or escape of "pollutants" results in a "specified cause of loss", we will pay for the loss or damage caused by that "specified cause of loss".

This exclusion, l., does not apply to damage to glass caused by chemicals applied to the glass.

m. Neglect of an insured to use all reasonable means to save and preserve property from further damage at and after the time of loss.

3. We will not pay for loss or damage caused by or resulting from any of the following, 3.a. through 3.c. But if an excluded cause of loss that is listed in 3.a. through 3.c. results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

a. Weather conditions. But this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in Paragraph 1. above to produce the loss or damage.

b. Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.

c. Faulty, inadequate or defective:

(1) Planning, zoning, development, surveying, siting;

(2) Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

(3) Materials used in repair, construction, renovation or remodeling; or

(4) Maintenance;

    © Insurance Services Office, Inc., 2016    CP 10 30 09 17

of part or all of any property on or off the described premises.

**4. Special Exclusions**

The following provisions apply only to the specified Coverage Forms:

**a. Business Income (And Extra Expense) Coverage Form, Business Income (Without Extra Expense) Coverage Form, Or Extra Expense Coverage Form**

We will not pay for:

**(1)** Any loss caused by or resulting from:

**(a)** Damage or destruction of "finished stock"; or

**(b)** The time required to reproduce "finished stock".

This exclusion does not apply to Extra Expense.

**(2)** Any loss caused by or resulting from direct physical loss or damage to radio or television antennas (including satellite dishes) and their lead-in wiring, masts or towers.

**(3)** Any increase of loss caused by or resulting from:

**(a)** Delay in rebuilding, repairing or replacing the property or resuming "operations", due to interference at the location of the rebuilding, repair or replacement by strikers or other persons; or

**(b)** Suspension, lapse or cancellation of any license, lease or contract. But if the suspension, lapse or cancellation is directly caused by the "suspension" of "operations", we will cover such loss that affects your Business Income during the "period of restoration" and any extension of the "period of restoration" in accordance with the terms of the Extended Business Income Additional Coverage and the Extended Period Of Indemnity Optional Coverage or any variation of these.

**(4)** Any Extra Expense caused by or resulting from suspension, lapse or cancellation of any license, lease or contract beyond the "period of restoration".

**(5)** Any other consequential loss.

**b. Leasehold Interest Coverage Form**

**(1)** Paragraph **B.1.a.,** Ordinance Or Law, does not apply to insurance under this Coverage Form.

**(2)** We will not pay for any loss caused by:

**(a)** Your cancelling the lease;

**(b)** The suspension, lapse or cancellation of any license; or

**(c)** Any other consequential loss.

**c. Legal Liability Coverage Form**

**(1)** The following exclusions do not apply to insurance under this Coverage Form:

**(a)** Paragraph **B.1.a.** Ordinance Or Law;

**(b)** Paragraph **B.1.c.** Governmental Action;

**(c)** Paragraph **B.1.d.** Nuclear Hazard;

**(d)** Paragraph **B.1.e.** Utility Services; and

**(e)** Paragraph **B.1.f.** War And Military Action.

**(2)** The following additional exclusions apply to insurance under this Coverage Form:

**(a) Contractual Liability**

We will not defend any claim or "suit", or pay damages that you are legally liable to pay, solely by reason of your assumption of liability in a contract or agreement. But this exclusion does not apply to a written lease agreement in which you have assumed liability for building damage resulting from an actual or attempted burglary or robbery, provided that:

**(i)** Your assumption of liability was executed prior to the accident; and

**(ii)** The building is Covered Property under this Coverage Form.

**(b) Nuclear Hazard**

We will not defend any claim or "suit", or pay any damages, loss, expense or obligation, resulting from nuclear reaction or radiation, or radioactive contamination, however caused.

**5. Additional Exclusion**

The following provisions apply only to the specified property:

**Loss Or Damage To Products**

We will not pay for loss or damage to any merchandise, goods or other product caused by or resulting from error or omission by any person or entity (including those having possession under an arrangement where work or a portion of the work is outsourced) in any stage of the development, production or use of the product, including planning, testing, processing, packaging, installation, maintenance or repair. This exclusion applies to any effect that compromises the form, substance or quality of the product. But if such error or omission results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

**C. Limitations**

The following limitations apply to all policy forms and endorsements, unless otherwise stated:

**1.** We will not pay for loss of or damage to property, as described and limited in this section. In addition, we will not pay for any loss that is a consequence of loss or damage as described and limited in this section.

**a.** Steam boilers, steam pipes, steam engines or steam turbines caused by or resulting from any condition or event inside such equipment. But we will pay for loss of or damage to such equipment caused by or resulting from an explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass.

**b.** Hot water boilers or other water heating equipment caused by or resulting from any condition or event inside such boilers or equipment, other than an explosion.

**c.** The interior of any building or structure, or to personal property in the building or structure, caused by or resulting from rain, snow, sleet, ice, sand or dust, whether driven by wind or not, unless:

**(1)** The building or structure first sustains damage by a Covered Cause of Loss to its roof or walls through which the rain, snow, sleet, ice, sand or dust enters; or

**(2)** The loss or damage is caused by or results from thawing of snow, sleet or ice on the building or structure.

**d.** Building materials and supplies not attached as part of the building or structure, caused by or resulting from theft.

However, this limitation does not apply to:

**(1)** Building materials and supplies held for sale by you, unless they are insured under the Builders Risk Coverage Form; or

**(2)** Business Income Coverage or Extra Expense Coverage.

**e.** Property that is missing, where the only evidence of the loss or damage is a shortage disclosed on taking inventory, or other instances where there is no physical evidence to show what happened to the property.

**f.** Property that has been transferred to a person or to a place outside the described premises on the basis of unauthorized instructions.

**g.** Lawns, trees, shrubs or plants which are part of a vegetated roof, caused by or resulting from:

**(1)** Dampness or dryness of atmosphere or of soil supporting the vegetation;

**(2)** Changes in or extremes of temperature;

**(3)** Disease;

**(4)** Frost or hail; or

**(5)** Rain, snow, ice or sleet.

**2.** We will not pay for loss of or damage to the following types of property unless caused by the "specified causes of loss" or building glass breakage:

**a.** Animals, and then only if they are killed or their destruction is made necessary.

**b.** Fragile articles such as statuary, marbles, chinaware and porcelains, if broken. This restriction does not apply to:

**(1)** Glass; or

**(2)** Containers of property held for sale.

**c.** Builders' machinery, tools and equipment owned by you or entrusted to you, provided such property is Covered Property.

However, this limitation does not apply:

**(1)** If the property is located on or within 100 feet of the described premises, unless the premises is insured under the Builders Risk Coverage Form; or

**(2)** To Business Income Coverage or to Extra Expense Coverage.

**3.** The special limit shown for each category, **a.** through **d.,** is the total limit for loss of or damage to all property in that category. The special limit applies to any one occurrence of theft, regardless of the types or number of articles that are lost or damaged in that occurrence. The special limits are (unless a higher limit is shown in the Declarations):

   **a.** $2,500 for furs, fur garments and garments trimmed with fur.

   **b.** $2,500 for jewelry, watches, watch movements, jewels, pearls, precious and semiprecious stones, bullion, gold, silver, platinum and other precious alloys or metals. This limit does not apply to jewelry and watches worth $100 or less per item.

   **c.** $2,500 for patterns, dies, molds and forms.

   **d.** $250 for stamps, tickets, including lottery tickets held for sale, and letters of credit.

These special limits are part of, not in addition to, the Limit of Insurance applicable to the Covered Property.

This limitation, **C.3.,** does not apply to Business Income Coverage or to Extra Expense Coverage.

**4.** We will not pay the cost to repair any defect to a system or appliance from which water, other liquid, powder or molten material escapes. But we will pay the cost to repair or replace damaged parts of fire-extinguishing equipment if the damage:

   **a.** Results in discharge of any substance from an automatic fire protection system; or

   **b.** Is directly caused by freezing.

However, this limitation does not apply to Business Income Coverage or to Extra Expense Coverage.

**D. Additional Coverage – Collapse**

The coverage provided under this Additional Coverage, Collapse, applies only to an abrupt collapse as described and limited in **D.1.** through **D.7.**

**1.** For the purpose of this Additional Coverage, Collapse, abrupt collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its intended purpose.

**2.** We will pay for direct physical loss or damage to Covered Property, caused by abrupt collapse of a building or any part of a building that is insured under this Coverage Form or that contains Covered Property insured under this Coverage Form, if such collapse is caused by one or more of the following:

   **a.** Building decay that is hidden from view, unless the presence of such decay is known to an insured prior to collapse;

   **b.** Insect or vermin damage that is hidden from view, unless the presence of such damage is known to an insured prior to collapse;

   **c.** Use of defective material or methods in construction, remodeling or renovation if the abrupt collapse occurs during the course of the construction, remodeling or renovation.

   **d.** Use of defective material or methods in construction, remodeling or renovation if the abrupt collapse occurs after the construction, remodeling or renovation is complete, but only if the collapse is caused in part by:

      **(1)** A cause of loss listed in **2.a.** or **2.b.;**

      **(2)** One or more of the "specified causes of loss";

      **(3)** Breakage of building glass;

      **(4)** Weight of people or personal property; or

      **(5)** Weight of rain that collects on a roof.

**3.** This **Additional Coverage – Collapse** does **not** apply to:

   **a.** A building or any part of a building that is in danger of falling down or caving in;

   **b.** A part of a building that is standing, even if it has separated from another part of the building; or

   **c.** A building that is standing or any part of a building that is standing, even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

**4.** With respect to the following property:

   **a.** Outdoor radio or television antennas (including satellite dishes) and their lead-in wiring, masts or towers;

b. Awnings, gutters and downspouts;

c. Yard fixtures;

d. Outdoor swimming pools;

e. Fences;

f. Piers, wharves and docks;

g. Beach or diving platforms or appurtenances;

h. Retaining walls; and

i. Walks, roadways and other paved surfaces;

if an abrupt collapse is caused by a cause of loss listed in **2.a.** through **2.d.,** we will pay for loss or damage to that property only if:

(1) Such loss or damage is a direct result of the abrupt collapse of a building insured under this Coverage Form; and

(2) The property is Covered Property under this Coverage Form.

5. If personal property abruptly falls down or caves in and such collapse is **not** the result of abrupt collapse of a building, we will pay for loss or damage to Covered Property caused by such collapse of personal property only if:

a. The collapse of personal property was caused by a cause of loss listed in **2.a.** through **2.d.;**

b. The personal property which collapses is inside a building; and

c. The property which collapses is not of a kind listed in **4.,** regardless of whether that kind of property is considered to be personal property or real property.

The coverage stated in this Paragraph **5.** does not apply to personal property if marring and/or scratching is the only damage to that personal property caused by the collapse.

6. This Additional Coverage, Collapse, does not apply to personal property that has not abruptly fallen down or caved in, even if the personal property shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

7. This Additional Coverage, Collapse, will not increase the Limits of Insurance provided in this Coverage Part.

8. The term Covered Cause of Loss includes the Additional Coverage, Collapse, as described and limited in **D.1.** through **D.7.**

E. **Additional Coverage – Limited Coverage For "Fungus", Wet Rot, Dry Rot And Bacteria**

1. The coverage described in **E.2.** and **E.6.** only applies when the "fungus", wet or dry rot or bacteria are the result of one or more of the following causes that occur during the policy period and only if all reasonable means were used to save and preserve the property from further damage at the time of and after that occurrence:

a. A "specified cause of loss" other than fire or lightning; or

b. Flood, if the Flood Coverage Endorsement applies to the affected premises.

This Additional Coverage does not apply to lawns, trees, shrubs or plants which are part of a vegetated roof.

2. We will pay for loss or damage by "fungus", wet or dry rot or bacteria. As used in this Limited Coverage, the term loss or damage means:

a. Direct physical loss or damage to Covered Property caused by "fungus", wet or dry rot or bacteria, including the cost of removal of the "fungus", wet or dry rot or bacteria;

b. The cost to tear out and replace any part of the building or other property as needed to gain access to the "fungus", wet or dry rot or bacteria; and

c. The cost of testing performed after removal, repair, replacement or restoration of the damaged property is completed, provided there is a reason to believe that "fungus", wet or dry rot or bacteria are present.

3. The coverage described under **E.2.** of this Limited Coverage is limited to $15,000. Regardless of the number of claims, this limit is the most we will pay for the total of all loss or damage arising out of all occurrences of "specified causes of loss" (other than fire or lightning) and Flood which take place in a 12-month period (starting with the beginning of the present annual policy period). With respect to a particular occurrence of loss which results in "fungus", wet or dry rot or bacteria, we will not pay more than a total of $15,000 even if the "fungus", wet or dry rot or bacteria continue to be present or active, or recur, in a later policy period.

© Insurance Services Office, Inc., 2016    **CP 10 30 09 17**

**4.** The coverage provided under this Limited Coverage does not increase the applicable Limit of Insurance on any Covered Property. If a particular occurrence results in loss or damage by "fungus", wet or dry rot or bacteria, and other loss or damage, we will not pay more, for the total of all loss or damage, than the applicable Limit of Insurance on the affected Covered Property.

If there is covered loss or damage to Covered Property, not caused by "fungus", wet or dry rot or bacteria, loss payment will not be limited by the terms of this Limited Coverage, except to the extent that "fungus", wet or dry rot or bacteria cause an increase in the loss. Any such increase in the loss will be subject to the terms of this Limited Coverage.

**5.** The terms of this Limited Coverage do not increase or reduce the coverage provided under Paragraph **F.2.** (Water Damage, Other Liquids, Powder Or Molten Material Damage) of this Causes Of Loss form or under the Additional Coverage, Collapse.

**6.** The following, **6.a.** or **6.b.,** applies only if Business Income and/or Extra Expense Coverage applies to the described premises and only if the "suspension" of "operations" satisfies all terms and conditions of the applicable Business Income and/or Extra Expense Coverage Form:

**a.** If the loss which resulted in "fungus", wet or dry rot or bacteria does not in itself necessitate a "suspension" of "operations", but such "suspension" is necessary due to loss or damage to property caused by "fungus", wet or dry rot or bacteria, then our payment under Business Income and/or Extra Expense is limited to the amount of loss and/or expense sustained in a period of not more than 30 days. The days need not be consecutive.

**b.** If a covered "suspension" of "operations" was caused by loss or damage other than "fungus", wet or dry rot or bacteria but remediation of "fungus", wet or dry rot or bacteria prolongs the "period of restoration", we will pay for loss and/or expense sustained during the delay (regardless of when such a delay occurs during the "period of restoration"), but such coverage is limited to 30 days. The days need not be consecutive.

**F.  Additional Coverage Extensions**

**1.  Property In Transit**

This Extension applies only to your personal property to which this form applies.

**a.** You may extend the insurance provided by this Coverage Part to apply to your personal property (other than property in the care, custody or control of your salespersons) in transit more than 100 feet from the described premises. Property must be in or on a motor vehicle you own, lease or operate while between points in the coverage territory.

**b.** Loss or damage must be caused by or result from one of the following causes of loss:

**(1)** Fire, lightning, explosion, windstorm or hail, riot or civil commotion, or vandalism.

**(2)** Vehicle collision, upset or overturn. Collision means accidental contact of your vehicle with another vehicle or object. It does not mean your vehicle's contact with the roadbed.

**(3)** Theft of an entire bale, case or package by forced entry into a securely locked body or compartment of the vehicle. There must be visible marks of the forced entry.

**c.** The most we will pay for loss or damage under this Extension is $5,000.

This Coverage Extension is additional insurance. The Additional Condition, Coinsurance, does not apply to this Extension.

**2.  Water Damage, Other Liquids, Powder Or Molten Material Damage**

If loss or damage caused by or resulting from covered water or other liquid, powder or molten material damage loss occurs, we will also pay the cost to tear out and replace any part of the building or structure to repair damage to the system or appliance from which the water or other substance escapes. This Coverage Extension does not increase the Limit of Insurance.

3. **Glass**

   a. We will pay for expenses incurred to put up temporary plates or board up openings if repair or replacement of damaged glass is delayed.

   b. We will pay for expenses incurred to remove or replace obstructions when repairing or replacing glass that is part of a building. This does not include removing or replacing window displays.

   This Coverage Extension **F.3.** does not increase the Limit of Insurance.

## G. Definitions

1. "Fungus" means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by fungi.

2. "Specified causes of loss" means the following: fire; lightning; explosion; windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire-extinguishing equipment; sinkhole collapse; volcanic action; falling objects; weight of snow, ice or sleet; water damage.

   a. Sinkhole collapse means the sudden sinking or collapse of land into underground empty spaces created by the action of water on limestone or dolomite. This cause of loss does not include:

      (1) The cost of filling sinkholes; or

      (2) Sinking or collapse of land into man-made underground cavities.

   b. Falling objects does not include loss or damage to:

      (1) Personal property in the open; or

      (2) The interior of a building or structure, or property inside a building or structure, unless the roof or an outside wall of the building or structure is first damaged by a falling object.

   c. Water damage means:

      (1) Accidental discharge or leakage of water or steam as the direct result of the breaking apart or cracking of a plumbing, heating, air conditioning or other system or appliance (other than a sump system including its related equipment and parts), that is located on the described premises and contains water or steam; and

      (2) Accidental discharge or leakage of water or waterborne material as the direct result of the breaking apart or cracking of a water or sewer pipe caused by wear and tear, when the pipe is located off the described premises and is connected to or is part of a potable water supply system or sanitary sewer system operated by a public or private utility service provider pursuant to authority granted by the state or governmental subdivision where the described premises are located.

   But water damage does not include loss or damage otherwise excluded under the terms of the Water Exclusion. Therefore, for example, there is no coverage under this policy in the situation in which discharge or leakage of water results from the breaking apart or cracking of a pipe which was caused by or related to weather-induced flooding, even if wear and tear contributed to the breakage or cracking. As another example, and also in accordance with the terms of the Water Exclusion, there is no coverage for loss or damage caused by or related to weather-induced flooding which follows or is exacerbated by pipe breakage or cracking attributable to wear and tear.

   To the extent that accidental discharge or leakage of water falls within the criteria set forth in **c.(1)** or **c.(2)** of this definition of "specified causes of loss," such water is not subject to the provisions of the Water Exclusion which preclude coverage for surface water or water under the surface of the ground.

POLICY NUMBER: CPS7560688

COMMERCIAL PROPERTY
CP 10 54 06 07

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# WINDSTORM OR HAIL EXCLUSION

This endorsement modifies insurance provided under the following:

    CAUSES OF LOSS – BASIC FORM
    CAUSES OF LOSS – BROAD FORM
    CAUSES OF LOSS – SPECIAL FORM
    STANDARD PROPERTY POLICY

**SCHEDULE**

| Premises Number | Building Number |
|---|---|
| 1 | 1 |
| 1 | 2 |
| 1 | 3 |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | |

With respect to the location(s) indicated in the Schedule, the following provisions apply.

**A.** The following is added to the **Exclusions** section and is therefore **not** a Covered Cause of Loss:

**WINDSTORM OR HAIL**

We will not pay for loss or damage:

**1.** Caused directly or indirectly by Windstorm or Hail, regardless of any other cause or event that contributes concurrently or in any sequence to the loss or damage; or

**2.** Caused by rain, snow, sand or dust, whether driven by wind or not, if that loss or damage would not have occurred but for the Windstorm or Hail.

But if Windstorm or Hail results in a cause of loss other than rain, snow, sand or dust, and that resulting cause of loss is a Covered Cause of Loss, we will pay for the loss or damage caused by such Covered Cause of Loss. For example, if the Windstorm or Hail damages a heating system and fire results, the loss or damage attributable to the fire is covered subject to any other applicable policy provisions.

**B.** The terms of the Windstorm Or Hail exclusion, or the inapplicability of this exclusion to a particular loss, do not serve to create coverage for any loss that would otherwise be excluded under this policy.

**C.** Under **Additional Coverage – Collapse,** in the Causes Of Loss – Broad Form, Windstorm or Hail is deleted from Paragraph **2.a.**

**D.** In the Causes Of Loss – Special Form, Windstorm or Hail is deleted from the "specified causes of loss".

**E.** Under **Additional Coverage Extensions – Property In Transit,** in the Causes Of Loss – Special Form, Windstorm or Hail is deleted from Paragraph **b.(1).**

© ISO Properties, Inc., 2007

POLICY NUMBER: CPS7560688

**COMMERCIAL PROPERTY**
**CP 10 54 06 07**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# WINDSTORM OR HAIL EXCLUSION

This endorsement modifies insurance provided under the following:

CAUSES OF LOSS – BASIC FORM
CAUSES OF LOSS – BROAD FORM
CAUSES OF LOSS – SPECIAL FORM
STANDARD PROPERTY POLICY

**SCHEDULE**

| Premises Number | Building Number |
|---|---|
| 1 | 4 |
| 1 | 5 |
|  |  |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. ||

With respect to the location(s) indicated in the Schedule, the following provisions apply.

**A.** The following is added to the **Exclusions** section and is therefore **not** a Covered Cause of Loss:

**WINDSTORM OR HAIL**

We will not pay for loss or damage:

**1.** Caused directly or indirectly by Windstorm or Hail, regardless of any other cause or event that contributes concurrently or in any sequence to the loss or damage; or

**2.** Caused by rain, snow, sand or dust, whether driven by wind or not, if that loss or damage would not have occurred but for the Windstorm or Hail.

But if Windstorm or Hail results in a cause of loss other than rain, snow, sand or dust, and that resulting cause of loss is a Covered Cause of Loss, we will pay for the loss or damage caused by such Covered Cause of Loss. For example, if the Windstorm or Hail damages a heating system and fire results, the loss or damage attributable to the fire is covered subject to any other applicable policy provisions.

**B.** The terms of the Windstorm Or Hail exclusion, or the inapplicability of this exclusion to a particular loss, do not serve to create coverage for any loss that would otherwise be excluded under this policy.

**C.** Under **Additional Coverage – Collapse,** in the Causes Of Loss – Broad Form, Windstorm or Hail is deleted from Paragraph **2.a.**

**D.** In the Causes Of Loss – Special Form, Windstorm or Hail is deleted from the "specified causes of loss".

**E.** Under **Additional Coverage Extensions – Property In Transit,** in the Causes Of Loss – Special Form, Windstorm or Hail is deleted from Paragraph **b.(1).**

© ISO Properties, Inc., 2007

COMMERCIAL PROPERTY
CP 10 75 12 20

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# CYBER INCIDENT EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL PROPERTY COVERAGE PART
STANDARD PROPERTY POLICY

**A.** The following exclusion is added to Paragraph **B. Exclusions:**

We will not pay for loss or damage caused directly or indirectly by the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

**Cyber Incident**

**1.** Unauthorized access to or use of any computer system (including electronic data).

**2.** Malicious code, virus or any other harmful code that is directed at, enacted upon or introduced into any computer system (including electronic data) and is designed to access, alter, corrupt, damage, delete, destroy, disrupt, encrypt, exploit, use or prevent or restrict access to or the use of any part of any computer system (including electronic data) or otherwise disrupt its normal functioning or operation.

**3.** Denial of service attack which disrupts, prevents or restricts access to or use of any computer system, or otherwise disrupts its normal functioning or operation.

**B. Exceptions And Limitations**

**1. Fire Or Explosion**

If a cyber incident as described in Paragraphs **A.1.** through **A.3.** of this exclusion results in fire or explosion, we will pay for the loss or damage caused by that fire or explosion.

**2. Additional Coverage**

The exclusion in Paragraph **A.** does not apply to the extent that coverage is provided in the:

**a.** Additional Coverage – Electronic Data; or

**b.** Additional Coverage – Interruption Of Computer Operations.

**3. Electronic Commerce Endorsement**

The exclusion in Paragraph **A.** does not apply to the Electronic Commerce (E-Commerce) endorsement when attached to your policy.

**C. Vandalism**

The following is added to Vandalism, if Vandalism coverage is not otherwise excluded under the Standard Property Policy or the Causes Of Loss – Basic, Broad or Special Forms and if applicable to the premises described in the Declarations:

Vandalism does not include a cyber incident as described in Paragraph **A.**

POLICY NUMBER:  CPS7560688

**COMMERCIAL PROPERTY**
**CP 12 11 09 17**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# BURGLARY AND ROBBERY PROTECTIVE SAFEGUARDS

This endorsement modifies insurance provided under the following:

COMMERCIAL PROPERTY COVERAGE PART

**SCHEDULE**

| Premises No. | Building No. | Protective Safeguards Symbols Applicable |
|---|---|---|
| 1 | 1 | BR-1 |
| 1 | 2 | BR-1 |
| 1 | 3 | BR-1 |

| Describe any "BR-4": |
|---|
| **Additional requirements, if any, for engagement of an automatic burglary alarm or other automatic system listed in this Schedule (other than the requirements of Paragraph A.2.):** |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A.** The following is added to the Commercial Property Conditions:

**Burglary And Robbery Protective Safeguards**

As a condition of this insurance, you are required to:

1. Maintain the protective safeguards listed in the Schedule, and over which you have control, in complete working order;

2. Actively engage any automatic burglary alarm or other automatic system listed in the Schedule and maintain it in the "on" position during all non-work hours and whenever the premises are unoccupied;

3. Actively engage an automatic burglary alarm or other automatic system, or parts thereof, in accordance with any other requirements, if any, indicated in the Schedule; and

4. Notify us if you know of any suspension of or impairment in any protective safeguard listed in the Schedule.

   However, notification to us of the suspension of or impairment in an automatic burglary alarm or other automatic system listed in the Schedule will not be necessary if you:

   **a.** Can restore full protection within 48 hours of the suspension or impairment;

**CP 12 11 09 17**            © Insurance Services Office, Inc., 2016            **Page 1 of 2**

**b.** Provide at least one watchperson or other means of surveillance at the premises during all non-work hours and whenever the premises are otherwise unoccupied; and

**c.** Provide at least one watchperson or other means of surveillance during work hours if the Schedule requires that the premises or part thereof be protected during work hours.

**B.** The following is added to the **Exclusions** section of the Causes Of Loss – Special Form:

**Burglary And Robbery Protective Safeguards**

We will not pay for loss or damage caused by or resulting from theft if, prior to the theft, you failed to comply with any condition set forth in Paragraph **A.**

**C.** The protective safeguards to which this endorsement applies are identified by the following symbols:

**1.** **"BR-1" Automatic Burglary Alarm,** protecting the entire building, that signals to:

**a.** An outside central station; or

**b.** A police station.

**2.** **"BR-2" Automatic Burglary Alarm,** protecting the entire building, that has a loud sounding gong or siren on the outside of the building.

**3.** **"BR-3" Security Service,** with a recording system or watch clock, making hourly rounds covering the entire building, when the premises are not in actual operation.

**4.** **"BR-4"** The protective safeguard described in the Schedule.

© Insurance Services Office, Inc., 2016

POLICY NUMBER:   CPS7560688

IL 04 01 02 12

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# FLORIDA – SINKHOLE LOSS COVERAGE

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS (OUTPUT POLICY) COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
FARM COVERAGE PART

**SCHEDULE**

| Premises Number | Building Number |
|---|---|
| 1 | 1 |
| 1 | 2 |
| 1 | 3 |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | |

With respect to the location(s) indicated in the Schedule, the following provisions apply:

**A.** When this endorsement is attached to Standard Property Policy **CP 00 99,** the term Coverage Part in this endorsement is replaced by the term Policy.

**B.** When this endorsement is attached to the Farm Livestock Coverage Form, reference to loss (other than in the term Sinkhole Loss itself) means "loss" as defined in that coverage form.

**C.** The following is added to this Coverage Part as a Covered Cause of Loss. In the forms which address "specified causes of loss", the following is also added as a "specified cause of loss". However, as a "specified cause of loss", the following does not apply to the Additional Coverage – Collapse.

**Sinkhole Loss,** meaning loss or damage to Covered Property when "structural damage" to the covered building, including the foundation, is caused by settlement or systematic weakening of the earth supporting the covered building, only if the settlement or systematic weakening results from contemporaneous movement or raveling of soils, sediments, or rock materials into subterranean voids created by the effect of water on a limestone or similar rock formation.

Coverage for Sinkhole Loss includes stabilization of the building (including land stabilization) and repair to the foundation, provided such work is in accordance with the requirements of Florida Insurance Law and in accordance with the recommendation of a professional engineer and with notice to you. The professional engineer must be selected or approved by us. However, until you enter into a contract for performance of building stabilization or foundation repair in accordance with the recommendations of the professional engineer as set forth in a report from us:

**1.** We will not pay for underpinning or grouting or any other repair technique performed below the existing foundation of the building; and

**2.** Our payment for Sinkhole Loss to Covered Property may be limited to the actual cash value of the loss to such property.

© Insurance Services Office, Inc., 2012

You must enter into a contract for the performance of building stabilization and/or foundation repair in accordance with the aforementioned recommendations, within 90 days after we notify you that there is coverage for your Sinkhole Loss. After you have entered into such contract, we will pay the amounts necessary to begin and perform such repairs as the work is performed and the expenses are incurred.

However, if the professional engineer determines, prior to your entering into the aforementioned contract or prior to the start of repair work, that the repairs will exceed the applicable Limit of Insurance, we must either complete the recommended repairs or pay that Limit of Insurance upon such determination. If the aforementioned determination is made during the course of repair work and we have begun making payments for the work performed, we must either complete the recommended repairs or pay only the remaining portion of the applicable Limit of Insurance upon such determination. The most we will pay for the total of all Sinkhole Loss, including building and land stabilization and foundation repair, is the applicable Limit of Insurance on the affected building.

The stabilization and all other repairs to the Covered Property must be completed within 12 months after entering into the contract for the performance of these repairs, unless:

**1.** There is a mutual agreement between you and us;

**2.** The claim is involved with the neutral evaluation process;

**3.** The claim is in litigation; or

**4.** The claim is under appraisal or mediation.

**D.** Sinkhole Loss does not include:

**1.** Sinking or collapse of land into man-made underground cavities; or

**2.** Earthquake.

**E.** With respect to coverage provided by this endorsement, the **Earth Movement** Exclusion and the **Collapse** Exclusion do not apply.

**F.** With respect to a claim for alleged Sinkhole Loss, the following provision is added:

Following receipt by us of a report from a professional engineer or professional geologist on the cause of loss and recommendations for land stabilization and repair of property, or if we deny your claim, we will notify you of your right to participate in a neutral evaluation program administered by the Florida Department of Financial Services (hereinafter referred to as the Department). For alleged Sinkhole Loss to commercial residential or farm residential properties, this program applies instead of any mediation procedure set forth elsewhere in this policy, but does not invalidate the Appraisal Condition.

You or we may file a request with the Department for neutral evaluation; the other party must comply with such request. We will pay reasonable costs associated with the neutral evaluation, regardless of which party makes the request. But if a party chooses to hire a court reporter or stenographer to contemporaneously record and document the neutral evaluation, that party must bear the costs of those services. The neutral evaluator will be selected from a list maintained by the Department. The recommendation of the neutral evaluator will not be binding on you or us.

Participation in the neutral evaluation program does not change your right to file suit against us in accordance with the Legal Action Against Us Condition in this policy, except that the time for filing suit is extended for a period of 60 days following the conclusion of the neutral evaluation process or five years, whichever is later.

**G.** Coverage for Sinkhole Loss under this endorsement does not increase the applicable Limit of Insurance. Even if loss or damage qualifies under, or includes, both Catastrophic Ground Cover Collapse (addressed elsewhere in this Coverage Part) and Sinkhole Loss, only one Limit of Insurance will apply to such loss or damage.

© Insurance Services Office, Inc., 2012

**H.** The following provision is added to the **Duties In The Event Of Loss Or Damage** Loss Condition:

A claim for Sinkhole Loss, including but not limited to initial, supplemental and reopened claims is barred unless notice of claim is provided to us in accordance with the terms of this policy within two years after you knew or reasonably should have known about the Sinkhole Loss.

**I.** The following definitions are added with respect to the coverage provided under this endorsement:

   **1.** "Structural damage" means a covered building, regardless of the date of its construction, has experienced the following:

   **a.** Interior floor displacement or deflection in excess of acceptable variances as defined in ACI 117-90 or the Florida Building Code, which results in settlement related damage to the interior such that the interior building structure or members become unfit for service or represent a safety hazard as defined within the Florida Building Code;

   **b.** Foundation displacement or deflection in excess of acceptable variances as defined in ACI 318-95 or the Florida Building Code, which results in settlement related damage to the "primary structural members" or "primary structural systems" and that prevents those members or systems from supporting the loads and forces they were designed to support to the extent that stresses in those "primary structural members" or "primary structural systems" exceed one and one-third the nominal strength allowed under the Florida Building Code for new buildings of similar structure, purpose, or location;

   **c.** Damage that results in listing, leaning, or buckling of the exterior load bearing walls or other vertical "primary structural members" to such an extent that a plumb line passing through the center of gravity does not fall inside the middle one-third of the base as defined within the Florida Building Code;

   **d.** Damage that results in the building, or any portion of the building containing "primary structural members" or "primary structural systems", being significantly likely to imminently collapse because of the movement or instability of the ground within the influence zone of the supporting ground within the sheer plane necessary for the purpose of supporting such building as defined within the Florida Building Code; or

   **e.** Damage occurring on or after October 15, 2005, that qualifies as substantial structural damage as defined in the Florida Building Code.

   **2.** "Primary structural member" means a structural element designed to provide support and stability for the vertical or lateral loads of the overall structure.

   **3.** "Primary structural system" means an assemblage of "primary structural members".

**J.** If we deny your claim for Sinkhole Loss without performing testing under section 627.702, Florida Statutes, you may demand testing by communicating such demand to us in writing within 60 days after you receive our denial of the claim. You are responsible for 50% of the testing costs, or $2,500, whichever is less. If our professional engineer or geologist provides written certification, pursuant to section 627.7073, that there is sinkhole loss, we will reimburse you for the testing costs.

**K.** You may not accept a rebate from any person performing repairs for Sinkhole Loss covered under this endorsement. If you receive a rebate, coverage under this endorsement is void and you must refund the amount of the rebate to us.

**L.** If we deny your claim for Sinkhole Loss upon receipt of written certification from a professional engineer or geologist, pursuant to section 627.7073, that there is no sinkhole loss or that the cause of the damage was not sinkhole activity, and if the sinkhole claim was submitted without good faith grounds for submitting such claim, you shall reimburse us for 50% of the actual costs of the analyses and services provided under sections 627.7072 and 627.7073, or $2,500, whichever is less. You are not required to pay such reimbursement unless you requested the analysis and services and we, before ordering the analysis, informed you in writing of the potential for reimbursement and gave you the opportunity to withdraw the claim.

**M.** As a precondition to accepting payment for sinkhole loss, you must file with the county clerk of court, a copy of any sinkhole report regarding your property which was prepared on behalf or at your request. You will bear the cost of filing and recording the sinkhole report.

POLICY NUMBER: CPS7560688

IL 04 01 02 12

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# FLORIDA – SINKHOLE LOSS COVERAGE

This endorsement modifies insurance provided under the following:

    CAPITAL ASSETS (OUTPUT POLICY) COVERAGE PART
    COMMERCIAL PROPERTY COVERAGE PART
    FARM COVERAGE PART

**SCHEDULE**

| Premises Number | Building Number |
|---|---|
| 1 | 4 |
| 1 | 5 |
| | |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

With respect to the location(s) indicated in the Schedule, the following provisions apply:

**A.** When this endorsement is attached to Standard Property Policy **CP 00 99,** the term Coverage Part in this endorsement is replaced by the term Policy.

**B.** When this endorsement is attached to the Farm Livestock Coverage Form, reference to loss (other than in the term Sinkhole Loss itself) means "loss" as defined in that coverage form.

**C.** The following is added to this Coverage Part as a Covered Cause of Loss. In the forms which address "specified causes of loss", the following is also added as a "specified cause of loss". However, as a "specified cause of loss", the following does not apply to the Additional Coverage – Collapse.

**Sinkhole Loss,** meaning loss or damage to Covered Property when "structural damage" to the covered building, including the foundation, is caused by settlement or systematic weakening of the earth supporting the covered building, only if the settlement or systematic weakening results from contemporaneous movement or raveling of soils, sediments, or rock materials into subterranean voids created by the effect of water on a limestone or similar rock formation.

Coverage for Sinkhole Loss includes stabilization of the building (including land stabilization) and repair to the foundation, provided such work is in accordance with the requirements of Florida Insurance Law and in accordance with the recommendation of a professional engineer and with notice to you. The professional engineer must be selected or approved by us. However, until you enter into a contract for performance of building stabilization or foundation repair in accordance with the recommendations of the professional engineer as set forth in a report from us:

**1.** We will not pay for underpinning or grouting or any other repair technique performed below the existing foundation of the building; and

**2.** Our payment for Sinkhole Loss to Covered Property may be limited to the actual cash value of the loss to such property.

You must enter into a contract for the performance of building stabilization and/or foundation repair in accordance with the aforementioned recommendations, within 90 days after we notify you that there is coverage for your Sinkhole Loss. After you have entered into such contract, we will pay the amounts necessary to begin and perform such repairs as the work is performed and the expenses are incurred.

However, if the professional engineer determines, prior to your entering into the aforementioned contract or prior to the start of repair work, that the repairs will exceed the applicable Limit of Insurance, we must either complete the recommended repairs or pay that Limit of Insurance upon such determination. If the aforementioned determination is made during the course of repair work and we have begun making payments for the work performed, we must either complete the recommended repairs or pay only the remaining portion of the applicable Limit of Insurance upon such determination. The most we will pay for the total of all Sinkhole Loss, including building and land stabilization and foundation repair, is the applicable Limit of Insurance on the affected building.

The stabilization and all other repairs to the Covered Property must be completed within 12 months after entering into the contract for the performance of these repairs, unless:

1. There is a mutual agreement between you and us;

2. The claim is involved with the neutral evaluation process;

3. The claim is in litigation; or

4. The claim is under appraisal or mediation.

D. Sinkhole Loss does not include:

1. Sinking or collapse of land into man-made underground cavities; or

2. Earthquake.

E. With respect to coverage provided by this endorsement, the **Earth Movement** Exclusion and the **Collapse** Exclusion do not apply.

F. With respect to a claim for alleged Sinkhole Loss, the following provision is added:

Following receipt by us of a report from a professional engineer or professional geologist on the cause of loss and recommendations for land stabilization and repair of property, or if we deny your claim, we will notify you of your right to participate in a neutral evaluation program administered by the Florida Department of Financial Services (hereinafter referred to as the Department). For alleged Sinkhole Loss to commercial residential or farm residential properties, this program applies instead of any mediation procedure set forth elsewhere in this policy, but does not invalidate the Appraisal Condition.

You or we may file a request with the Department for neutral evaluation; the other party must comply with such request. We will pay reasonable costs associated with the neutral evaluation, regardless of which party makes the request. But if a party chooses to hire a court reporter or stenographer to contemporaneously record and document the neutral evaluation, that party must bear the costs of those services. The neutral evaluator will be selected from a list maintained by the Department. The recommendation of the neutral evaluator will not be binding on you or us.

Participation in the neutral evaluation program does not change your right to file suit against us in accordance with the Legal Action Against Us Condition in this policy, except that the time for filing suit is extended for a period of 60 days following the conclusion of the neutral evaluation process or five years, whichever is later.

G. Coverage for Sinkhole Loss under this endorsement does not increase the applicable Limit of Insurance. Even if loss or damage qualifies under, or includes, both Catastrophic Ground Cover Collapse (addressed elsewhere in this Coverage Part) and Sinkhole Loss, only one Limit of Insurance will apply to such loss or damage.

 © Insurance Services Office, Inc., 2012

**H.** The following provision is added to the **Duties In The Event Of Loss Or Damage** Loss Condition:

A claim for Sinkhole Loss, including but not limited to initial, supplemental and reopened claims is barred unless notice of claim is provided to us in accordance with the terms of this policy within two years after you knew or reasonably should have known about the Sinkhole Loss.

**I.** The following definitions are added with respect to the coverage provided under this endorsement:

  **1.** "Structural damage" means a covered building, regardless of the date of its construction, has experienced the following:

  **a.** Interior floor displacement or deflection in excess of acceptable variances as defined in ACI 117-90 or the Florida Building Code, which results in settlement related damage to the interior such that the interior building structure or members become unfit for service or represent a safety hazard as defined within the Florida Building Code;

  **b.** Foundation displacement or deflection in excess of acceptable variances as defined in ACI 318-95 or the Florida Building Code, which results in settlement related damage to the "primary structural members" or "primary structural systems" and that prevents those members or systems from supporting the loads and forces they were designed to support to the extent that stresses in those "primary structural members" or "primary structural systems" exceed one and one-third the nominal strength allowed under the Florida Building Code for new buildings of similar structure, purpose, or location;

  **c.** Damage that results in listing, leaning, or buckling of the exterior load bearing walls or other vertical "primary structural members" to such an extent that a plumb line passing through the center of gravity does not fall inside the middle one-third of the base as defined within the Florida Building Code;

  **d.** Damage that results in the building, or any portion of the building containing "primary structural members" or "primary structural systems", being significantly likely to imminently collapse because of the movement or instability of the ground within the influence zone of the supporting ground within the sheer plane necessary for the purpose of supporting such building as defined within the Florida Building Code; or

  **e.** Damage occurring on or after October 15, 2005, that qualifies as substantial structural damage as defined in the Florida Building Code.

  **2.** "Primary structural member" means a structural element designed to provide support and stability for the vertical or lateral loads of the overall structure.

  **3.** "Primary structural system" means an assemblage of "primary structural members".

**J.** If we deny your claim for Sinkhole Loss without performing testing under section 627.702, Florida Statutes, you may demand testing by communicating such demand to us in writing within 60 days after you receive our denial of the claim. You are responsible for 50% of the testing costs, or $2,500, whichever is less. If our professional engineer or geologist provides written certification, pursuant to section 627.7073, that there is sinkhole loss, we will reimburse you for the testing costs.

**K.** You may not accept a rebate from any person performing repairs for Sinkhole Loss covered under this endorsement. If you receive a rebate, coverage under this endorsement is void and you must refund the amount of the rebate to us.

**L.** If we deny your claim for Sinkhole Loss upon receipt of written certification from a professional engineer or geologist, pursuant to section 627.7073, that there is no sinkhole loss or that the cause of the damage was not sinkhole activity, and if the sinkhole claim was submitted without good faith grounds for submitting such claim, you shall reimburse us for 50% of the actual costs of the analyses and services provided under sections 627.7072 and 627.7073, or $2,500, whichever is less. You are not required to pay such reimbursement unless you requested the analysis and services and we, before ordering the analysis, informed you in writing of the potential for reimbursement and gave you the opportunity to withdraw the claim.

**M.** As a precondition to accepting payment for sinkhole loss, you must file with the county clerk of court, a copy of any sinkhole report regarding your property which was prepared on behalf or at your request. You will bear the cost of filing and recording the sinkhole report.

Underwritten by Scottsdale Insurance Company

# ENDORSEMENT NO. _____

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| CPS7560688 | 04/14/2022 | 4205 PINE ISLAND LLC | 09012 |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## ASSIGNMENT OF CLAIM BENEFITS

The following Condition is added:

**ASSIGNMENT OF CLAIM BENEFITS**

No assignment of claim benefits, regardless of whether made before or after loss, shall be valid without the written consent of:

1. All named insureds;

2. All additional insureds;

3. All mortgagees;

4. All lienholders; and

5. Any other person or entity;

named in this policy and entitled to payment.

_____ /_____
AUTHORIZED REPRESENTATIVE              DATE

UTS-491 (1-19)                    Page 1 of 1



EXHIBIT C

October 13, 2022

4205 Pine Island LLC
74 Alicia Road
Boston, MA 02124

RE:    Claim No.:      02106787
                       Insured:        4205 Pine Island LLC
                       Underwriting Co.:    Scottsdale Insurance Company
                       Policy No.:     CPS7560688
                       Date of Loss:   September 28, 2022
                       Loss Location: 4205 Pine Island Rd NW Matlacha, FL 33993-9776
                       Type of Loss:   Hurricane Ian

Dear Sivan Lam

We are writing in regard to the claim for damage as referenced above.

We assigned a field adjuster to inspect the loss. The field adjuster observed extensive damage to the exterior and interior walls due to storm surge and flooding. Loss caused by storm surge or flood is not a covered cause of loss under your policy. Therefore, the policy provides no coverage for the damage to the interior and exterior walls from the storm surge and flooding.

The field adjuster also determined that there was wind damage to the exterior elevations of both buildings. The policy carries an endorsement that excludes any damage cause by wind or hail. Based on this information there is no coverage for the wind damages to the exterior elevations of the buildings.

Please refer to the policy, form CP 00 10 (10-12) BUILDING AND PERSONAL PROPERTY COVERAGE FORM, which states as follows:

    A.    Coverage

    We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

        1.    Covered Property

        Covered Property, as used in this Coverage Part, means the type of property described in this section, A.1., and limited in A.2. Property Not Covered, if a Limit Of Insurance is shown in the Declarations for that type

of property.

        a.      Building, meaning the building or structure described in the Declarations, including:

        (1)     Completed additions;

        (2)     Fixtures, including outdoor fixtures;

3.      Covered Causes Of Loss

See applicable Causes Of Loss form as shown in the Declarations.

We now call your attention to the Causes of Loss Form, Form No. CP 10 30 (09-17) CAUSES OF LOSS – SPECIAL FORM, which states:

**A.     Covered Causes Of Loss**

**When Special is shown in the Declarations, Covered Causes of Loss means direct physical loss unless the loss is excluded or limited in this policy.**

**B.     Exclusions**

**1.     We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.**

**g.     Water**

**(1)     Flood, surface water, waves (including tidal wave and tsunami), tides, tidal water, overflow of any body of water, or spray from any of these, all whether or not driven by wind (including storm surge);**

**(2)     Mudslide or mudflow;**

**(3)     Water that backs up or overflows or is otherwise discharged from a sewer, drain, sump, sump pump or related equipment;**

**(4)** **Water under the ground surface pressing on, or flowing or seeping through:**

    **(a)** **Foundations, walls, floors or paved surfaces;**

    **(c)** **Doors, windows or other openings; or**

**(5)** **Waterborne material carried or otherwise moved by any of the water referred to in Paragraph (1), (3) or (4), or material carried or otherwise moved by mudslide or mudflow.**

**This exclusion applies regardless of whether any of the above, in Paragraphs (1) through (5), is caused by an act of nature or is otherwise caused. An example of a situation to which this exclusion applies is the situation where a dam, levee, seawall or other boundary or containment system fails in whole or in part, for any reason, to contain the water.**

**But if any of the above, in Paragraphs (1) through (5), results in fire, explosion or sprinkler leakage, we will pay for the loss or damage caused by that fire, explosion or sprinkler leakage (if sprinkler leakage is a Covered Cause of Loss).**

The policy also contains the following endorsement language that reads as follows:

CP 10 54 (06-07) WINDSTORM OR HAIL EXCLUSION

This endorsement modifies insurance provided under the following:

CAUSES OF LOSS – BASIC FORM
CAUSES OF LOSS – BROAD FORM
CAUSES OF LOSS – SPECIAL FORM
STANDARD PROPERTY POLICY

SCHEDULE

| Premises Number | Building Number |
|---|---|
| 1 | 1 |
| 1 | 2 |
| 1 | 3 |
| 1 | 4 |
| 1 | 5 |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

-

With respect to the location(s) indicated in the Schedule, the following provisions apply.

A.    The following is added to the Exclusions section and is therefore not a Covered Cause of Loss:

WINDSTORM OR HAIL

We will not pay for loss or damage:

1.    Caused directly or indirectly by Windstorm or Hail, regardless of any other cause or event that contributes concurrently or in any sequence to the loss or damage; or

2.      Caused by rain, snow, sand or dust, whether driven by wind or not, if that loss or damage would not have occurred but for the Windstorm or Hail.

But if Windstorm or Hail results in a cause of loss other than rain, snow, sand or dust, and that resulting cause of loss is a Covered Cause of Loss, we will pay for the loss or damage caused by such Covered Cause of Loss. For example, if the Windstorm or Hail damages a heating system and fire results, the loss or damage attributable to the fire is covered subject to any other applicable policy provisions.

B.      The terms of the Windstorm Or Hail exclusion, or the inapplicability of this exclusion to a particular loss, do not serve to create coverage for any loss that would otherwise be excluded under this policy.

C.      Under Additional Coverage – Collapse, in the Causes Of Loss – Broad Form, Windstorm or Hail is deleted from Paragraph 2.a.

D.      In the Causes Of Loss – Special Form, Windstorm or Hail is deleted from the "specified causes of loss".

E.      Under Additional Coverage Extensions – Property In Transit, in the Causes Of Loss – Special Form, Windstorm or Hail is deleted from Paragraph b. (1).

As noted above, during our investigation of your loss we have determined the exterior and interior walls were damaged due to the storm surge and flood from Hurricane Ian. Losses caused by flood is not a covered cause of los sunder the policy because those causes of loss are excluded from coverage Unfortunately, we will not be able to make any payment.

Additionally, we have determined that there is wind damage to the exterior elevations on the buildings due to wind from Hurricane Ian. Losses caused by wind or hail are excluded from coverage. Unfortunately, we will not be able to make payments for the wind damage.

Scottsdale Insurance Company reserves the right to review any additional claims or amendments to this claim and to make a separate determination as to whether a new claim or amendment to this claim is covered by the policy. Any decision we make regarding coverage is based on the facts as presented to us prior to our coverage determination and should not be construed as applicable to a new claim or an amendment to this claim. Our right to have notice of either situation is reserved, as are the notice conditions of the policy.

The state of Florida requires we advise of the following: Any person who knowingly and with intent to injure, defraud, or deceive any insurer files a statement of claim or an application containing any false, incomplete, or misleading information is guilty of a felony of the third degree.

If you believe there is additional information that should be considered or some other reason the policy should provide coverage, please provide that information in writing as soon as possible upon receipt of this letter.

Sincerely,


Steve Thompson
Special Claims Representative II
919-971-3184 Florida License # A264702
Nationwide E&S/Specialty

Scottsdale Insurance Company
P.O. Box 182452
Columbus, OH 43218-2452
1-800-423-7675